### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING AND APPROVING CONTINUED USE OF CASH
MANAGEMENT SYSTEM, (II) AUTHORIZING CONTINUED USE OF CORPORATE
CREDIT CARDS AND GRANTING ADMINISTRATIVE EXPENSE STATUS TO
POSTPETITION CREDIT CARD OBLIGATIONS, (III) AUTHORIZING USE OF
PREPETITION BANK ACCOUNTS AND BUSINESS FORMS, (IV) WAIVING
THE REQUIREMENTS OF SECTION 345(b) ON AN INTERIM BASIS, (V) GRANTING
ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION INTERCOMPANY
CLAIMS, AND (VI) GRANTING CERTAIN RELATED RELIEF**

The above-captioned affiliated debtors and debtors in possession (each, a "Debtor" and,

collectively, the "Debtors") hereby file this motion (this "Motion") for entry of interim and final

orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B**

(the "Final Order," and together with the Interim Order, the "Proposed Orders"), pursuant to

sections 105(a), 345, 363, 364(a), 503(b), 507(b), 1107(a), and 1108 of title 11 of the United States

Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2015-2 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"): (i) authorizing and approving the Debtors' continued use of their

existing cash management system; (ii) authorizing continued use of Corporate Credit Cards (as

defined below) and granting administrative expense status to postpetition Credit Card Obligations

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A).  The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

(as defined below); (iii) granting the Debtors a waiver of certain bank account and related requirements of the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") to the extent that such requirements are inconsistent with the Debtors' practices in connection with their existing cash management system; (iv) waiving the requirements of section 345(b) of the Bankruptcy Code with respect to the Debtors' deposit practices on an interim basis; (v) granting administrative expense status to postpetition intercompany claims; and (vi) granting certain related relief.  To enable the Debtors to carry out the relief requested, the Debtors also request that the Court authorize the Debtors' banks and other financial institutions to continue to maintain, service, and administer accounts on behalf of the Debtors.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Carol Brault in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## **JURISDICTION AND VENUE**

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory and legal predicates for the relief requested herein are sections 105, 345, 363, 364(a), 503(b), 507(b), 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2.

## BACKGROUND

### A.     General Background

3.     On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committees have been appointed in the Chapter 11 Cases and no request has been made for the appointment of a trustee or an examiner.

4.     Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

### B.     The Cash Management System

5.     In the ordinary course of business, the Debtors maintain a centralized cash management system (the "Cash Management System"), which includes all activities necessary and pertinent to collecting and disbursing the Debtors' cash assets. The Debtors configure their Cash Management System to efficiently collect, transfer, and disburse funds generated through the Debtors' operations and to accurately record such collections, transfers, and disbursements as they are made. The Cash Management System is important to the efficient execution and achievement of the Debtors' business objectives, and, ultimately, to maximizing the value of the Debtors'

estates.  A chart depicting the flow of funds in the Cash Management System is attached hereto as **Exhibit C**.

6.    The Cash Management System includes two bank accounts (collectively the "Bank Accounts") maintained by the Debtors at Banc of California, N.A. (the "Banc of California", and any bank that may subsequently become part of the Debtors' cash management system, the "Banks"), as described below and listed in the schedule attached hereto as **Exhibit D**.

    *i.    Bank Accounts*

7.    The Debtors receive substantially all of their cash into a bank account ending in 7708 (the "BWSC Account") held by Debtor BWSC, LLC.  Cash collections from all wholesale sales are deposited directly into the BWSC Account.  The proceeds from online credit card sales and miscellaneous ACH and wire payments are deposited by various third-party processors, net (in some cases) of certain customer returns, chargebacks and fees, directly into the BWSC Account.  In addition, cash and checks received by the Debtors at their headquarters are deposited into the BWSC Account.  Funds from the BWSC Account are manually transferred, as needed, to the Winc Account to fund disbursements.

8.    Substantially all of the Debtors' disbursements, including all general, administrative and operating expenses, are paid via ACH payments, wire transfers and checks from an account ending in 0698 held by Debtor Winc, Inc. (the "Winc Account").  The Debtors receive certain cash receipts in the Winc Account for, among other things, rent revenue and miscellaneous deposits unrelated to sales revenue.  All wire payments and ACH debits, including those for payroll, payroll taxes, sales tax, medical benefits, and the Debtors' corporate credit card are deducted directly from the Winc Account.  The Debtors ensure, on each business day, that there are sufficient available funds in the Winc Account in the amount of all items drawn on such

account, whether outstanding or presented for payment, and any other debit transactions initiated with respect to such Winc Account. As of the Petition Date, the Debtors had approximately $337,000 and $390,000 in the BWSC Account and the Winc Account, respectively.

9.      In the ordinary course of business, the Banks charge various service charges and other fees, costs, and expenses as dictated by certain agreements governing the Bank Accounts (collectively, the "Bank Fees"). To maintain good standing and to honor those agreements with the Banks, the Debtors pay the Bank Fees or allow the Banks to deduct amounts to cover the Bank Fees from the appropriate Bank Accounts. The Debtors estimate that the Banks collectively charge the Debtors approximately $2,500 in total Bank Fees per month. The Debtors estimate that approximately $2,500 of accrued but unpaid Bank Fees are outstanding as of the Petition Date (collectively, the "Prepetition Bank Fees").

