**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS,
(I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION
CLAIMS OF (A) CRITICAL VENDORS AND SERVICE PROVIDERS, (B) CERTAIN
VENDORS WITH CLAIMS ENTITLED TO ADMINISTRATIVE EXPENSE STATUS
UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE, (C) FOREIGN
VENDORS; AND (D) SHIPPERS, WAREHOUSEMAN, AND OTHER LIENHOLDERS;
(II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND
ELECTRONIC TRANSFER REQUESTS RELATED THERETO;
AND (III) GRANTING CERTAIN RELATED RELIEF**

The above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for the entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order," and together with the Interim Order, the "Proposed Orders"), respectively, pursuant to sections 105(a), 363(b), 503(b), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), (i) authorizing, but not directing, the Debtors, in their sole discretion, to pay, in the ordinary course of business: (a) prepetition claims of certain critical vendors and service providers (collectively, the "Critical Vendors," whose claims shall be identified herein as the "Critical Vendor Claims"); (b) prepetition claims of certain vendors, including certain Critical Vendors and Lienholders (as defined below), who may be entitled to administrative expense status under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A). The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

Vendors" whose claims shall be collectively identified herein as the "503(b)(9) Claims"); (c) foreign vendors (the "Foreign Vendors") whose claims shall be the "Foreign Vendor Claims"), subject to the conditions described herein; and (d) certain prepetition claims of shippers, warehousemen, and other lien claimants (whose claims shall collectively be identified herein collectively as the "Lien Claims"); and (ii) authorizing banks and other financial institutions (collectively, the "Banks") to honor and process check and electronic transfer requests related to the foregoing.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Carol Brault in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 503(b), 1107(a), and 1108 of the Bankruptcy Code, and Local Rule 9013-1(m).

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## BACKGROUND

### A.    General Background

3.    On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in the Chapter 11 Cases and no request has been made for the appointment of a trustee or an examiner.

4.    Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

### B.    Critical Vendor Claims

5.    In the ordinary course of business, the Debtors engage the Critical Vendors to provide various goods and services essential to the production, storage, labeling and distribution of their products and the administration of their business operations.  The Critical Vendors include companies that are key contributors to the storage, production, and distribution of the Debtors' products.  Other Critical Vendors include providers of marketing, administrative, and technology support services that are essential to the Debtors' operations.  The loss of one or more of the vendors or a delay or inability to secure an alternative source of the Critical Vendors' goods and services could have a material negative impact on the Debtors' revenue, business operations, and financial condition.  To preserve the value of their business for the benefit of all stakeholders, the Debtors need to be able to assure their customers, vendors, services providers, and employees that, notwithstanding the filing of the Chapter 11 Cases, they will continue to operate in the ordinary course of business while administering the Chapter 11 Cases.

6.      To identify the Critical Vendors, the Debtors have reviewed their accounts payable and prepetition vendor lists to identify those creditors most essential to the Debtors' operations pursuant to the following criteria:  (i) whether there is an alternative source for the goods or services that can be acquired within a reasonable amount of time; (ii) whether there is a unique process or special knowledge of the Debtors that the vendor has possessed over time that no one else has; (iii) whether the vendor's products have been pre-approved for use in the Debtors' end product by the Debtors' customers; and (iv) whether a vendor meeting any of the foregoing criteria is able or likely to refuse to provide goods or services to the Debtors postpetition if its prepetition balances are not paid.

7.      In many instances, the Critical Vendors provide unique services or goods that could not be easily or quickly obtained from another vendor or are sole-source providers.  For example, the Debtors source wine from various growers around the world, and such product would be difficult, and in some cases, impossible, to obtain from a substitute source.  In addition, although the Debtors could obtain certain services or goods provided by the Critical Vendors from alternative sources, the Debtors do not believe reasonable and sufficient time remains available to engage alternate providers.  The occurrence of any issues with the Debtors' vendors and servicers could result in delayed production or delivery of adequate supplies or components necessary to bring the Debtors' products to market.  Accordingly, it is vital that the Debtors be situated to maintain their business relationships with, and satisfy outstanding debts to, the Critical Vendors. To ensure that the commencement of the Chapter 11 Cases do not cause unanticipated or inopportune disruption to their business operations, the Debtors are seeking to pay the Critical Vendor Claims to guarantee receipt of goods and services and favorable credit terms from the Critical Vendors.

