**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO HONOR CUSTOMER OBLIGATIONS AND
CONTINUE CUSTOMER PROGRAMS IN THE ORDINARY COURSE OF BUSINESS;
AND (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND
ELECTRONIC TRANSFER REQUESTS RELATED THERETO**

The above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby file this motion (this "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order," and together with the Interim Order, the "Proposed Orders"), pursuant to sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing, but not directing, the Debtors, in their sole discretion, to honor certain prepetition Customer Obligations (defined below) and to otherwise continue, renew, replace, modify, or terminate any of the Customer Programs (defined below) in the ordinary course of business without the need for further court order; (ii) authorizing the Debtors to utilize electronic means of communication to provide notice to certain Customers; and (iii) authorizing the Debtors' banks and other financial institutions (the "Banks") to honor and process check and electronic transfer requests related to the foregoing.  In support of this Motion, the Debtors rely

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A).  The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

upon and incorporate by reference the *Declaration of Carol Brault in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1(m).

## GENERAL BACKGROUND

3.      On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

have been appointed in the Chapter 11 Cases and no request has been made for the appointment of a trustee or an examiner.

4.       Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

## THE DEBTORS' CUSTOMER PROGRAMS

5.       The Debtors develop and produce alcoholic beverages in conjunction with winemakers, growers, and manufacturers, both domestically and internationally, for resale to various customers, including merchants, distributors, restaurants, stores, and individuals (each, a "Customer" and collectively, the "Customers") utilizing their wholesale and direct to consumer ("DTC") business channels.  As described in detail below, the Debtors' DTC operations are built on a subscription model, pursuant to which the Debtors' DTC Customers pay a monthly subscription in exchange for credits to purchase the Debtors' products.  In the ordinary course of their business, the Debtors engage in a number of practices to develop, support, and sustain a positive reputation with their Customers and in the marketplace generally (collectively, the "Customer Programs").

6.       The Customer Programs are a critical component of the Debtors' business model, and have been implemented to respond to industry demands, ensure Customer satisfaction and loyalty, and generate goodwill for the Debtors' business.  This enables the Debtors to retain existing Customers, attract new ones, and ultimately, to enhance their revenue and profitability by capitalizing on the goodwill generated in the marketplace and with important industry participants. Moreover, most of the Customer Programs are customary in the consumer packaged goods industry.  If the Debtors were not authorized to continue the Customer Programs, they would suffer a serious competitive disadvantage relative to their industry peers.

29867908.12

7.     Because the Customer Programs are an essential component of the Debtors' Customer-retention strategy, continuing to honor the Customer Programs described below—including prepetition obligations arising thereunder—will maximize the value of the Debtors' estates and benefit all creditors and stakeholders in the Chapter 11 Cases.

## A.     Membership Programs

8.     As part of the Debtors' DTC subscription model, the Debtors offer their Customers participation in a membership rewards program (the "Insider Membership Program").  Customers who participate in the Membership Program are able to gain access to member-only pricing, communications, and special offers that are meant to maximize their experience.  Customers who subscribe to the Insider Membership Program are charged a monthly fee in exchange for credits in that same amount, which Customers may redeem for the Debtors' products at any time through the Debtors' e-commerce platform.  The Debtors also maintain a legacy membership program whereby certain Customers are shipped products on a monthly basis in exchange for a monthly fee (the "Legacy Membership Program" and, together with the Insider Membership Program, the "Membership Programs").  The Debtors generate approximately $2.4 million in cash on a monthly basis on account of the Membership Programs.  On average, the value of credits applied against purchases of the Debtors' products is approximately $3.0 million per month.

