# EXHIBIT 1

**Revised DIP Term Sheet**

# WINC, INC.

## SUPERPRIORITY SECURED
## DEBTOR-IN-POSSESSION CREDIT FACILITY TERM SHEET

### December 6, 2022

### Summary of Proposed Terms and Conditions

This Summary of Terms and Conditions (this "DIP Term Sheet") outlines certain terms of the DIP Facility (as defined herein) to be provided by the DIP Lender (as defined herein) subject to the conditions herein and as set forth more fully below.

| | |
|---|---|
| **Borrower:** | Winc, Inc., a Delaware corporation ("Winc"), BWSC, LLC, a California limited liability company ("BWSC"), Winc Lost Poet LLC, a Delaware limited liability company ("Lost Poet" and with Winc and BWSC, each a "Borrower" and together the "Borrowers" or "you"), each in their capacity as a debtor and debtor-in-possession (each individually a "Loan Party" and a "Debtor", and collectively, the "Loan Parties" and the "Debtors") in a voluntary case (together with the cases of its affiliated debtors and debtors-in-possession, the "Chapter 11 Cases") filed under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[1] |
| **DIP Lender:** | Project Crush Acquisition Corp LLC, a Delaware limited liability company will, either directly or through one or more US affiliates (collectively, the "DIP Lender"), finance the DIP Facility (as defined below) and provide the DIP Commitments (as defined herein). The DIP Lender will be identified as the "Stalking Horse Bidder" in the proposed order (the "Bid Procedures Order") approving the bidding procedures in connection with the proposed sale of the assets identified as the "Acquired Assets" in that certain non-binding letter of intent from the DIP Lender to you dated November 24, 2022 (the "Acquired Assets"). |
| **Type and Amount of the DIP Facility:** | A superpriority secured debtor-in-possession non-amortizing facility comprised of a term loan in a principal amount of $5 million, of which (i) $2 million will be available upon entry of an Interim Order (as defined below) acceptable to the DIP Lender, and (ii) the remaining $3 million will be available upon entry of a Final Order (as defined below) acceptable to the DIP Lender (the "DIP Facility"; the DIP Lender's commitments under the |

---

[1] Reference is hereby made to that certain Credit Agreement, dated as of December 15, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof, the "Prepetition Senior Credit Agreement" and, together with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, instruments, amendments, fee letters and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition Senior Loan Documents"), by and among Winc Inc. and BWSC, LLC, as borrowers, and Banc of California, N.A., as successor-by-merger to Pacific Mercantile Bank, as Bank (together with its permitted agents, sub-agents, delegates, attorneys-in-fact, successors and assigns, the "Prepetition Secured Party") and all Obligation (as defined in the Prepetition Senior Loan Documents) owed to the Prepetition Secured Party as of the Petition Date (the "Prepetition Senior Obligations")."

**Error!**

278261410 v6

|   |   |
|---|---|
|   | DIP Facility, the "DIP Commitments"; the loan under the DIP Facility, the "DIP Loan"; the DIP Lender's claim under the DIP Facility, a "DIP Claim"; and collectively, the "DIP Claims"; and proceeds received by the Borrowers from the DIP Loan, the "DIP Proceeds"); |
|   | Following the Closing Date (as defined below), the DIP Loan may be incurred in a single or multiple draws upon entry of an interim order of the Bankruptcy Court authorizing and approving the DIP Facility and the use of the Borrowers' cash collateral (with the Prepetition Secured Party's consent), as applicable (the "Interim Order"), subject to the other terms and conditions provided herein (the "Extension of Credit"); *provided that* the total amount of all draws incurred before entry of the Final Order shall not exceed the cap of $2 million. |
|   | Once repaid, the DIP Loan incurred under the DIP Facility cannot be reborrowed. |
| **Credit Bidding:** | The Interim Order, the entry of a final order of the Bankruptcy Court authorizing and approving the DIP Facility (including the DIP Loan and all documents and lender fees related thereto) (such order to be acceptable in all respects to the DIP Lender, the "Final Order"), and the DIP Loan Documents (as defined below) shall provide that, in connection with any sale of any of the Debtors' assets under section 363 of the Bankruptcy Code or under a plan of reorganization, the DIP Lender shall have the right to credit bid all amounts outstanding under the DIP Facility (including any accrued interest and fees) in accordance with Section 363(k) of the Bankruptcy Code, *provided that* any such bid includes sufficient cash to immediately and indefeasibly satisfy the Prepetition Senior Obligations and the Adequate Protection Obligations (as defined in the Interim Order and the Final Order, as applicable) in full. |
| **Closing Date:** | The date of the satisfaction or waiver by the DIP Lender of the relevant "Conditions Precedent to Borrowing DIP Loan" set forth below (the "Closing Date"). |
| **Maturity:** | All DIP Obligations (as defined herein) will be due and payable in full in cash and the Debtors' authority to use Cash Collateral will terminate unless otherwise agreed to by the DIP Lender in writing on the earliest of (i) January 20, 2023, (ii) if the Final Order has not been entered, twenty-eight (28) calendar days after the Petition Date, (iii) the acceleration of the DIP Loan and the termination of the DIP Commitments upon the occurrence of an event referred to below under "Termination" or termination of the Prepetition Secured Party's consent of the Debtors use of Cash Collateral, (iv) the effective date of any plan of reorganization, (v) the date the Bankruptcy Court converts any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (vi) the date the Bankruptcy Court dismisses any of the Chapter 11 Cases, (vii) the consummation of the sale of all or substantially all of the Borrowers' assets and (viii) the date an order is entered in any of the Chapter 11 Cases appointing a Chapter 11 trustee or examiner with enlarged powers (any such date, the "DIP Termination Date"). Principal of, and accrued interest on, the DIP Loan and all other amounts owing to the DIP Lender under the DIP Facility shall be payable on the DIP Termination Date |

