## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WINC, INC., *et al.*,[1]<br><br>　　　　　　Debtors. | Chapter 11<br><br>Case No. 22-11238 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: N/A**<br>**Objection Deadline: N/A** |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER SHORTENING THE NOTICE PERIOD FOR THE DEBTORS' MOTION FOR ENTRY OF (A) AN ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF ASSETS OF THE DEBTORS AND RELATED BID PROTECTIONS, (II) APPROVING FORM AND MANNER OF NOTICE, (III) SCHEDULING AUCTION AND SALE HEARING, (IV) AUTHORIZING PROCEDURES GOVERNING ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND UNEXPIRED LEASES, AND (V) GRANTING RELATED RELIEF; AND (B) ORDER (I) APPROVING PURCHASE AGREEMENT, AND (II) AUTHORIZING SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS**

The above-captioned affiliated debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors"), having contemporaneously filed herewith the *Debtors' Motion for Entry of (A) an Order (I) Approving Bidding Procedures in Connection with Sale of Assets of the Debtors and Related Bid Protections, (II) Approving Form and Manner of Notice, (III) Scheduling Auction and Sale Hearing, (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Leases, and (V) Granting Related Relief; and (B) Order (I) Approving Purchase Agreements, and (II) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests* (the "Motion"),[2] hereby submit this motion (this "Motion to Shorten"), pursuant to section 105(a) of title 11 of the United States Code (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A). The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

29917575.2

"Bankruptcy Code"), Rule 9006(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), requesting that the Court enter an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) shortening the time for notice of the hearing to consider approval of the Motion so that it may be heard at the hearing scheduled for **December 22, 2022 at 10:00 a.m. (ET)** (the "Hearing"), and (ii) setting a deadline of **December 16, 2022 at 4:00 p.m. (ET)** (the "Objection Deadline") for objections or responses to the relief requested in the Motion. In support of this Motion to Shorten, the Debtors incorporate by reference the *Declaration of Carol Brault in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration"), and respectfully states as follows:

1. Local Rule 9006-1(c)(i) provides that "Sale Procedure Motions . . . must be filed at least twenty-one (21) days prior to the hearing date." Del. Bankr. L.R. 9006-1(c)(i). Pursuant to Local Rule 9006-1(e), such period may be shortened by order of the Court upon written motion "specifying the exigencies justifying shortened notice." Del. Bankr. L.R. 9006-1(e). Moreover, according to Bankruptcy Rule 9006(c), "the court for cause shown may in its discretion with or without motion or notice order the period reduced." Fed. R. Bankr. P. 9006(c)(1). In exercising such discretion, the Court should "consider the prejudice to parties entitled to notice and weigh this against the reasons for hearing the motion on an expedited basis." *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 172 (3d Cir. 2012) (noting the commonness of motions to shorten "[g]iven the accelerated time frame of bankruptcy proceedings"). The Debtors submit there is sufficient cause justifying shortened notice for the hearing on the Motion so that it may be heard at the Hearing.

2. As discussed at length during the "first day" hearing held on December 6, 2022 (the "First Day Hearing") and in the First Day Declaration, the Debtors performed an exhaustive prepetition marketing process for the sale of substantially all of their assets (the "Assets"). As early as March 2022, the Debtors retained Canaccord Genuity Group, Inc. ("Canaccord") to formulate a strategy and process for soliciting interest in the sale of the Assets as either a going concern or for portions of the Debtors' business. Canaccord crafted detailed marketing materials, assembled diligence information for a confidential electronic data room, and circulated a detailed information "teaser" to approximately forty-five (45) strategic and financial prospective purchasers. Thereafter, approximately twenty (20) interested parties performed additional diligence regarding the Debtors' operations and their assets, and various parties provided the Debtors with preliminary indications of interest.

3. In parallel, the Debtors solicited financing from various lenders. Over the course of eight (8) months, several lenders declined to provide funding. Eventually, the Debtors entered into advanced discussions with two lenders over the terms of potential financing, but neither transaction proved actionable.

4. Given the Debtors' lack of financing and limited liquidity, Canaccord informed potential purchasers that any bids for the Assets would need to include financing, which was necessary to ensure that the Debtors could fund their operations through the closing of a sale transaction. Ultimately, only one party—Project Crush Acquisition Corp LLC (the "Stalking Horse Bidder")—submitted an actionable bid for the Assets.

