**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** <br> January 6, 2023 at 2:00 p.m. (ET) |
| | **Objection Deadline:** <br> December 30, 2022 at 4:00 p.m. (ET) |

**DEBTORS' FIRST OMNIBUS MOTION FOR ENTRY OF AN ORDER AUTHORIZING (I) REJECTION OF (A) CERTAIN UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY AND (B) CERTAIN EXECUTORY CONTRACTS EFFECTIVE AS OF THE REJECTION DATES AND (II) ABANDONMENT OF ANY REMAINING PROPERTY LOCATED AT THE PREMISES**

> **EACH LESSOR OR LESSEE RECEIVING THIS MOTION SHOULD LOCATE ITS NAME AND LEASE IN THE SCHEDULE ATTACHED TO THE PROPOSED ORDER AS SCHEDULE 1**
>
> **EACH CONTRACT COUNTERPARTY RECEIVING THIS MOTION SHOULD LOCATE THEIR RESPECTIVE NAMES AND CONTRACT DESCRIPTION IN THE SCHEDULE ATTACHED TO THE PROPOSED ORDER AS SCHEDULE 2.**

The above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (this "Motion") for the entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 365(a), and 554 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to (i) reject, effective as of the Rejection Dates (as defined below), certain unexpired leases and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A). The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

executory contracts, including any amendments or modifications thereto, which the Debtors have determined, in their business judgment, should be rejected and (ii) abandon property remaining at any location covered by an unexpired lease that the Court authorizes the Debtors to reject pursuant to this Motion.  In support of this Motion, the Debtors rely on the *Declaration of Carol Brault in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration").[2]  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief requested herein are sections 105(a), 365(a), and 554 of the Bankruptcy Code, and Bankruptcy Rule 6004.

## BACKGROUND

**A.    General Background**

3. On November 30, 2022 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

29915697.2

The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On December 12, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of general unsecured creditors (the "Committee") in the Chapter 11 Cases. *See* Docket No. 54. No request has been made for the appointment of a trustee or an examiner.

4. Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the First Day Declaration.

**B.      Rejection of the Unexpired Leases**

  *i.      Lease Agreements*

5. The Debtors are party to certain lease agreements, whereby the Debtors lease certain property located at (i) 1745 Berkeley Street, Santa Monica, CA 90404; (ii) 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404; and (iii) 5340 Alla Road, Los Angeles, CA 90066 (collectively, the "Premises") for use as their main office and other commercial purposes. The Debtors have determined that they will not require use of the Premises after the Lease Rejection Date (as defined below). Accordingly, the Debtors have determined in their business judgment that it is in their best interests to reject the unexpired leases of nonresidential real property relating to the Premises (including any amendments or modifications thereto, the "Lease Agreements", and together with the Sublease Agreements (as defined below), the "Rejected Leases"), effective as of December 31, 2022 (the "Lease Rejection Date"), thereby avoiding the potential incurrence of additional expense associated with Premises that are of no value to the Debtors and their estates.

6. The Debtors informed the counterparties to the Lease Agreements (the "Landlords") of their intent to unequivocally surrender the Premises to the Landlords as of the Lease Rejection Date, and will, on or before the Lease Rejection Date, turnover the Premises to

29915697.2

the Landlords, including, as applicable, turning over to the Landlords or their representative any keys to the Premises in the Debtors' possession and/or directing the Landlords to terminate all badge or other electronic access privileges of the Debtors, their employees, and the Sublessees (as defined below).

    *ii.*    *Sublease Agreements*

7. Prior to the filing of the Chapter 11 Cases, the Debtors executed certain agreements (the "Sublease Agreements") to sublet portions of the Premises to other parties. The Debtors have advised the non-Debtor counterparties to the Sublease Agreements (together, the "Sublessees") that the Debtors intend to reject the Lease Agreements, and, as a consequence, the Sublease Agreements. Absent authority under a Lease Agreement to possess any of the Premises, the Debtors could not maintain any Sublease Agreements with the Sublessees. Accordingly, the Debtors have asked the Sublessees to surrender possession of any Premises that they occupy to the Debtors, including, as applicable, turning over to the Debtors any keys to the Premises in the Sublessees' possession pursuant to the Sublease Agreements.

**C.**    **Rejection of Executory Contracts**

8. The Debtors have entered into certain agreements in the ordinary course of their business, including, but not limited to, agreements for consultation, investor relations communication services, marketing and other services, and master services agreements, among others. Continued performance by the Debtors under these agreements is no longer necessary or beneficial to the Debtors' ongoing business. Included among such agreements are those executory contracts set forth on **Schedule 2** to the Proposed Order (collectively, including any amendments, supplements, or modifications thereto, the "Rejected Contracts", and together with the Rejected Leases, the "Rejected Agreements"). The Debtors have determined to immediately reject the Rejected Contracts, effective as of December 16, 2022 (together with the Lease Rejection Date,

29915697.2

4

the "Rejection Dates"), to avoid potentially incurring further costs and expenses that would only undermine the Debtors' efforts to maximize value of the Debtors' assets for the benefit of their stakeholders.

