**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date**: **January 6, 2023 at 2:00 p.m. (ET)** |
| | **Objection Deadline**: **December 30, 2022 at 4:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
THE EMPLOYMENT AND RETENTION OF RPA ASSET MANAGEMENT
SERVICES, LLC AS FINANCIAL ADVISOR TO THE DEBTORS,
EFFECTIVE AS OF THE PETITION DATE**

The above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 cases (the "Chapter 11 Cases") respectfully submit this application (this "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the Debtors to retain and employ RPA Asset Management Services, LLC ("RPA") as their financial advisor, effective as of the Petition Date (as defined below).  In support of this Application, the Debtors submit the declaration of John

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A).  The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

Policano (the "Policano Declaration"), attached hereto as **Exhibit B**, and respectfully state as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and, under Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of the Chapter 11 Cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2.

**BACKGROUND**

3.      On November 30, 2022 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On December 12, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of general unsecured creditors (the "Committee").  *See* Docket No. 54.  No request has been made for the appointment of a trustee or examiner.

29914336.3

4.      Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Carol Brault in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 15], which is incorporated herein by reference.

## RELIEF REQUESTED

5.      By this Application, the Debtors request entry of the Proposed Order authorizing the Debtors to employ and retain RPA as their financial advisor in the Chapter 11 Cases, effective as of the Petition Date, pursuant to the terms and conditions contained in the engagement letter, dated as of November 4, 2022, by and between the Debtors and RPA (the "Engagement Letter"),[2] a copy of which is attached hereto as **Exhibit C**.

## RPA'S QUALIFICATIONS

6.      RPA is a full-service financial advisory and restructuring firm that provides services to debtors, creditors' committees, equity owners, secured creditors, and other parties in interest.   RPA has lead turnaround management teams for hundreds of clients, from small businesses to Fortune 500 companies.  The Debtors seek to retain RPA because of RPA's extensive experience and knowledge in the field of financial advisory services.   RPA has been actively involved in major chapter 11 cases and has represented debtors-in-possession and official committees of unsecured creditors in many cases, including among others: *In re Pyxus Int'l, Inc.*, Case No. 20-11570 (LSS) (Bankr. D. Del. 2020); *In re Rentech WP U.S. Inc.*, Case No. 17-12958 (Bankr. D. Del. Jan. 29, 2018); *In re Lightning Dock Geothermal HI-01, LLC*, Case No. 17-10567 (Bankr. D.N.M. July 18, 2017); *In re Texas Pellets, Inc.*, Case No. 16-90126 (Bankr. E.D. Tex.

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

May 23, 2017); *In re Solar Trust of America, LLC*, Case No. 12-11136 (Bankr. D. Del. April 20,

2012); and *In re New Energy Corp.*, Case No. 12-33866 (Bankr. N.D. Ind. Nov. 9, 2012).

7.      RPA's professionals have significant restructuring experience across many

industries and have provided advisory services to lenders, companies, and investors.  RPA's senior

professionals average over fifteen (15) years of experience working with lenders, companies, and

investors.  Their wide scope of services include financial restructuring, transaction advisory,

turnaround management, asset wind down/liquidation, litigation support, and forensic accounting

services.  RPA professionals have been involved in a number of significant bankruptcy

proceedings, representing both debtors and creditor constituencies.  RPA and the professionals it

employs are well qualified to represent the Debtors in the matters for which RPA is proposed to

be employed.

8.      Accordingly, RPA is well qualified and has the necessary background and relevant

experience required to assist the Debtors in the Chapter 11 Cases.

## SCOPE OF SERVICES[3]

9.      The Debtors seek to retain and employ RPA as their financial advisor during the

Chapter 11 Cases to provide the following services, as reasonably requested, by the Debtors:

> (a)      assisting the Debtors and their legal counsel in preparing any pleadings, motions or other document(s) to be filed in the Chapter 11 Cases;
>
> (b)      reviewing and revising, as necessary, financial related disclosures prepared by the Debtors and required by the Court, including but not limited to Schedules of Assets and Liabilities, Statement of Financial Affairs, and Monthly Operating Reports;
>
> (c)      analyzing creditor claims by type, entity, and individual claims;
>
> (d)      assisting in evaluating avoidance actions;

---

[3] To the extent this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter (as modified by the Order) shall control.

29914336.3

4

(e)     assisting with asset sales through a 363 sale or through a chapter 11 plan, if appropriate;

(f)     assisting with any other filings as required by the Court and/or U.S. Trustee; and

(g)     other services requested by the Debtors from time to time.

10.     The services that RPA will provide the Debtors are necessary to the success of the Chapter 11 Cases, and the Debtors believe that the services will not duplicate the efforts of other professionals retained by the Debtors in the Chapter 11 Cases.

## PROFESSIONAL COMPENSATION

11.     RPA's decision to accept this engagement to provide financial advisory services is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and compensated for its services and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices.

12.     In consideration of the services to be provided by RPA, as more fully described in the Engagement Letter, subject to the Court's approval, RPA intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases, pursuant to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.

13.     RPA bills its clients hourly for its fees and for out-of-pocket expenses.  RPA's hourly fees will be based on the actual hours charged at its standard hourly rates, which are in effect when the services are rendered.  RPA's current hourly rates, which are subject to periodic adjustment, are as follows:

a)     Executive Directors: $985–$1,145

b)     Consulting Staff: $405–$875

c)     Support Staff: $205

14.     In addition to compensation for professional services rendered by RPA personnel, RPA will seek reimbursement for reasonable and necessary expenses incurred in connection with the Chapter 11 Cases, including, but not limited to, costs of travel, reproduction, research, communications, outside legal counsel, and other direct expenses.

