# EXHIBIT C

**Engagement Letter**



Effective November 4, 2022

Brian Smith
President
Winc, Inc.
1751 Berkeley St, Studio 3
Santa Monica, CA 90404

Dear Brian:

This letter confirms that RPA Asset Management Services, LLC ("RPA") has been retained by Winc, Inc. (the "Company") to provide consulting services as described below. RPA acknowledges that it is being engaged by and its work will be directed by the Board, or a representative designated by the Board as more fully set forth below (this "Agreement").

**Services**

RPA will work with the Company and continue to refine and revise the scope of services as the process moves forward. Based on our current understanding of the situation, we envision the following tasks would be included:

1. Assist the Company and its legal counsel in preparing any pleading, First Day Motions and other documents to be filed in a bankruptcy case and provide testimony in connection with hearings regarding debtor-in-possession financing and cash collateral.
2. Direct and manage the preparation of financial related disclosures required by a bankruptcy court, including but not limited to Schedules of Assets and Liabilities, Statement of Financial Affairs and Monthly Operating Reports.
3. Analyze creditor claims by type, entity, and individual claims.
4. Assist in evaluating avoidance actions.
5. Direct and manage the preparation and completion of a Plan of Reorganization, Disclosure Statement and other related filings required by the Company to effectuate an exit from bankruptcy and conclusion of the case.
6. Assist with asset sales through a 363 sale or through a chapter 11 plan if appropriate.
7. Assist with any other filings as required by the bankruptcy court and/or the Office of the U.S. Trustee.
8. Work on other items as requested and agreed by RPA and the Company.

In addition to these specific services, we understand that we will participate, at your request and to the extent appropriate, in meetings and discussions with the Board, committees of the Board, other management and professionals of the Company, representatives of creditor constituencies, potential new funding sources, and with their respective professionals. In any such discussions, the representations made and the positions advanced will be those of the Company and not of any specific or special constituencies including but not limited to directors, officers or employees.



### Work Product

We understand that we will submit our evaluations and analyses pursuant to this engagement in periodic oral and written reports. RPA will deliver the services and work product to the Company in a competent and reasonable manner.

RPA acknowledges that the Company is permitted to disclose RPA's work product to the following third parties: affiliates, lenders and potential lenders, and professional advisors (attorneys, financial advisors, accountants, auditors), whether in oral or written reports.

The Company acknowledges that all advice (written or oral) provided by RPA to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to the applicable board(s) and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without RPA's prior approval (which shall not be unreasonably withheld), except as required by law.

### Company Cooperation

In order for us to perform our services, it will be necessary for our personnel to have access to certain books, records and reports of the Company, and to have discussions with its personnel.  We understand that you will provide us the necessary access to the Company's management, records and other data; limited access may restrict our ability to perform our services as previously described in this letter agreement. Accordingly, we understand that the Company has agreed to cooperate with our personnel, and to make available its personnel and any books, records and other sources from which data can be obtained.  The Company represents and warrants that any information furnished to RPA is and will be true and correct in all material respects to the best of the Company's knowledge and, when taken together with all information so provided as well as publicly available information, will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading.  The Company will promptly notify RPA if and when it becomes aware of any material change or development in the business or financial condition of the Company and amend and supplement the information provided as necessary such that it is not misleading in any material respect.

We will perform our services with the standard of care, skill and diligence normally provided by a professional entity in the performance of similar work and in a manner which, we reasonably believe, will permit the business operations of the Company to proceed in an orderly manner, subject to the requirements of this engagement; our personnel assigned to this engagement will be fully qualified to perform the services with care and diligence and may be on site as needed to review data located at the offices of the Company and to discuss matters with its personnel.  We will coordinate any on-site work or visit with you in advance. We will comply with Company's relevant site procedures, permits, and regulations and with all applicable local, state, and federal laws, codes, rules, and regulations in the performance of the services.

