**<u>EXHIBIT C</u>**

**Engagement Agreement**



# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below. In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### General Terms and Conditions

**1. Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2. Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3. Charges.**

3.1    For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable. Epiq will bill Client monthly. All invoices shall be due and payable upon receipt.

3.2    Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2023. If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

1



3.3    Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4    Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5    Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6    In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7    To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $10,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. Epiq shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

**4.    Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.



## 5.  Title to Property.

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

## 6.  Disposition of Data.

6.1    Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq.  Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2    Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full.  Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law).  Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials.  Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

## 7.  Indemnification.

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs

3



(including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "<u>Losses</u>"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8. <u>Limitation of Liability</u>

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.



## 9. <u>Representations / Warranties.</u>

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 10. <u>Confidential On-Line Workspace</u>

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 11. <u>General</u>

11.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

11.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

11.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

11.4  The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

11.5  Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

11.6  In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.



11.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

11.8 This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

11.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



11.10    Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

> If to Epiq:
>
> > Epiq Corporate Restructuring, LLC
> > 777 Third Avenue, 12th Floor
> > New York, New York 10017
> > Attn: Brad Tuttle
>
> If to Client:
>
> > Winc, Inc.
> > c/o Brian Smith
> > 1751 Berkeley Street, Studio 3
> > Santa Monica, CA 90404
> > email: brian@winc.com
>
> With a copy to:
>
> > Young Conaway Stargatt & Taylor, LLP
> > c/o Matthew Lunn, Esq. and Allison Mielke, Esq.
> > 1000 N. King Street
> > Wilmington, DE 19807
> > email: mlunn@ycst.com
> > amielke@ycst.com

11.11    Invoices sent to Client should be delivered to the following address:

> > _____
> > _____
> > _____
> > _____

> Email:          AP@winc.com

11.12    The "Effective Date" of this Agreement is November 14, 2022.



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

_____

Name: Brad Tuttle
Title:   Senior Managing Director and GM

**CLIENT**

By: _____

Name: Brian Smith

Title:   Chief Executive Officer

8



# SERVICES SCHEDULE

## SCHEDULES/STATEMENT PREPARATION

➢ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

➢ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➢ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➢ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➢ Process all proof of claim/interest submitted.

➢ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➢ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.



➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

## NOTICING

➢ Prepare and serve required notices in these  Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.



➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## BALLOTING/TABULATION

➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.  Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## CALL CENTER

➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.



## CALL CENTER RATES

| | |
|---|---|
| Standard Call Center Setup | NO CHARGE |
| Call Center Operator | $55 per hour |
| Voice Recorded Message | $0.34 per minute |

## OTHER SERVICES RATES

| | |
|---|---|
| Custom Software, Workflow and Review Resources | Quoted at time of request |
| Strategic Communication Services | Quoted at time of request |
| Escrow Services | Quoted at time of request /competitive rates |
| Exchange / ATOP Event | Quoted at time of request |
| eDiscovery | Quoted at time of request, bundled pricing available |
| Virtual Data Room -- Confidential On-Line Workspace | Quoted at time of request |
| Disbursements -- Check and/or Form 1099 | Quoted at time of request |
| Disbursements -- Record to Transfer Agent | Quoted at time of request |



## MISCELLANEOUS

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.



## PRICING SCHEDULE

### CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $25.00 – $55.00 |
| IT / Programming | $55.00 – $75.00 |
| Case Managers | $75.00 – $175.00 |
| Consultants/ Directors/Vice Presidents | $150.00 – $175.00 |
| Solicitation Consultant | $175.00 |
| Executive Vice President, Solicitation | $195.00 |
| Executives | No Charge |

### CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL[*] |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

### DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | Quoted at time of request |

### ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

---

[1]  Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

[*]Quoted at time of request for high volume blasts to all creditors