# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Docket Ref. Nos. 14 & 44** |

**SECOND INTERIM ORDER (I) AUTHORIZING DEBTORS TO
(A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361,
362, 364(c)(1), 364(c)(3), 364(d)(1), AND 364(e) AND (B) USE CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION
PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND
(III) SCHEDULING FINAL HEARING PURSUANT
TO BANKRUPTCY RULES 4001(b) AND (c)**

Upon consideration of the motion, dated as of December 2, 2022 (the "Motion")[2] of Winc,

Inc. ("Winc") and its affiliated debtors and debtors-in-possession (collectively with Winc, the

"Debtors"), pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1),

and 364(e), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, and 9013-1(m) of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Local Rules"), seeking entry of (i) an interim order [Docket No. 14]

(the "Interim Order"); (ii) a further interim order (this "Second Interim Order" and, together with

the Interim Order, the "Interim Orders"); and (iii) a final order (the "Final Order" and, collectively

with the Interim Order and the Second Interim Order, the "Orders"); and the Court having

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A).  The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

[2]  Unless otherwise defined, capitalized terms used herein shall have the meaning ascribed to them in the Term Sheet (as defined below).

29969925.1

278639854 v4

*AF COMMENTS 12.20.2022*

considered the Motion at the hearing held on December 6, 2022 (the "Interim Hearing") and having entered the Interim Order and setting a final hearing date (the "Final Hearing"); and the Prepetition Secured Party, DIP Lender, Committee, and Debtors having agreed to adjourn the Final Hearing; and Debtors' having requested that the Court enter the Orders, *inter alia*,:

(a)    authorizing the Debtors to obtain secured postpetition financing from the DIP Lender (the "DIP Facility") on a *pari passu* basis with the Prepetition Secured Party (as defined below) pursuant to the terms and conditions of that certain Superpriority Secured Debtor-in-Possession Credit Facility Term Sheet, dated as of December 6, 2022 (the "Term Sheet"), a copy of which is attached hereto as **Exhibit B**, in the aggregate principal amount of up to **$5,000,000**, of which $[●], inclusive of any amounts drawn pursuant to the Interim Order, shall be available pursuant to this Second Interim Order;[3]

(b)    authorizing the Debtors to execute any other documents, agreements, and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Lender (as the same may be amended, restated, supplemented, or otherwise modified from time to time, and collectively with the Term Sheet, the "DIP Loan Documents");

(c)    granting to the DIP Lender first priority security interests in and liens on all of the DIP Collateral (as defined below), *pari passu* with the Prepetition Secured Party, to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Loan Documents, as applicable, and the Orders, as applicable (collectively, and including all "Obligations" as described in the Term Sheet, the "DIP Obligations"), subject only to prior payment of the Carve Out (as defined below);

---

[3]    The "DIP Lender" shall mean Project Crush Acquisition Corp LLC.

29969925.1

2

278639854 v4

*AF COMMENTS 12.20.2022*

(d)     granting to the Prepetition Secured Party first priority security interests in and adequate protection liens on all of the DIP Collateral (as defined below), *pari passu* with the DIP Lender, to secure the Prepetition Senior Obligations and the Adequate Protection Obligations (each as defined below), subject to the Carve Out;

(e)     granting allowed superpriority administrative expense claims to the DIP Lender and the Prepetition Secured Party, which will be *pari passu* with each other, subject to the Carve Out;

(f)     authorizing the Debtors to use Cash Collateral (as defined below) with the Prepetition Secured Party's consent subject to the terms of the Orders, as applicable;

(g)     authorizing the Debtors to grant adequate protection to the Prepetition Secured Party subject to the terms of the Orders, as applicable; and

(h)     scheduling the Final Hearing, pursuant to Bankruptcy Rule 4001(c)(2), to consider entry of the Final Order ((a) through (h) collectively, the "Requested Relief");

and the Interim Hearing having been held on December 6, 2022; and upon all of the pleadings filed with the Court and the evidence proffered or adduced at the Interim Hearing; and the Court having heard and resolved or overruled any and all objections to the Requested Relief; and it appearing that the Requested Relief is in the best interests of the Debtors, their estates, and creditors; and upon the record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:[4]**

A.     Petition Date.   On November 30, 2022 (the "Petition Date"), the Debtors commenced their chapter 11 cases (these "Chapter 11 Cases") by filing voluntary petitions for

---

[4]   Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

29969925.1

278639854 v4

*AF COMMENTS 12.20.2022*

relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On December 12, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") in these Chapter 11 Cases.

B.    Jurisdiction; Venue. The Court has jurisdiction over these Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the DIP Facility and the use of Cash Collateral constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). The Court is a proper venue of these Chapter 11 Cases and the Requested Relief under 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 and the applicable Bankruptcy Local Rules.

C.    Notice. Good and sufficient notice of the Motion under the circumstances has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

D.    Prepetition Senior Obligations and Senior Liens.

(i)    For purposes of this Second Interim Order, (a) the term "Prepetition Senior Obligations" shall mean all of the Obligations (as such term is defined in the Prepetition Senior Loan Documents (as defined below)), as of the Petition Date, owed to the Prepetition Secured Party, and (b) the term "Prepetition Senior Loan Documents" shall mean that certain Credit Agreement, dated as of December 15, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the

*AF COMMENTS 12.20.2022*

date hereof, the "Prepetition Senior Credit Agreement"), by and among Winc, Inc. and BWSC, LLC, as borrowers (the "Borrowers"), and Banc of California, N.A., as successor-by-merger to Pacific Mercantile Bank, as Bank (together with its permitted agents, sub-agents, delegates, attorneys-in-fact, successors and assigns, the "Prepetition Secured Party") and together with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, instruments, amendments, fee letters and any other agreements delivered pursuant thereto or in connection therewith.

(ii)      To secure the Prepetition Senior Obligations, the Debtors granted to the Prepetition Secured Party first priority liens upon and senior security interests in (the "Prepetition Senior Liens") substantially all of the Debtors' property and assets (collectively, the "Prepetition Collateral") as more particularly set forth in certain security documents and instruments, including but not limited to the Security Agreement, dated as of December 15, 2020, by Winc, Inc. and BWSC, LLC as grantors, in favor of the Prepetition Secured Party;

E.      Debtors' Acknowledgements and Stipulations - the Prepetition Senior Obligations. In exchange for the granting of liens of equal priority to the Prepetition Secured Party's liens and claims in connection with the DIP Facility, and having obtained the consent of the Prepetition Secured Party, the Debtors acknowledge, represent, stipulate, and agree, subject to the terms and provisions of Paragraph 14 below, that:

(i)      as of the Petition Date, (a) the aggregate principal amount of the Prepetition Senior Obligations of not less than approximately $3,400,000, together with interest (including default interest) thereon, premiums, costs, expenses, letter of credit obligations, fees (including deferred extension fees and attorneys' fees), indemnities, reimbursement

29969925.1

278639854 v4

*AF COMMENTS 12.20.2022*

obligations and other charges and Obligations owed by the Debtors are due and payable under the Prepetition Senior Credit Agreement; (b) all of the Prepetition Senior Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors and are unconditionally owing by the Debtors to the Prepetition Secured Party, and (c) the Prepetition Senior Obligations are not subject to any avoidance, reductions, set-off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity; *provided, however,* that the Creditors' Committee retains the right to object to any of the Prepetition Senior Obligations on any basis, including, but not limited to, the bases set forth in this Second Interim Order and/or any right under the Bankruptcy Code or applicable law;

(ii)      the Prepetition Senior Liens constitute valid, binding, enforceable, non-avoidable and perfected liens on all or substantially all of the Debtors' assets with priority over any and all other liens except for the DIP Liens and Adequate Protection Liens (as defined below) (other than Permitted Liens, as defined in the Prepetition Senior Loan Documents) and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as set forth in Paragraph 14 below; *provided, however,* that the Creditors' Committee retains the right to object to any of the Prepetition Senior Liens on any basis, including, but not limited to, the bases set forth in this Second Interim Order and/or any right under the Bankruptcy Code or applicable law; and

29969925.1

278639854 v4

6

*AF COMMENTS 12.20.2022*

(iii)    The Debtors have requested and the Prepetition Secured Party has agreed that the Prepetition Secured Party consents to, among other things, (a) the Debtors' use of Cash Collateral (as defined below) and the other Prepetition Collateral, (b) the incurrence of the DIP Obligations by the Borrower under the DIP Loan Documents, and (c) the Debtors' granting of the DIP Liens in connection therewith, *pari passu* to the Prepetition Senior Liens (as defined below) with respect to the DIP Collateral. The Prepetition Secured Party is entitled, pursuant to sections 361, 363(e), and 364(d)(1) of the Bankruptcy Code, to adequate protection of its interests in the Prepetition Collateral, including Cash Collateral (x) in exchange for their consent to allow the Debtors' use of such Prepetition Collateral, including the Cash Collateral, and (y) for any diminution resulting from the sale, lease, or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the granting of liens to the DIP Lender of equal priority to the Prepetition Senior Liens pursuant to the Interim Orders, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, or otherwise*; provided, however, that the Creditors' Committee retains the right to object to any use of Cash Collateral and/or Prepetition Collateral on any basis, including, but not limited to, the bases set forth in this Second Interim Order and/or any right under the Bankruptcy Code or applicable law*.