> ii.      *Corporate Credit Card Program*

10.     The Cash Management System also includes corporate credit cards (collectively, the "Corporate Credit Cards") issued to the Debtors by Brex, Inc. ("Brex"). The aggregate credit limit of the Corporate Credit Cards is $1,000,000. The Corporate Credit Cards are provided to certain employees and used to purchase various business expenses including office supplies, travel expenses, and to make payments to certain vendors. The Debtors pay the obligations under the Corporate Credit Cards on a daily basis, 60 days in arrears. Brex deducts such payments directly from the Winc Account. The total aggregate balance on account of the Corporate Credit Cards averages approximately $800,000 (the "Corporate Credit Card Obligations"). The Debtors estimate that they owe Brex approximately $752,000 in Corporate Credit Card Obligations as of the Petition Date.

11.     The Debtors required various employees to use the Corporate Credit Cards to pay for Debtors' procurement of goods and services, which are used in the ordinary course of the operation of the Debtors' business.  Use of the Corporate Credit Cards is an integral part of the Debtors' cash management and accounting functions, and continuation of the ability to use the Corporate Credit Cards for procurement is essential to the continued operation of the Debtors' business.  Accordingly, to ensure that the Debtors' operations are not materially disrupted, the Debtors request authority, but not direction, to pay all Corporate Credit Card Obligations and authority to continue to use the Corporate Credit Cards in the ordinary course during the administration of the Chapter 11 Cases.

  *iii. Intercompany Transactions*

12.     As detailed above, in the ordinary course of their business, the Debtors engage in intercompany transactions (the "Intercompany Transactions") between Winc, Inc. and BWSC, LLC.  The Intercompany Transactions generate intercompany receivables and payables (the "Intercompany Claims").  The Debtors maintain detailed records of the Intercompany Claims and can identify, monitor, and account for all Intercompany Transactions.  The Debtors will continue to maintain such records, including records of all intercompany accounts receivable and payable.

13.     Through this Motion, the Debtors request (i) authority to continue these Intercompany Transactions and (ii) that the Court grant administrative expense status under sections 503(b)(1) and 507(b) of the Bankruptcy Code to all postpetition Intercompany Claims.  If the Intercompany Transactions were no longer permitted, the disruption to the Cash Management System and related administrative controls would detrimentally impact the Debtors, their estates, and their stakeholders.

*iv.    Existing Business Forms and Check Stock*

14.    In the ordinary course of business, the Debtors use a variety of checks and business forms.  To avoid confusion and prevent the imposition of unnecessary expense to their estates, it is appropriate to continue to use all checks, correspondence, and other business forms (including, without limitation, letterhead, order forms and invoices) (collectively, the "Business Forms") as such forms existed immediately before the Petition Date—without reference to the Debtors' status as debtors in possession.  Ordering new Business Forms will unduly strain the Debtors' resources and cause unnecessary delay to their business operations.  The Debtors have the ability to print their own checks.  As debtors in possession, the Debtors will order checks from Banc of California or print checks with a new postpetition sequence number and a reference to the Debtors' status as debtors in possession and bankruptcy case number as soon as it is reasonably practical to do so.

15.    The Cash Management System is a mainstay of the Debtors' ordinary, usual, and essential business practices.  The Debtors' system provides numerous benefits, including the ability to (i) quickly create status reports on the location and amount of funds, thereby allowing management to track and control corporate funds; (ii) ensure cash availability and prompt payment of corporate, employee, and vendor related expenses; and (iii) reduce administrative costs by facilitating the efficient movement of funds.

## RELIEF REQUESTED

16.    The Debtors seek entry of the Proposed Orders, pursuant to sections 105, 345, 363, 364(a), 503(b), 507(b), 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2:  (i) authorizing and approving the Debtors' continued use of their existing cash management system; (ii) authorizing continued use of Corporate Credit Cards and granting administrative expense status to postpetition Credit Card Obligations; (iii) granting the

Debtors a waiver of certain bank account and related requirements of the U.S. Trustee to the extent

that such requirements are inconsistent with the Debtors' practices in connection with their existing

cash management system; (iv) waiving the requirements of section 345(b) of the Bankruptcy Code

with respect to the Debtors' deposit practices on an interim basis; and (v) granting administrative

expense status to postpetition intercompany claims.

17.     To enable the Debtors to carry out the relief requested, the Debtors also request that

the Court authorize the Banks to continue to service and administer the Bank Accounts as accounts

of the Debtors as debtors in possession without interruption and in the ordinary course, and to

receive, process, honor, and pay any and all checks and drafts drawn on, or electronic transfer

requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as

the case may be, in accordance with the orders of the Court.

## BASIS FOR RELIEF REQUESTED

**A.     Continued Use of the Cash Management System Is Essential to the Debtors' Business Operations.**

18.     The Debtors manage the Cash Management System while operating their business

in the ordinary course.  The Cash Management System allows the Debtors to effectively administer

their financial affairs with efficiency and ease.  In addition, the Cash Management System is

comparable to systems utilized by enterprises similar to the Debtors' in size and complexity.