8.      As of the Petition Date, the Debtors estimated that the Critical Vendor Claims totaled approximately $760,000.

**D.      503(b)(9) Vendors**

9.      The Debtors have identified certain claims related to undisputed obligations for goods received by the Debtors in the ordinary course of business in the twenty (20) days prior to the Petition Date.  Such claims are entitled to priority status under section 503(b)(9) of the Bankruptcy Code.  The Debtors seek, in their discretion, to pay certain 503(b)(9) Claims as they come due in the ordinary course of business, instead of satisfying the 503(b)(9) Claims upon confirmation of a chapter 11 plan.  By expediting the payment that certain 503(b)(9) Vendors are entitled to receive as a matter of statute, such payment may motivate the individual 503(b)(9) Vendors to extend more favorable trade terms and to continue their business relationship with the Debtors.

10.      The Debtors estimate that, as of the Petition Date, the 503(b)(9) Claims total approximately $160,000.

**D.      Foreign Vendors**

11.      Certain of the Debtors' vendors lack minimum contacts with the United States and, therefore, may be outside of the Court's jurisdiction.  Many of these Foreign Vendors have strong business relationships with the Debtors and provide goods that cannot be obtained from other sources without significant delay and cost.  The substantial experience of the Debtors' management personnel and their knowledge of the Foreign Vendors advises that there is a significant risk that the Foreign Vendors may, with an understanding that they are beyond the jurisdiction of the Court, disregard the automatic stay and engage in conduct disruptive to the Debtors' operations.  Indeed, among other things, the Foreign Vendors may exercise self-help,

which could include reclaiming essential goods already in the Debtors' possession and shutting down the Debtors' access to goods critical to the Debtors' business.

12.     The Debtors estimate that, as of the Petition Date, the Foreign Vendor Claims total approximately $990,000.

**E.     Lien Claims**

13.     <u>The Shippers and Warehousemen</u>.  To optimize their supply chain and distribution network and ensure the flow of products between and among their facilities and customers, the Debtors necessarily depend upon an extensive shipping, warehousing and distribution network (the "<u>Shippers</u>").  The Debtors network also includes certain third-party warehousemen, distributors and logistics providers who support the Debtors' distribution capabilities by storing goods in transit on behalf of the Debtors (the "<u>Warehousemen</u>").  Among other things, the Shippers and Warehousemen manage the Debtors' distribution network and provide various customer service, warehousing, and distribution services related to the Debtors' products.  Consequently, the Shippers and Warehousemen regularly possess certain of the Debtors' products in the ordinary course of business.

14.     If the Debtors fail to pay the Shippers or Warehousemen for charges incurred in connection with the transportation and storage of the Debtors' property, various statutes, tariffs, and agreements may permit the Shippers or Warehousemen to assert possessory liens against or otherwise exercise control over the Debtors' property in their possession.  In addition, the Debtors' products may be held in transit or not released if the Debtors or their customs agents do not pay customs duties when due in the ordinary course.  The successful operation of the Debtors' business, and thus their ability to maximize the value of their assets, depends on their ability to process such goods.

29864732.9

15.     <u>Other Potential Lienholders</u>.    In addition to the Lien Claims of Shippers and Warehousemen, the Debtors regularly engage several third parties (collectively, the "<u>Other Lien Claimants</u>," and together with the Shippers and Warehousemen, the "<u>Lienholders</u>") who, under applicable non-bankruptcy law, may also have the ability to assert liens against the Debtors and their property if the Debtors fail to pay for goods or services rendered prior to the Petition Date.

16.     As of the Petition Date, certain Other Lien Claimants may not have been paid in full for certain prepetition goods, equipment, and/or services, which may result in such Other Lien Claimants asserting, and perfecting, statutory liens against the Debtors' facilities or the Debtors' goods or equipment, notwithstanding the automatic stay under section 362 of the Bankruptcy Code.    Indeed, section 362(b)(3) of the Bankruptcy Code expressly excludes the act of perfecting such statutory liens, to the extent consistent with section 546(b) of the Bankruptcy Code, from the automatic stay.    *See* 11 U.S.C. § 362(b)(3).    Pursuant to section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection."    11 U.S.C. § 546(b)(1)(A).[3]    Furthermore, certain Other Lien Claimants may refuse to perform ongoing services to the Debtors, including manufacturing, installation, repair, and servicing obligations, unless their claims are paid in full.