## B.     Incentive Programs

9.     To maintain and develop customer relationships for its DTC and wholesale businesses, the Debtors offer various discount, gift card, membership, and loyalty programs (collectively, the "Incentive Programs").  With respect to the Debtors' wholesale business, the Incentive Programs increase sales volume and enhance customer relationships.  With respect to the Debtors' DTC business, the Incentive Programs increase customer traffic to the Debtors'

websites, enhance loyalty among their existing customer base, and attract new customers.  The Incentive Programs are essential to the Debtors' operations and have a material impact on the Debtors' revenue in the aggregate.  A general description of the Incentive Programs are as follows:

(a)    **Distributor Incentives**.  The Debtors maintain various agreements with wholesalers and distributors to promote sales and generate revenue.  The Debtors' wholesale channel operates on a three-tier system.  The Debtors sell their products to distributors, who then sell such products to retailers such as bars, restaurants, chain stores, and grocery stores, who, in turn, sell their products to the end customer.  The Debtors offer certain incentive programs and allowances (the "Distributor Incentives") to distributors and certain other Customers to promote and encourage sales.  Pursuant to the Distributor Incentives, the Debtors provide their distributors with samples and allowances for use in the promotion and sales of the Debtors' product to third parties. In addition, the Debtors honor their distributors' profit margin for certain sales to national accounts (such as a Target or Walmart) and will cover any shortfall for such sales.

(b)    **Promotions**.  From time to time, the Debtors offer promotions such as discount codes for merchandise and free shipping to attract new customers, increase sales, and encourage e-commerce traffic on the Debtors' website (the "Discount Program").  The Discount Program is offered exclusively through the Debtors' website.  The precise value of the Discount Program varies by promotion.

C.    **Gift Cards**

10.    In the ordinary course of business, the Debtors sell pre-paid electronic gift cards (the "Gift Cards") to be used for purchasing goods from the Debtors' website (the "Gift Card

Program").[3]  The Gift Cards do not expire, and may not be redeemed for cash or monetary credit, except as required by law.  The Debtors maintain detailed transaction data regarding the sale of Gifts Cards and their value, but do not track the identities of individual Gift Card holders.  When the Customers purchased the Gift Cards, they had every expectation that they would be redeemable, and the Debtors seek authority to honor the Gift Cards in the ordinary course of business.  Based on a review of their business records and prior holder activity, the Debtors expect that the value of outstanding unredeemed Gift Cards is approximately $4.0 million.  Failure to honor these obligations would tarnish the Debtors' reputation and would cause a decline in sales.

**D.      Refund and Exchange Program**

11.      The Debtors allow their DTC business Customers to return or exchange their products if they are unhappy with the product(s) received (the "Refund and Exchange Program"). Customers that elect to exchange a product receive credits for the full value of the exchanged product, which can then be applied toward the purchase of another product.  Alternatively, if a product is returned, the Debtors offer a refund, which is typically processed within seven (7) to ten (10) business days from the date the Debtors receive the returned product.  As of the Petition Date, the Debtors estimate that approximately $144,000 remains outstanding on account of the Refund and Exchange Program.

12.      To effectuate a smooth transition into chapter 11, the Debtors submit that they must maintain Customer loyalty and goodwill by continuing and honoring the Customer Programs. Indeed, the Debtors implemented the Customer Programs in the ordinary course of business prior to the Petition Date as a means by which to maintain positive, productive, and profitable relationships with their Customers, encourage new purchases of product, increase subscriptions,

---

[3]  The Debtors also recently launched a new e-commerce platform dedicated to gifting.

29867908.12

enhance customer satisfaction and participation, and ensure that the Debtors remain competitive in their industry.  Accordingly, the Debtors' ability to honor the Customer Programs in the ordinary course of business and the obligations associated with the Customer Programs (collectively, the "Customer Obligations") is critical to the success and viability of the Debtors' business, and ultimately the Debtors' ability to maximize the value of their estates through a sale of substantially all of their assets.  In this regard, the Customer Programs are essential, and any delay in honoring Customer Obligations will severely and irreparably impair customer relations, thereby harming the Debtors' efforts to maximize value for all interested parties.