*pari passu* with the Prepetition Senior Obligations.

**Budget:** The "Budget" shall consist of a 7-week operating budget setting forth all forecasted receipts and disbursements on a weekly basis for such 7-week period beginning as of the week of the Petition Date, broken down by week, including the anticipated weekly uses of the DIP Proceeds for such period (and draws under the DIP Facility), which shall include, among other things, available cash, cash flow, trade payables and ordinary course expenses, total expenses and capital expenditures, fees and expenses relating to the DIP Facility, fees and expenses related to the Chapter 11 Cases (including professional fees), and working capital and other general corporate needs, which forecast shall be in form and substance satisfactory to the DIP Lender and Prepetition Secured Party (such Budget shall be supplemented in the manner required pursuant to the "Financial Reporting Requirements" section below).

**Use of Proceeds:** The DIP Loan shall be used solely in accordance with the Budget (including Permitted Variances (as defined below)) and the terms and conditions of the DIP Credit Agreement, the Interim Order, and the Final Order, including (but subject to the Budget) to (i) provide working capital and for other general corporate purposes of the Debtors, (ii) fund the costs of the administration of the Chapter 11 Cases (including professional fees and expenses) and the section 363 sale process, and (iii) fund interest, fees, and other payments contemplated in respect of the DIP Facility and consensual use of cash collateral. For the avoidance of doubt, the Borrowers understand and agree a permitted use shall be to pay the DIP Lender's and the Prepetition Secured Party's reasonable costs, fees and expenses relating to the DIP Loan and consensual use of cash collateral, respectively, which shall be paid as set forth in the DIP Credit Documents and pursuant to the Interim Order, Final Order, and any other applicable order, and which costs, fees and expenses shall be accrued and paid upon the earlier of (i) the DIP Termination Date, or (ii) the closing of a sale following entry of a Sale Order (as defined below).

**Documentation:** At the Borrowers' request and with the consent of the DIP Lender, the DIP Facility initially will be provided pursuant to the terms of this DIP Term Sheet and the Interim Order and Final Order. The DIP Facility otherwise will be evidenced by a credit agreement (the "DIP Credit Agreement") in form and substance satisfactory to the DIP Lender and the Prepetition Secured Party with such modifications as are necessary to reflect the terms set forth in this DIP Term Sheet and the nature of the DIP Facility as a debtor-in-possession facility, including appropriate qualifications to reflect the commencement and continuation of the Chapter 11 Cases, the events leading up to the Chapter 11 Cases, the effect of the bankruptcy, the conditions in the industry in which the Borrowers operate in as existing on the Closing Date and/or the consummation of transactions contemplated by the Debtors' "first day" pleadings, and to reflect operational matters reasonably acceptable to the DIP Lender, the Prepetition Secured Party, and the Debtors and other terms as may be reasonably agreed between DIP Lender and the Debtor, (the "Documentation Principles"), security documents and other legal documentation (collectively, together with the DIP Credit Agreement, the "DIP Loan Documents"), which DIP Loan Documents shall be in form and