5. As discussed at the First Day Hearing and in the First Day Declaration, the Stalking Horse Bidder's initial proposal contemplated an acquisition of the Assets through an out-of-court merger transaction. The Debtors and the Stalking Horse Bidder agreed on the terms of the merger

transaction, subject to documentation, which included, among other things, an all-cash consideration purchase price, as well as bridge financing to ensure that the Debtors could continue to operate in the ordinary course of business through a sale closing date. However, on the eve of a deadline to finalize transaction documents, the Stalking Horse Bidder pivoted the structure of the transaction to an in-court transaction. Pursuant to those discussions, and after extensive deliberations with the Stalking Horse Bidder and the Debtors' advisors, the Debtors and the Stalking Horse Bidder agreed to the terms of debtor in possession financing and the material terms of an asset purchase agreement, subject to final documentation. Thereafter, the parties worked diligently, in parallel, to execute a financing term sheet and negotiate the final terms of an asset purchase agreement. Ultimately, the Debtors and the Stalking Horse Bidder entered into the asset purchase agreement attached to the Motion as Exhibit B. The total cash consideration for the Stalking Horse Bid is $10.0 million, subject to higher or otherwise better offers.

6. The Debtors negotiated the terms of the Stalking Horse Bid at arms'-length with the assistance of their professionals, and it will serve as a baseline from which all prospective bidders will negotiate. The Stalking Horse Bid contemplates a sale of certain unexpired contracts, inventory, and intellectual property. The Stalking Horse Bidder is responsible for paying any cure costs related to the assumption and assignment of contracts in accordance with the terms and conditions of the Stalking Horse Bid. In addition, the Stalking Horse Bid includes various customary representations and warranties by and from the Debtor and the Stalking Horse Bidder.

7. An efficient sale process on an expeditious timeline is critical, given the Debtors' liquidity constraints, to ensure that the Debtors can maximize the value of their Assets in a competitive sale process. With a tight budget and limited alternatives, the Debtors believe that shortening the amount of time that parties have to consider the Motion is necessary and that parties

in interest will not be significantly prejudiced. Approving the Motion on shortened notice will allow the Debtors to serve creditors with notice of the (a) sale and (b) contracts to be assumed by the Stalking Horse Bidder without delay. It will also ensure that potential parties in interest are aware of the bidding procedures (including bid requirements) at the outset of these cases so that parties may begin to assemble bids for submission to the Debtors as soon as possible. The Debtors anticipate that any potentially interested bidders will have been aware of the Assets from the Debtors' prepetition marketing process, discussed above, and have had a substantial opportunity to access information about the Debtors' operations and the Assets.

8. Finally, the Debtors submit that the Debtors' agreement to certain milestones, including entry of a bid procedures order on or before December 22, 2022, was a condition precedent to the Stalking Horse Bidder providing a bid and the financing to support the sale process, and meeting those milestones is important to ensure that the Debtors can continue to fund the chapter 11 cases to maximize the value of the Assets.

9. To compensate for the reduced notice period, the Debtors will serve the Motion by email and overnight delivery on the following parties: (a) the U.S. Trustee; (b) counsel to the DIP Lender; (c) counsel to the Prepetition Secured Lender; (d) all persons known or reasonably believed to have asserted an interest in the Assets within the last six months; (e) the Attorneys General in the State(s) where the Assets are located; (f) all federal, state, and local taxing authorities in the State(s) where the Assets are located; (g) all parties who have asserted liens against the Assets; and (h) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

10. Based on the foregoing, the Debtors submit that (a) cause exists to justify shortening the notice period for the hearing on the Motion; and (b) notice to the parties identified

in the preceding paragraph will be adequate and sufficient given the exigent circumstances. Accordingly, the Debtors request that Motion be heard on shortened notice at the Hearing, with objections due by the Proposed Objection Deadline.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Dated: December 7, 2022<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Allison S. Mielke*<br>Michael R. Nestor (No. 3526)<br>Matthew B. Lunn (No. 4119)<br>Allison S. Mielke (No. 5934)<br>Joshua B. Brooks (No. 6765)<br>Shella Borovinskaya (No. 6758)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: mnestor@ycst.com<br>       mlunn@ycst.com<br>       amielke@ycst.com<br>       jbrooks@ycst.com<br>       sborovinskaya@ycst.com<br><br>*Proposed Counsel to the Debtors and Debtors in Possession* |