D.  **Abandonment of Any Remaining Property at the Premises**

9.  As part of the process of vacating the Premises that are the subject of the Rejected Leases, the Debtors removed any property that had more than *de minimis* value.  However, there may remain certain personal property at the Premises (collectively, the "Remaining Property").  The Debtors expect that it will be difficult or expensive to remove and/or store the Remaining Property, relative to its value, such that the economic benefits of removing and/or storing some or all of the Remaining Property will be exceeded by the attendant costs thereof.  The Debtors intend to abandon the Remaining Property when they abandon and surrender the Premises on the Lease Rejection Date; and, accordingly, the Debtors request the Court's approval to do so effective as of the Lease Rejection Date.

## RELIEF REQUESTED

10.  By this Motion, the Debtors request entry of the Proposed Order authorizing and approving the Debtors' (i) rejection of the Rejected Agreements effective as of the applicable Rejection Dates and (ii) abandonment of any Remaining Property located at the Premises.

## BASIS FOR RELIEF REQUESTED

A.  **Rejection of the Rejected Agreements Is Authorized by Section 365(a) of the Bankruptcy Code**

11.  Section 365(a) of the Bankruptcy Code provides that a trustee or debtor in possession, "subject to the court's approval may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 (3d Cir. 1992).  "This provision allows a trustee to relieve the bankruptcy estate of burdensome

29915697.2

5

agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (quoting *Phoenix Exploration, Inc. v. Yaquinto (In re Murexco Petroleum, Inc.)*, 15 F.3d 60, 62 (5th Cir. 1994)).

12. The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the trustee. *See NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *Delightful Music Ltd. v. Taylor (In re Taylor)*, 913 F.2d 102, 107 (3d Cir. 1990); *see also Computer Sales Int'l, Inc. v. Fed. Mogul (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Global Holdings*, 290 B.R. 507, 511 (Bankr. D. Del. 2003). The business judgment standard mandates that a court approve a trustee's business decision unless the decision is the product of bad faith, whim, or caprice. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Fed. Mogul Global, Inc.*, 293 B.R. at 126 (court should approve a debtor's decision to reject a contract unless the decision is the product of bad faith or a gross abuse of discretion); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) ("[C]ourt approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course.").

13. Rejection of an executory contract or unexpired lease is appropriate where rejection of the contract or lease would benefit the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir. 1989). The standard for rejection is satisfied when a trustee or debtor has made a business determination that rejection will benefit the estate. *See Com. Fin., Ltd. v. Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.)*, 47 B.R. 425, 427 (D. Haw. 1985) ("Under the business judgment test, a court should approve a debtor's proposed rejection if

such rejection will benefit the estate."). Accordingly, if the trustee's or debtor's business judgment has been reasonably execised, a court should approve the assumption or rejection of an executory contract or an unexpired lease. *See, e.g.*, *Bildisco & Bildisco*, 465 U.S. at 523; *In re Fed. Mogul Global, Inc.*, 293 B.R. at 126.

14. A court may permit such retroactive rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition administrative or other expenses. *See Bildisco & Bildisco*, 465 U.S. at 523 (stating that rejection relates back to the petition date); *Thinking Machs. V. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("In the section 365 context . . . bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation."); *Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC)*, 297 B.R. 133, 140 (D. Col. 2003) (holding that a bankruptcy court "has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *In re Amber's Stores*, 193 B.R. 819, 827 (N.D. Tex. 1996); *Constant Ltd. P'ship v. Jamesway Corp. (In re Jamesway Corp.)*, 179 B.R. 33, 37–38 (S.D.N.Y. 1995) (affirming bankruptcy court's retroactive approval of lease rejection).

15. Courts in this jurisdiction have previously considered the question of retroactive rejection of unexpired leases. *See In re Namco Cybertainment, Inc.*, Case No. 98-00173 (PJW) (Bankr. D. Del. Feb. 6, 1998). In *Namco*, the court permitted retroactive rejection on the conditions that (a) the property (and the keys thereto) subject to a lease were surrendered with an unequivocal statement of abandonment to the landlord or lessor; (b) the motion was filed and served on the landlord or lessor; (c) the official committee consented to the relief requested in the motion; and (d) the debtor acknowledged that it would not have the right to withdraw the motion prior to the hearing.

29915697.2

16. Here, the Debtors seek to reject the Rejected Leases, pursuant to section 365(a) of the Bankruptcy Code, to avoid the incurrence of any additional, unnecessary expenses related thereto.