15.     The fee structure described above (the "Fee Structure") is consistent with and typical of compensation arrangements entered into by RPA and other comparable firms in connection with the rendering of similar services under similar circumstances.  The Debtors believe that RPA's compensation structure is reasonable, market-based, and designed to fairly compensate RPA for its work and to cover fixed and routine overhead expenses.

16.     RPA received a retainer in the amount of $250,000 on November 7, 2022 (the "Retainer").  On November 30, 2022, RPA applied the Retainer to its invoice for the period from November 23, 2022 through and including November 30, 2022, in the amount of $73,479.16. After doing so, RPA continues to hold a Retainer in the amount of $176,520.84, which will constitute a general security retainer for postpetition services and expenses.

### DISINTERESTEDNESS

17.     As set forth in the Policano Declaration, RPA has reviewed its electronic database and, to the best of its knowledge and except to the extent disclosed in the Policano Declaration, RPA (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, (b) does not hold or represent an interest adverse to the Debtors estates, and (c) has no connection to the Debtors, their creditors or their related parties that would compromise RPA's disinterestedness.

18.     RPA will periodically review its files during the pendency of the Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  To the extent that RPA discovers any new relevant facts or relationships bearing on the matters described herein

29914336.3

during the period of RPA's retention, RPA will use reasonable efforts to promptly file a supplemental declaration.

## **INDEMNIFICATION PROVISIONS**

19.     As more fully described in **Schedule 1** to the Engagement Letter (the "Indemnification Provisions"), the Debtors have agreed to indemnify the Indemnified Persons (as defined in the Engagement Letter) against any action, claim, proceeding or investigation related to, arising out of or in connection with RPA's engagement.

20.     Notwithstanding the Indemnification Provisions set forth in the Engagement Letter, the Debtors' indemnification of Indemnified Persons shall be subject to the provisions of the subparagraphs below:

(a)     The Indemnified Persons shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services other than the services provided under the Engagement Letter, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court;

(b)     Notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify any Indemnified Person, or provide contribution or reimbursement to any Indemnified Person, for any claim or expense to the extent it is either:  (i) judicially determined (that determination having become final) to have arisen from an Indemnified Person's gross negligence, willful misconduct, fraud or bad faith; (ii) for a contractual dispute in which the Debtors allege the breach of an Indemnified Person's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii) above, but determined by the Court, after notice and a hearing, to be a claim or expense for which an Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by the Order;

(c)     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Chapter 11 Cases, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification,

contribution, and/or reimbursement obligations under the Engagement Letter (as modified by the Order), including the advancement of defense costs, the Indemnified Person must file an application therefor in the Court, and the Debtors may not pay any such amounts to any Indemnified Person before the entry of an order by the Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by the Indemnified Persons for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Persons.  All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution or reimbursement; and

(d)    Any limitation on liability pursuant to the terms of the Engagement Letter shall be eliminated.

21.    The Indemnification Provisions are comparable to those generally obtained by financial advisory firms of similar stature to RPA and for comparable engagements, both in and out of court and, as modified by the Order, reflect the qualifications and limits on the indemnification provisions that are customary in this district and others.

## **BASIS FOR RELIEF**

22.    The Debtors seek authority to retain and employ RPA as their financial advisor under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).  Furthermore, Bankruptcy Rule 2014 provides, in relevant part, that "[a]n order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to

§ 327 . . . of the Code shall be made only on application of the trustee or committee." Fed. R. Bankr. P. 2014.

23.    In addition, the Debtors seek approval of the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that debtors, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Accordingly, section 328(a) of the Bankruptcy Code permits the compensation of professionals, including financial advisors, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done.  That uncertainty continues under the present [section] 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc.  Under present [section] 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations omitted).

24.    Furthermore, under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, *including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.*

11 U.S.C. § 328(a) (emphasis added).  Section 328(a) of the Bankruptcy Code, as amended, makes clear that debtors may retain, subject to bankruptcy court approval, a professional on an hourly basis such as the Fee Structure proposed in the Engagement Letter.

25.     All of RPA's fees and expenses in the Chapter 11 Cases relating to the services described above will be subject to approval of the Court upon proper application by RPA in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, the Local Rules, any orders of the Court, the fee and expense guidelines established by the U.S. Trustee, and all other applicable requirements.  RPA will file interim and final fee applications, if and as appropriate, for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

26.     The Debtors believe that the Fee Structure appropriately reflects the nature and scope of services to be provided by RPA, RPA's substantial experience with respect to financial advisory services, and the fee structures typically utilized by RPA and other leading financial advisors.  The hours worked, the results achieved, and the ultimate benefit to the Debtors of the work performed by RPA in connection with this engagement may vary, and the Debtors have taken this into account in approving the Fee Structure.

27.     The Debtors also submit and agree that the Fee Structure has been negotiated between the parties at arm's length and was agreed upon (i) in anticipation that a substantial commitment of professional time and effort has been and will continue to be required of the RPA professionals; (ii) in light of the fact that such commitment may foreclose other opportunities for RPA; and (iii) that the actual time and commitment required of RPA and its professionals to perform the required services may vary substantially from week to week or month to month.

29914336.3

28.    For these reasons, and given the numerous issues that RPA may be required to address in the performance of its services hereunder, RPA's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for RPA's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

## NOTICE

29.    The Debtors will provide notice of this Application to: (i) the U.S. Trustee; (ii) counsel to the Committee (iii) counsel to the Debtors' prepetition secured lender; (iv) counsel to the DIP Lender; and (v) all parties that, as of the filing of this Application, have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Signature page follows]*

29914336.3

**WHEREFORE**, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper.

Dated: December 16, 2022

By: */s/ Brian Smith* _____
    Name: Brian Smith
    Title: Interim Chief Executive Officer