### Disclaimers regarding Verification, Audit, Reliance, Scope and Update

Our reports will encompass only matters that come to our attention in the course of our work that we reasonably perceive to be significant in relation to the objectives of our engagement.  Because of the time and scope limitations implicit in our engagement and the related limitations on the depth of our analyses and the extent of our verification of information, we may not discover all such matters or perceive their



significance. Accordingly, we will be unable to and will not provide assurances in our reports concerning the integrity of the information used in our analyses and on which our findings and advice to you may be based. We understand that we are not being requested to perform an audit nor to apply generally accepted auditing standards or procedures. We understand that we are entitled, in general, to rely on the accuracy and validity of the data disclosed to us or supplied to us by employees and representatives of the Company. We will not, nor are we under any obligation to, update data submitted to us or review any other areas unless you specifically request us to do so.

**Level-of-Effort**

Our work will be performed on a "level-of-effort" basis; that is, the circumstances of our engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. RPA shall promptly notify the Company if changes to the services affect the schedule, level-of-effort or fees specified for this engagement and the parties shall negotiate in good faith to make necessary adjustments.

**Client Confidentiality**

We understand that you have agreed to treat any information received from RPA, whether orally or in writing, with the utmost confidentially and, except as provided in this letter, will not publish, distribute or disclose in any manner any information developed by or received from us without our prior written approval or as required in the event of a bankruptcy filing. Such approval shall not be unreasonably withheld. Our approval is not needed if: (a) the information sought is required to be disclosed by a binding order issued by a court having competent jurisdiction (unless such order specifies that the information to be disclosed is to be placed under seal); (b) such information is otherwise publicly available; or (c) such information is shared with your affiliates, lenders and potential lenders and professional advisors (attorneys, financial advisors, accountants, auditors).

**RPA Confidentiality**

We agree that all information, not publicly available, which is received by us or our representatives from the Company (or on your behalf) in connection with this engagement, whether orally or in writing, will be treated with the utmost confidentially by RPA, and, except as provided in this letter, RPA will not publish, distribute or disclose in any manner any information developed by or received from Company without the Company's prior written approval except for information that: (a) is or becomes generally available to the public other than as a result of a breach of this Agreement; (b) was within RPA's possession prior to it being furnished to RPA by the Company; (c) was independently developed by RPA without reference to the information provided hereunder; or (d) becomes available to RPA on a non-confidential basis from a source other than the Company, provided that to RPA's knowledge, after due inquiry, such party is not bound by a confidentiality agreement with respect to such information.

**Compensation**

Unless otherwise mutually agreed to, our fees will be paid promptly by the Company based on the actual hours charged at our standard hourly rates, which are in effect when the services are rendered; our rates are revised annually on January 1st. We will also be reimbursed for our reasonable out-of-pocket expenses including, but not limited to, costs of travel, reproduction, research, communications, our legal counsel, any applicable sales or excise taxes and other direct expenses. Our current hourly rates are as follows:

3 | P a g e



| | |
|---|---|
| Executive Directors | $985-$1,145 |
| Consulting Staff | $405-$875 |
| Support Staff | $205 |

It is our policy in these cases to hold a retainer throughout the course of our engagement. Given the magnitude and scope of the requested services, we believe that a retainer of $250,000 paid on the effective date would be appropriate in this instance. The retainer will be applied to RPA's final invoice at the conclusion of the engagement and any excess retainer will be promptly refunded to the Company at that time.

**Expense Reimbursement**

The Company will reimburse RPA for actual, reasonable and documented out-of-pocket expenses (at cost) including, but not limited to, all reasonable costs of travel, lodging, meals, document production, market research, any applicable sales or excise taxes and other direct expenses. Such reimbursement shall be in addition to the other fees set forth in this agreement.

**Testimony**

It is understood that a principal or employee of RPA may be asked or required to testify at judicial proceedings relating to this matter. If RPA is requested or required to testify at a judicial proceeding related to this engagement, the Company agrees to compensate RPA at its hourly rates then in effect and will reimburse RPA for actual, reasonable out of pocket expenses. Such compensation shall be paid even in the event of a termination of this engagement.