F.    Cash Collateral. For purposes of the Interim Orders, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the DIP Lender or the Prepetition Secured Party have a lien, security interest, or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date, arising pursuant to the Interim Orders, or otherwise and shall include, without limitation:

**Deleted:** .

*AF COMMENTS 12.20.2022*

(i)        all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any real or personal property, including insurance policies (including, without limitation, policies for the benefit of directors and officers of the Debtors), in or on which the DIP Lender or Prepetition Secured Party have a lien or adequate protection lien, whether as part of the DIP Collateral, Prepetition Collateral, or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Chapter 11 Cases, or arose or was generated thereafter;

(ii)        all of the respective deposits, refund claims, and rights in retainers of the Debtors on which the DIP Lender or Prepetition Secured Party has a lien or adequate protection lien, whether as part of the DIP Collateral, Prepetition Collateral, or pursuant to an order of the Court or applicable law or otherwise; and

(iii)        the proceeds of any sale of DIP Collateral or Prepetition Collateral in connection with any sale consummated prior to entry of the Final Order.

G.        <u>Adequate Protection</u>.  The Prepetition Secured Party is entitled, pursuant to sections 361, 363(e), and 364(d)(1) of the Bankruptcy Code, to adequate protection of its senior interests in the Prepetition Collateral, including the Cash Collateral, in exchange for the Debtors' use of such Prepetition Collateral, to the extent of the diminution in value, if any, of the Prepetition Collateral, including, without limitation, any diminution in value resulting from (i) the sale, lease, or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral, (ii) the priming of the Prepetition Senior Liens on and in the Prepetition Collateral by the DIP Lender, (iii) the subordination of the Prepetition Senior Obligations to the Carve Out, or (iv) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

*AF COMMENTS 12.20.2022*

H.     <u>Purpose and Necessity of Financing</u>.  The Debtors require the financing described in the Requested Relief to (i) permit the continuation of their businesses and preserve their going concern value, (ii) satisfy payroll obligations and other working capital and general corporate purposes of the Debtors consistent with the terms set forth in the DIP Loan Documents and the Approved Budget (as defined below), (iii) pursue an orderly sale process, and (iv) pay fees and expenses related to the DIP Loan Documents, the Adequate Protection Obligations, and the Chapter 11 Cases.  If the Debtors do not obtain authorization to borrow under the Term Sheet on a further interim basis, they will suffer harm.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on more favorable terms than those set forth in the DIP Loan Documents, based on the totality of the circumstances.  A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without granting the DIP Lender, for the benefit of the DIP Lender, superpriority claims, liens, and security interests, pursuant to section 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in the Interim Orders and the DIP Loan Documents.  After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time.

I.     <u>Willingness to Provide Financing</u>.  The DIP Lender has indicated a willingness to provide financing to the Debtors subject to the entry of the Interim Orders, and conditioned upon the entry of the Final Order, including findings that such financing is essential to the Debtors' estates, the DIP Lender is extending credit to the Debtors as set forth in the DIP Facility in good faith, and that the claims, superpriority claims, security interests, liens, rights, and other protections granted to the DIP Lender will have the protections provided in section 364(e) of the Bankruptcy

*AF COMMENTS 12.20.2022*

Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of the Orders, or any other order.

J.    <u>Good Cause Shown</u>.  Good cause has been shown for entry of this Second Interim Order.  The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents and access to Cash Collateral is vital to the Debtors' estates and creditors.  The liquidity to be provided under the DIP Loan Documents and access to Cash Collateral will enable the Debtors to continue to operate their businesses in the ordinary course, preserve the value of the Debtors' assets and pursue a sale transaction that will maximize the value of their assets for the benefit of all stakeholders.  Among other things, entry of this Second Interim Order is necessary to maximize the value of the Debtors' assets and, accordingly, is in the best interests of, the Debtors, their estates, and their creditors.

K.    <u>Good Faith</u>.  The terms of the DIP Facility, including, without limitation, the interest rates and fees applicable, and intangible factors relevant thereto, are reasonable under the circumstances as set forth in this Second Interim Order.  Based upon the record before the Court, and subject to later entry of any Final DIP Order, the DIP Loan Documents have been negotiated in good faith and at arm's-length among the Debtors, the DIP Lender, and the Prepetition Secured Party, under no duress, and without undue influence, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility, and the use of Cash Collateral, including in respect of the granting of the DIP Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing.  Any DIP Obligations and other financial accommodations made to the Debtors by the DIP Lender pursuant to the DIP Loan Documents and the Interim Orders shall be deemed to have been

**Deleted:** <#>Sections 506(c) and 552(b) Waivers.  In light of (i) the DIP Lender's agreement to permit the DIP Liens and DIP Superpriority Claim to be subject to prior payment of the Carve Out, and in exchange for and as a material inducement to the DIP Lender to provide the DIP Facility and (ii) the agreement of the Prepetition Secured Party to permit the Prepetition Senior Liens, Adequate Protection Superpriority Claim, and Adequate Protection Liens to be subject to prior payment of the Carve Out and to permit the use of Cash Collateral for payments made in accordance with the Approved Budget and the terms of the Interim Orders, the DIP Lender and the Prepetition Secured Party are each entitled to (a) subject to entry of the Final Order, a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) subject to entry of the Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code.¶

*AF COMMENTS 12.20.2022*

extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Lender shall be entitled to all protections afforded thereby, subject to later entry of any Final DIP Order.

      L.     <u>Fair Consideration and Reasonably Equivalent Value</u>.  All of the Debtors have received and will receive fair and reasonable consideration in exchange for access to the DIP Facility and all other financial accommodations provided under the DIP Loan Documents and the Interim Orders.  The terms of the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

      Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

      1.     <u>Disposition</u>.  The relief requested by the Debtors on the record at the Interim Hearing is granted on the terms set forth in the Interim Orders.  Any objection to the interim relief sought by the Debtors that has not previously been withdrawn or resolved is hereby overruled on its merits.  The term of this Second Interim Order, the DIP Loan Documents, and the use of Cash Collateral authorized hereunder shall expire, and the DIP Facility made pursuant to the Interim Orders and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents, and the Interim Orders by way of acceleration or otherwise) on the earlier of (a) forty (40) days after the Petition Date if a Final DIP Order has not been entered prior to such date, or

*AF COMMENTS 12.20.2022*

(b) termination of the DIP Facility by the DIP Lender, or termination of the Prepetition Secured Party's consent to use Cash Collateral, following the occurrence of an Event of Default in accordance with the terms of the Interim Orders.

### AUTHORIZATION FOR DIP FINANCING AND USE OF CASH COLLATERAL

2.      <u>Authorization for DIP Financing and Use of Cash Collateral</u>.

(i)      The Debtors are hereby authorized, on an interim basis, to incur DIP Obligations immediately subject to the terms of the Interim Order, this Second Interim Order, the Approved Budget, and the DIP Loan Documents, in the aggregate principal amount of up to $[●]. Available financing under the DIP Loan Documents shall, on an interim basis, be made to fund, strictly in accordance with the Approved Budget, working capital and general corporate requirements of the Debtors, bankruptcy-related costs and expenses (including interest, fees, and expenses in accordance with the Interim Orders or the DIP Loan Documents), and any other amounts required or allowed to be paid in accordance with the Interim Orders, but only as and to the extent authorized by the Approved Budget (and permitted variances as set forth in the DIP Loan Documents) and the DIP Loan Documents.  The Debtors shall provide counsel to the Creditors' Committee with three (3) Business Days' written notice of each draw by the Debtors under the DIP Facility and the DIP Loan Documents.