19.     As described herein, any reworking of the Cash Management System would have

an immediate adverse impact on the Debtors' business and would impair the Debtors' ability to

successfully administer the Chapter 11 Cases.  It would be time-consuming, difficult, and costly

for the Debtors to establish an entirely new system of accounts and a new cash management

system.  By revising cash management procedures, redirecting receipts, and implementing new

payment protocols, the Debtors' operations will be inevitably delayed, and the Debtors and their

29864734.8

employees will be distracted from the work necessary to successfully navigate the chapter 11 process. Preserving the efficient and familiar nature of the Cash Management System will facilitate the continuance of the Debtors' business in the ordinary course.

20. The Debtors will maintain records of all transfers within the Cash Management System to the same extent they were recorded by the Debtors before the commencement of the Chapter 11 Cases. As a result, the continued use of the Cash Management System will enable the Debtors to record the transactions occurring within the Cash Management System without interruption for the benefit of all parties in interest.

21. Allowing the Debtors to utilize the prepetition Cash Management System aligns with applicable provisions of the Bankruptcy Code. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *See, e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp., (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996). Accordingly, to minimize the disruption caused by these bankruptcy filings and maximize the value of the Debtors' estates, the Debtors request authority to continue to utilize the Cash Management System during the pendency of these Chapter 11 Cases.

22. Courts in this district have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas*

*Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit has agreed, emphasizing the "huge administrative burden" and economic inefficiency of requiring affiliated debtors to maintain all accounts separately. *Columbia Gas Sys.*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (maintaining an existing cash management system allows a debtor "to administer more effectively and efficiently its financial operations and assets"). Courts routinely grant chapter 11 debtors authority to continue utilizing existing cash management systems and treat requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).

23.     The Court may also exercise its equitable powers to grant the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Maintaining the Cash Management System in its current form is imperative to the success of the Chapter 11 Cases, and it is within the Court's equitable power under section 105(a) to approve its continued use.

24.     Key components of the Cash Management System, including the Corporate Credit Cards, have been used by the Debtors for years as a customary and essential business practice. The Cash Management System provides numerous benefits, including the ability to oversee and direct the flow of corporate funds, ensure sustainable account balances, and reduce administrative expenses by simplifying the movement of funds. In consideration of the myriad structural connections among the Cash Management System and the Debtors' vendors, providers and servicers, substantial disruption to the Cash Management System will reduce the value of the Debtors' estates. In addition, preserving a "business as usual" atmosphere and avoiding the

unnecessary distractions that inevitably would be associated with any substantial disruption of the Cash Management System will facilitate the stabilization of the Debtors' business operations, particularly during the transition into chapter 11.

25.     Maintenance of the Cash Management System will not harm parties in interest because the Debtors have implemented appropriate mechanisms to safeguard against unauthorized payments for obligations incurred prior to the Petition Date.  Specifically, with the assistance of their professionals and consistent with prior practice, the Debtors will continue to maintain detailed records of all transfers of cash and record all transactions on applicable accounts.  Therefore, the Debtors should be permitted to continue to manage their cash and transfer monies among the Bank Accounts in accordance with the Cash Management System during the pendency of the Chapter 11 Cases.

**B.      The Court Should Authorize the Debtors to Maintain Existing Bank Accounts.**

26.     The U.S. Trustee has established several operating guidelines for chapter 11 debtors in possession, including a requirement that the debtor in possession open new bank accounts and close all existing accounts.  This requirement was designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and to help protect against the inadvertent payment of prepetition claims.  The U.S. Trustee's guidelines also require the Debtors to open separate accounts for cash collateral and for the purpose of setting aside estate monies required for the payment of taxes, including, but not limited to, federal, state, local, and payroll taxes.

27.     To avoid substantial disruption to the normal operation of their business and to preserve a "business as usual" atmosphere, the Debtors request authority to continue using the existing Bank Accounts for cash collateral and tax payments.  Instead of creating separate

accounts, the Debtors can smoothly transition to operations under chapter 11 by using their existing Bank Accounts.  Moreover, the Debtors do not need to open new accounts to distinguish between prepetition and postpetition obligations and payments.  All Banks with which the Debtors maintain the Bank Accounts have been or will be advised not to honor checks, drafts, or other requests for payment issued prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and directed by the Debtors.  Therefore, the Debtors' creditors can be protected and the goals of the U.S. Trustee guidelines can be achieved without closing the Bank Accounts.

28.     Contemporaneously herewith, the Debtors have filed a number of "first day" motions requesting authority to pay certain prepetition claims including, for example, tax, insurance, and certain "critical vendor" claims, in order to avoid immediate and irreparable harm to their operations as they transition into chapter 11.  The Debtors have stringent systems in place to ensure the timely satisfaction of these claims.  Modifying the structure of the Bank Accounts would dismantle these systems, resulting in significant disruption to the Debtors' business operations and tardy payment of the Debtors' obligations.  Without requiring the establishment of new accounts and payment procedures, the Debtors' system also provides for the payment of taxes in satisfaction of the U.S. Trustee guidelines.