17.     If the Debtors are unable to pay the Lien Claims, they risk losing access to critical estate property, which could immediately and irreparably harm the Debtors chapter 11 efforts, to the detriment of all stakeholders.    Accordingly, the Debtors seek authority to, in their discretion and on a case-by-case basis, pay and discharge the Lien Claims, where the Debtors determine in

---

[3]  The Debtors do not concede that any liens (contractual, common law, statutory or otherwise) described in this Motion are valid, and the Debtors expressly reserve the right to contest the extent, validity, and perfection of all such liens, and/or to seek avoidance thereof.

their reasonable business judgment that such payment is in the best interests of the Debtors' estates, that the Debtors believe have given or will give rise to a lien against the Debtors' property, regardless of whether the related Lienholders have already perfected their interests.

18.     The Debtors estimate that, as of the Petition Date, the Lien Claims total approximately $1.82 million.

## **RELIEF REQUESTED**

19.     By this Motion, the Debtors request that the Court enter the Proposed Orders, (i) authorizing, but not directing, the Debtors, in their discretion, to pay Critical Vendor Claims, 503(b)(9) Claims, Foreign Claims, and Lien Claims (each, a "Vendor Claim," and collectively, the "Vendor Claims") held by the holders of such claims, (each a "Vendor" and collectively, the "Vendors") subject to the caps provided for in the Interim Order and the Final Order, as summarized immediately below; and (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto.

20.     The Debtors further request that they be authorized, but not required, in their discretion, to condition the payment of a Vendor Claim on the agreement of the Vendor to continue supplying goods and services to the Debtors on terms that are as or more favorable to the Debtors as the most favorable trade terms, practices, and programs in effect between the Vendor and the Debtors in the six (6) months prior to the Petition Date (collectively, the "Customary Trade Terms"), or such other trade terms as are agreed to by the Debtors and the Vendor.

21.     To the extent that the Debtors determine, in their business judgment, to condition the payment of a Vendor Claim on the agreement of the Vendor to continue supplying goods and services to the Debtors on the Customary Trade Terms, the Debtors propose that a letter (a "Vendor

Letter") be sent to the Vendor, along with a copy of any order granting this Motion (the "Vendor

Order"), including, without limitation, the following terms:

a.  The amount of the Vendor's estimated prepetition claim, after accounting for any setoffs, other credits, and discounts thereto, shall be as mutually determined in good faith by the Vendor and the Debtors (but such amount shall be used only for purposes of the Vendor Order and shall not be deemed a claim allowed by the Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of the Court);

b.  The amount and timing of any payment agreed to be paid in satisfaction of such estimated prepetition claim by the Debtors, subject to the terms and conditions set forth in the Vendor Order;

c.  The Vendor's agreement to provide goods and services to the Debtors based upon the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability, and other applicable terms and programs), or such other trade terms as are agreed to by the Debtors and the Vendor, and the Debtors' agreement to pay the Vendor in accordance with such terms;

d.  The Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates or any of their respective assets or property (real or personal) any lien (a "Lien") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Vendor by the Debtors arising from goods and services provided to the Debtors prior to the Petition Date, and that, to the extent that the Vendor has previously obtained such a Lien, the Vendor shall immediately take all necessary actions to release such Lien;

e.  The Vendor's acknowledgment that it has reviewed the terms and provisions of the Vendor Order and consents to be bound thereby;

f.  The Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

g.  If a Vendor that has received payment of a prepetition claim subsequently refuses to provide goods and services to the Debtors on Customary Trade Terms or such other trade terms as are agreed to by the Debtors and the Vendor, then, without the need for any further order of the Court, any payments received by the Vendor on account of such prepetition claim shall be deemed to have been in payment of any then outstanding postpetition obligations owed to such Vendor. The Debtors shall have the authority to file a motion to compel such Vendor to immediately repay to the Debtors any payments received on account of its prepetition claim to the extent that the aggregate amount of such payments exceed the postpetition obligations

then outstanding to such Vendor, without the right of setoff, recoupment or reclamation.  If the Court orders such Vendor to repay any such prepetition amounts, the Vendor's claim shall be reinstated as a prepetition claim in the Chapter 11 Cases and subject to the terms of any bar date order entered in the Chapter 11 Cases.

22.     Any such Vendor Letter, once agreed to by the Debtors and a Vendor, shall be the agreement between the parties that governs their postpetition trade relationship (the "Trade Agreement").  The Debtors request that they be authorized, but not required, in their discretion, to enter into Trade Agreements with the Vendors.