13.    Accordingly, the Debtors seek authority to continue to honor the Customer Programs in their discretion.

**E.    Credit Card and Other Payment Processors**

14.    In addition to cash, the Debtors accept several other methods of payment from Customers, including (i) credit cards; (ii) PayPal; (iii) debit cards; and (iv) Gift Cards.  For certain methods of payment, the Debtors receive, on a daily basis, sale proceeds less any Chargebacks (defined below), returns, and processing fees (collectively, the "Fees and Charges") charged by the credit card companies, internet vendors, or other third-party payment processors (the "Payment Processors")[4] directly into their BWSC, LLC bank account with Banc of California, N.A (the "BWSC Bank Account").  For other methods of payment, the Payment Processors deposit sale proceeds, gross of any Fees and Charges, directly into the BWSC Bank Account, and the Debtors then settle those payments on the 7th day of the following month that such Fees and Charges are incurred.  The Fees and Charges vary, but are in the range of 1% to 4%.

---

[4] To settle Customer payments, the Debtors utilize Braintree as their Payment Processor.

15.     In addition, when Customers return the Debtors' products following a purchase made using a credit card, or when a Customer disputes certain charges with their credit card issuer, the Debtors, when settling these payments, may be obligated to refund to such issuer the purchase price of the returned or disputed product (collectively, the "Chargebacks").  It is possible that certain Chargebacks incurred by the Debtors prior to the Petition Date may not have been fully netted out against the gross proceeds deposited into the BWSC Bank Account prior to the Petition Date.  As of the Petition Date, the Debtors estimate that amounts outstanding on account of Fees and Charges is approximately $62,000.

16.     Maintaining continued use of the credit cards and other non-cash payment mechanisms, such as PayPal, which are used for online purchases from the Debtors' websites, is essential because the vast majority of the Debtors' sales are made using these payment methods. Therefore, by this Motion, the Debtors request authority, in their sole discretion, to allow the Payment Processors to continue to process the Customer payments, including deducting Fees and Charges in the ordinary course of business and in a manner consistent with past practice.  The Debtors also request authority to pay the outstanding amount owed on account of Fees and Charges, and to continue to pay the Fees and Charges, including deducting Chargebacks, in the ordinary course of business and in a manner consistent with past practice.

**F.      Proposed DTC Customer Electronic Noticing Procedures**

17.     Approximately 160,000 DTC Customers participate in the Membership Programs. By this motion, the Debtors seek authority to provide electronic service of any and all notices, documents, and pleadings filed in the Chapter 11 Cases that are required to be served on the DTC Customers (the "DTC Customer Pleadings") by email, which will reduce the cost and administrative burdens associated with providing such Customers with traditional means of

service, reduce delay in providing notice, and provide the Debtors' estates with significant cost savings.

18.    In the ordinary course of business, the Debtors communicate with their DTC Customers exclusively through email.  DTC Customers provide the Debtors with their email addresses when signing up for the Membership Programs, and the Debtors believe that email correspondence is likely to be the most direct and reliable means of communicating with the DTC Customers.  Because the Debtors have historically communicated with their DTC Customers exclusively by email and other forms of electronic communication (e.g., through announcements on the Debtors' website), the Debtors believe that their DTC Customers will expect to receive notice from the Debtors by email.

19.    Providing the 160,000 DTC Customers with traditional forms of notice will be unduly burdensome and cost prohibitive.  For this sub-set of Customers, service will cost the Debtors hundreds of thousands of dollars each time a document is served on the entire creditor matrix, beginning with the notice of commencement of the Chapter 11 Cases, at a time when the Debtors are facing crippling liquidity issues.  Given the facts and circumstances of the Chapter 11 Cases, coupled with the Debtors' large DTC Customer base, and the fact that the Debtors have accurate and reliable email addresses for their DTC Customers, the Debtors request authority to serve the DTC Customer Pleadings on the DTC Customers solely by email using the addresses maintained by the Debtors in their book and records.

20.    Finally, the Debtors, together with their proposed claims and noticing agent, Epiq Corporate Restructuring, LLC, intend to establish a case information website at **https://dm.epiq11.com/Winc** (the "Case Website") where, among other things, electronic copies of all pleadings filed in the Chapter 11 Cases shall be posted as soon as practicable, and may be

viewed free of charge.  The Debtors will also post a link to the Case Website on the Debtors'

business website, **www.winc.com**, which will provide the DTC Customers with an efficient and

cost-effective means for obtaining the DTC Customer Pleadings and other information about the

Chapter 11 Cases.