3

|  |  |
|---|---|
| | substance consistent with the Documentation Principles, this DIP Term Sheet and otherwise satisfactory to the DIP Lender and the Prepetition Secured Party. |
| **Controlled Accounts:** | The Debtors shall maintain all existing deposit accounts with the Prepetition Secured Party as depository bank and each such deposit account shall remain or become subject to a perfected lien and control pursuant to the terms of the Interim Order and the Final Order (each such account, a "Controlled Account").  The DIP Credit Agreement, the Interim Order (as applicable), and the Final Order shall require the Debtors to maintain the DIP Proceeds in the Controlled Accounts except as permitted to be used in accordance with the Budget and shall prohibit the Debtors from withdrawing funds from the Controlled Accounts after the occurrence and during the continuance of an Event of Default under the DIP Credit Agreement, the Interim Order, and the Final Order; provided, however, that the Debtors shall be permitted to fund the Carve-Out and pay critical ordinary course administrative claims up to $670,000 in accordance with the terms of the Budget after an Event of Default. |
| **Interest:** | The DIP Loan will bear interest at a fixed rate per annum equal to 14%, accruing monthly, payable in arrears and payable in kind. |
| | Interest shall be calculated on the basis of the actual number of days elapsed in a 360-day year. |
| **Default Interest:** | Upon the occurrence of and during the continuance of an Event of Default under the DIP Loan Documents, the DIP Loan and all DIP Obligations will automatically bear interest at an additional 2.00% *per annum*. |
| **Fees:** | A closing fee equal to 2.0% (the "Closing Fee") on the entire DIP Commitments, which shall be earned upon entry of the Interim Order.  The Closing Fee shall be payable in kind, including any accrued interest and fees, to the DIP Lender upon the earlier of (i) the DIP Termination Date, or (ii) the closing of a sale following entry of a Sale Order (as defined below). |
| **Voluntary Prepayments:** | Voluntary prepayments of the DIP Loan shall be permitted at any time, without premium or penalty. |
| **Priority and Security under DIP Facility:** | All obligations of the Borrowers to the DIP Lender under the DIP Facility, including, without limitation, all principal and accrued interest, premiums (if any), costs, fees and expenses or any other amounts due, or any exposure of each DIP Lender and its affiliates in respect of cash management incurred on behalf of a Borrower under the DIP Facility (collectively, the "DIP Obligations"), shall be secured by the following liens and security interests (the "DIP Liens"): |

4

(a) subject to the Carve Out and *pari passu* with the Adequate Protection Liens (as defined below) and the Senior Prepetition Liens, a first priority perfected senior lien on, and security interest in substantially all of the assets of the Borrowers, wherever located (including, without limitation, inventory, accounts receivable, general intangibles, chattel paper, owned real estate, real property leaseholds, fixtures and machinery and equipment fixtures and machinery and equipment, deposit accounts, including all funds in the Controlled Accounts, patents, copyrights, trademarks, tradenames, rights under license agreements, other intellectual property and capital stock of subsidiaries, and all proceeds thereof), that are subject to valid, perfect, and non-avoidable liens of the Prepetition Secured Party as of the Petition Date; provided that the DIP Liens do not prime any valid, perfected and enforceable statutory claims or related claims under the Perishable Agricultural Commodities Act (PACA) or applicable state law, to the extent such claims or liens are senior to the Prepetition Senior Liens as of the Petition Date;

(b) subject to the Carve Out and *pari passu* with the Adequate Protection Liens and the Senior Prepetition Liens, a first priority perfected lien on, and security interest in, all present and after acquired property of the Debtors, wherever located, not subject to a lien or security interest on the date of commencement of the Chapter 11 Cases, excluding claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code (collectively, "Avoidance Actions"); provided, however, upon entry of the Final Order, liens in favor of the DIP Lender shall attach to and be perfected in any proceeds of Avoidance Actions; and

(c) subject to the Carve Out and *pari passu* with the Adequate Protection Liens and the Senior Prepetition Liens, a junior perfected lien on, and security interest in, all present and after-acquired property of the Debtors, wherever located, that is subject to a Permitted Lien on the Petition Date or subject to a Permitted Lien in existence on the Petition Date that is perfected subsequent thereto as permitted by section 546(b) of the Bankruptcy Code.

The property referred to in the preceding clauses (a), (b), and (c) is collectively referred to as the "DIP Collateral".

The DIP Liens shall be effective and perfected as of the entry of the Interim Order (subject to the occurrence of the Closing Date) and without necessity of the execution, filing or recording of control agreements, financing statements or other agreements. However, the DIP Lender may, in its discretion, require the execution, filing or recording of any or all of the documents described in the preceding sentence.

**Superpriority DIP Claims:** All DIP Claims shall be entitled to the benefits of section 364(c)(1) of the Bankruptcy Code, having superpriority over any and all administrative expenses of the kind that are specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1114 or any other provisions of the Bankruptcy Code, subject only to the Carve Out and *pari passu* with the Adequate Protection Superpriority Claim.

5

|  |  |
|---|---|
|  | The DIP Claims will, at all times during the period that the DIP Loan remains outstanding, remain, in right of payment, senior in priority to all other claims or administrative expenses, subject only to the Carve Out and *pari passu* with the Adequate Protection Superpriority Claim. |
| **Adequate Protection** | The Prepetition Secured Party shall receive adequate protection (in each case equal to priority of the DIP Liens and DIP Superpriority Claim and subject to the prior payment of the Carve Out) as follows: |

- to the extent of any diminution in the value of the Prepetition Collateral, a superpriority administrative expense claim (the "<u>Adequate Protection Superpriority Claim</u>") pursuant to section 507(b) of the Bankruptcy Code, which Adequate Protection Superpriority Claim shall be *pari passu* with the DIP Superpriority Claim and subject to the Carve Out;

- valid, perfected, postpetition first priority security interests and liens in and on all of the DIP Collateral (the "<u>Adequate Protection Liens</u>"), which Adequate Protection Liens shall be (i) *pari passu* with the DIP Liens and/or payment of any DIP Obligations on account thereof and (ii) subordinate to the Carve Out;