17. The Debtors no longer derive any meaningful benefit under any of the Rejected Leases. Specifically, the Debtors have operated their business largely on a remote basis and therefore no longer require the use of their headquarters. In addition, the Debtors do not substantially benefit from their Sublease Agreements and have determined that is no longer prudent to continue to administer those agreements and potential incur administrative expenses as a result thereof. Therefore, the Debtors will vacate the Premises to the Landlords, and the Debtors will turn over to the Landlords, or their representatives, any keys to the Premises in the Debtors' possession, and will also advise the Landlords to terminate all badge or other electronic access privileges of the Debtors and their employees. Further, the Debtor will advise the Sublessees to vacate the Premises and turn over their means of accessing the Premises to the Debtors. As a result, as of the Rejection Date, the Rejected Leases and will have no value to the Debtors' estates. Additionally, this Motion, which is being served on the counterparties to the Rejected Leases by overnight mail and by e-mail, is a statement to such Landlords and Sublessees that the Debtors are unequivocally terminating their interests in the Rejected Leases (and underlying leasehold) as of the Lease Rejection Date.

18. Similarly, the Debtors have analyzed each of the Rejected Contracts, and have determined that such agreements do not provide the Debtors any material benefit, and should be immediately rejected to cut off the potential incurrence of additional administrative cost or expense.

29915697.2

19. The facts and circumstances of the Chapter 11 Cases and the balance of the equities favor the Debtors' rejection of the Rejected Contracts effective as of the applicable Rejection Dates. Without a retroactive date of rejection, the Debtors may incur unnecessary administrative charges. Moreover, the counterparties to the Rejected Contracts will not be unduly prejudiced if the Rejected Contracts are rejected effective as of the Rejection Dates because the Debtors will serve this Motion on the each counterparty or its agent or representative by overnight delivery and, if possible, electronic mail, stating that the Debtors intend to reject the Rejected Contracts.

20. Therefore, as it is in the Debtors' and their estates' interests to eliminate the potential incurrence of administrative expenses, and to avoid the potential accrual of any further obligations under the Rejected Agreements, the Debtors respectfully submit that the retroactive rejection of the Rejected Agreements effective as of the Rejection Date is appropriate.

**B.    Abandonment of Any Remaining Property Located at the Premises Is Authorized by Section 554(a) of the Bankruptcy Code**

21. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see also Hanover Ins. Co. v. Tyco Indus., Inc.,* 500 F.2d 654, 657 (3d Cir. 1974) ("[A trustee] may abandon his claim to any asset, including a cause of action, he deems less valuable than the cost of asserting that claim."). *See, e.g., In re Contract Research Sols., Inc.,* Case No. 12-11004, 2013 WL 1910286, at *4 (Bankr. D. Del. May 1, 2013) ("[A debtor] need only demonstrate that [it] has exercised sound business judgment in making the determination to abandon."). The right to abandon property is virtually unfettered, unless (a) abandonment of the property will contravene laws designed to protect public health and safety, or (b) the property poses an imminent threat to the public's welfare. *See In re*

29915697.2

9

*Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986).  Neither of these limitations is relevant under the instant facts.

22. Any Remaining Property left at the Premises when the Debtors surrender the Premises to the Landlords will be either of inconsequential value to the Debtors' estates or the costs to the Debtors of retrieving, marketing, and reselling the Remaining Property would exceed the recoveries, if any, that the Debtors and their estates could reasonably obtain in exchange for such property.  The Debtors intend to abandon the Remaining Property when the Debtors vacate the Premises and, therefore, will claim no interest in the Remaining Property as of the Lease Rejection Date.

23. Accordingly, the Debtors have determined, in the exercise of their sound business judgment, that abandonment of any interest the Debtors have in the Remaining Property at the Premises as of the Lease Rejection Date is in the best interest of the Debtors, their estates, and their creditors.

## **REQUEST FOR WAIVER OF STAY**

24. To implement the foregoing, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

25. To implement the foregoing immediately, the Debtors also respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent that they are deemed applicable.

29915697.2

## DEBTORS' RESERVATION OF RIGHTS

26. The Debtors may have claims against parties arising under, or independently of, the Rejected Agreements. The Debtors do not waive such claims by the filing of this Motion or by the rejection of the Rejected Agreements. Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors or a waiver of the Debtors' rights to dispute any claim, and nothing shall prejudice any party's rights to assert that any of the Rejected Agreements are not, in fact, executory within the meaning of Bankruptcy Code section 365.

## NOTICE

27. The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) proposed counsel to the Committee; (iii) counsel to the Debtors' prepetition secured lender; (iv) counsel to the DIP Lender; (v) the counterparties under the Rejected Agreements and their counsel, if known; and (vi) all parties that, as of the filing of this Motion, have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully submit that, in light of the foregoing facts and circumstances, effective as of the Rejection Dates, rejection of the Rejected Agreements in each case and abandonment of any Remaining Property located at the Premises, is necessary, prudent, and in the best interest of the Debtors, their estates, their creditors, and all other parties in interests, and respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: December 16, 2022
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Joshua B. Brooks*
Michael R. Nestor (No. 3526)
Matthew B. Lunn (No. 4119)
Allison S. Mielke (No. 5934)
Joshua B. Brooks (No. 6765)
Shella Borovinskaya (No. 6758)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: mnestor@ycst.com
    mlunn@ycst.com
    amielke@ycst.com
    jbrooks@ycst.com
    sborovinskaya@ycst.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

29915697.2