**Engagement of Legal Counsel**

RPA will have the right to obtain independent legal counsel to obtain advice with respect to its services under this Agreement upon prior written notification to the Company of the purpose of such advice. In the event that RPA or its affiliates, members, directors, or employees' interests potentially conflict with those of the Company, RPA will retain legal counsel that will be paid at the Company's expense.

**Invoicing**

RPA will submit monthly invoices for services rendered and expenses incurred to the Company; our invoices are payable upon receipt by wire transfer in accordance with the instructions set forth on the annexed Schedule 2. RPA's invoices shall include an accounting of the hours incurred per billing individual and their respective rates, together with details of any reimbursable out-of-pocket expenses.

**Disclosure**

If access to any of the materials in our possession relating to this engagement is sought in connection with any judicial or administrative proceedings, we will promptly notify the Company of such action, tender to you our defense responding to such request and cooperate with the Company concerning our response thereto. In the event that we are subpoenaed as the result of any work performed for you in connection with this engagement, you agree that you will compensate us for our time involved in responding to such a subpoena(s) at our regular hourly rates, in effect at the time, and reimbursed for actual, reasonable out-of-pocket expenses (including reasonable counsel fees).



## Conflicts

Based on our limited review of information you have made available to us; we are not aware of any conflict of interest or relationships which would preclude us from performing the services under this Agreement. We confirm that no principal or staff member of RPA has any financial interest or business connection with the Company.

We have represented, and will in the future represent, many different clients with various business interests in numerous industries. In undertaking the services set forth under this Agreement, our objective is to provide services to you to the best of our ability, but without precluding us from representing other clients or from accepting referrals. During the term of this Agreement, we agree to update the disclosure information from time to time if and when additional material parties with an interest in or a relationship with you are identified by you, in writing, to us. As a specific condition to our undertaking this engagement, you acknowledge the potential conflicts of interest inherent in the above disclosures and waive any conflict of interest or similar claim related to such disclosures.

## Chapter 11 Proceedings

If the Company files for relief under Chapter 11 of Title 11 of the United States Code, the Board will direct the Company to promptly apply to the applicable bankruptcy court for approval of RPA's retention nunc pro tunc to the date of filing.

## Indemnification

The Company agrees to indemnify and hold harmless RPA or any of its affiliates, partners, officers, directors, shareholders, agents, employees or controlling persons as set forth in Schedule 1 attached hereto.

## Consent Regarding Hiring of RPA Employees

The Company agrees that it will not extend an offer of employment to any employee of RPA with whom you had contact in connection with this engagement for a period of one year from the date of this Agreement other than an employee who (i) has not been an employee of RPA for at least 60 days; or (ii) was terminated by RPA; provided, that nothing in this provision shall apply to any employee who responds to general mass solicitations of employment.

## Jury Trial Waiver

The Company and RPA and their assignees or successors waive a right to a jury trial in any lawsuit, proceeding, counterclaim or any other action based upon, or arising out of or in connection with the engagement of RPA or any services rendered pursuant to such engagement. The provisions of this paragraph have been fully discussed with the Company and these provisions shall be subject to no exceptions. Neither the Company nor RPA has agreed with or represented that the provisions of this section will not be fully enforced in all instances.

## Jurisdiction

Except for any causes of action or disputes which arise during the pendency of any case under the Bankruptcy Code that may be filed by the Company, the parties hereto hereby irrevocably and unconditionally: (a) agree to submit any legal action or proceedings relating to the engagement of RPA or



any services rendered pursuant to such engagement, to the exclusive general jurisdiction of the Courts of the State of New York, the Courts of the United States of America for the Southern District of New York, and appellate courts from any thereof; (b) consent that any such action or proceedings may be brought in such courts and waive any objection that it may now or hereafter have regarding the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same; (c) agree that service of process in any such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to the Company at its address set forth above or at such other address of which RPA shall have been notified pursuant hereto; (d) agree that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; (e) waives, to the maximum extent not prohibited by law, any right either party hereto may have to a claim or recover in any legal action or proceeding referred to in this subsection any special, exemplary or punitive or consequential damages; and (f) additionally agree that under no circumstances shall either party be liable for any claims or damages that exceed the aggregate amount of professional fees payable by the Company pursuant to this engagement.