(ii)      The Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in the Interim Orders, the Approved Budget (and permitted variances as set forth in the DIP Loan Documents) and the DIP Loan Documents, without further approval by the Court.

(iii)      The Debtors have delivered to the DIP Lender and the Prepetition Secured Party a budget that sets forth projected cash receipts and cash disbursements (by line item) on a

29969925.1

278639854 v4

*AF COMMENTS 12.20.2022*

weekly basis for the time period from and including the Petition Date through January 20, 2023, a copy of which is attached hereto as **Exhibit A** (the "Approved Budget").  The Approved Budget shall at all times be in form and substance acceptable to the DIP Lender and the Prepetition Secured Party, and approved in writing by the DIP Lender and the Prepetition Secured Lender in their sole and absolute discretion; *provided*, that the Creditors' Committee retains the right to object to the Approved Budget under, without limitation, this Second Interim Order, the Bankruptcy Code, and/or applicable law.  The Debtors shall provide updates to the Approved Budget and financial reporting with respect to the Debtors in accordance with the terms of the DIP Loan Documents (which updates shall also be provided to the Prepetition Secured Party for its approval concurrently with the DIP Lender), and shall provide copies of such updates to the Approved Budget to the U.S. Trustee and counsel for the Creditors' Committee.  Funds borrowed under the DIP Loan Documents and Cash Collateral used under the Interim Orders shall be used by the Debtors in accordance with the DIP Loan Documents and the Interim Orders.  The consent of the DIP Lender or the Prepetition Secured Party to any Approved Budget shall not be construed as a commitment by the DIP Lender to provide the DIP Facility or the agreement of the Prepetition Secured Party to permit the use of Cash Collateral after the occurrence of a Termination Event under the Interim Orders, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

        (iv)        Any amendments, supplements, or modifications to the Approved Budget must be consented to in writing by the DIP Lender and the Prepetition Secured Party in their sole discretion prior to the implementation thereof and shall not require further notice, hearing, or court order; provided, however that notice of any such amendment, supplement, or modification shall be provided to the U.S. Trustee and counsel to the Creditors' Committee.

29969925.1

278639854 v4

13

*AF COMMENTS 12.20.2022*

(v)      The DIP Lender and the Prepetition Secured Party (i) may assume the Debtors will comply with the Approved Budget, and (ii) shall have no duty to monitor such compliance.  All advances and extensions of credit shall be based upon the terms and conditions of the DIP Loan Documents, as the same may be adjusted from time to time.  Subject to the terms and conditions of the Interim Orders, the DIP Lender shall have the right but not the obligation to extend credit independent of any Approved Budget line item restrictions on loan availability set forth in the DIP Loan Documents, and all such DIP Obligations shall be entitled to the benefits and protections of the Interim Orders.

3.   Authority to Execute and Deliver Necessary Documents.

(i)      Each of the Debtors is authorized to negotiate, prepare enter into, and deliver the DIP Loan Documents, in each case including any amendments thereto and borrow money under the DIP Facility, on an interim basis, in accordance with the terms of the Interim Orders and the DIP Loan Documents.  Each of the Debtors is further authorized and directed to negotiate, paper, enter into and deliver any UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents or agreements encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Loan Documents, each as may be reasonably requested by the DIP Lender.

(ii)      Each of the Debtors is further authorized and directed to negotiate, prepare, enter into, and deliver any UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents or agreements encumbering all of the DIP Collateral with Adequate Protection Liens and securing all of the Debtors' obligations under the Prepetition Senior Credit Agreement, subject to the modification of such obligations and interests through the Interim Orders (provided that, for the avoidance of doubt, such Adequate Protection Liens and any other

*AF COMMENTS 12.20.2022*

security interests held by the Prepetition Secured Party shall be *pari passu* in all respects to the DIP Liens as set forth through the DIP Credit Documents and authorized through the Interim Orders).

(iii)       Each of the Debtors is further authorized to (i) perform all of its obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in the Interim Orders, and (ii) perform all acts required under the DIP Loan Documents and the Interim Orders. For the avoidance of doubt, the Interim Orders only approve the Term Sheet and not any potential DIP credit agreement that may be negotiated in the future.

4.       Valid and Binding Obligations.  All obligations under the DIP Loan Documents shall constitute valid and binding obligations of each of the Debtors, enforceable against each of them, each of their estates, and each of their successors and assigns, jointly and severally, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case (as defined below), in accordance with their terms and the terms of the Interim Orders, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or the Interim Orders shall be restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity*; provided, however, that the Creditors' Committee retains the right to object to any of the DIP Loan Documents and/or any obligation, payment, transfer, or grant of a lien or security interest pursuant thereto on any basis, including, but not limited to, the*

**Deleted:** .

*AF COMMENTS 12.20.2022*

bases set forth in this Second Interim Order and/or any right under the Bankruptcy Code or applicable law.  The DIP Obligations include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the Debtors to the DIP Lender under the DIP Loan Documents, including without limitation all principal, interest, costs, fees, expenses and other amounts owed pursuant to the DIP Loan Documents.

5.      Termination of DIP Loan Documents and Cash Collateral Authority. Notwithstanding anything in the Interim Orders to the contrary, the term of this Second Interim Order and the DIP Loan Documents shall expire, and the DIP Facility made pursuant to the Interim Orders and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and the Interim Orders by way of acceleration or otherwise), and the Debtors' authority to use Cash Collateral shall terminate, on the date that is the earliest of: (a) forty (40) days after the Petition Date if a Final DIP Order has not been entered prior to such date, (b) January 20, 2023, (c) the date of consummation of a sale of all or substantially all of the assets of the Debtors pursuant to section 363 of the Bankruptcy Code, (c) the occurrence of the effective date of any confirmed plan of reorganization in the Chapter 11 Cases, or (d) termination of the DIP Facility by the DIP Lender or the Prepetition Secured Party's consent for the Debtors to the use of Cash Collateral following the occurrence of an Event of Default; provided, however, the DIP Facility shall not terminate until such time as all accrued fees and expenses due and owed to the DIP Lender and the Prepetition Secured Party as set forth in the DIP Loan Documents and Prepetition Senior Loan

*AF COMMENTS 12.20.2022*

Documents, respectively, have been paid to the DIP Lender and the Prepetition Secured Party as applicable.

6.    <u>Authorization for Payment of DIP and Prepetition Secured Party Fees and Expenses</u>.  All reasonable fees, costs, and/or expenses of the Prepetition Secured Party incurred in its capacity as Prepetition Secured Party prior to the Petition Date and reimbursable under the Prepetition Senior Loan Documents shall accrue and shall be due and payable to the Prepetition Secured Party as a condition precedent to the termination of the DIP Loan Documents.  The reasonable prepetition professional fees of the DIP Lender incurred in its capacity as DIP Lender shall accrue but not be paid absent further order of the Court.  Other than the prepetition professional fees of the DIP Lender, the Debtors are hereby authorized and directed to pay all of the DIP Lender's reasonable fees, costs, and expenses incurred in its capacity as DIP Lender in accordance with the terms of the Term Sheet and the Interim Orders, without any requirement that any party or their counsel file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs, or expenses.  Notwithstanding anything to the contrary herein, the reasonable fees, costs, and expenses of the DIP Lender and the Prepetition Secured Party, whether incurred prior to or after the Petition Date, including, without limitation, all fees referred to in the DIP Loan Documents and all attorneys' fees and expenses, shall be deemed fully earned as of the date of the Interim Order, except with respect to reimbursement of professional fees and expenses, which shall be subject as to postpetition fees only to the fee review procedures set forth below in Paragraph 6(i) and (ii) below.

(i)    The payment of the reasonable fees, expenses and disbursements set forth in this paragraph of this Second Interim Order shall be made within ten (10) days after the receipt by the Debtors, the Committee, and the U.S. Trustee (the "<u>Review Period</u>") of invoices thereof

*AF COMMENTS 12.20.2022*

(the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines), including a summary description of the services provided and the expenses incurred by the applicable professional arising after the Petition Date, as applicable; provided, however, that any such invoice (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail.