29.     Thus, the Debtors respectfully request that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, ACH payments and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions

29864734.8

with respect thereto, whether such checks, drafts, wires, or ACH payments are dated prior to or subsequent to the Petition Date consistent with any order of the Court and governing law; *provided*, *however*, that any check, draft, or other notification that the Debtors advised the Banks to have been drawn, issued, or otherwise presented prior to the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

30.     The Debtors also request that, to the extent a Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion either (i) at the direction of the Debtors; (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtors, their estates or any other party on account of such prepetition check or other item honored postpetition. Both as part of this Motion and in other motions that have been concurrently filed, the Debtors are requesting authority, but not direction, to pay certain prepetition obligations. With respect to some of these obligations, there are a number of checks issued by the Debtors before the Petition Date that have not yet settled. In other instances, the Debtors will issue the relevant check upon receipt of an order from the Court authorizing the Debtors to do so. The Debtors intend to inform the Banks which such checks should be honored. Therefore, the Debtors request that the Banks be authorized to rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored. The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not positioned to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

31.     Although the Debtors are requesting the suspension of the requirement that they close all Bank Accounts and open new bank accounts reflecting their status as debtors in possession, the Debtors may determine, in their business judgment, that it is in the best interests of their estates and stakeholders to open new bank accounts or closing existing Bank Accounts. Nothing contained herein should prevent the Debtors from opening any additional bank accounts, or closing any existing Bank Accounts, as they may deem necessary and appropriate in their sole discretion; *provided* that any new account is established at a bank that is on the U.S. Trustee's List of Authorized Bank Depositories for the District of Delaware.

32.     In connection with the Cash Management System, the Banks charge, and the Debtors pay, honor, or allow the deduction from the appropriate account, certain Bank Fees. As with the Cash Management System, it is in the best interests of the Debtors' estates to pay the Bank Fees to mitigate disruption to the Debtors' operations. Should the Bank Fees remain unpaid, the Banks might assert setoff rights against the funds in the Bank Accounts, freeze the Bank Accounts, or refuse to provide banking services to the Debtors. Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek authority, in their sole discretion, to pay or reimburse the Banks in the ordinary course of business for any Bank Fees arising prior to or after the Petition Date.

### C.     The Debtors Should Be Authorized to Use Existing Check Stock and Related Business Forms.

33.     Local Rule 2015-2(a) provides:

Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts. However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

34.     The Debtors use numerous Business Forms in the ordinary course of their business. In order to minimize expenses of their estates, the Debtors request authority to continue using their existing prepetition Business Forms without reference to their status as debtors in possession or any other alteration.  It is essential that the Debtors be authorized to continue using their existing Business Forms because they routinely deal with a large number of vendors and customers, and changing business forms would impose a substantial burden without corresponding benefit.  With respect to checks, the Debtors will label any postpetition checks they print with the legend "Debtor in Possession" and the Debtors' bankruptcy case number and will include the same details on any postpetition checks they order from the Banks once it is reasonably practicable to do so.

**C.     Continued Use of the Corporate Credit Cards Is Appropriate and Warranted**

35.     Under section 364(a) of the Bankruptcy Code, where the trustee or debtor in possession is authorized to operate the business of the debtor under section 1108 of the Bankruptcy Code, they "may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense." 11 U.S.C. § 364(a).  As discussed above, the Debtors utilize the Corporate Credit Cards with Brex to extend credit for the Debtors' benefit in connection with business expenses.  Consistent with their prepetition, ordinary course practices and, as permitted under section 363(c) of the Bankruptcy Code, the Debtors wish to continue to utilize the Corporate Credit Cards on a postpetition basis.  The Debtors request that the Court grant administrative expense status to postpetition credit extended by Brex and satisfy the prepetition amounts owed to Brex so that the Debtors may continue to utilize a source of unsecured credit and maintain, without disruption, a vital component of the Cash Management System.

36.     Granting administrative expense status to postpetition extensions of credit by Brex is permitted under sections 364(a) and 503(b) of the Bankruptcy Code and, accordingly, the

Debtors request that it be granted. In addition, ample authority exists to support authorizing the payment of the prepetition amounts owed to Brex. The Corporate Credit Cards are an integral part of the Cash Management System, which the Debtors rely upon for the continued operation of their business. It is likely that, given the prepetition credit exposure, Brex would be unwilling to continue to advance amounts to the Debtors postpetition absent the relief set forth in this Motion. It would be extremely difficult, disruptive, and time-consuming to replace Brex, and such difficulties would be compounded if the Debtors were required to replace Brex on an expedited basis, and would be further compounded, if the Debtors were required to do so in the opening days of the Chapter 11 Cases—a critical time for the Debtors. Should the Debtors lose the ability to use the Corporate Credit Cards, it could seriously harm their business at the outset of the Chapter 11 Cases. Based on the foregoing, a sound business purpose exists to maintain the Corporate Credit Cards postpetition, doing so is consistent with the Debtors' fiduciary duty to preserve the value of their estates, and satisfying the Brex prepetition claims is necessary to ensure Brex's postpetition provision of credit. Given the critical nature of the Brex relationship, the Debtors submit that the relief requested with respect to the Corporate Credit Cards and prepetition claims is warranted and necessary.