**BASIS FOR RELIEF**

**A.     The Court Should Authorize, but not Direct, the Debtors, in Their Discretion, to Pay Vendor Claims.**

**i.     The Vendors Are Essential to Avoiding Any Unexpected or Inopportune Interruption to the Debtors' Business Operations.**

23.     The Debtors believe that the goods and services provided by the Vendors are necessary to ensure that there are not any unanticipated or inopportune disruptions to the Debtors' operations.  Notably, the Vendors are among the most cost-efficient sources and, in many cases, the only source from which the Debtors can procure critical goods and services within a timeframe that would permit the Debtors to avoid unanticipated interruptions, delays or shutdowns in their operations.  Any failure to pay the Vendor Claims would, in the Debtors' business judgment, result in the Vendors refusing to provide necessary goods and services to the Debtors.  Any unanticipated or inopportune disruption, delay, or shutdown in the Debtors' operations resulting from a Vendor's refusal to do business with the Debtors on a postpetition basis would have devastating effects on the Debtors' business and undermine the Debtors' efforts to preserve and maximize the value of their estates.

24.     As noted above, the Lienholders may assert and perfect possessory, construction, materialman's, mechanic's or other similar statutory liens on the Debtors' assets, thereby endangering the Debtors' ability to timely and efficiently administer the Chapter 11 Cases.

25.     With respect to the Critical Vendor Claims, the Debtors have reviewed their accounts payable and undertaken a process to identify those vendors that are essential to avoid any unanticipated or inopportune disruption to their operations.  Further, the Debtors have developed certain procedures that, if and when implemented, in their discretion and business judgment, will ensure that the Critical Vendors receiving payment of their Vendor Claims will continue to provide goods and services to the Debtors based upon the Customary Trade Terms, or upon such other trade terms that the Debtors and Vendors have agreed.

26.     The authority to pay Vendor Claims is crucial for the Debtors to preserve and maximize the value of their estates.  If the Proposed Orders are not entered, some of the Vendors may have to cease their own operations, and other Vendors will terminate their business relationship with the Debtors.  Such a result would be detrimental to the Debtors' estates and creditors, as the Debtors will be unable to successfully manage their business or administer the Chapter 11 Cases.  Moreover, the continued availability of trade credit in amounts and on terms consistent with the Debtors' prepetition trade terms is critical to the assumptions used to build the Debtors' debtor-in-possession financing budget.  The retention or reinstatement of the Customary Trade Terms will enable the Debtors to maximize the value of their business.  Conversely, a deterioration in the postpetition trade credit available to the Debtors, together with a disruption in the Debtors' receipt of necessary goods and services would, among other things, increase the amount of liquidity needed by the Debtors postpetition, and impede the Debtors' chapter 11 efforts.

29864732.9

27.    For the foregoing reasons, the Debtors respectfully submit that entry of the Proposed Orders is in the best interests of the Debtors, their estates, and creditors.

**ii.        The Relief Requested Herein Is Supported by the "Doctrine of Necessity."**

28.    Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1).

29.    Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Bankruptcy courts have invoked the equitable power of section 105 of the Bankruptcy Code to authorize the postpetition payment of prepetition claims where such payment is necessary to preserve the value of a debtor's estate.  *See, e.g.*, *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").  Courts have likewise acknowledged that "[u]nder [section] 105, the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)); *see In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) (citing *In re Penn Central Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972)) (holding that the court is authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of prepetition claims of vendors found to be critical to the debtor's continued operation).

30.    In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value

of a debtor's estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C. & S. W. Ry. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim permitted to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to [the commencement of the bankruptcy case] is essential to the continued operation of the . . . [business] during [the bankruptcy case], payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases).

31.    This legal principle—known as the "doctrine of necessity"—functions in chapter 11 cases as a mechanism by which a bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See Just for Feet*, 242 B.R. at 826 (finding that "to invoke the necessity of payment doctrine, a debtor must show that payment of the prepetition claims is critical to the debtor's [continued operation].");  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a prepetition claim is essential to the continued operation of [the debtor], payment may be authorized"); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).  The doctrine is frequently invoked early in a bankruptcy case, particularly in connection with those Bankruptcy Code sections that relate to payment of prepetition claims.  In one case, the court indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood

of . . . payment of creditors in full or at least proportionately.'" *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S. D. Ohio 1988).