## RELIEF REQUESTED

21.    By this Motion, the Debtors request entry of the Proposed Orders (i) authorizing,

but not directing, the Debtors, in their sole discretion, to satisfy the Customer Obligations and to

otherwise continue, renew, replace, modify, or terminate any of the Customer Programs in the

ordinary course of business without the need for further court order; (ii) authorizing the Debtors

to utilize electronic means of communication to provide notice to certain Customers; and

(iii) authorizing the Banks to honor and process check and electronic transfer requests related to

the foregoing.

## BASIS FOR RELIEF

**A.     The Court Should Authorize, but Not Direct, the Debtors to Honor the Customer Obligations and Continue the Customer Programs in the Ordinary Course of Business**

22.    Sections 1107(a) and 1108 of the Bankruptcy Code allow a debtor in possession to

continue to operate its business.  Further, section 363(c) of the Bankruptcy Code authorizes a

debtor in possession to operate its business and to use property of the estate in the ordinary course

of doing so without having to provide notice or obtain a court hearing.  *See In re Roth Am.*, 975

F.2d 949, 952 (3rd Cir. 1992) (stating that "the framework of section 363 is designed to allow a

[debtor in possession] the flexibility to engage in ordinary transactions without unnecessary

creditor and bankruptcy court oversight").  Continuing, renewing, replacing, initiating, and/or

terminating Customer Programs in the ordinary course of the Debtors' business falls well within the scope of activities that sections 363(c), 1107(a), and 1108 of the Bankruptcy Code permit.

23.      The Court may also authorize continuation of the Customer Programs, other than in the ordinary course of business, under section 363(b) of the Bankruptcy Code which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). This section authorizes a court to allow a debtor to pay certain prepetition claims. To do so, the Debtor must articulate "some business justification, other than the mere appeasement of major creditors." *In re Ionosphere Clubs*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

24.      Section 105(a) of the Bankruptcy Code provides an additional basis to grant the requested relief. It authorizes a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

25.      The well-established "necessity of payment" doctrine also supports the requested relief. That doctrine provides for payment of prepetition claims as necessary to maintain the continuity of a debtor's business. *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (payment of creditors' claims authorized under "necessity of payment" doctrine); *In re Penn Central Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just For Feet Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (recognizing "the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that the debtors "may pay pre-petition claims that are

essential to continued operation of business"); *Ionosphere Clubs*, 98 B.R. at 176 (necessity of payment rule applies to chapter 11 debtors) (citing *Dudley* v. *Mealey*, 147 F.2d 268 (2d Cir.), cert. denied, 315 U.S. 873 (1945)).

26.    Although the "doctrine of necessity" predates the Bankruptcy Code, *see Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 309 (1882), the modern application of the doctrine of necessity is grounded in specific provisions of the Bankruptcy Code, including sections 105(a), 1107(a) and 1108. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (fiduciary duties implicit in section 1107(a) of the Bankruptcy Code justify the "preplan satisfaction of a prepetition claim" where necessary to preserve going concern value).    The doctrine, largely unchanged from the Court's reasoning in *Miltenberger*, is a widely accepted component of bankruptcy jurisprudence. *See In re Just for Feet, Inc.*, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy the debtor's business by refusing to deliver new inventory on the eve of debtor's key sales season); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (Bankr. S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages, salaries, expenses and benefits); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agreed to provide postpetition trade credit).

27.    The Customer Obligations meet the requirements for postpetition payment because failure to satisfy such claims will adversely impact the Debtors' goodwill and going-concern value. *See In re CoServ*, 273 B.R. at 497.  Further, the Debtors have determined, in the sound exercise of their business judgment, that maintaining the Customer Programs, including payment of any amounts due thereunder, in the ordinary course of business is critical to the success of the Chapter

11 Cases.  Continuing the Customer Programs and payment of amounts due thereunder, the importance of which cannot be overstated, without interruption will help preserve the Debtors' valuable Customer relationships and goodwill, which will inure to the benefit of all of the Debtors' creditors and stakeholders.