- monthly payment from the Debtors to reimburse reasonable professional fees and expenses, including fees and expenses of counsel, incurred by the Prepetition Secured Party both before and after the Petition Date, subject to the fee procedures in the Interim Order; and

- any fees, expenses, and interest, including default rate interest, due under the Prepetition Senior Loan Documents to the Prepetition Secured Party shall accrue as set for therein pursuant to the DIP Documents and shall be due and payable to the Prepetition Secured Party as a condition precedent to the termination of the DIP Loan Documents.

|  |  |
|---|---|
| **Carve Out:** | As set forth in the Interim Order and the Final Order, as applicable. |
| **Conditions Precedent to Borrowing DIP Loan:** | The DIP Credit Agreement will contain the following conditions precedent to borrowings on the date of the Extension of Credit, which conditions precedent apply to any funding of the DIP Facility under this DIP Term Sheet: |

- The DIP Lender and the Prepetition Secured Party shall have received a borrowing notice from the Borrowers at least one (1) business day prior to the anticipated date of the Extension of Credit.

- No Default or Event of Default shall have occurred, and shall be continuing, under the DIP Loan Documents immediately prior to the funding of the DIP Loan or would result from such borrowing of the DIP Loan.

6

- The making of the DIP Loan shall be authorized pursuant to the Interim Order or the Final Order, as applicable.

- The entry of the Interim Order or Final Order, as the case may be, in form and substance consistent with the terms and conditions set forth herein and otherwise satisfactory to the DIP Lender in its sole discretion, which Interim Order or Final Order, as the case may be, shall be in full force and effect, shall not have been reversed, vacated or stayed and shall not have been amended, supplemented or otherwise modified without the prior written consent of the DIP Lender.

- Other than the Known Events, since the Petition Date, there shall not have been a Material Adverse Change; provided that Known Events and Material Adverse Change shall be defined in the DIP Credit Agreement.

- The Loan Parties shall be in compliance with (i) the Interim Order or the Final Order, as the case may be, and (ii) the Budget (subject to Permitted Variances).

| | |
|---|---|
| **Affirmative and Negative Covenants:** | The DIP Credit Agreement will contain customary affirmative and negative covenants to be consistent with the Documentation Principles, including without limitation, the following: |

- The Debtors shall deliver to the DIP Lender, the Prepetition Secured Party, and their counsels for review and comment, as soon as commercially reasonable, and in any event not less than three (3) Business Days prior to filing (or as soon thereafter as is reasonably practicable under the circumstances), all pleadings, motions and other documents material to the DIP Lender or the Prepetition Secured Party (provided that any of the foregoing relating to the DIP Facility shall be deemed material) to be filed on behalf of the Debtors with the Bankruptcy Court.

- The Debtors shall promptly deliver in accordance with the Bid Procedures, to the DIP Lender and the Prepetition Secured Party copies of any term sheets, proposals, presentations, amendments to the Asset Purchase Agreement (as defined below) or other documents, from any party, related to (i) the restructuring of the Debtors, or (ii) the sale of assets of one or more of the Debtors. Notwithstanding the foregoing, the Debtors will not provide copies of any term sheets, proposals, presentations, amendments to the Asset Purchase Agreement, bids or other confidential information to the DIP Lender if the DIP Lender is an active bidder or involved in the bidding process as to the relevant Asset(s) at the applicable time.

- The Debtors shall comply with laws (including without limitation, the Bankruptcy Code, ERISA, environmental laws, OFAC, money laundering laws, PATRIOT Act and other anti-terrorism laws and anti-corruption laws), pay taxes, maintain all necessary licenses and permits and trade names, trademarks, patents, preserve corporate existence, maintain appropriate and adequate insurance coverage and permit

7

- inspection of properties, books and records, in each case, subject to materiality qualifiers consistent with the Documentation Principles.

- The Debtors shall limit all transactions with affiliates of the Debtors (other than ordinary course transactions consistent with past practice among or between any Debtors and their respective subsidiaries), including, without limitation, restrictions on payment of any management fees to affiliates.

- The Debtors shall maintain a cash management system as required by the Interim Order and the Final Order.

- The Debtors shall deliver the Budget, updated weekly (and calculated cumulatively for each 1-week Budget period) and adherence to the Budget, subject to Permitted Variances.

- Aggregate disbursements shall not exceed the aggregate amount of disbursements in the Budget for the applicable period by more than the Permitted Variance.