**Document Policy**

In general, RPA will destroy short-term documents when no longer relevant to the related matter (such as when a draft report has been superseded or if the information is available publicly or from the Company). Ongoing client files will be retained, in either hard copy or electronic format, for six (6) months following the conclusion of our engagement, after which time the file will be scheduled for destruction. You may obtain copies of all or any portion of your file at any time prior to its destruction.

**Termination**

RPA's engagement hereunder may be terminated at any time by either RPA or the Company upon prior written notice thereof to the other party; *provided, however,* that no termination of RPA's engagement hereunder shall affect the Company's obligations to pay RPA's fees up to, and to reimburse RPA for actual, reasonable and documented fees and expenses payable or incurred prior to, the time of termination of RPA's engagement.

**Modification**

This Agreement: (a) constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among the parties with respect to the subject matter hereof, and (b) may only be modified, amended or supplemented by the written agreement of all the parties hereto.

It is our intention to work closely with you and to discuss our engagement regularly. This should facilitate our progress and serve to confirm or modify the scope of our engagement on an ongoing basis.

**Relationship of the Parties**

The Company agrees that RPA is not an employee of the Company and RPA's employees are not employees of the Company. The Parties intend that an independent contractor relationship will be created by this Agreement and the Company shall provide RPA a standard form 1099 for fees earned under this engagement.



### Limitation on Liability

Each party hereto and any of its managers, members, officers, directors, employees, agents, affiliates, successors, heirs or assigns shall not be liable to the other party hereto or to any of its equity holders for any loss or damage, except as such is finally adjudicated to be a direct result of the other party's gross negligence, willful misconduct or violation of law. Neither party will be liable for special, incidental, consequential, punitive or indirect loss or damage, including, but not limited to, lost profits, lost opportunities or lost savings, whether or not such are foreseeable, or a party has been advised of the possibility of such loss or damage. A party's liability, if any under or in relation to this agreement shall be limited in amount to the fees payable to RPA by the Company hereunder.

### Miscellaneous

This Agreement shall be binding upon RPA and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of RPA's or the Company's respective businesses and/or assets, including any trustee under Chapter 7 or 11.

### Effectiveness of this Agreement

We look forward to working with you on this matter. Please sign and return a copy of this engagement letter signifying your agreement with the terms and provisions. Upon receipt of this executed Agreement and the funding of our retainer, we will commence work. If you have any questions, please call Ned Kleinschmidt at 201-527-6650.

Respectfully submitted,

RPA Asset Management Services, LLC


Agreed by:

For RPA Asset Management Services, LLC
By: RPA Holdings, LLC its sole member

*[signature]*

Name: Ned Kleinschmidt
Manager


Agreed and acknowledged by:
For Winc, Inc

*[DocuSigned by: Brian Smith]*

Name: Brian Smith
President



# SCHEDULE 1
# INDEMNIFICATION

In the event that RPA or any of its affiliates, partners, officers, directors, shareholders, agents, employees or controlling persons (collectively, the "Indemnified Persons" and each, an "Indemnified Person") becomes involved in any capacity in any claim, action, proceeding or investigation (collectively, "Actions") brought by or against any person, including equity holders of the Company, in connection with or as a result of either RPA's engagement or any matter referred to in this agreement, the Company periodically will advance to the Indemnified Persons amounts necessary to pay their reasonable, documented, out-of-pocket legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith; provided, however, that if it is finally found (in a non-appealable judgment) by a court of competent jurisdiction that any loss, claim, judgment, damage or liability of an Indemnified Person has resulted primarily from the gross negligence or willful misconduct of such Indemnified Person in performing the services that are the subject of this Agreement, such Indemnified Person shall repay such portion of the advanced amounts that is attributable to expenses incurred in relation to the act or omission of such Indemnified Person that is the subject of such non-appealable judgment. The Company also will indemnify and hold the Indemnified Persons harmless from and against any and all losses, claims, judgments, damages or liabilities to which such Indemnified Person may become subject under any applicable law, or otherwise, that is related to, arising out of, or in connection with either RPA's engagement or any matter referred to in this agreement and without regard to the exclusive or contributory negligence of any Indemnified Person except to the extent that it is finally found (in a non-appealable judgment) that any such loss, claim, damage of liability resulted primarily from the gross negligence, willful misconduct or bad faith of the Indemnified Persons in performing the services that are the subject of this agreement.

Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which indemnity may be sought under this Agreement, such Indemnified Person shall promptly notify the Company in writing; provided that failure to so notify the Company shall not relieve the Company from any liability that the Company may have on account of this indemnity or otherwise, except to the extent the Company shall have been materially prejudiced by such failure.  The Company shall, if requested by the Indemnified Person, assume the defense of any such Action, including the employment of counsel reasonably satisfactory to the Indemnified Person.  An Indemnified Person may retain separate counsel to represent it in the defense of any Action, which shall be at the expense of the Company if: (i) the Indemnified Party does not request the Company to assume the defense of any such Action or the Company does not assume the defense of the Action within a reasonable period of time after being requested to assume the defense of the Action; or (ii) the Indemnified Person is advised by counsel in writing that there is an actual or potential conflict in the Company's and the Indemnified Person's respective interests or additional defenses are available to the Indemnified Person, which makes representation by the same counsel inappropriate; provided that in no event shall the Company be obligated to pay expenses for more than one counsel in any one jurisdiction for all Indemnified Persons in connection with any Action.



No Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its equity holders or creditors related to, arising out of, or in connection with, advice or services rendered or to be rendered by any Indemnified Person pursuant to this Agreement, the transactions contemplated in this Agreement or any Indemnified Person's actions or inactions in connection with any such advice, services or transactions except to the extent any loss, claim, judgment, damage or liability is finally found (in a non-appealable judgment) by a court of competent jurisdiction to have resulted from the Indemnified Person's gross negligence or willful misconduct

If for any reason the foregoing indemnification is unavailable to an Indemnified Person or insufficient to hold it harmless, then the Company shall contribute to the amount paid or payable by the Indemnified Person as a result of such loss, claim, damage or liability in such proportion as is appropriate to reflect: (i) the relative economic benefits to the Company and its equity holders, on the one hand, and to the Indemnified Persons, on the other hand, of the matters covered by this engagement; or (ii) if the allocation provided by the immediately preceding clause is not permitted by applicable law, not only such relative economic benefits but also the relative fault of the Company, on the one hand, and the Indemnified Persons, on the other hand, with respect to such loss, claim, damage or liability and any other relevant equitable considerations.  For purposes of this paragraph, the relative economic benefits to the Indemnified Persons of the matters contemplated in this Agreement, shall be deemed to be the fees paid or to be paid to RPA under this Agreement; provided, however, that, to the extent permitted by applicable law, in no event shall the Indemnified Persons be required to contribute an aggregate amount in excess of the aggregate fees actually paid to RPA under this Agreement.

The reimbursement, indemnity and contribution obligations of the Company in this Schedule 1 shall be in addition to any liability which the Company may otherwise have, shall extend upon the same terms and conditions to any affiliate of the Indemnified Persons, and shall be binding upon and inure to the benefit of any successors, heirs and personal representatives of the Company, the Indemnified Persons, any such affiliate and any such person.  The Company shall not be required to indemnify an Indemnified Person for any amount paid or payable by the Indemnified Person in the settlement of any action, proceeding or investigation without the written consent of the Company, which consent shall not be unreasonably withheld.