(ii)         The Debtors, the Creditors' Committee and the U.S. Trustee may preserve their right to dispute the reasonableness of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, the Debtors, the Creditors' Committee or the U.S. Trustee files with the Court a motion or other pleading, on at least ten (10) calendar days prior written notice to the DIP Lender and the Prepetition Secured Party, as applicable, of any hearing on such motion or other pleading, which must contain a specific basis for the objection to the Disputed Invoiced Fees and quantification of the disputed amount of the fees and expenses invoiced. The Debtors' payment of the Invoiced Fees (other than any Disputed Invoiced Fees pending resolution of such dispute by the parties or disposition by the Court) shall not be delayed based on any objections thereto, and the relevant professional shall only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final non-appealable order of this Court. None of the Invoiced Fees shall be subject to Court approval or required to be maintained in any specific format, and no recipient of any payment on account thereof shall be required to file with respect thereto any interim or final fee application with the Court.

7.       Amendments, Consents, Waivers, and Modifications.  The Debtors may enter into any amendments, consents, waivers, or modifications to the DIP Loan Documents in accordance with the terms of the DIP Loan Documents, and with consent of the Prepetition Secured Party, without need for further notice and hearing or any order of this Court; provided, however, that any

*AF COMMENTS 12.20.2022*

material amendment, waiver, or modification shall require Court approval.  Copies of all amendments, waivers, modifications, whether or not material, shall be filed with the Court and provided by the Debtors to counsel to the Creditors' Committee and the U.S. Trustee.

**DIP LIENS AND DIP SUPERPRIORITY CLAIMS**

8.  DIP Liens & Priority.

(a)    To secure the DIP Obligations and other obligations of the Debtors under the DIP Facility and DIP Loan Documents, the DIP Lender is hereby granted for the benefit of itself, pursuant to and in accordance with sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, subject to the Carve Out at all times, valid, enforceable, and fully perfected: (i) first priority liens, *pari passu* in all respects with any valid, perfected and unavoidable liens of the Prepetition Secured Party (including the Adequate Protection Liens), on all property of the Debtors' estates in these Chapter 11 Cases that is not subject to valid, perfect, and non-avoidable liens as of the Petition Date, excluding claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, and 550 of the Bankruptcy Code, claims under the Debtors' insurance policies, commercial tort claims, and/or any proceeds of any of the foregoing (collectively, "Excluded Assets"), (ii) junior liens, *pari passu* in all respects with any valid, perfected and unavoidable liens of the Prepetition Secured Party (including the Adequate Protection Liens), on all property of the Debtors' estates in these Chapter 11 Cases, that is subject to valid, perfected, and non-avoidable liens in existence as of the Petition Date (other than the Prepetition Senior Liens), including without limitation any valid, perfected and enforceable statutory liens or related claims under the Perishable Agricultural Commodities Act (PACA) or applicable state law, or to valid liens in existence at the time of the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, excluding, for the avoidance of doubt, the

**Deleted:** Avoidance Actions

**Deleted:**  provided, however, upon entry of the Final Order, liens in favor of the DIP Lender shall attach to and be perfected in any proceeds of Avoidance Actions;

*AF COMMENTS 12.20.2022*

Excluded Assets; and (iii) first priority, senior liens, *pari passu* in all respects with any valid, perfected and unavoidable liens of the Prepetition Secured Party (including the Adequate Protection Liens), on all of the property, excluding, for the avoidance of doubt, the Excluded Assets (such property, together with the property described in subsections (i) and (ii) above, the "DIP Collateral") of the Debtors' estates in these Chapter 11 Cases (including, without limitation, inventory, accounts receivable, general intangibles, chattel paper, owned real estate, real property leaseholds, fixtures and machinery and equipment fixtures and machinery and equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements, other intellectual property and capital stock of subsidiaries, and all proceeds thereof) that is subject to valid, perfect, and non-avoidable liens of only the Prepetition Secured Party as of the Petition Date (subsections (i), (ii), and (iii) collectively, the "DIP Liens").

(b)    The DIP Liens shall be effective immediately upon the entry of the Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with (except with respect to any valid, perfected and enforceable liens of the Prepetition Secured Party (including the Adequate Protection Liens) as set forth herein, which shall be *pari passu* to the DIP Liens), any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than prior payment of the Carve Out.

(c)    The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of the Interim Order, without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements, account control agreements, or any other agreements or instruments, such that no additional actions need by taken by the DIP Lender to perfect such

*AF COMMENTS 12.20.2022*

interests.  The DIP Liens are hereby deemed fully perfected security interests on the proceeds of

the Debtors' contracts and leases.  Subject to entry of a Final Order, any provision of any lease,

loan document, easement, use agreement, covenant, license, contract, organizational document, or

other instrument or agreement that requires the consent or approval of one or more landlords,

licensors or other parties, or requires the payment of any fees or obligations to any governmental

entity, non-governmental entity or any other person, in order for any of the Debtors to pledge,

grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds

thereof or other collateral, is and shall be deemed to be inconsistent with the provisions of the

Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the

DIP Lender for the benefit of itself, a security interest in such fee, leasehold, or other interest or

other collateral or the proceeds of any assignment, sale, or other transfer thereof, by any of the

Debtors in favor of the DIP Lender, for the benefit of itself, in accordance with the terms of the

DIP Loan Documents.

        9.    <u>DIP Lender's Superpriority Claim</u>.  The DIP Lender is hereby granted an allowed

superpriority administrative expense claim (the "<u>DIP Superpriority Claim</u>"), which claim shall be

*pari passu* with the  Adequate  Protection  Superpriority  Claim  and  the  Prepetition  Senior

Obligations, pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Chapter 11 Cases

and in any successor case(s) under the Bankruptcy Code (including any case or cases under chapter

7 of the Bankruptcy Code, the "<u>Successor Case(s)</u>") for all DIP Obligations, having priority over

any and all other claims against the Debtors, now existing or hereafter arising, of any kind

whatsoever, including, without limitation, all administrative expenses of the kinds specified in or

arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to

entry of a Final Order), 507(a), 507(b), 546(c) (subject of entry of a Final Order), 546(d) (subject

*AF COMMENTS 12.20.2022*

to entry of a Final Order), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, except for the Excluded Assets.  The DIP Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to prior payment of the Carve Out; provided that such DIP Superpriority Claim shall have equal priority to the Adequate Protection Superpriority Claim.  Except as set forth in the Interim Orders, without the written consent of the DIP Lender and the Prepetition Secured Party, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases or in any Successor Case and the DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in these Chapter 11 Cases (except the Adequate Protection Superpriority Claim), including, without limitation, on account of any break-up fee or expense reimbursement that may be granted by the Court in connection with the sale of the Debtors' assets.

> **Deleted:** including, without limitation, upon entry of the Final Order, any proceeds or property recovered in connection with the pursuit of Avoidance Actions

10.    Survival of DIP Liens and DIP Superpriority Claim.  The DIP Liens, DIP Superpriority Claim, and other rights and remedies granted under the Interim Orders to the DIP Lender shall continue in this and any Successor Case(s) and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and/or upon the dismissal or conversion of any or all of the Debtors' Chapter 11 Cases or any Successor Case(s) and such liens and security interests shall maintain their priority as provided in the Interim Orders until all of the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lender's commitments have been terminated in accordance with the DIP Loan Documents.