**D.**      **Cause Exists to Permit Continued Use of Intercompany Transactions, and Postpetition Intercompany Claims Should Be Given Administrative Expense Status.**

37.      As described above, the Debtors enter into Intercompany Transactions in the ordinary course of business. The Intercompany Transactions are routine and essential to the operations of the Debtors' businesses. If the Intercompany Transactions were to be discontinued, the Debtors' operations, Cash Management System, and related administrative controls would be disrupted causing irreparable harm to the Debtors.

29864734.8

16

38.     The continuation of the Intercompany Transactions will not prejudice the Debtors' estates or their creditors.   Among other things, the Intercompany Transactions are part of the normal course operation of the Debtors' businesses, which allow the Debtors' enterprise as a whole to function more effectively and efficiently, thereby benefitting all of the Debtors' stakeholders. Further, the Debtors maintain strict records of transfers of cash and can ascertain, trace, and account for all such Intercompany Transactions.   Accordingly, the Debtors believe that continuation of the Intercompany Transactions is in the best interests of the Debtors' estates and creditors.

39.     Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among similar enterprises, the Debtors believe that the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, therefore, do not require the Court's approval.   Yet, precisely because of their routine nature, the continuation of such transactions is integral to the Debtors' ability to operate their business.   Thus, out of an abundance of caution, the Debtors are seeking express authority to engage in Intercompany Transactions postpetition.    If the Intercompany Transactions were discontinued, the Debtors' ordinary course operations would be disrupted.    Accordingly, the Debtors believe that the continuation of the Intercompany Transactions is in the best interests of the Debtors' estates and their creditors.

40.     Additionally, the Debtors respectfully request that, pursuant to sections 503(b)(1), 507(b), and 364(a) of the Bankruptcy Code, all Intercompany Claims arising from Intercompany Transactions be granted administrative expense status, which would result in an administrative expense claim in favor of the applicable payor that has priority over any administrative expense claim that arises under section 503(b) of the Bankruptcy Code.   This relief will ensure that each

individual Debtor will not use funds intended for creditors to fund the operations of another entity. The Debtors seek authority to enter into postpetition Intercompany Transactions in the ordinary course of business, *provided*, *however*, that the Debtors will seek further order from the Court to make cash payments on account of prepetition Intercompany Claims.

41.     Out of an abundance of caution, the Debtors request that the Court clarify that this relief will not limit the Debtors' ability to reconcile amounts owed between and among any Debtor and any affiliate, including netting and setting off obligations arising from Intercompany Transactions, whether arising prepetition or postpetition, in the ordinary course of business, as determined by the applicable Debtor in its sole discretion.

**E.     The Court Should Suspend the Requirements of Section 345(b) of the Bankruptcy Code on an Interim Basis.**

42.     The Debtors request that the Court waive the requirements of section 345(b) of the Bankruptcy Code on an interim basis and permit them to maintain their deposits in their accounts in accordance with their existing deposit practices until such time as the Debtors obtain the Court's approval to deviate from the guidelines imposed under section 345(b) of the Bankruptcy Code on a final basis, to the extent necessary.

43.     Section 345(a) of the Bankruptcy Code authorizes a debtor in possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  If a deposit or investment is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that a debtor must require that the entity with which the deposit or investment is made obtain a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety or deposit securities of

29864734.8

18

the kind specified in 31 U.S.C. § 9303, unless the court for cause orders otherwise. *See* 11 U.S.C. § 345(b); *see also* 140 Cong. Rec. H10767 (1994) (stating that while the requirement under section 345(b) for debtor funds to be FDIC insured, collateralized, or bonded may be "wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated debtors").

44.    A court may, however, relieve a debtor in possession of the restrictions imposed by section 345(b) of the Bankruptcy Code for "cause."  11 U.S.C. § 345(b).  Local Rule 2015-2(b) provides that if a motion for a waiver of the restrictions imposed by section 345(b) "is filed on the first day of a chapter 11 case in which there are more than 200 creditors, the Court may grant an interim waiver until a hearing on the debtor's motion can be held."  Del. Bankr. L. R. 2015-2(b). As this Motion is being filed on the Petition Date and the Debtors have in excess of 200 creditors, the Debtors request that the Court enter an order waiving, on an interim basis, for a period of thirty (30) days from the entry of the Proposed Order, the requirements of section 345(b) of the Bankruptcy Code.

45.    The Debtors believe that they are in substantial compliance with the requirements of section 345(b) of the Bankruptcy Code because all of the Bank Accounts are maintained at U.S. Trustee-approved depository institutions.  Nevertheless, out of an abundance of caution, the Debtors request an interim waiver of the requirements of section 345(b) of the Bankruptcy Code to the extent such requirements are inconsistent with the Debtors' current practices.  Given the complexity of the Debtors' Cash Management System and the relative security of the Cash Management System, the Debtors submit that cause exists to grant an interim waiver of the requirements of section 345(b) in the manner requested herein.