32.     As explained above, the Debtors will avoid unanticipated and inopportune disruption to their business operations by continuing to receive the essential goods and services provided by the Vendors.  The relief requested by this Motion is paramount to the Debtors' business operations, as the Debtors cannot operate without the continued supply of goods and services, and cooperation provided by the Vendors.  Simply put, the Debtors do not believe that there are cost-effective or readily accessible alternatives to the Vendors.

33.     Accordingly, the Debtors submit that the Court should exercise its equitable power to grant the relief requested herein.

**iii.     The Court Should Authorize Payment of Vendor Claims as a Valid Exercise of the Debtors' Fiduciary Duties.**

34.     Sections 1107(a) and 1108 of the Bankruptcy Code provide authority to satisfy the Vendor Claims pursuant to the Proposed Orders.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors operate their business as fiduciaries, "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

35.     Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*  The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," *id.*, and also when the payment was to "sole suppliers of a given product." *Id.* at

498.    The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

36.    Payment of Vendor Claims meets each element of the *CoServ* court's standard.  As described above, the Debtors believe that the Vendor Claims belong to vendors that are able to assert and perfect liens against the Debtors' property, are entitled to administrative priority claims that must be satisfied in full prior to any payments to prepetition unsecured creditors (priority or general unsecured), or would otherwise refuse or be unwilling to provide goods and services to the Debtors on a postpetition basis if their prepetition balances are not paid.  Nonpayment of the Vendor Claims thereby threatens the Debtors with unanticipated or inopportune disruption to their operations.  Any such interruption would diminish estate value and frustrate the Debtors' chapter 11 efforts.  The harm and economic disadvantage that would stem from the failure of any of the Vendors to perform is disproportionate to the amount of the Vendor Claims.

37.    Finally, the Debtors have considered alternatives to paying the Vendor Claims and have determined that, to avoid an unanticipated or inopportune disruption to their business operations, no practical alternative exists.  Therefore, the Debtors can satisfy their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of the Vendor Claims.

iv.     **Payment of Certain Vendor Claims Now Will Not Adversely Affect Creditor Recoveries in the Chapter 11 Cases.**

38.     Lienholders owed amounts less than the value of the goods that could be held to secure the related Lien Claims are arguably fully-secured creditors of the Debtors' estates.  Also, the Debtors believe that section 503(b)(9) of the Bankruptcy Code confers administrative expense priority upon a substantial portion of the Critical Vendor Claims given that the Debtors received much of the goods from the Critical Vendors in the ordinary course of business and within the twenty-day period immediately preceding the Petition Date.  Because such claims are entitled to priority status under section 503(b)(9) of the Bankruptcy Code, they must be paid in full before payment to any other unsecured prepetition (priority or general unsecured) creditor may be made. Although section 503(b)(9) of the Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have the discretion to permit distributions to administrative claimants outside of a chapter 11 plan if the debtor has the ability and there is a need to pay.  Indeed, nothing in the Bankruptcy Code prohibits the Debtors from paying such claims if they choose to do so, or prohibits the Court from exercising its discretion to authorize the immediate postpetition payment of such obligations.

39.     As explained above, maintaining the uninterrupted provision of goods and services provided by the Vendors is critical to the success of the Chapter 11 Cases.  Absent the relief requested herein, the Debtors believe that many of the Vendors may cease delivering goods and providing services to the Debtors, which could have devastating consequences for the Debtors and their estates.

40.     As a result, the Debtors respectfully request authority (but not the direction) to pay such claims, to the extent necessary to preserve and maximize the value of their estates, in the ordinary course of business during the pendency of the Chapter 11 Cases.

**B.      The Court Should Authorize the Banks to Honor and Process the Debtors'
        Payments on Account of Vendor Claims.**

41.     The Debtors also request that the Court authorize the Banks, when requested by the

Debtors, in their discretion, to honor and process checks or electronic fund transfers drawn on the

Debtors' bank accounts to pay prepetition obligations described herein, irrespective of when such

checks or requests were submitted, provided that sufficient funds are available in the applicable

bank accounts to make such payments.  The Debtors further request that all of the Banks be

authorized to rely on the Debtors' designation of any particular check or electronic payment

request as approved pursuant to this Motion.