28.     As noted above, the Customer Programs constitute an important part of the Debtors' business and strategy.  Given the competitive nature of the Debtors' industry, the Debtors' ability to maximize value depends, in part, on the Debtors' ability to maintain strong Customer and business relationships.  Any failure to honor their Customer Programs may disrupt the Debtors' ability to sustain sales revenue postpetition, and, as a result, could curb the Debtors' revenue and negatively impact the Debtors' sale efforts.

29.     Further, the Debtors' ability to attract new Customers and maintain their existing Customer relationships during the Chapter 11 Cases is critical to maximizing estate value.  The commencement of the Chapter 11 Cases, and the circumstances surrounding them, will undoubtedly create apprehension on the part of Customers or potential Customers regarding their willingness to purchase products from the Debtors.  As previously discussed, the damage that would result if the Debtors fail to honor their prepetition Customer Programs significantly outweighs any arguable harm to the Debtors' estates if such obligations are honored.

**B.     The Court Should Authorize the Debtors to Provide Electronic Service to DTC Customers**

30.     Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of th[e Bankruptcy Code]."  11 U.S.C. § 105(a).  In addition, Bankruptcy Rule 2002(m) specifically authorizes the Court to "enter orders designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall be sent . . . ."  Fed. R. Bankr. P. 2002(m).

31.     The Debtors submit that the proposed manner of serving DTC Customers with electronic copies of DTC Customer Pleadings is appropriate given the facts and circumstances of the Chapter 11 Cases.  As detailed above, the DTC Customers consist of over 160,000 parties, costing the Debtors hundreds of thousands of dollars each time that such Customers are served with documents and pleadings, at a time when the Debtors face crippling liquidity issues. Requiring traditional methods of service for the Debtors' DTC Customers will be cost prohibitive and unnecessary when the Debtors have an alternative and reliable method of communication that is less costly.  DTC Customers communicate with the Debtors primarily over email, and have provided email addresses to the Debtors in connection with the Membership Programs.  Because the Debtors communicate with their DTC Customers by email in the ordinary course of business, the Debtors believe that DTC Customers will expect to receive notice from the Debtors electronically and that such measures will provide an efficient and effective means of service.  For these reasons, and given the facts and circumstances of these Chapter 11 Cases, the Debtors request that the Court authorize the Debtors to provide notice of any DTC Customer Pleadings to the DTC Customers by email.  Further, the Debtors will post the DTC Customer Pleadings to the Case Website, and post a link to the Case Website on the Debtors' main business website, www.winc.com.

**C.     The Court Should Authorize the Banks to Honor and Process the Debtors' Payments on Account of the Customer Obligations**

32.     The Debtors also request that the Court authorize the Banks, when requested by the Debtors, in their sole discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Debtors further request

that the Court authorize all of the Banks to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

## SATISFACTION OF BANKRUPTCY RULE 6003(b)

33.    The Court may grant the relief requested in this Motion immediately if the relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b); *see also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008).  The Third Circuit has interpreted the language "immediate and irreparable harm" in the same context of preliminary injunctions.  In that context, the Third Circuit has instructed that irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial."  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).  Here, the Customer Programs are vital to the Debtors' operations and are necessary to maintain goodwill.  Failure to satisfy the Customer Programs in the ordinary course of the Chapter 11 Cases may cause irreparable damage to the Debtors' relationships with their Customers and key business partners and, thus, result in immediate and irreparable harm.

34.    For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

35.    Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth above, the relief requested herein is essential to prevent potentially irreparable damage to the Debtors' operations that would stem from any delay in honoring or continuing the Customer Programs.  For this reason and those set forth above, the Debtors respectfully submit that ample cause exists to justify a

waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

36. To implement the foregoing immediately, the Debtors also respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a), to the extent they are applicable to the Proposed Orders.

## **RESERVATION OF RIGHTS**

37. Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute Debtors' assumption or adoption of any executory contract under any Customer Program or any other agreement pursuant to section 365 of the Bankruptcy Code or Debtors' admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (iii) shall be construed as Debtors' promise to pay a claim. The Debtors expressly reserve all rights with respect to the continuation or termination of any contract with any Customer, and expressly reserve the right to subsequently contest, in the ordinary course of business, any amounts claimed to be due, if any, by any such Customer.