- For purposes hereof, the term "Permitted Variances" will mean, for the first full week period after the Closing Date, to be tested on the third business day of each week following the end of such week period (the "Initial Testing Period") and for the Applicable Rolling Period (as defined below) after the Initial Testing Period (each such period after the Initial Testing Period, together with the Initial Testing Period, the "Testing Periods"): (i) all favorable variances, and (ii) an unfavorable variance of no more than 10% for actual operating disbursements (on an aggregate basis), in each case as compared to the budgeted disbursements, respectively, set forth in the Budget with respect to the applicable Testing Period; notwithstanding the foregoing, the Carve Out shall be excluded from the determination of Permitted Variances. The Permitted Variances with respect to each Testing Period shall be determined and reported to the DIP Lender and the Prepetition Secured Party not later than 5:00 p.m. Central Time on the third business day of each week immediately following the end of each such Testing Period. Additional variances, if any, from the Budget, and any proposed changes to the Budget, shall be subject to the approval of the DIP Lender and the Prepetition Secured Party. Variances will be reported on a cumulative basis matching the relevant Applicable Rolling Period in a format replicating the Budget and will include explanation of variances (including whether they are permanent or temporal in nature). Variances will be carried over across Applicable Rolling Periods solely to the extent they are permanent in nature. "Applicable Rolling Period" means, (i) for the Initial Testing Period, the most recently completed calendar week, (ii) for the second Testing Period after the Closing Date, the most recently completed two calendar weeks, (iii) for the third Testing Period after the Closing Date, the most recently completed three calendar weeks and (iv) for each Testing Period thereafter, the most recently completed four calendar weeks.

- Consistent with the Documentation Principles and subject to the Budget, the Debtors shall not incur or assume any additional debt (including intercompany funding) or contingent obligations in respect of debt, give any guaranties in respect of debt, create any liens, charges or encumbrances or incur additional material lease obligations, in each case, beyond agreed upon limits; not merge or consolidate with any other person, change the nature of business or corporate structure or create or acquire new subsidiaries, in each case, beyond agreed upon limits; not amend its charter or by laws; not sell, lease or otherwise dispose of assets (including, without limitation, in connection with a sale leaseback transaction) outside the ordinary course of business and beyond agreed upon limits; not give a negative pledge on any assets in favor of any person other than the DIP Lender; and not permit to exist any consensual encumbrance on the ability of any subsidiary to pay dividends or other distributions to the Borrowers; in each case, subject to customary exceptions or baskets as may be agreed.

- The Debtors shall not (i) make, commit to make, or permit to be made any bonus payments (including retention and incentive bonuses) to any employees of the Debtors and their subsidiaries in excess of the amounts set forth in the Budget (on an aggregate basis) and (ii) terminate any executive officers or other key employees of the Debtors and their subsidiaries without the DIP Lender's prior written consent, which consent shall not be unreasonably withheld.

- The Debtors shall not permit any change in ownership or control of any Debtor or any subsidiary or any change in accounting treatment or reporting practices, except as required by GAAP or as permitted or contemplated by the DIP Credit Agreement.

- Without the prior written consent of the DIP Lender and the Prepetition Secured Party, the Debtors shall not make or permit to be made any change to the Interim Order or the Final Order with respect to the DIP Facility.

- The Debtors shall not permit the Debtors to seek authorization for, and not permit the existence of, any claims other than that of the DIP Lender and the Prepetition Secured Party entitled to a superpriority under section 364(c)(1) of the Bankruptcy Code that is senior or *pari passu* with the DIP Lender's section 364(c)(1) claim, except for the Carve Out.

- The Debtors shall comply with the Milestones (as defined herein).

| | |
|---|---|
| **Financial Reporting Requirements:** | The Borrowers shall provide to the DIP Lender and the Prepetition Secured Party (hereinafter the "Financial Reporting Requirements"): (i) following delivery of the Budget on the Closing Date, by not later than 5:00 p.m. Eastern Time on the third business day of the second full week following the Closing Date and by not later than 5:00 p.m. Eastern Time on the third business day of every other week thereafter following the end of each Testing Period, an updated Budget, in each case, in form and substance reasonably satisfactory |