*AF COMMENTS 12.20.2022*

11.    <u>Carve Out</u>.  As used in the Interim Orders, the "<u>Carve Out</u>" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, (ii) all unpaid professional fees and disbursements incurred by the Debtors and any statutory committees appointed in these Chapter 11 Cases prior to the occurrence of an Event of Default and notice thereof delivered to the Debtors, but only to the extent allowed by the Court at any time and only to the extent of amounts included in the Approved Budget, and (iii) at any time after the occurrence of an Event of Default and notice thereof delivered to the Borrower, to the extent allowed at any time, whether before or after delivery of such notice, whether by interim order, procedural order or otherwise, the payment of accrued and unpaid professional fees, costs and expenses (collectively, the "<u>Professional Fees</u>") incurred by persons or firms retained by the Debtors and the committee and allowed by the Court, not in excess of $100,000 for the Debtors' professionals and the Creditors' Committee professionals <u>respectively</u> (the "<u>Carve Out Cap</u>").  On a weekly basis, the fees and expenses of the Debtors' and Creditors' Committee's professionals provided in the Budget shall be funded into an escrow account with Young Conaway Stargatt & Taylor, LLP to satisfy the professional fees included within the Carve Out (the "<u>Professional Fee Reserve</u>").  The funds on deposit in the Professional Fee Reserve shall be available to satisfy the obligations owed to the Debtors' and committee's professionals benefiting from the Carve Out, and the DIP Lender and the Prepetition Secured Party, on a *pari passu* basis, shall have a security interest upon any residual interest in the Professional Fee Reserve available following satisfaction in cash in full of all obligations benefiting from the Carve Out; <u>provided</u>, <u>further</u>, that the Carve Out shall not be available to pay any such Professional Fees incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the

*AF COMMENTS 12.20.2022*

DIP Lender, the Prepetition Secured Party, the DIP Lender's representatives or professionals or the Prepetition Secured Party's representatives or professionals (but, for the avoidance of doubt, such prohibition shall not apply to any investigation undertaken by the Creditors' Committee pursuant to the terms of this Second Interim Order and/or any Final DIP Order), and nothing herein shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.

## ADEQUATE PROTECTION

12.    <u>Adequate Protection for Prepetition Secured Party</u>.  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection for any diminution in the value of the Prepetition Collateral resulting from, among other things: (i) the incurrence of the DIP Obligations secured by the DIP Liens, (ii) the use of Cash Collateral, (iii) the imposition of the automatic stay, (iv) the subordination of their right to receive payment from the proceeds of the Prepetition Collateral to the prior payment of the Carve Out, or (v) otherwise (collectively, the "<u>Diminution Claim</u>"), the Prepetition Secured Party is hereby granted (in each case equal in priority to the DIP Liens and the DIP Superpriority Claim and subject to prior payment of the Carve Out) the following (collectively, the "<u>Adequate Protection Obligations</u>"):

(a)    <u>Adequate Protection Superpriority Claim</u>.  To the extent of any Diminution Claim, the Prepetition Secured Party is hereby granted an allowed superpriority administrative expense claim (the "<u>Adequate Protection Superpriority Claim</u>"), which claim shall be *pari passu* with the DIP Superpriority Claim, pursuant to section 507(b) of the Bankruptcy Code in each of the Chapter 11 Cases and in any Successor Case(s), having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections

*AF COMMENTS 12.20.2022*

105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c) (subject to entry of a Final Order), 546(d) (subject to entry of a Final Order), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which Adequate Protection Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof,except for the Excluded Assets.  The Adequate Protection Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to prior payment of the Carve Out; provided, however, for the avoidance of doubt, the Adequate Protection Superpriority Claim shall have equal priority to the DIP Superpriority Claim.

> **Deleted:** including, without limitation, upon entry of the Final Order, any proceeds or property recovered in connection with the pursuit of Avoidance Actions

      (b)    Adequate Protection Liens. Subject to paragraph 14 of this Second Interim Order, to secure the Prepetition Senior Obligations, the Prepetition Secured Party is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) valid, perfected, postpetition first priority security interests and liens (the "Adequate Protection Liens") in and on all of the DIP Collateral excluding, for the avoidance of doubt, the Excluded Assets; provided, however, that the Adequate Protection Liens shall be (i) *pari passu* with the DIP Liens and/or payment of any DIP Obligations on account thereof, and subordinate to (ii) the Carve Out.  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Case.

*AF COMMENTS 12.20.2022*

(c)     <u>Payment of Postpetition Fees and Expenses.</u> Pursuant to paragraph 6 of this Order, as further adequate protection for the Diminution Claim, the Prepetition Secured Party shall receive monthly payment from the Debtors to reimburse the reasonable professional fees and expenses, including fees and expenses of counsel, incurred by the Prepetition Secured Party in its capacity as Prepetition Secured Party under the Prepetition Senior Loan Documents after the Petition Date, subject to the fee and expense procedures set forth in Paragraph 6 of this Order; *provided, however,* that such monthly payments are expressly conditioned upon the Prepetition Secured Party's showing of a need for adequate protection in light of a diminution of value of the DIP Collateral, and any fees paid pursuant to this paragraph without such a showing may be subject to disgorgement upon the motion of the Debtors, the Creditors' Committee, or any other party in interest.

(d)     <u>Accrual of Lender Fees and Interest</u>. As further adequate protection for the Diminution Claim, any reasonable lender fees and interest of the Prepetition Secured Party, including default rate interest, whether due before or after the Petition Date under the Prepetition Senior Loan Documents shall accrue as set forth therein and shall be due and payable to the Prepetition Secured Party as a condition precedent to the termination of the DIP Loan Documents.

## RESTRICTION ON USE OF FUNDS

13.     Notwithstanding anything in the Interim Orders or the DIP Loan Documents to the contrary, no proceeds of the DIP Facility, any DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or any portion of the Carve Out may be used to pay any claims for services rendered by any professionals retained by the Debtors, any creditor or party in interest, the Creditors' Committee, any trustee appointed under these Chapter 11 Cases or any Successor Cases, or any other party to (a) request authorization to obtain postpetition loans or other financial

29969925.1

278639854 v4

*AF COMMENTS 12.20.2022*

accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise, other than from the DIP Lender under the DIP Loan Documents, unless the proceeds of such loans or accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash all DIP Obligations, the Prepetition Senior Obligations, and Adequate Protection Obligations, or (b) investigate (except as set forth in Paragraph 14 below), assert, join, commence, support or prosecute any action or claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, the DIP Lender, the Prepetition Secured Party or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (ii) any action relating to any act, omission or aspect of the relationship between or among any of the DIP Lender or the Prepetition Secured Party, on the one hand, and the Debtors or any of their affiliates, on the other; (ii) any action with respect to the validity and extent of the DIP Obligations or the Prepetition Senior Obligations or the validity, extent, and priority of the DIP Liens or Prepetition Senior Liens, except as set forth in the terms of this Second Interim Order and any Final DIP Order; (iii) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part the DIP Liens or the Prepetition Senior Liens, except as set forth in the terms of this Second Interim Order and any Final DIP Order; (iv) pay any Claim of a Creditor (as such terms are defined in the Bankruptcy Code) inconsistent with the Budget without the prior written consent of the DIP Lender (v) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby or by the DIP Loan Documents. Notwithstanding the foregoing, up to $25,000 in the aggregate of the DIP Facility, DIP Collateral, Cash Collateral,

| Deleted: i |
| --- |

| Deleted: v |
| --- |

| Deleted: (v) any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the DIP Lender or the Prepetition Secured Party in respect of the enforcement of their respective liens and security interests in the DIP Collateral or Cash Collateral; |
| --- |

| Deleted: i |
| --- |

| Deleted: ii |
| --- |

| Deleted: 10 |
| --- |

*AF COMMENTS 12.20.2022*

Prepetition Collateral and Carve Out may be used by the Creditors' Committee to investigate the Prepetition Senior Obligations, the Prepetition Senior Liens, and/or claims against the Releasees prior to the expiration of the Challenge Period (as each is defined below) or any other applicable period set forth by order of the Court, any plan of reorganization, the Bankruptcy Code, or applicable law.

14.    Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

(a)    The Debtors' acknowledgements and stipulations set forth in Paragraphs D and E above (the "Debtors' Stipulations") shall be binding upon the Debtors in all circumstances.

(b)    The Debtors' Stipulations shall also be binding upon each other party in interest, including the Creditors' Committee unless such Creditors' Committee or any other party in interest having standing, including any Chapter 11 trustee (or if the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Case(s)): (a) commences a Challenge (as defined below) within seventy-five (75) calendar days following the date of entry of the Interim Order, or as otherwise expressly agreed in writing by the Prepetition Senior Lender in its sole discretion (such time period shall be referred to as the "Challenge Period") or in any applicable period and pursuant to such terms set forth by order of the Court, any plan of reorganization, the Bankruptcy Code or applicable law and (b) obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action. For the avoidance of doubt, any trustee appointed or elected in these Chapter 11 Cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph  (whether commenced by such trustee or commenced by any other party

*AF COMMENTS 12.20.2022*

in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Second Interim Order.