29864734.8

**F.  The Court Should Authorize Applicable Banks to Continue to Service and Administer the Bank Accounts.**

46.  In connection with the foregoing, the Debtors respectfully request that the Court (i) authorize all applicable Banks to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (ii) provide that all Banks may rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such Banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (iii) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

## SATISFACTION OF BANKRUPTCY RULE 6003(b)

47.  Pursuant to Bankruptcy Rule 6003(b), any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the Petition Date requires the Debtors to demonstrate that such relief "is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b).  Due to the fully integrated nature of the Debtors' Cash Management System and the efficiency that it fosters within the Debtors' operations, any disruption to the Cash Management System would seriously harm the Debtors and their estates.  Indeed, without the continued use of the Cash Management System, the Debtors will not be in a position to make timely payments and would incur substantial burden and expense.  Consequently, immediate and irreparable harm would result, and certain providers may cease to provide essential services to the Debtors, which would dilute the value of the Debtors' estates and detrimentally impact all parties in interest.  Accordingly, the Debtors meet the

"immediate and irreparable harm" standard of Bankruptcy Rule 6003(b).    Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

### REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

48.    Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, any disruption in, among other things, the Debtors' ability to continue to use the Cash Management System would contravene the Debtors' objective to successfully administer these Chapter 11 Cases for the benefit of their creditors and their estates, and would impair their ability to operate their business at optimal performance at this critical time as they begin the chapter 11 process.  For this reason and those set forth above, the Debtors submit that ample cause exists to waive of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

49.    To implement the foregoing immediately, the Debtors also respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a), to the extent they are applicable to the Proposed Orders.

### DEBTORS' RESERVATION OF RIGHTS

50.    Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

29864734.8

## **NOTICE**

51.     Notice of this Motion has been or will be provided to: (i) the U.S. Trustee; (ii) the holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel to the Debtors' prepetition secured lender; (iv) counsel to the DIP Lender; (v) the Internal Revenue Service; (vi) the U.S. Securities and Exchange Commission; and (vii) the Banks. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

29864734.8

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders,

granting the relief requested herein and such other and further relief as is just and proper.

Dated:   December 2, 2022
         Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Joshua B. Brooks*
Michael R. Nestor (No. 3526)
Matthew B. Lunn (No. 4119)
Allison S. Mielke (No. 5934)
Joshua B. Brooks (No. 6765)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
        mlunn@ycst.com
        amielke@ycst.com
        jbrooks@ycst.com
        sborovinskaya@ycst.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

29864734.8

23

## EXHIBIT A

**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

**INTERIM ORDER (I) AUTHORIZING AND APPROVING
CONTINUED USE OF CASH MANAGEMENT SYSTEM, (II) AUTHORIZING
CONTINUED USE OF CORPORATE CREDIT CARDS AND GRANTING
ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION CREDIT CARD
OBLIGATIONS, (III) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS
AND BUSINESS FORMS, (IV) WAIVING THE REQUIREMENTS OF SECTION
345(b) ON AN INTERIM BASIS, (V) GRANTING ADMINISTRATIVE EXPENSE
STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
(VI) GRANTING CERTAIN RELATED RELIEF**

Upon the motion (the "Motion")[2] filed by the above-captioned debtors and debtors in

possession (collectively, the "Debtors") seeking entry of an Interim Order pursuant to sections

105(a), 345(b), 363, 364(a), 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 6003 and

6004 authorizing (i) continued use of the Cash Management System; (ii) continued use of

Corporate Credit Cards and granting administrative expense status to postpetition Credit Card

Obligations; (iii) waiver of certain bank account and related requirements of the U.S. Trustee to

the extent that such requirements are inconsistent with the Debtors' practices in connection with

their existing Cash Management System; (iv) waiver of the requirements of section 345(b) of the

Bankruptcy Code with respect to the Debtors' deposit practices on an interim basis; and

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A).  The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

[2]  All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

29864734.8

(v) administrative expense status for postpetition Intercompany Claims, and; (vi) certain related relief; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and this Court having found that venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon consideration of the First Day Declaration; and upon the record in the Chapter 11 Cases and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      A final hearing on the relief sought in the Motion shall be conducted on _____, 2022 at _____ (ET) (the "<u>Final Hearing</u>").  Any party-in-interest objecting to the relief sought at the Final Hearing or the Final Order shall file and serve a written objection, which objection shall be served upon (i) proposed counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Matthew B. Lunn, Esq. (mlunn@ycst.com) and Allison S. Mielke, Esq. (amielke@ycst.com); (ii) the U.S. Trustee,

844 King Street, Room 2207, Wilmington, DE 19801, Attn: Jane Leamy, Esq. (jane.m.leamy@usdoj.gov); (iii) counsel to the DIP Lender, Cooley LLP, 110 N. Wacker Drive, Suite 4200, Chicago, IL 60606, Attn: Eric E. Walker (ewalker@cooley.com) and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Derek Abbott, Esq. (dabbott@morrisnichols.com) and Curtis Miller, Esq. (cmiller@morrisnichols.com); and (iv) counsel to any statutory committee appointed in the Chapter 11 Cases, in each case so as to be received no later than _____, 2022 at 4:00 p.m. (ET). If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

3.      The Debtors are authorized to maintain and use the Cash Management System as described in the Motion.

4.      The Debtors are authorized to (i) continue to use, with the same account numbers, the Bank Accounts in existence on the Petition Date, including, without limitation, those accounts identified on Exhibit C to the Motion; (ii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (iii) use, in their present form, all Business Forms, without reference to their status as debtors in possession, except as otherwise provided in this Interim Order; and (iv) pay the Prepetition Bank Fees, up to a cap of $2,500 on an interim basis.