**SATISFACTION OF BANKRUPTCY RULE 6003(b)**

42.     Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), any motion of the Debtors seeking to use property of the estate pursuant to

section 363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the

Petition Date must demonstrate that such relief "is necessary to avoid immediate and irreparable

harm."  Any Vendor's failure to deliver necessary goods and services to the Debtors would cause

immediate and detrimental consequences to the Debtors' business and would jeopardize the

Debtors' efforts to preserve and maximize the value of their estates, to the detriment of all of the

Debtors' stakeholders.  Moreover, it is the Debtors' business judgment that the avoidance of

unanticipated and inopportune disruption to their business operation is vital to the success of the

Chapter 11 Cases.  Therefore, if the relief requested herein is denied, the Debtors' failure to satisfy

the Vendor Claims would cause immediate and irreparable harm to the Debtors' estates and

preempt the Debtors' efforts to maximize value for the benefit of their stakeholders.

43.     Accordingly, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

### REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

44.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth throughout this Motion, any delay in paying Vendor Claims would be detrimental to the Debtors, their creditors, and estates, as the Debtors' ability to manage and run their business operations without any unanticipated or inopportune disruption requires, in part, that they continue to receive the goods and services provided by the Vendors.  For the reasons discussed herein, ample cause exists to waive the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

45.     To implement the foregoing immediately, the Debtors also respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a), to the extent they are applicable to the Proposed Orders.

### RESERVATION OF RIGHTS

46.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors; (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or

amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

### **NOTICE**

47.    Notice of this Motion has been or will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel to the Debtors' prepetition secured lender; (iv) counsel to the DIP Lender; (v) the Internal Revenue Service; (vi) the U.S. Securities and Exchange Commission; and (vii) the Banks.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank.]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully entry of the Proposed Orders, granting the relief

requested herein and such other and further relief as is just and proper.

Dated:   December 2, 2022                    YOUNG CONAWAY STARGATT & TAYLOR, LLP
         Wilmington, Delaware

                                            */s/ Joshua B. Brooks*
                                            Michael R. Nestor (No. 3526)
                                            Matthew B. Lunn (No. 4119)
                                            Allison S. Mielke (No. 5934)
                                            Joshua B. Brooks (No. 6765)
                                            Shella Borovinskaya (No. 6758)
                                            Rodney Square
                                            1000 North King Street
                                            Wilmington, Delaware 19801
                                            Telephone:  (302) 571-6600
                                            Facsimile:  (302) 571-1253
                                            Email:  mnestor@ycst.com
                                                    mlunn@ycst.com
                                                    amielke@ycst.com
                                                    jbrooks@ycst.com
                                                    sborovinskaya@ycst.com

                                            *Proposed Counsel to the Debtors and*
                                            *Debtors in Possession*

# **EXHIBIT A**

**Interim Order**

29864732.9

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN
PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND SERVICE PROVIDERS,
(B) CERTAIN VENDORS WITH CLAIMS ENTITLED TO ADMINISTRATIVE
EXPENSE STATUS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE,
(C) FOREIGN VENDORS; AND (D) SHIPPERS, WAREHOUSEMAN, AND OTHER
LIENHOLDERS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK
AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO;
AND (III) GRANTING CERTAIN RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession (collectively, the "Debtors") for the entry of interim and final orders,

pursuant to sections 105(a), 363(b), 503(b), 1107(a), and 1108 of title 11 of the Bankruptcy Code,

(i) authorizing, but not directing, the Debtors, in their sole discretion, to pay the Vendor Claims,

in the ordinary course of business; and (ii) authorizing Banks to honor and process check and

electronic transfer requests related to the foregoing; and this Court having found that it has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing

Order of Reference* from the United States District Court for the District of Delaware dated as of

February 29, 2012; and this Court having found that venue of the Chapter 11 Cases and the Motion

in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A).  The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that

notice of the Motion has been given as set forth in the Motion and that such notice is adequate and

no other or further notice need be given; and this Court having determined that it may enter a final

order consistent with Article III of the United States Constitution; and upon consideration of the

First Day Declaration; and upon the record in the Chapter 11 Cases and all of the proceedings had

before this Court; and this Court having found and determined that the relief sought in the Motion

is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest;

and that the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, in their discretion, to pay, honor or

otherwise satisfy prepetition Vendor Claims in the ordinary course of their business up to an

aggregate amount of $2,950,000 on an interim basis, subject to the terms and conditions set forth

in this Interim Order.