## **NOTICE**

38. Notice of this Motion has been or will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel to the Debtors' prepetition secured lender; (iv) counsel to the DIP Lender; (v) the Internal Revenue Service; (vi) the U.S. Securities and Exchange Commission; and (vii) the Banks. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

29867908.12

## **CONCLUSION**

WHEREFORE, the Debtors request that the Court enter the Proposed Orders, substantially in the form of **Exhibit A** and **Exhibit B**, granting the relief requested herein and such other and further relief as is just and proper.

Dated:  December 2, 2022
        Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Shella Borovinskaya*
Michael R. Nestor (No. 3526)
Matthew B. Lunn (No. 4119)
Allison S. Mielke (No. 5934)
Joshua B. Brooks (No. 6765)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email:  mnestor@ycst.com
        mlunn@ycst.com
        amielke@ycst.com
        jbrooks@ycst.com
        sborovinskaya@ycst.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

29867908.12

17

# EXHIBIT A

## Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket No. ___** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO**
**HONOR CUSTOMER OBLIGATIONS AND CONTINUE CUSTOMER**
**PROGRAMS IN THE ORDINARY COURSE OF BUSINESS AND (II) AUTHORIZING**
**BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC**
**TRANSFER REQUESTS RELATED THERETO**

Upon consideration of the motion (the "<u>Motion</u>")[2] filed by the Debtors for entry of interim

and final orders (i) authorizing, but not directing, the Debtors, in their sole discretion, to honor the

Customer Obligations and to otherwise continue, renew, replace, modify, or terminate any of the

Customer Programs in the ordinary course of business without the need for further court order;

(ii) authorizing the Debtors to utilize electronic means of communication, namely, electronic mail,

to provide notice of the DTC Customer Pleadings to DTC Customers; and (iii) authorizing the

Banks to honor and process check and electronic transfer requests related to the foregoing; and

this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334(b), and the *Amended Standing Order of Reference* from the United States District Court for

the District of Delaware dated as of February 29, 2012; and this Court having found that venue of

the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and

1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A).  The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

[2]  All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

§ 157(b); and this Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon consideration of the First Day Declaration; and upon the record in the Chapter 11 Cases and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors, in their business judgment, are authorized, but not directed, to continue the Customer Programs and pay, satisfy, setoff, or recoup the Customer Obligations in the ordinary course of business; *provided, however*, that amounts paid in cash on account of Customer Obligations outstanding as of the Petition Date shall not exceed $191,000 pending entry of the Final Order.

3.      The Debtors, in their business judgment, are authorized, but not directed, to continue, renew, replace, implement, modify and/or terminate their Customer Programs, in the ordinary course of business, without further application to the Court.

4.      The Payment Processors are authorized to offset Chargebacks, returns, and fees on account of Customer purchases that may have arisen before the Petition Date in the ordinary course of business and in a manner consistent with past practice.

29867908.12

5. The Debtors are authorized to continue to utilize their Payment Processors and are further authorized to pay the Fees and Charges, including Chargebacks and returns that may have arisen before the Petition Date in the ordinary course of business and in a manner consistent with past practice.

6. The Debtors shall not be required to serve hard copies of the DTC Customer Pleadings upon the DTC Customers who would otherwise be served with such hard copy notices or pleadings; *provided* that the Debtors shall instead provide notices and service of the DTC Customer Pleadings to the DTC Customers via email using the email addresses maintained by the Debtors in their books and records.

7. The Banks are authorized, when requested by the Debtors, in the Debtors' sole discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Interim Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Interim Order.

8. A final hearing on the relief sought in the Motion shall be conducted on _____, 2022 at _____ (ET) (the "Final Hearing"). Any party-in-interest objecting to the relief sought at the Final Hearing or the Final Order shall file and serve a written objection, which objection shall be served upon (i) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Matthew B. Lunn, Esq.