9

|  |  |
|---|---|
|  | to the DIP Lender and Prepetition Secured Party for the subsequent 7 week period consistent with the form of the Budget, and such updated Budget shall become the "Budget" for the purposes of the DIP Facility upon the DIP Lender's and Prepetition Secured Party's acknowledgement that the proposed updated Budget is substantially in the form of the Budget and in substance satisfactory to the DIP Lender and Prepetition Secured Party (provided, that, until a new Budget has been approved by the DIP Lender and Prepetition Secured Party, the most recently approved Budget shall govern); and (ii) beginning on the third business day of the first full week following the Closing Date (by not later than 5:00 p.m. Eastern Time), and on the third business day of each week thereafter following the end of each Testing Period (by not later than 5:00 p.m. Eastern Time), a variance report (the "Variance Report") setting forth actual cash receipts and disbursements and cash flows of the Debtors for the prior Testing Period and setting forth all the variances, on a line-item and aggregate basis, from the amount set forth for such period as compared to the applicable Budget delivered by the Debtors, in each case, on a weekly and cumulative rolling 4-week basis (and each such Variance Report shall include explanations for all material variances and shall be certified by the Chief Financial Officer of the Debtors). The Borrowers will promptly provide notice to the DIP Lender and the Prepetition Secured Party of any Material Adverse Change.<br><br>All deliveries required pursuant to this section shall be subject to the confidentiality provision to be negotiated in the DIP Credit Agreement.<br><br>At the election of the DIP Lender or the Prepetition Secured Party, on each Monday (or, in the event that such day is not a Business Day then on the Business Day immediately following) during the Chapter 11 Cases, the Borrowers' senior management and professionals shall host a telephonic meeting for the DIP Lender, the Prepetition Secured Party, and their professionals at which the Borrower's senior management and professionals shall provide an update to the DIP Lender and the Prepetition Secured Party (and make themselves available for questions) with respect to the financial and operating performance of the Loan Parties and their estates, including, but not limited to, the Variance Report. |
| **Other Reporting Requirements:** | The DIP Credit Agreement will contain other customary reporting requirements for similar debtor-in-possession financings and others determined by the DIP Lender and the Prepetition Secured Party in their reasonable discretion to be appropriate to the transactions contemplated herein, including, without limitation, with respect to material adverse events, events and notices under other material debt instruments, litigation, contingent liabilities, ERISA or environmental events and consistent with the Documentation Principles (collectively with the financial reporting information described above, the "Information"). |
| **LOI Milestone:** | Debtors have delivered to the DIP Lender, and shall exercise best efforts to implement, a binding letter of intent in which DIP Lender is identified as the "Stalking Horse Bidder" in connection with the proposed sale of the assets identified as the "Acquired Assets" in that certain non-binding letter of intent from the DIP Lender to you dated November 26, 2022. |

10

| | |
|---|---|
| **Chapter 11 Cases Milestones:** | The DIP Credit Agreement will include the following milestones related to the Debtors' Chapter 11 Cases (the "Milestones"): |

- No later than five (5) business days after the Petition Date, the Bankruptcy Court shall have entered the Interim Order.

- No later than five (5) business days after the Petition Date, the Debtors shall file with the Bankruptcy Court a motion (the "Bid Procedures Motion") for approval of bid procedures consistent with the Bid Procedures Order (the "Bid Procedures") in form and substance acceptable to the DIP Lender, the Prepetition Secured Party, and the Debtors.

- No later than five (5) business days after the Petition Date, the Debtors shall file with the Bankruptcy Court a stalking horse asset purchase agreement for the Acquired Assets with the DIP Lender as the purchaser consistent with the proposed Bid Procedures (the "Asset Purchase Agreement"), pursuant to which the DIP Lender shall be designated the stalking horse bidder, the proposed bid protections for the DIP Lender as stalking horse bidder are approved and the DIP Lender shall be permitted to credit bid its DIP Loan pursuant to Section 363(k) of the Bankruptcy Code.

- No later than twenty-two (22) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Bid Procedures Order designating the DIP Lender as the stalking horse bidder, approve bid protections for the DIP Lender as the stalking horse bidder, and permitting the DIP Lender to credit bid its DIP Loan pursuant to Section 363(k) of the Bankruptcy Code;

- No later than twenty-eight (28) calendar days after the Petition Date, the Bankruptcy Court shall have entered the Final Order;

- No later than forty-five (45) calendar days after the Petition Date, the Bankruptcy Court shall have entered one or more final, non-appealable sale order(s) (which shall be in form and substance reasonably acceptable to the DIP Lender) approving each of the winning bid(s) resulting from the auction (the "Sale Order"); and

- No later than January 20, 2023, the Asset Sale Effective Date (as defined in the Bid Procedures Order) shall have occurred.

| | |
|---|---|
| **Events of Default:** | The DIP Credit Agreement will contain events of default customarily found in loan agreements for similar debtor-in-possession financings and other events of default deemed by the DIP Lender and the Prepetition Secured Party appropriate to the transactions contemplated therein which will be applicable to the Debtors and their subsidiaries (each an "Event of Default"), including, without limitation: |

- failure to make payments when due;

- invalidity of the DIP Loan Documents;

- termination of the Asset Purchase Agreement due to a breach thereunder

11

- by the Debtors;

- any of the Debtors shall file a pleading seeking to vacate or modify the Interim Order or the Final Order over the objection of the DIP Lender or the Prepetition Secured Party;

- entry of an order without the prior written consent of the DIP Lender and the Prepetition Secured Party amending, supplementing or otherwise modifying the Interim Order or the Final Order;

- reversal, vacatur or stay of the effectiveness of the Interim Order or the Final Order except to the extent reversed within five (5) Business Days;

- any violation of any material term of the Interim Order or the Final Order by the Debtors;

- dismissal of the Chapter 11 Case of a Debtor with material assets or conversion of the Chapter 11 Case of a Debtor with material assets to a case under Chapter 7 of the Bankruptcy Code, or any Debtor shall file a motion or other pleading seeking such dismissal or conversion of any of the Chapter 11 Cases;

- appointment of a Chapter 11 trustee or examiner with enlarged powers, or any Debtor shall file a motion or other pleading seeking such appointment;