(c)    A "Challenge" means with respect to any party that has obtained standing to commence and has filed (A) an adversary proceeding challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, or (B) an adversary proceeding against Prepetition Secured Party in connection with or related to the Prepetition Senior Obligations or the Prepetition Senior Liens, or the actions or inactions of any of the Prepetition Secured Party arising out of or related to the Prepetition Senior Obligations, the Prepetition Senior Liens, or otherwise, including, without limitation, any claim against Prepetition Secured Party in the nature of a "lender liability" cause of action, setoff, counterclaim, or defense to the Prepetition Senior Obligations or the Prepetition Senior Liens (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code ((A) and (B) collectively, the "Challenges" and, each individually, a "Challenge").  Nothing in the Interim Orders shall be deemed to provide automatic standing to any party in interest.

(d)    With respect to any party interest that (i) fails to raise a proper Challenge within the Challenge Period or in any applicable period and pursuant to such terms set forth by order of the Court, any plan of reorganization, the Bankruptcy Code or applicable law or (ii) raises a proper Challenge within the Challenge Period or in any applicable period and pursuant to such terms set forth by order of the Court, any plan of reorganization, the Bankruptcy Code or applicable law, which is fully and finally adjudicated in favor of the Prepetition Secured Party, then for all purposes in these Chapter 11 Cases and any Successor Case(s), (i) all payments made to or for the

29969925.1

278639854 v4

29

*AF COMMENTS 12.20.2022*

benefit of the Prepetition Secured Party, pursuant to, or otherwise authorized by, the Interim Orders or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (ii) any and all such Challenges by any party in interest (including, without limitation, the Creditors' Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in the Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case) shall be deemed to be forever released, waived, and barred, (iii) the Prepetition Senior Obligations shall be deemed to be a fully allowed and fully secured claim within the meaning of section 506 of the Bankruptcy Code, not subject to counterclaim, setoff, subordination, recharacterization, reduction, defense or avoidance, (iv) any and all prepetition claims or causes of action against the Prepetition Secured Party relating in any way to the Debtors shall be forever waived and released by the Debtors, the Debtors' estates, and all creditors, interest holders, the Creditors' Committee and other parties in interest in the Chapter 11 Cases and any Successor Case and (v) all matters not subject to the Challenge, including, without limitation, all findings, the Debtors' Stipulations in Paragraphs D and E, all waivers, releases set forth herein, affirmations and other stipulations as to the priority, extent and validity as to the claims, liens and interests of the Prepetition Secured Party shall be of full force and effect upon the Debtors, the Debtors' estates, and all creditors, equity interest holders, the Creditors' Committee, and other parties in interest in the Chapter 11 Cases and any Successor Case.

15.    <u>Prohibition on Granting of Additional Liens and Interests</u>.  It shall constitute an event of default, the DIP Lender shall have no further obligation to provide financing under the DIP Loan Documents, and the DIP Lender and the Prepetition Secured Party shall be entitled to enforce their respective rights under the DIP Loan Documents and the Interim Orders if the

29969925.1

278639854 v4

*AF COMMENTS 12.20.2022*

Debtors seek, or this Court grants, any liens, claims, interests or priority status, other than the Carve Out, having a lien or administrative priority superior to or *pari passu* with that of the DIP Liens, the DIP Superpriority Claim, the Prepetition Senior Liens, the Adequate Protection Superpriority Claim, or the Adequate Protection Liens granted by the Interim Orders, while any portion of the DIP Obligations or Prepetition Senior Obligations remain outstanding, or any commitment under the DIP Loan Documents or Prepetition Senior Loan Documents remains in effect, without the prior written consent of the DIP Lender and the Prepetition Secured Party, respectively.

16.    Release. Subject to entry of the Final Order, the release, discharge, waivers, settlements, compromises, and agreements set forth in this Paragraph 16 shall be deemed effective upon entry of the Interim Order, and subject only to the rights set forth in Paragraph 14 above. The Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in these Chapter 11 Cases or any Successor Case, but, for the avoidance of doubt, excluding the Creditors' Committee and/or any successor thereto) forever and irrevocably (a) release, discharge, and acquit the DIP Lender, the Prepetition Secured Party, and their former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the DIP Lender or the Prepetition Secured Party, on the one hand, and the Debtors and their affiliates, on the other hand, including any equitable subordination claims or defenses, with respect to or relating to the DIP Facility, the

29969925.1

278639854 v4

*AF COMMENTS 12.20.2022*

DIP Liens, the Adequate Protection Liens, the DIP Loan Documents, the Prepetition Senior Loan Documents, the Prepetition Senior Loan Obligations, the Prepetition Senior Liens, any and all claims and causes of action arising under the Bankruptcy Code, *provided that nothing in this paragraph or any other provision of this Second Interim Order shall constitute or permit a release of any willful misconduct, gross negligence, fraud, or any other release against public policy*; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Prepetition Senior Obligations and the Prepetition Senior Liens.

## REMEDIES; MODIFICATION OF AUTOMATIC STAY

17.    <u>Remedies and Stay Modification</u>.

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, modified without further application or motion to, or order from, the Court, to the extent necessary so as to permit the following:

i.    Whether or not a Default or an Event of Default under the DIP Loan Documents or a default by any of the Debtors of any of their obligations under the Interim Orders has occurred (A) the right to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (B) the right to charge and collect any <u>reasonable</u> interest, fees, costs and other expenses accruing at any time under the DIP Loan Documents as provided therein, and (C) the right to give the Debtors any notice provided for in any of the DIP Loan Documents or the Interim Orders;

ii.    Subject to Paragraph 17(a)(iv) below, the automatic stay provisions of section 362 of the Bankruptcy Code are modified without the need for further Court order to permit the DIP Lender and the Prepetition Secured Party, each in its sole discretion but

*AF COMMENTS 12.20.2022*

with notice to the other, upon the occurrence and during the continuance of an Event of Default, and without any interference from the Debtors or any other party interest, to (I)(A) in the case of the DIP Lender, cease providing the DIP Facility and/or suspend or terminate the commitments under the DIP Loan Documents, (B) in the case of the DIP Lender, declare all DIP Obligations immediately due and payable, (C) in the case of the Prepetition Secured Party, withdraw its consent to the Debtors' continuing use of Cash Collateral and (II) subject to five (5) calendar days' prior written notice (which may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, their counsel, the Prepetition Secured Party or the DIP Lender (as applicable), counsel to the Creditors' Committee and the U.S. Trustee, to exercise all other rights and remedies provided for in the DIP Loan Documents, the Interim Orders, or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to (A) in the case of the DIP Lender and the Prepetition Secured Party, take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; (B) in the case of the DIP Lender, foreclose or otherwise enforce the DIP Liens on any or all of the DIP Collateral (subject to the rights of the Prepetition Secured Party therein); (C) in the case of the Prepetition Secured Party, set off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account maintained with the Prepetition Secured Party) (subject to the rights of the DIP Lender, and such rights held by the DIP Lender shall be *pari passu* with all such rights granted to the Prepetition Secured Party herein); and/or (D) exercise any other default-related rights and remedies under the under the DIP Loan Documents or the Interim Orders.  The Remedies Notice Period shall run concurrently with any notice period provided for under the DIP Loan Documents;

    iii. Immediately upon the occurrence of an Event of Default under the DIP Loan Documents or any of their obligations under the Interim Orders, notice of

29969925.1

278639854 v4

*AF COMMENTS 12.20.2022*

which occurrence shall be provided in writing to the Creditors' Committee contemporaneously with such notice to the Debtors, the DIP Lender may charge interest at the default rate set forth in the DIP Loan Documents without being subject to the Remedies Notice Period;

> iv.    The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Creditors' Committee, and/or the U.S. Trustee or any party in interest with requisite standing have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.  During the Remedies Notice Period, the Debtors shall not be permitted to use any Cash Collateral or any DIP Facility proceeds except to pay expenses reasonably necessary to preserve the Debtors' going concern value, which amount shall not exceed $670,000.  The Debtors, the Creditors' Committee, the U.S. Trustee, and any other party with requisite standing, shall have the burden of proof at any hearing on any request by them to reimpose or continue the automatic stay of Section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief;