5.      The Debtors are authorized to continue to use the Corporate Credit Cards on a postpetition basis, and all postpetition extensions of credit under the Corporate Credit Cards shall be entitled to administrative expense status under sections 364(a) and 503(b) of the Bankruptcy Code. The Debtors are authorized to pay the Outstanding Credit Card Obligations in an amount not to exceed $800,000.

6.      The Banks are hereby authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course, and to receive, process, honor, and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided, however*, that any check drawn or issued by the Debtors before the Petition Date may be honored by a Bank if specifically authorized by order of this Court.

7.      Notwithstanding any other provision of this Interim Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (i) at the direction of the Debtors; (ii) in good faith belief that this Court has authorized such prepetition check or item to be honored; or (iii) as the result of an innocent mistake made despite implementation of reasonable item-handling procedures, shall be deemed to be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

8.      Each of the Banks is authorized to debit the Debtors' accounts in the ordinary course of business without need for further order of this Court for: (i) all checks and other payment orders drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of the Chapter 11 Cases; and (ii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtors' accounts with such Bank prior to filing of the Chapter 11 Cases which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of the Chapter 11 Cases.

9.      Each of the Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

10.      For Banks at which the Debtors hold accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this Interim Order, the Debtors shall (i) contact the Bank; (ii) provide the Bank with each of the Debtors' employer identification numbers and the case number of the Chapter 11 Cases; and (iii) identify for the Bank each of the Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

11.      The Debtors are authorized to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; *provided* that the Debtors give notice within fifteen (15) days thereafter to the U.S. Trustee, the Debtors' prepetition secured lender, and any statutory committees appointed in the Chapter 11 Cases; *provided, further*, that the Debtors shall only open any such new bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at banks that are willing to immediately execute such an agreement.

12.      The Banks are authorized to continue to charge, and the Debtors are authorized to pay, honor, or allow the deduction from the appropriate account, the Bank Fees in the ordinary course of business, whether such items are dated prior to, on, or subsequent to the Petition Date.

13.      The Debtors are authorized to use their existing Business Forms and checks; *provided,* that once the Debtors' existing checks have been used, the Debtors shall, when

reordering such checks, require the designation "Debtor in Possession" and the corresponding lead bankruptcy case number on the check; *provided, further,* that, with respect to checks that the Debtors or their agents print themselves, the Debtors shall use commercially reasonable efforts to begin printing the "Debtor in Possession" legend and the lead bankruptcy case number on such checks within ten (10) business days of the date of entry of this Interim Order.

14.    The Debtors are authorized to continue performing Intercompany Transactions in the ordinary course of business; *provided* that the Debtors shall not be authorized by this Interim Order to undertake any Intercompany Transactions that are not on terms materially consistent with the Debtors' operation of their business in the ordinary course during the prepetition period.

15.    All Intercompany Claims arising after the Petition Date as a result of Intercompany Transactions and transfers in the ordinary course of business shall be accorded administrative expense status in accordance with sections 503(b) and 507(b) of the Bankruptcy Code; *provided,* that, subject to entry of the Final Order, nothing herein shall limit or be construed to limit the Debtors' ability to reconcile amounts owed between and among any Debtors, including netting and setting off obligations arising from Intercompany Transactions, whether arising prepetition or postpetition, in the ordinary course of business, as determined by the applicable Debtor in its sole discretion.

16.    The Debtors shall maintain accurate and detailed records of all Intercompany Transactions in accordance with their prepetition practices so that all transactions may be ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

17.     Notwithstanding use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity makes those disbursements.

18.     Within two (2) business days from the entry of this Interim Order, the Debtors shall (i) serve a copy of this Interim Order on each Bank; and (ii) request that each Bank internally code each of the Bank Accounts as "debtor in possession" accounts.

19.     Nothing in this Interim Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors; (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

21.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

22.     The notice of the relief requested in the Motion satisfies Bankruptcy Rule 6004(a) and, pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Interim Order shall be immediately effective and enforceable upon its entry.

23.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

29864734.8

**<u>EXHIBIT B</u>**

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. ___ & ___** |

**FINAL ORDER (I) AUTHORIZING AND APPROVING
CONTINUED USE OF CASH MANAGEMENT SYSTEM, (II) AUTHORIZING
CONTINUED USE OF CORPORATE CREDIT CARDS AND GRANTING
ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION CREDIT CARD
OBLIGATIONS, (III) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS
AND BUSINESS FORMS, (IV) WAIVING THE REQUIREMENTS OF SECTION
345(b) ON AN INTERIM BASIS, (V) GRANTING ADMINISTRATIVE EXPENSE
STATUS TO POSTPETITION INTERCOMPANY CLAIMS, AND
(VI) GRANTING CERTAIN RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] filed by the above-captioned debtors

and debtors in possession (collectively, the "Debtors") seeking entry of an order authorizing

(i) continued use of the Cash Management System; (ii) continued use of Corporate Credit Cards

and granting administrative expense status to postpetition Credit Card Obligations; (iii) waiver of

certain bank account and related requirements of the U.S. Trustee to the extent that such

requirements are inconsistent with the Debtors' practices in connection with their existing Cash

Management System; (iv) waiver of the requirements of section 345(b) of the Bankruptcy Code

with respect to the Debtors' deposit practices on a final basis; and (v) administrative expense status

for postpetition Intercompany Claims, and; (vi) certain related relief; and this Court having found

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A). The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

[2] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and this Court having found that venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon consideration of the First Day Declaration; and upon the record in the Chapter 11 Cases and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on a final basis, as set forth herein.