3.      Nothing in this Interim Order shall prejudice the Debtors' right to request authority

to pay additional amounts on account of the Vendor Claims and the Debtors' right to seek such

relief is expressly reserved.

4.      The Debtors are authorized, but not directed, in their discretion, to condition the

payment of a Vendor Claim on the agreement of the Vendor to continue supplying goods and

services to the Debtors on the Customary Trade Terms, or such other trade terms as are agreed to

by the Debtors and the Vendor.

29864732.9

5.     The Debtors are authorized, but not directed, to enter into Trade Agreements with the Vendors, including, without limitation, on the following terms:

a.     The amount of the Vendor's estimated prepetition claim, after accounting for any setoffs, other credits, and discounts thereto, shall be as mutually determined in good faith by the Vendor and the Debtors (but such amount shall be used only for purposes of this Interim Order and shall not be deemed a claim allowed by this Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of this Court);

b.     The amount and timing of any payment agreed to be paid in satisfaction of such estimated prepetition claim by the Debtors, subject to the terms and conditions set forth in this Interim Order;

c.     The Vendor's agreement to provide goods and services to the Debtors based upon the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability, and other applicable terms and programs), or such other trade terms as are agreed to by the Debtors and the Vendor, and the Debtors' agreement to pay the Vendor in accordance with such terms;

d.     The Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates or any of their respective assets or property (real or personal) any lien (a "Lien") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Vendor by the Debtors arising from goods and services provided to the Debtors prior to the Petition Date, and that, to the extent that the Vendor has previously obtained such a Lien, the Vendor shall immediately take all necessary actions to release such Lien;

e.     The Vendor's acknowledgment that it has reviewed the terms and provisions of this Interim Order and consents to be bound thereby;

f.     The Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

g.     If a Vendor that has received payment of a prepetition claim subsequently refuses to provide goods and services to the Debtors on Customary Trade Terms or such other trade terms as are agreed to by the Debtors and the Vendor, then, without the need for any further order of the Court, any payments received by the Vendor on account of such prepetition claim shall be deemed to have been in payment of any then outstanding postpetition

obligations owed to such Vendor.  The Debtors shall have the authority to file a motion to compel such Vendor to immediately repay to the Debtors any payments received on account of its prepetition claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding to such Vendor, without the right of setoff, recoupment or reclamation.  If the Court orders such Vendor to repay any such prepetition amounts, the Vendor's claim shall be reinstated as a prepetition claim in the Chapter 11 Cases and subject to the terms of any bar date order entered in the Chapter 11 Cases.

6.     The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Interim Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Interim Order.

7.     A final hearing on the relief sought in the Motion shall be conducted on _____, 2022 at _____ (ET) (the "Final Hearing").  Any party-in-interest objecting to the relief sought at the Final Hearing or the Final Order shall file and serve a written objection, which objection shall be served upon (i) proposed counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, DE 19801, Attn: Matthew B. Lunn, Esq. (mlunn@ycst.com) and Allison S. Mielke, Esq. (amielke@ycst.com); (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Room 2207, Wilmington, DE 19801, Attn: Jane Leamy, Esq. (jane.m.leamy@usdoj.gov); (iii) counsel to the DIP Lender, Cooley LLP, 110 N. Wacker Drive, Suite 4200, Chicago, IL 60606, Attn:  Eric E. Walker, Esq. (ewalker@cooley.com) and Morris, Nichols, Arsht & Tunnell LLP, 2101 North Market Street,

16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn:    Derek Abbott, Esq. (dabbott@morrisnichols.com) and Curtis Miller, Esq. (cmiller@morrisnichols.com); (iv) counsel to any statutory committee appointed in the Chapter 11 Cases, in each case so as to be received no later than _____, 2022 at 4:00 p.m. (ET).  If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

8.    Nothing in this Interim Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors; (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

9.    Payments made to pursuant to this Interim Order shall be applied, in the first instance, against claims which arise under section 503(b)(9) of the Bankruptcy Code, in whole or in part as applicable.