(mlunn@ycst.com) and Allison S. Mielke, Esq. (amielke@ycst.com); (ii) the Office of the United States Trustee, 844 King Street, Room 2207, Wilmington, DE 19801, Attn: Jane Leamy, Esq. (jane.m.leamy@usdoj.gov); (iii) counsel to the DIP Lender, Cooley LLP, 110 N. Wacker Drive, Suite 4200, Chicago, IL 60606, Attn: Eric E. Walker, Esq. (ewalker@cooley.com) and Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Derek Abbott, Esq. (dabbott@morrisnichols.com) and Curtis Miller, Esq. (cmiller@morrisnichols.com); and (iv) counsel to any statutory committee appointed in the Chapter 11 Cases, in each case so as to be received no later than December ___, 2022 at 4:00 p.m. (ET).  If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

9.     Nothing in this Interim Order (i) is intended or shall be deemed to constitute Debtors' assumption of any agreement pursuant to section 365 of the Bankruptcy Code or Debtors' admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as the Debtors' promise to pay a claim or continue any applicable programs postpetition, which decisions shall be in the sole discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or waiver of the Debtors' rights to subsequently dispute such claim.

10.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

11.     The requirements of Bankruptcy Rule 6003(b) are satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

12.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

13.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Interim Order.

29867908.12

## **EXHIBIT B**

### **Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. ___ & ___** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO HONOR AND
CONTINUE CUSTOMER PROGRAMS AND CUSTOMER OBLIGATIONS IN
THE ORDINARY COURSE OF BUSINESS AND (II) AUTHORIZING BANKS
TO HONOR AND PROCESS CHECK AND ELECTRONIC
TRANSFER REQUESTS RELATED THERETO**

Upon consideration of the motion (the "Motion")[2] filed by the Debtors for entry of a final

order (i) authorizing, but not directing, Debtors, in their sole discretion, to honor Customer

Obligations and to otherwise continue, renew, replace, modify, or terminate any of the Customer

Programs in the ordinary course of business without the need for further court order;

(ii) authorizing the Debtors to utilize electronic means of communication, namely, electronic mail,

to provide notice to DTC Customers who otherwise would be provided with notice in the Chapter

11 Cases; and (iii) authorizing the Banks to honor and process check and electronic transfer

requests related to the foregoing; and this Court having found that it has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference*

from the United States District Court for the District of Delaware dated as of February 29, 2012;

and this Court having found that venue of the Chapter 11 Cases and the Motion in this District is

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A).  The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

[2]  All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon consideration of the First Day Declaration; and upon the record in the Chapter 11 Cases and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors, in their business judgment, are authorized, but not directed, to continue the Customer Programs and pay, satisfy, setoff, or recoup the Customer Obligations in the ordinary course of business.

3.      The Debtors, in their business judgment, are authorized, but not directed, to continue, renew, replace, implement, modify and/or terminate their Customer Programs as they deem appropriate, in the ordinary course of business, without further application to the Court.

4.      The Payment Processors are authorized to offset Chargebacks, returns, and fees on account of Customer purchases that may have arisen before the Petition Date in the ordinary course of business and in a manner consistent with past practice.

5.      The Debtors are authorized to continue to utilize their Payment Processors and are further authorized to pay the Fees and Charges, including Chargebacks and returns that may have

arisen before the Petition Date in the ordinary course of business and in a manner consistent with past practice.

6.      The Debtors shall not be required to serve hard copies of the DTC Customer Pleadings upon the DTC Customers who would otherwise be served with such hard copy notices or pleadings; *provided* that the Debtors shall instead provide notices and service of the DTC Customer Pleadings to the DTC Customers via email using the email addresses maintained by the Debtors in their books and records.

7.      The Banks are authorized, when requested by the Debtors, in the Debtors' sole discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Final Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Final Order.

8.      Nothing in this Final Order (i) is intended or shall be deemed to constitute Debtors' assumption of any agreement pursuant to section 365 of the Bankruptcy Code or Debtors' admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as the Debtors'

29867908.12

promise to pay a claim or continue any applicable programs postpetition, which decision shall be in the sole discretion of the Debtors.  Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

9.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

10.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

11.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Final Order.

29867908.12