- any sale of all or substantially all assets of the Debtors pursuant to Section 363 of the Bankruptcy Code, unless such sale is conducted in accordance with the Bid Procedures;

- failure to meet a Milestone, unless extended or waived by the prior written consent of the DIP Lender and the Prepetition Secured Party;

- the Debtors' filing of (or supporting another party in the filing of) a motion seeking entry of, or the entry of an order by the Bankruptcy Court, granting any superpriority claim or lien (except as contemplated herein) which is senior to or *pari passu* with the DIP Claims or the Adequate Protection Obligations;

- an order shall be entered in any of the Chapter 11 Cases, without the prior written consent of the DIP Lender: (i) to permit any administrative expense or any claim (now existing or hereafter arising of any kind or nature whatsoever) to have administrative priority equal or superior to the DIP Claims or the Adequate Protection Obligations (other than the Carve Out) or (ii) granting or permitted grant of a lien that is equal in priority or senior to the DIP Liens or the Adequate Protection Liens (other than the Carve Out);

- the Debtors' filing of a motion seeking entry of an order approving any key employee incentive plan, employee retention plan, or comparable plan, without the prior written consent of the DIP Lender;

- cessation of the DIP Liens, Adequate Protection Obligations, or the DIP Claims to be valid, perfected and enforceable in all respects;

- Permitted Variances under the Budget are exceeded for any period of time without consent of or waiver by the DIP Lender and the Prepetition

        Secured Party;

- subject to entry of the Final Order, the allowance of any claim or claims under Section 506(c) of the Bankruptcy Code or otherwise against any DIP Lender or the Prepetition Secured Party;

- an order shall have been entered by the Bankruptcy Court prohibiting, limiting or restricting the right of the DIP Lender to credit bid for any or all of the Debtors' assets; and

- the payment of any prepetition claim other than (i) as consented to by the DIP Lender and the Prepetition Secured Party, (ii) as authorized by the Budget, (iii) permitted under the terms of the DIP Credit Agreement or (iv) as authorized by the Bankruptcy Court pursuant to the "first day" or "second day" orders or the Interim Order or the Final Order and reflected in the Budget.

**Termination:** Upon the occurrence and during the continuance of an Event of Default, the DIP Lender or the Prepetition Secured Party, as applicable, shall, by written notice to Borrowers, its counsel, the U.S. Trustee and counsel for any statutory committee, terminate the DIP Facility or consent to use cash collateral, declare the obligations in respect of the DIP Facility to be immediately due and payable and, subject to the immediately following paragraph, exercise all rights and remedies under the DIP Loan Documents, the Interim Order, and the Final Order.

**Remedies:** The DIP Lender and the Prepetition Secured Party shall have customary remedies upon the occurrence and during the continuance of an Event of Default, including, without limitation, the following:

Without further order from the Bankruptcy Court, and subject to the terms of the Interim Order and the Final Order (including in respect of any required notices), the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Lender and Prepetition Secured Party, as applicable, to exercise, upon the occurrence and during the continuance of any Event of Default under the respective DIP Loan Documents, all rights and remedies provided for in the DIP Loan Documents, and to take any or all of the following actions without further order of or application to the Bankruptcy Court (as applicable): (i) in the case of the Prepetition Secured Party, (a) withdraw its consent to the Debtors' continuing use of Cash Collateral and (b) set-off any amounts held in Cash Collateral, including, without limitation, in any Cash Collateral account maintained with the Prepetition Secured Party (subject to the rights of the DIP Lender and such rights held by the DIP Lender shall be *pari passu* with all such rights granted to the Prepetition Secured Party herein); and (ii) in the case of the DIP Lender, (a) immediately terminate the Debtors' limited use of any Cash Collateral; (b) cease making any DIP Loan under the DIP Facility to the Debtors; (c) declare all DIP Obligations to be immediately due and payable; (d) immediately set-off any and all amounts in accounts maintained by the Debtors with the DIP Lender against the DIP Obligations, or otherwise enforce any and all rights against the DIP Collateral in the