> v.    If the DIP Lender or the Prepetition Secured Party is entitled, and has elected in accordance with the provisions hereof, to enforce its respective liens or security interests or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors shall cooperate with the DIP Lender and the Prepetition Secured Party in connection with such enforcement by, among other things, (A) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Lender and the Prepetition Secured Party (including any collateral liquidator or consultant), (B) providing the DIP Lender, the Prepetition Secured Party, and their representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the DIP Lender,

the Prepetition Secured Party, or their respective representatives, (C) performing all other obligations set forth in the DIP Loan Documents or hereunder, and (D) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Lender's and the Prepetition Secured Party's enforcement of rights;

vi.      Upon the occurrence and during the continuance of an Event of Default under the DIP Loan Documents or a violation of the terms of the Interim Orders, subject to payment of the Carve Out and payment of the expenses provided in subsection (iv) of this Paragraph, the DIP Lender shall have no further obligation to provide financing under the DIP Loan Documents and the DIP Lender and the Prepetition Secured Party shall have no further obligation to permit the continued use of Cash Collateral;

vii.      Upon the occurrence and during the continuance of an Event of Default under the DIP Loan Documents or a violation of the terms of the Interim Orders, subject to the Remedies Notice Period, the DIP Lender and the Prepetition Secured Party may at all times continue to collect and sweep cash as provided herein or as provided in the DIP Loan Documents; and

viii.      This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of the Interim Orders and relating to the application, re-imposition or continuance of the automatic stay of Section 362(a) of the Bankruptcy Code or other injunctive relief requested.

**MISCELLANEOUS**

18. 

**Deleted:** <#>Limitation of Section 506(c) Claims.  Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the DIP Lender or the Prepetition Secured Party, or any of their respective claims, the Carve Out, the Prepetition Collateral, or the DIP Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Lender and the Prepetition Secured Party. No action, inaction or acquiescence by the DIP Lender or the Prepetition Secured Party shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Lender, the Prepetition Secured Party, any of their respective claims, the Carve Out, the DIP Collateral, or the Prepetition Collateral.¶
No Marshaling.  Subject to entry of a Final Order, the DIP Lender and the Prepetition Secured Party shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral. Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control (i) the disposition of DIP Collateral after an Event of Default under the DIP Loan Documents, or termination or breach under the DIP Loan Documents, or (ii) the disposition of the Prepetition Collateral after an event of default under the Prepetition Senior Loan Documents, or termination or breach under the Prepetition Senior Loan Documents.

*AF COMMENTS 12.20.2022*

19.     Additional Perfection Measures.  The DIP Liens and the Adequate Protection Liens shall be perfected by operation of law immediately upon entry of the Interim Order. None of the Debtors, the DIP Lender, or the Prepetition Secured Party shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, control agreements, notices of lien or similar instruments in any jurisdiction (including, but not limited to control agreements relating to bank accounts, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the DIP Liens or the Adequate Protection Liens.

(i)     If the DIP Lender or the Prepetition Secured Party, each in their sole discretion but with notice to the other and the Creditors' Committee, chooses to take any action to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens, the DIP Lender and the Prepetition Secured Party is each hereby authorized, but not directed, to take such action or to request that Debtors take action reasonably requested on its behalf (and Debtors are hereby authorized to take such action) and:

(a)     any such documents or instruments shall be deemed to have been recorded and filed as of the time and on the date of entry of the Interim Order; and

(b)     no defect in any such act shall affect or impair the validity, perfection, and enforceability of the liens granted hereunder.

29969925.1

278639854 v4

36

*AF COMMENTS 12.20.2022*

(ii)       In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Lender or the Prepetition Secured Party may, each in its sole discretion but with notice to the other and the Creditors' Committee, choose to file a true and complete copy of the Interim Orders in any place at which any such instruments would or could be filed, together with a description of the DIP Collateral and such filing by the DIP Lender or the Prepetition Secured Party shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of the Interim Order.

20.       Application of Collateral Proceeds.  To the extent required by the Interim Orders and the DIP Loan Documents, subject to the Remedies Notice Period, after an Event of Default, the Debtors are hereby authorized and directed to remit to the DIP Lender and the Prepetition Secured Party, on a *pari passu basis*, subject to the payment of the Carve Out, one-hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Lender and the Prepetition Secured Party to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Loan Documents and the Interim Orders. In furtherance of the foregoing, (a) all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial institution shall be subject to a perfected, first priority security interest in favor of the DIP Lender (or its designee), *pari passu* to the interests of the Prepetition Secured Party and (b) upon the expiration of the Remedies Notice Period, each bank or other financial institution with an account of any Debtor, including the Prepetition Secured Party as depository bank, is hereby authorized and instructed to coordinate with the DIP Lender regarding any instructions directing the disposition of cash, securities, investment property and other items

29969925.1

278639854 v4

*AF COMMENTS 12.20.2022*

from time to time credited to such account, without further consent of any Debtor, to secure the payment of the DIP Obligations and the Prepetition Senior Obligations indefeasibly in full on a *pari passu* basis, at which time exclusive control shall automatically revert to the Debtors.

21.    <u>Access to Collateral</u>.  Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Lender or the Prepetition Secured Party contained in the Interim Orders, the DIP Loan Documents or the Prepetition Senior Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon three (3) business days' written notice to the landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default under the DIP Loan Document or a default by any of the Debtors of any of their obligations under the Interim Orders has occurred and is continuing, the DIP Lender or the Prepetition Secured Party (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Lender or and the Prepetition Secured Party (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of any of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable leases or license and to use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph, without interference from lienholders, landlords or licensors thereunder, subject to such lienholders, landlords or licensors rights under applicable law.  Nothing herein shall require the Debtors, the Prepetition Secured Party, or the DIP Lender to assume any lease or license under section 365(a) of the Bankruptcy Code as a

*AF COMMENTS 12.20.2022*

precondition to the rights afforded to the DIP Lender or the Prepetition Secured Party in this paragraph, provided, however, that the DIP Lender or the Prepetition Secured Party, as applicable, shall compensate any counterparty to a lease, contract, or license for use of such lease, contract, or license on a per diem basis.

22. <u>Delivery of Documentation</u>.  The Debtors (and/or their legal or financial advisors) shall deliver to the DIP Lender, counsel to the DIP Lender, counsel to the Prepetition Secured Party, any financial advisors to the DIP Lender or the Prepetition Secured Party, and counsel to the Creditors' Committee all financial reports, Approved Budgets, forecasts, and all other legal or financial documentation, pleadings, and/or filings that are either (i) required to be provided (by the Debtors and/or their legal or financial advisors) to the DIP Lender, to the Prepetition Secured Party, and/or the DIP Lender's or the Prepetition Secured Lender's legal and financial advisors pursuant to the DIP Loan Documents, or (ii) reasonably requested by the DIP Lender or the Prepetition Secured Party (or its respective legal and financial advisors).

23. <u>Access to Books and Records</u>.  The Debtors (and/or their legal and financial advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to their business and activities, (b) cooperate, consult with, and provide to the DIP Lender and the Prepetition Secured Party all such information as required or allowed under the DIP Loan Documents, the provisions of this Second Interim Order or that is afforded to the Creditors' Committee and/or the Creditors' Committee's respective legal or financial advisors, (c) permit, upon two (2) business days' notice and during normal business hours, representatives of the DIP Lender or the Prepetition Secured Party to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct

| **Deleted:** and |
| --- |

*AF COMMENTS 12.20.2022*

a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, *provided* that counsel for the Creditors' Committee shall be provided notice of any such request simultaneously with the Debtors; and (d) permit representatives of the DIP Lender or the Prepetition Secured Party to consult with and advise the Debtors' management on matters concerning the general status of the Debtors' business, financial condition and operations.

24.     Credit Bidding. Notwithstanding anything to the contrary in the Interim Orders and pursuant to section 363(k), the DIP Lender shall have the right to credit bid the amounts owing in connection with the DIP Facility with respect to any assets on which the DIP Lender holds liens, provided that any such bid includes sufficient cash to immediately and indefeasibly satisfy the Prepetition Senior Obligations and the Adequate Protection Obligations in full; *provided*, for the avoidance of doubt, that the Creditors' Committee (or any other party in interest) shall retain the right to object to any such credit bid under section 363(k) of the Bankruptcy Code.