2.      The Debtors are authorized to maintain and use the Cash Management System as described in the Motion.

3.      The Debtors are authorized to (i) continue to use, with the same account numbers, the Bank Accounts including, without limitation, those accounts identified on Exhibit C to the Motion; (ii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (iii) use, in their present form, all Business Forms, without reference to their status as debtors in possession, except as otherwise provided in this Final Order; and (iv) pay the Prepetition Bank Fees, up to a cap of $2,500 on a final basis.

29864734.8

4.      The Debtors are authorized to continue to use the Corporate Credit Cards on a postpetition basis, and all postpetition extensions of credit under the Corporate Credit Cards shall be entitled to administrative expense status under sections 364(a) and 503(b) of the Bankruptcy Code.  The Debtors are authorized to pay the Outstanding Credit Card Obligations in an amount not to exceed $800,000.

5.      The Banks are hereby authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course, and to receive, process, honor, and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided, however*, that any check drawn or issued by the Debtors before the Petition Date may be honored by a Bank if specifically authorized by order of this Court.

6.      Notwithstanding any other provision of this Final Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (i) at the direction of the Debtors; (ii) in good faith belief that this Court has authorized such prepetition check or item to be honored; or (iii) as the result of an innocent mistake made despite implementation of reasonable item-handling procedures, shall be deemed to be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

7.      Each of the Banks is authorized to debit the Debtors' accounts in the ordinary course of business without need for further order of this Court for: (i) all checks and other payment orders drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of the Chapter

11 Cases; and (ii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtors' accounts with such Bank prior to filing of the Chapter 11 Cases which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of the Chapter 11 Cases.

8.      Each of the Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

9.      The Debtors are authorized to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; *provided* that the Debtors give notice within fifteen (15) days thereafter to the U.S. Trustee, the Debtors' prepetition secured lender, and any statutory committee appointed in the Chapter 11 Cases; *provided, further*, that the Debtors shall only open any such new bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at banks that are willing to immediately execute such an agreement.

10.     The Banks are authorized to continue to charge, and the Debtors are authorized to pay, honor, or allow the deduction from the appropriate account, the Bank Fees in the ordinary course of business, whether such items are dated prior to, on, or subsequent to the Petition Date.

11.     The Debtors are authorized to use their existing Business Forms and checks; *provided,* that once the Debtors' existing checks have been used, the Debtors shall, when reordering such checks, require the designation "Debtor in Possession" and the corresponding lead

29864734.8

bankruptcy case number on the check; *provided, further,* that, with respect to checks that the Debtors or their agents print themselves, the Debtors shall use commercially reasonable efforts to begin printing the "Debtor in Possession" legend and the lead bankruptcy case number on such checks within ten (10) business days of the date of entry of the Interim Order.

12.     The Debtors are authorized to continue performing Intercompany Transactions in the ordinary course of business; *provided* that the Debtors shall not be authorized by this Final Order to undertake any Intercompany Transactions that are not on terms materially consistent with the Debtors' operation of their business in the ordinary course during the prepetition period.

13.     All Intercompany Claims arising after the Petition Date as a result of Intercompany Transactions and transfers in the ordinary course of business shall be accorded administrative expense status in accordance with sections 503(b) and 507(b) of the Bankruptcy Code; *provided,* that nothing herein shall limit or be construed to limit the Debtors' ability to reconcile amounts owed between and among any Debtors, including netting and setting off obligations arising from Intercompany Transactions, whether arising prepetition or postpetition, in the ordinary course of business, as determined by the applicable Debtor in its sole discretion.

14.     The Debtors shall maintain accurate and detailed records of all Intercompany Transactions in accordance with their prepetition practices so that all transactions may be ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

15.     Notwithstanding use of a consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity makes those disbursements.

16.     Within two (2) business days from the entry of this Final Order, the Debtors shall serve a copy of this Final Order on each Bank.

17.     Nothing in this Final Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors; (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Final Order in accordance with the Motion.

19.     The notice of the relief requested in the Motion satisfies Bankruptcy Rule 6004(a) and, pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Interim Order shall be immediately effective and enforceable upon its entry.

20.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

29864734.8

# **EXHIBIT C**

## **Flow of Funds**



**EXHIBIT D**

**Bank Accounts**

| Account Description | Bank | Last Four Digits of Account Number |
|---|---|---|
| BWCS Account | Banc of California 3 MacArthur Place, Santa Ana, CA  92707 | 7708 |
| Winc Account | Banc of California 3 MacArthur Place, Santa Ana, CA  92707 | 0698 |