10.    The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

11.    The requirements of Bankruptcy Rule 6003(b) are satisfied.

12.    Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

13.    Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

## EXHIBIT B

**Final Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. ___ & ___** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND SERVICE PROVIDERS, (B) CERTAIN VENDORS WITH CLAIMS ENTITLED TO ADMINISTRATIVE EXPENSE STATUS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE, (C) FOREIGN VENDORS; AND (D) SHIPPERS, WAREHOUSEMAN, AND OTHER LIENHOLDERS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (III) GRANTING CERTAIN RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of interim and final orders, pursuant to sections 105(a), 363(b), 503(b), 1107(a), and 1108 of title 11 of the Bankruptcy Code, (i) authorizing, but not directing, the Debtors, in their sole discretion, to pay the Vendor Claims, in the ordinary course of business; and (ii) authorizing Banks to honor and process check and electronic transfer requests related to the foregoing; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and this Court having found that venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A).  The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that

notice of the Motion has been given as set forth in the Motion and that such notice is adequate and

no other or further notice need be given; and this Court having determined that it may enter a final

order consistent with Article III of the United States Constitution; and upon consideration of the

First Day Declaration; and upon the record in the Chapter 11 Cases and all of the proceedings had

before this Court; and this Court having found and determined that the relief sought in the Motion

is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest;

and that the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor,

      **IT IS HEREBY ORDERED THAT**:

1.       The Motion is GRANTED on a final basis as set forth herein.

2.       The Debtors are authorized, but not directed, in their discretion, to pay, honor or

otherwise satisfy prepetition Vendor Claims in the ordinary course of their business up to an

aggregate amount of $3,730,000.

3.       Nothing in this Final Order shall prejudice the Debtors' right to request authority

to pay additional amounts on account of Vendor Claims and the Debtors' right to seek such relief

is expressly reserved.

4.       The Debtors are authorized, but not directed, to condition the payment of a Vendor

Claim on the agreement of the Vendor to continue supplying goods and services to the Debtors on

the Customary Trade Terms, or such other trade terms as are agreed to by the Debtors and the

Vendor.

5.       The Debtors are authorized, but not directed, in their discretion, to enter into Trade

Agreements with the Vendors, including, without limitation, on the following terms:

29864732.9

a.    The amount of the Vendor's estimated prepetition claim, after accounting for any setoffs, other credits, and discounts thereto, shall be as mutually determined in good faith by the Vendor and the Debtors (but such amount shall be used only for purposes of this Final Order and shall not be deemed a claim allowed by this Court, and the rights of all parties in interest to object to such claim shall be fully preserved until further order of this Court);

b.    The amount and timing of any payment agreed to be paid in satisfaction of such estimated prepetition claim by the Debtors, subject to the terms and conditions set forth in this Final Order;

c.    The Vendor's agreement to provide goods and services to the Debtors based upon the Customary Trade Terms (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability, and other applicable terms and programs), or such other trade terms as are agreed to by the Debtors and the Vendor, and the Debtors' agreement to pay the Vendor in accordance with such terms;

d.    The Vendor's agreement not to file or otherwise assert against any of the Debtors, their estates or any of their respective assets or property (real or personal) any lien (a "Lien") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to the Vendor by the Debtors arising from goods and services provided to the Debtors prior to the Petition Date, and that, to the extent that the Vendor has previously obtained such a Lien, the Vendor shall immediately take all necessary actions to release such Lien;

e.    The Vendor's acknowledgment that it has reviewed the terms and provisions of this Final Order and consents to be bound thereby;

f.    The Vendor's agreement that it will not separately assert or otherwise seek payment of any reclamation claims; and

g.    If a Vendor that has received payment of a prepetition claim subsequently refuses to provide goods and services to the Debtors on Customary Trade Terms or such other trade terms as are agreed to by the Debtors and the Vendor, then, without the need for any further order of the Court, any payments received by the Vendor on account of such prepetition claim shall be deemed to have been in payment of any then outstanding postpetition obligations owed to such Vendor.  The Debtors shall have the authority to file a motion to compel such Vendor to immediately repay to the Debtors any payments received on account of its prepetition claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding to such Vendor, without the right of setoff, recoupment or

29864732.9

reclamation. If the Court orders such Vendor to repay any such prepetition amounts, the Vendor's claim shall be reinstated as a prepetition claim in the Chapter 11 Cases and subject to the terms of any bar date order entered in the Chapter 11 Cases.

6.      The Banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Final Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Final Order.

7.      Nothing in this Final Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors; (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

8.      Payments made to pursuant to this Final Order shall be applied, in the first instance, against claims which arise under section 503(b)(9) of the Bankruptcy Code, in whole or in part as applicable.

9.      The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

10.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

11.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.