13

|  |  |
|---|---|
|  | possession of any of the applicable DIP Lender, including, without limitation, disposition of the DIP Collateral solely for application towards the DIP Obligations (subject to the rights of the Prepetition Secured Party and such rights held by the Prepetition Secured Party shall be *pari passu* with all such rights granted to the DIP Lender herein); and (e) take any other actions or exercise any other rights or remedies permitted under the Interim Order and the Final Order, the DIP Loan Documents or applicable law to effect the repayment of the DIP Obligations *pari passu* with the Prepetition Senior Obligations; provided, however, that the DIP Lender and the Prepetition Secured Party, as applicable, must provide the Debtors with five (5) calendar days' written notice (which may be by email) before exercising any enforcement rights or remedies; provided, further, that neither the Debtors, any statutory committee nor any other party-in-interest shall have the right to contest the enforcement of the remedies set forth in the Interim Order and the Final Order and the DIP Loan Documents.  The Debtors shall cooperate fully with the DIP Lender and the Prepetition Secured Party in their exercise of rights and remedies, whether against the DIP Collateral or otherwise.  |
|  | The Debtors shall waive any right, without the prior written consent of the DIP Lender and the Prepetition Secured Party, to seek relief under the Bankruptcy Code, including under section 105 thereof, to the extent such relief would restrict or impair the rights and remedies of the DIP Lender and the Prepetition Secured Party set forth in the Interim Order and the Final Order and in the DIP Loan Documents. |
| **Marshalling and Waiver of 506(c) and 552(b) Claims:** | Effective upon entry of the Final Order, the DIP Lender and the Prepetition Secured Party shall not be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral and all proceeds shall be received and applied pursuant to the Final Order and the DIP Loan Documents notwithstanding any other agreement or provision to the contrary. |
|  | Effective upon entry of the Final Order, the Debtors (on behalf of themselves and their estates) shall waive, and shall not assert in the Chapter 11 Cases or any successor cases, (i) any surcharge claim under sections 105(a) and/or 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the DIP Lender and the Prepetition Secured Party upon the DIP Collateral and (ii) the DIP Lender and the Prepetition Secured Party shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender and the Prepetition Secured Party with respect to proceeds, product, offspring or profits of any of the DIP Collateral. |
| **Expenses** | The Borrowers shall jointly and severally pay (i) (x) all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of the DIP Lender (including, but limited in the case of counsel, to all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of the DIP Lender's counsels,  and, to the extent necessary, one firm of local counsel engaged by the DIP Lender in connection with the Debtors' Chapter 11 Cases, and any successor counsel |

14

|  |  |
|---|---|
|  | to each), in each case in connection with the negotiations, preparation, execution and delivery of the DIP Loan Documents and the funding of all DIP Loan under the DIP Facility, including, without limitation, all due diligence, transportation, computer, duplication, messenger, audit, insurance, appraisal, valuation and consultant costs and expenses, and all search, filing and recording fees, incurred or sustained by the DIP Lender and its counsels and professional advisors in connection with the DIP Facility, the DIP Loan Documents or the transactions contemplated thereby, the administration of the DIP Facility and any amendment or waiver of any provision of the DIP Loan Documents, and (ii) without duplication, all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of the DIP Lender (including, but limited in the case of counsels, to all reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of outside counsels to the DIP Lender (and any successor counsel), and, to the extent necessary, one firm of local counsel engaged by the DIP Lender in each relevant jurisdiction, and any successor counsel to such primary counsel and local counsel, in each case in connection with (A) the enforcement of any rights and remedies under the DIP Loan Documents, (B) the Chapter 11 Cases, including attendance at all hearings in respect of the Chapter 11 Cases; and (C) defending and prosecuting any actions or proceedings arising out of or relating to the DIP Obligations, the Liens securing the DIP Obligations, or any transaction related to or arising in connection with the DIP Credit Agreement or the other DIP Loan Documents. |
| **Indemnification:** | The Debtors shall jointly and severally indemnify and hold harmless the DIP Lender and each of its affiliates and each of their respective officers, directors, employees, controlling persons, agents, advisors, attorneys and representatives of each (each, an "Indemnified Party") from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, fees and disbursements of counsel), joint or several, that may be incurred by or asserted or awarded against any Indemnified Party, in each case arising out of or in connection with or relating to any investigation, litigation or proceeding or the preparation of any defense with respect thereto, arising out of or in connection with or relating to the DIP Facility, the DIP Loan Documents or the transactions contemplated thereby, or any use made or proposed to be made with the DIP Proceeds, whether or not such investigation, litigation or proceeding is brought by any Debtor or any of its subsidiaries, any shareholders or creditors of the foregoing, or any other third party, an Indemnified Party or any other person, or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby or under the DIP Loan Documents are consummated, except, with respect to any Indemnified Party, to the extent such claim, damage, loss, liability or expense is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Party's gross negligence or willful misconduct or any of such Indemnified Party's affiliates or their respective principals, directors, officers, employees, representatives, agents, attorneys or third party advisors.  No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to any Debtor or any of its subsidiaries or any shareholders or creditors of the foregoing for or in connection with the transactions |

15

contemplated hereby, except, with respect to any Indemnified Party, to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Party's gross negligence or willful misconduct or any of such Indemnified Party's affiliates or their respective principals, directors, officers, employees, representatives, agents, attorneys or third party advisors. In no event, however, shall any Indemnified Party be liable on any theory of liability for any special, indirect, consequential or punitive damages.

| | |
|---|---|
| **Assignments and Participations:** | No consent of the Borrowers shall be required for any assignments of the rights under the DIP Facility to a US subsidiary of the DIP Lender. |
| **Governing Law:** | Except as governed by the Bankruptcy Code, the law of the State of Delaware. |
| **Counsel to the DIP Lender:** | Cooley LLP |
| **Local Counsel to the DIP Lender:** | Morris, Nichols, Arsht & Tunnell LLP |
| **Counsel to the Debtors:** | Young Conaway Stargatt & Taylor, LLP |