Deleted: .

25.     Lenders Not Responsible Persons.  In (a) making the decision to provide the DIP Facility and consent to the use of Cash Collateral; (b) administering the DIP Facility; (c) extending other financial accommodations to the Debtors under the DIP Loan Documents; and (d) making the decision to collect the indebtedness and obligations of the Debtors, the DIP Lender and the Prepetition Secured Party shall not solely by reason thereof be considered to (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent rights afforded them under the DIP Loan Documents or the Interim Orders or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or

*AF COMMENTS 12.20.2022*

operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, *et seq*., the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute).

26.    Successors and Assigns.  The Term Sheet and the provisions of the Interim Orders shall be binding upon the Debtors, DIP Lender, and the Prepetition Secured Party and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the DIP Lender, and the Prepetition Secured Party, and each of their respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code. The terms and provisions of the Interim Orders shall also be binding on all of the Debtors' creditors, the Creditors' Committee, equity holders, and all other parties in interest, including, but not limited to a trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

27.    Binding Nature of Agreement.  Each of the DIP Loan Documents to which any of the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable in accordance with their terms. The DIP Loan Documents have been or will be properly executed and delivered to the DIP Lender and the Prepetition Secured Party by the Debtors. Unless otherwise consented to in writing, the rights, remedies, powers, privileges, liens, and priorities of the DIP Lender and the Prepetition Secured Party, as applicable, provided for in the Interim Orders, the DIP Loan Documents, or otherwise shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or

29969925.1

278639854 v4

*AF COMMENTS 12.20.2022*

conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until the DIP Obligations and the Prepetition Senior Obligations have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Loan Documents and the Interim Orders.

28.    <u>Subsequent Reversal or Modification</u>.  This Second Interim Order is entered pursuant to sections 363 and 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lender all protections afforded by section 364(e) of the Bankruptcy Code.

29.    <u>Collateral Rights</u>.  If any party who holds a lien or security interest in DIP Collateral or Prepetition Collateral that is junior and/or subordinate to the DIP Liens, the Adequate Protection Liens or the Prepetition Senior Liens in such DIP Collateral or Prepetition Collateral receives or is paid the proceeds of such DIP Collateral or Prepetition Collateral prior to the indefeasible payment in full in cash and the complete satisfaction of (a) all DIP Obligations under the DIP Loan Documents and termination of the commitment in accordance with the DIP Loan Documents, and (b) the Prepetition Senior Obligations under the Prepetition Senior Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral or Prepetition Collateral in trust for the DIP Lender and the Prepetition Secured Party and shall immediately turn over such proceeds for application by the DIP Lender and the Prepetition Secured Party to repay the Prepetition Senior Obligations and the DIP Obligations in accordance with the DIP Loan Documents, the Prepetition Senior Loan Documents and the Interim Orders until indefeasibly paid in full.

30.    <u>No Waiver</u>.  This Second Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender, the Prepetition Secured Party, the

**Deleted:** or

278639854 v4

_____

***AF COMMENTS 12.20.2022***

Creditors' Committee, or any other party in interest may have to bring or be heard on any matter

brought before this Court.

Deleted:

31.    Limits on Lenders' Liability.  Nothing in the Interim Orders and or in any of the

DIP Loan Documents, the Prepetition Senior Loan Documents, or any other documents related to

this transaction shall in any way be construed or interpreted to impose or allow the imposition

upon the DIP Lender or the Prepetition Secured Party of any liability for any claims arising from

any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of

their businesses or in connection with their restructuring efforts.

32.    Sale/Conversion/Dismissal.

(a)    It shall constitute an event of default, the DIP Lender shall have no further

obligation to provide financing under the DIP Loan Documents, and the DIP Lender and the

Prepetition Secured Party shall be entitled to enforce their respective rights under the DIP Loan

Documents and the Interim Orders if the Debtors seek, support entry of, or this Court grants, absent

the prior consent of the DIP Lender and the Prepetition Secured Party, any order that provides for

either the sale of the stock of the Debtors or the sale of all or substantially all of the assets of the

Debtors under section 363 of the Bankruptcy Code to any party unless, in connection with such

event, the proceeds of such sale are or will be indefeasibly paid to the DIP Lender and the

Prepetition Secured Party on account of the DIP Obligations and the Prepetition Senior

Obligations, respectively, and the commitments under the DIP Loan Documents and the Interim

Orders are terminated in accordance therewith on the closing date of such sale.

33.    Priority of Terms.  To the extent of any conflict between or among (a) the express

terms or provisions of any of the DIP Loan Documents, the Motion, the Requested Relief, any

other order of this Court, or any other agreements, on the one hand, and (b) the terms and

*AF COMMENTS 12.20.2022*

provisions of this Second Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Loan Documents (or words of similar import), the terms and provisions of this Second Interim Order shall govern.

34.    <u>No Third Party Beneficiary</u>. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

35.    <u>Survival</u>.  Except as otherwise provided herein, (a) the protections afforded under this Second Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of these Chapter 11 Cases or (ii) converting any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claim shall continue in these Chapter 11 Cases, in any such successor case or after any such dismissal. The DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claim shall maintain their priorities as provided in the Interim Orders and the DIP Loan Documents <u>until the satisfaction in full of the DIP Obligations and/or the Prepetition Senior Obligations, as applicable</u>, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Lender in accordance with the Final Order), or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or by any other act or omission.

36.    <u>Immediate Binding Effect; Entry of Interim Order</u>.  This Second Interim Order shall be valid and fully effective immediately upon entry, notwithstanding the possible application of

29969925.1

278639854 v4

*AF COMMENTS 12.20.2022*

Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Second Interim Order on the Court's docket in these Chapter 11 Cases.

37.    Proofs of Claim. Notwithstanding any order of this Court to the contrary, the Prepetition Secured Party and the DIP Lender hereby are relieved of any obligation or requirement to file proofs of claim in the Chapter 11 Cases with respect to any Prepetition Senior Obligations or DIP Obligations and any other claims or liens granted hereunder or created hereby. The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Party, and Prepetition Secured Party shall be treated under section 502(a) of the Bankruptcy Code as if they each have filed a proof of claim. Notwithstanding the foregoing, the Prepetition Secured Party is hereby authorized and entitled, in its discretion, but is not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or Successor Cases for any claim allowed herein.

38.    Offset with Bid Protections.  The DIP Lender's Closing Fee shall offset any Stalking Horse Bidder's Break-Up Fee (if any), as defined in the *Debtor's Motion for Entry of (A) An Order (I) Approving Bidding Procedures in Connection with the Sale of the Debtors' Assets and Related Protections, (II) Approving Form and Manner of Notice, (III) Scheduling Auction and Sale Hearing, (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Leases, and (V) Granting Related Relief; and (B) An Order (I) Approving Purchase Agreements, and (II) Authorizing a Sale Free and Clear of All Liens, Claims, Encumbrances, and other Interests* [Docket No. 47] (the "Bid Procedures Motion"), and reduce any such Break-Up Fee on a dollar for dollar basis in the amount of the Closing Fee.  Any reimbursement of the DIP Lender's fees, costs and/or expenses in connection with this Second Interim Order, the DIP Facility, the DIP Obligations, and/or the DIP Loan Documents shall be

**Deleted:** the

29969925.1

278639854 v4

*AF COMMENTS 12.20.2022*

solely in the DIP Lender's capacity as DIP Lender, and no expenses of the DIP Lender shall be reimbursable to the Stalking Horse Bidder and vice versa.

39.    Critical Vendors.  In connection with the entry of this Interim Order, and as a condition thereof, the Debtors shall not make any payments to any "Critical Vendors" on account of any "Critical Vendor Claims" (including, but not limited to, purchases of inventory), each as defined in the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Critical Vendors and Service Providers, (B) Certain Vendors with Claims Entitled to Administrative Expense Status Under Section 503(b)(9) of the Bankruptcy Code, (C) Foreign Vendors, and (D) Shippers, Warehouseman, and Other Lienholders; (II) Authorizing Banks to Honor and Process Check and Electronic Transfer Requests Related Thereto; and (III) Granting Related Relief* [Docket No. 10] without prior written notice to and the express written consent of the Committee.

40.    Retention of Jurisdiction.  This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Second Interim Order.