# EXHIBIT C

<u>*AFS COMMENTS 12.20.2022*</u>

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |

### BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS

On [•], 2022, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures in Connection with Sale of Assets of the Debtors, (II) Approving Form and Manner of Notice, (III) Scheduling Auction and Sale Hearing, (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Leases, and (V) Granting Related Relief* [Docket No. {•}] (the "Bidding Procedures Order"),[2] by which the Court approved the following procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "Auction") for the sale (the "Sale") of substantially all of the Debtors' assets (collectively, the "Assets").

Subject to the terms of these Bidding Procedures, interested parties may bid on the Assets (i) in individual lots, (ii) as a collective whole, or (iii) in any combination.

1. **Submissions to the Debtors.**

All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "Notice Parties"):

    **A.**    **Debtors.**  Winc, Inc., *et al.*, 1751 Berkley Street, Studio 3, Santa Monica, CA 90404, Attn: Brian Smith (brian@winc.com).

    **B.**    **Debtors' Counsel.**  Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael R. Nestor, Esq. (mnestor@ycst.com); Matthew B. Lunn, Esq. (mlunn@ycst.com); and Allison S. Mielke, Esq. (amielke@ycst.com).

    **C.**    **Debtors' Investment Banker.**  Canaccord Genuity LLC, 535 Madison Avenue, New York, NY 10022, Attn: Morgan Ley (mley@cgf.com); David Istock

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A). The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

29956043.1

*AFS COMMENTS 12.20.2022*

    (distock@cgf.com); Brian Bacal (bbacal@cgf.com); and Brian Hurley (bhurley@cgf.com).

**D.**   **Counsel for the DIP Lender.** Cooley LLP, 110 N. Wacker Drive, Suite 4200, Chicago, IL 60606, Attn: Eric Walker, Esq. (ewalker@cooley.com) and Joseph Brown, Esq. (jbrown@cooley.com); and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899, Attn: Derek C. Abbott, Esq. (dabbott@mnat.com) and Curtis S. Miller, Esq. (cmiller@mnat.com).

**E.**   **Counsel for the Prepetition Secured Lender.** Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA 90067, Attn: Richard M. Pachulski, Esq. (rpachulski@pszjlaw.com) and Maxim Litvak, Esq. (mlitvak@pszjlaw.com).

**F.**   **Proposed counsel to the Committee.** ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor New York, NY 10019 Attn: George Angelich, Esq (george.angelich@afslaw.com); 800 Boylston Street, 32nd Floor, Boston, MA 02199 Attn: Justin Kesselman, Esq. (justin.kesselman@afslaw.com) and James Britton, Esq. (james.britton@afslaw.com); A.M. Saccullo Legal LLC, 27 Crimson King Dr., Bear, DE 19701 Attn: Anthony M. Saccullo, Esq. (ams@saccullolegal.com) and Mark Hurford (mark@saccullolegal.com).

> Deleted: , if any

**2. Potential Bidders.**

To participate in the bidding process or otherwise be considered for any purpose under these Bidding Procedures, a person or entity (other than the Stalking Horse Bidder) interested in consummating a Sale (a "Potential Bidder") must deliver or have previously delivered to the Notice Parties:

    (i)   an executed confidentiality agreement on terms acceptable to the Debtors (a "Confidentiality Agreement"), to the extent not already executed;

    (ii)   information demonstrating (in the Debtors' reasonable business judgment) that the Potential Bidder has the financial capability to consummate the applicable Sale, including, but not limited to, the most current audited and latest unaudited financial statements (the "Financials") of the Potential Bidder (or such other form of financial disclosure acceptable to the Debtors in their discretion) (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors, in consultation with: (a) counsel for the DIP Lender (only in the event that the DIP Lender is no longer the Stalking Horse Bidder), (b) counsel for the Prepetition Secured Lender, and (c) the advisors to the Committee (collectively, the "Consultation Parties"),[3] and (y) a written

---

[3] Notwithstanding anything to the contrary in these Bidding Procedures, the Debtors shall not be required to consult with the DIP Lender in connection with the sale of the Assets until such credit bid through the Stalking Horse Agreement (as defined below) is withdrawn by the DIP Lender in writing solely at its discretion.

*AFS COMMENTS 12.20.2022*

funding commitment acceptable to the Debtors and their advisors, in consultation with the Consultation Parties, of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the applicable Sale); and

(iii) on or before January 13, 2023 (the "LOI Deadline"), submit to the Debtors, the Debtors' counsel, Debtors' Investment Banker and the Committee's counsel a binding letter of intent (the "LOI") that demonstrates the such potential bidder's intent to submit a bid that meets or exceeds the Minimum Bid. If a LOI is not received by the LOI Deadline, the Debtors will file a certification of counsel with the Court and request an expedited sale hearing to consummate the sale to the Stalking Horse Bidder.

> **Deleted:** December 30, 2022
> **Deleted:** and

For the avoidance of doubt, in the event of a Joint Bid (as defined below), each person or entity party to such Joint Bid must submit the above information in accordance with the terms thereof and meet the above requirements in order to qualify as a Potential Bidder.

3. **Stalking Horse Bidder.**

The Debtors have entered into (as more fully described in the Stalking Horse Agreement) a purchase agreement (the "Stalking Horse Agreement") with Project Crush Acquisition Corp LLC ("Project Crush") where Project Crush will serve as a stalking horse bidder for the Debtors' Assets (the "Stalking Horse Bidder").

4. **Qualified Bidders.**

(a) A "Qualified Bidder" is a Potential Bidder (including Joint Bidders) whose Financials, or the Financials of its equity holder(s), as applicable, demonstrate the financial capability to consummate the applicable Sale and whose Bid is a Qualified Bid (as defined below), that the Debtors, in consultation with the Consultation Parties, determine should be considered a Qualified Bidder. Prior to the commencement of the Auction, the Debtors' advisors will (i) notify each Potential Bidder in writing whether such Potential Bidder is a Qualified Bidder and (ii) provide to the Qualified Bidders for such Assets copies of all Qualified Bids with respect to such Assets. The Stalking Horse Bidder shall be deemed a Qualified Bidder at all times and for all purposes with respect to the Assets to which its Bid (the "Stalking Horse Bid") relates, and notwithstanding anything in these Bidding Procedures, the Stalking Horse Bid shall be deemed a Qualified Bid for all purposes.

(b) The Debtors shall provide regular updates to the Consultation Parties on Potential Bidders and shall specifically identify any Potential Bidder who did not qualify to be a Qualified Bidder and the Debtors' basis for such determination. If any Potential Bidder is determined by the Debtors, in consultation with Consultation Parties, not to be a Qualified Bidder, the Debtors will refund such Qualified Bidder's Deposit and all accumulated interest thereon on or within five (5) business days after the Bid Deadline.

(c) Between the date that the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Except as otherwise set forth in the Stalking Horse Agreement,

*AFS COMMENTS 12.20.2022*

without the written consent of the Debtors and notice to the Committee, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided that* any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

5. **For the avoidance of doubt, in the event of a Joint Bid (as defined below), each person or entity party to such Joint Bid must submit the above information in accordance with the terms thereof and meet the above requirements in order to qualify as a Qualified Bidder.** Due Diligence.

Potential Bidders shall be eligible to receive due diligence information and access to the Debtors' electronic data room (the "Data Room") and to additional non-public information regarding the Debtors. In addition, the Debtors will provide to Potential Bidders reasonable due diligence information, as requested by such Potential Bidders in writing, as soon as reasonably practicable after such request, and the Debtors shall post to the Data Room all written due diligence provided to any Potential Bidder. For all Potential Bidders other than the Stalking Horse Bidder, the due diligence period will end on the Bid Deadline, and subsequent to the expiration of the due diligence period, the Debtors shall have no obligation to furnish any due diligence information to Potential Bidders, *provided that* the Debtors shall continue to provide due diligence information to any Qualified Bidders until the Auction has concluded. The Stalking Horse Bidder's due diligence period with respect to its Stalking Horse Bid has expired or will expire in accordance with the Stalking Horse Agreement; *provided, however*, that the Stalking Horse Bidder shall retain access to the Data Room and shall receive all other due diligence information provided to any Potential Bidders on the same terms and timing that such Data Room access and due diligence information are made available to other Potential Bidders.

The Debtors shall not furnish any confidential information relating to the Assets, liabilities of the Debtors, or a Sale to any person except to the Stalking Horse Bidder, a Potential Bidder or to such Potential Bidder's duly authorized representatives to the extent expressly permitted by the applicable Confidentiality Agreement. The Debtors and their advisors shall coordinate all reasonable requests from Potential Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Potential Bidders who, at such time and in the Debtors' reasonable business judgment after consultation with the Consultation Parties, have not established, or who have raised doubt, that such Potential Bidder intends in good faith to, or has the capacity to, consummate the applicable Sale.

The Debtors also reserve the right, subject to the terms of the Stalking Horse Agreement and after consultation with the Consultation Parties, to withhold any diligence materials that the Debtors determine are sensitive after notifying the Potential Bidder requesting such materials of such determination. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder in accordance with these Bidding Procedures.

*AFS COMMENTS 12.20.2022*

**All due diligence requests must be directed to Canaccord Genuity LLC, 535 Madison Avenue, New York, NY 10022, Attn: Jaemin Oh (joh@cgf.com), +1 415-229-0637; and Bronwyn Davies (bdavies@cgf.com), +1 617-371-3851.**

(a) **Communications with Potential Bidders.**

Notwithstanding anything to the contrary in these Bidding Procedures, all direct communications between and amongst Potential Bidders regarding the Debtors or their Assets shall involve the Debtors and the Debtors' advisors. No Potential Bidder shall communicate with any other Potential Bidder absent prior written consent from the Debtors with notice to the Committee; *provided, however*, that in the event of a Joint Bid (as defined below), the parties to such Joint Bid may communicate with one another notwithstanding the provisions of this paragraph or anything else herein.

(b) **Due Diligence from Potential Bidders.**

Each Potential Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of the Potential Bidder to consummate the applicable Sale. Failure by a Potential Bidder to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Consultation Parties, that such bidder is no longer a Potential Bidder or that a bid made by such Potential Bidder is not a Qualified Bid.

The Debtors and each of their respective advisors and representatives shall be obligated to maintain in confidence any such confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures or with the prior written consent of such bidder. Each recipient of confidential information agrees to use, and to instruct their advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or in accordance with the terms of any applicable confidentiality agreement.

6. **Bid Requirements.**

A proposal, solicitation, or offer (each, a "Bid") by a Qualified Bidder that is submitted in writing and satisfies each of the following requirements (the "Bid Requirements") as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a "Qualified Bid"). The Stalking Horse Bid will be deemed a Qualified Bid for all purposes without any further action required by the Stalking Horse Bidder.

(a) **Identification of Bidder.** Each Bid must fully disclose the following: (i) the legal identity of each person or entity bidding for the Assets and/or otherwise sponsoring, financing (including through the issuance of debt in connection with such Bid) or participating in (including through license or similar arrangement with respect to the Assets to be acquired in connection with such Bid) the Auction in connection with such Bid and the complete terms of any such participation; and (ii) any past or present connections or agreements with the Debtors, any Stalking Horse Bidder, any other known Potential Bidder or Qualified Bidder, or any officer or director of any of the foregoing (including any current or former officer or director of the Debtors.

29956043.1

5

*AFS COMMENTS 12.20.2022*

**(b)    Assets.**  Each Bid must clearly state which Assets (including any executory contracts and unexpired leases) and liabilities of the Debtors the Qualified Bidders are agreeing to purchase and assume.  FOR THE AVOIDANCE OF DOUBT, A BID MAY BE ON THE ASSETS IN EITHER (i) INDIVIDUAL LOTS, (ii) AS A COLLECTIVE WHOLE, OR (iii) IN ANY COMBINATION.

> **Deleted:** For the avoidance of doubt, a Bid may be on the Assets in either (i) individual lots, (ii) as a collective whole, or (iii) in any combination.

**(c)    Purchase Price.**  Each Bid must clearly set forth the cash purchase price to be paid for the applicable Asset Category (the "Purchase Price"), *provided*, *however,* that the DIP Lender and the Prepetition Secured Lender shall be entitled to credit bid any portion of their outstanding secured obligations under the DIP Facility or the Prepetition Credit Facility (each as defined in the DIP Motion), as applicable, pursuant to section 363(k) of the Bankruptcy Code with respect to any assets on which they hold liens in accordance with the Final DIP Order; *provided further* that any such right of the DIP Lender and/or the Prepetition Secured Lender to credit bid shall be expressly subject to the right of the Committee and/or any other party in interest to object to such credit bid pursuant to section 363(k) of the Bankruptcy Code, including, but not limited to, the right of the Stalking Horse Bidder to credit bid any Bid Protections.  Each Bid must also specify how the Purchase Price is allocated among the Assets.

**(d)    Minimum Bid.**  The Minimum Bid for all of the Assets is $10,600,000.  The Minimum Bid applies only to Bids for all of the Assets.  Bids for less than all of the Assets are not subject to the Minimum Bid and may be in amounts less than $10,600,000.  A Bid for less than all of the Assets does not need to meet the Minimum Bid in order to be a Qualified Bid.  The Debtors, in consultation with the Consultation Parties, shall determine whether a Bid for less than all of the Assets constitutes a Qualified Bid without reference to the Minimum Bid.

**(e)    Deposit.**  Each Bid must be accompanied by a cash deposit in the amount equal to 10% of the Purchase Price of the Bid, to be held in a segregated account to be identified and established by the Debtors (the "Deposit").  The Debtors reserve the right to increase the Deposit requirement.

**(f)    Assumption of Obligations.**  Each Bid must identify the obligations contemplated to be assumed by such Bid, and be on terms in the aggregate (together with the other consideration contemplated in such Bid) no less favorable to the Debtors than the Stalking Horse Agreement (if any), as determined in the Debtors' business judgment, and after consultation with the Consultation Parties.  For the avoidance of doubt, any sale of the equity interests of Debtor BWSC, LLC (or any other Debtor) shall include the assumption of all obligations and liabilities of BWSC, LLC (or such Debtor).  Other than the obligations to be assumed, the Assets shall be sold free and clear of all liens, claims, interests, and encumbrances (collectively, the "Encumbrances"), and any Encumbrances shall attach to the net proceeds of the Sales after payment of any applicable Bid Protections.

**(g)    The Same or Better Terms.**  In addition to meeting or exceeding the Minimum Bid (if applicable), each Bid must be on terms that are no less favorable in the aggregate (together with the other consideration contemplated in such Bid), in the Debtors' business judgment and after consultation with the Consultation Parties, than the terms of the Stalking Horse Agreement.  Each Bid must include duly executed, non-contingent purchase agreement and other transaction documents necessary to effectuate the transactions contemplated in the Bid and shall include a

> **Deleted:** applicable

*AFS COMMENTS 12.20.2022*

schedule of assumed contracts to the extent applicable to the Bid.  Each Bid for all of the Assets should be based on the form of the Stalking Horse Agreement, which is available in Word format in the Data Room, and must include a copy of the Stalking Horse Agreement clearly marked to show all changes requested by the Qualified Bidder, including those relating to the respective Purchase Price and assets to be acquired by such Qualified Bidder, as well as all other material documents integral to such bid, including a form of sale order marked against the applicable sale order (collectively, the "Qualified Bid Documents").  Notwithstanding anything to the contrary herein, Bids for less than all of the Assets may be in any commercially reasonable form as determined by the Debtors in consultation with the Consultation Parties.

**(h)     Committed Financing / Adequate Assurance Information.**  To the extent that a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the Sale set forth in its Bid with cash on hand, each Bid must include committed financing documents to the satisfaction of the Debtors (in consultation with the Consultation Parties) that demonstrate that the Qualified Bidder has: (i) received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the Assets and the proposed transactions.  Such funding commitments or other financing must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have only those covenants and conditions acceptable to the Debtors, in consultation with the Consultation Parties.  In addition to evidence of financial wherewithal to timely consummate the transaction, a Bid must include adequate assurance information with respect to any executory contracts or unexpired leases included or that may be included in the Bid in a form that allows the Debtors to serve such information on any counterparties to any contracts or leases being assumed and assigned in connection with the Sale that have requested, in writing, such information.

**(i)     Contingencies; No Financing or Diligence Outs.**  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall not be more burdensome, in the Debtors' business judgment, and after consultation with the Consultation Parties, than those set forth in the Stalking Horse Agreement (if any).

**(j)     Demonstrated Financial Capacity.**  A Qualified Bidder must have, in the Debtors' business judgment (in consultation with the Consultation Parties) the necessary financial capacity to consummate the proposed transactions required by its Bid (including, if necessary, to obtain transfer of any of the Debtors' permits and to obtain any necessary surety bonds or other financial assurances) and provide adequate assurance of future performance under all contracts proposed to be assumed by such Bid.

**(k)     Time Frame for Closing.**  Closing of the Sale as to any Asset related to a Bid by a Qualified Bidder (a "Closing") must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, on or before February 28, 2023.

**(l)     Binding and Irrevocable.**  Except as provided herein, a Qualified Bidder's Bid for the Assets shall be irrevocable unless and until the Debtors (in consultation with the Consultation

[Deleted: January 20]

*AFS COMMENTS 12.20.2022*

Parties) accept a higher Bid for such Assets and such Qualified Bidder is not selected as the Backup Bidder for such Assets. If selected as Backup Bidder, such Bid shall be irrevocable until the Closing of a Successful Bid for such Assets. For the avoidance of doubt, the Stalking Horse Bid shall remain irrevocable if selected as Backup Bidder until the Closing of a Successful Bid for such Assets contemplated by such Stalking Horse Bid.

**(m) Expenses; Disclaimer of Fees**. Each Bid (other than the Stalking Horse Bid) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder (other than the Stalking Horse Bidder) will be permitted to request, nor be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

**(n) Authorization.** Each Bid must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

**(o) As-Is, Where-Is.** Each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Bid or accompanying asset purchase agreement.

**(p) Adherence to Bid Procedures.** By submitting its Bid, each Qualified Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

**(q) Regulatory Approvals and Covenants.** A Bid must set forth each regulatory and third-party approval required for the Qualified Bidder to consummate the applicable Sale, if any, and the time period within which the Qualified Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement, those actions the Qualified Bidder will take to ensure receipt of such approvals as promptly as possible) and any undertakings that will be required by the Debtors in connection with such regulatory and third party approvals.

**(r) Consent to Jurisdiction.** The Qualified Bidder must submit to the jurisdiction of and entry of final orders by the Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of bids, the Auction, the construction and enforcement

*AFS COMMENTS 12.20.2022*

of these Bidding Procedures, the transaction documents related to the Sale, and the Closing, as applicable.

**(s)     Bid Deadline.**  Each Bid must be transmitted via email (in .pdf or similar format) so as to be <u>actually received</u> on or before 12:00 p.m. (prevailing Eastern Time) on January 27, 2023 (the "<u>Bid Deadline</u>") by the Notice Parties.

**(t)     Waiver.**  Notwithstanding anything to the contrary herein, the Debtor may, in consultation with the Consultation Parties, waive any of the foregoing requirements for a bid to constitute a Qualified Bid to the extent reasonably necessary to promote bids and a robust auction; provided, that, any such modifications shall not be inconsistent with the Bidding Procedures Order, or any other order of the Court and shall not modify the consultation rights of any party; provided, further, that any modifications shall neither modify the grant and priority of any Stalking Horse Bidder's Bid Protections, as applicable, pursuant to the Bidding Procedures Order, nor affect the rights of a Stalking Horse Bidder, as applicable, or other Qualified Bidders in respect of their Deposits as set forth in these Bidding Procedures.

**(u)     Joint Bids**.  Any two or more persons or entities may jointly submit a single Bid (such Bid a "<u>Joint Bid</u>") with respect to the Assets or any portion thereof in accordance with the terms of these Bidding Procedures, and any such Joint Bid shall be treated as a Bid for all purposes, and each party to such Joint Bid shall be treated as and subject to the requirements of a Qualified Bidder with respect to such Joint Bid as provided by and in accordance with the terms of these Bid Procedures.

7. **Auction.**

If the Debtors receive a Qualified Bid for any Assets, other than the Stalking Horse Bid for such Assets, if any, the Debtors will conduct the Auction to determine the Successful Bidder with respect to such Assets.  If the Debtors do not receive a LOI by the LOI Deadline in accordance with Section 2(iii) or a Qualified Bid for any Assets (other than the Stalking Horse Bid for such Assets), the Debtors will not conduct the Auction as to such Assets and shall designate the Stalking Horse Bidder's Bid for such Assets as the Successful Bid for such Assets.

Prior to the commencement of the Auction, the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid for the Assets for which such Qualified Bidder submitted a Bid, as determined in the Debtors' reasonable business judgment, in consultation with the Consultation Parties (the "<u>Baseline Bid</u>"), and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidder.  The Debtors shall consult with the Consultation Parties as to how the Debtors are valuing the Bids made by Qualified Bidders during the Auction.

The Auction shall take place at the offices of Young Conaway Stargatt & Taylor, LLP on January 31, 2023 at 10:00 a.m. (prevailing Eastern Time), or such later date and time as selected by the Debtors.  The Debtors shall file a notice of the date and time for the Auction no later than January 28, 2023.  For the avoidance of doubt, so long as the Stalking Horse Bidder has executed the Stalking Horse Agreement and not breached the Stalking Horse Agreement as of the date of the Auction, the Stalking Horse Bidder is deemed to have participated in the Auction for all

Margin comments:
- Deleted: January 9
- Deleted: the
- Deleted: the
- Deleted: 11
- Deleted: 10

*AFS COMMENTS 12.20.2022*

purposes, whether or not the Stalking Horse Bidder makes a bid at the Auction. The Auction shall be conducted in a timely fashion according to the following procedures:

    **(a)**    **The Debtors Shall Conduct the Auction.**

The Debtors and their advisors shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid for the Assets. All incremental Bids made thereafter shall be Overbids (defined below) for such Assets and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders who submitted Bids on such Assets. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only the Debtors, the Qualified Bidders, the DIP Lender, the Prepetition Secured Lender, members of the Committee, and each such parties' respective legal and financial advisors shall be entitled to attend the Auction, along with any other creditor, and any other party the Debtors deem appropriate (*provided, however,* that any party other than the Qualified Bidders, the DIP Lender, the Prepetition Secured Lender, members of the Committee, and each such parties' respective legal and financial advisors shall be required to provide notice to the Debtors at least two (2) days prior to the auction by sending an email to Troy Bollman, paralegal for counsel to the Debtors, at tbollman@ycst.com; the Debtors will provide copies of any such notices to the Qualified Bidders, the DIP Lender, the Prepetition Secured Lender, members of the Committee, and each such parties' respective legal and financial advisors within one (1) day of receipt. The Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction.

    **(b)**    **Terms of Overbids.**

"Overbid" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid and accepted by the Debtors, in consultation with the Consultation Parties, as a higher or otherwise better bid. Each applicable Overbid must comply with the following conditions:

    (i)    **Minimum Overbid Increment.** The initial Overbid for the Assets, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Baseline Bid for the Assets, giving effect to the credit for the Bid Protections for the Stalking Horse Bid that is a Baseline Bid (as described below), by an incremental amount that is not less than $100,000 (the "Minimum Overbid Increment"). Except as may be otherwise provided in the Stalking Horse Agreement, the Debtors reserve the right, after consultation with the Consultation Parties, to announce reductions or increases in the Minimum Overbid Increment for the Assets at any time during the Auction. For the avoidance of doubt, if any Overbid is made as to the Assets subject to the Stalking Horse Agreement, the Stalking Horse Bidder shall be entitled to a dollar-for-dollar credit against the Minimum Overbid equal to the amount of the Stalking Horse Bidder's Bid Protections pursuant to the Stalking Horse Agreement to take into

*AFS COMMENTS 12.20.2022*

        account that, if the Stalking Horse Bidder is the Successful Bidder (as defined below), no payment of the Stalking Horse Bidder's Bid Protections will be required. Conversely, if a Bidder other than the Stalking Horse Bidder is the Successful Bidder as to the Assets subject to the Stalking Horse Agreement, the net proceeds available to the Debtors for any such Assets will be reduced by the amount of the Bid Protections of the Stalking Horse Bidder under the Stalking Horse Agreement and paid to the Stalking Horse Bidder at closing of such Bidder's Bid. Notwithstanding anything herein to the contrary, a Qualified Bid for less than all of the Assets may have a Minimum Overbid Increment of less than $100,000, with such Minimum Overbid Increment being determined in the Debtors' business judgment in consultation with the Consultation Parties, to be communicated to the Qualified Bidder(s) for such Assets no later than two (2) business days prior to the date of the Auction.

   (ii)   **Conclusion of Each Overbid Round.** Upon the solicitation of each round of applicable Overbids, the Debtors, in consultation with the Consultation Parties, may announce a deadline (as may be extended from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

   (iii)   **Overbid Alterations.** An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable in the aggregate to the Debtors' estates than any prior Bid or Overbid, as determined in the Debtors' reasonable business judgment in consultation with the Consultation Parties, but shall otherwise comply with the terms of these Bidding Procedures.

**(c)**    **Closing the Auction.**

   (i)   The Auction shall continue until there is only one Bid for the Assets (or any applicable portion of the Assets) that the Debtors determine, in their reasonable business judgment, in consultation with the Consultation Parties, to be the highest or otherwise best Bid for such Assets. Such Bid shall be declared the "Successful Bid," for such Assets and such Qualified Bidder, the "Successful Bidder" for such Assets at which point the Auction will be closed as to such Assets. Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

   (ii)   The Debtors shall have no obligation to consider any Bids or Overbids submitted after the conclusion of the Auction, and any such Bids or Overbids shall be deemed untimely and shall not constitute a Qualified Bid.

*AFS COMMENTS 12.20.2022*

      (iii)    As soon as reasonably practicable after closing the Auction, the Debtors shall cause the Qualified Bid Documents for each Successful Bid and Backup Bid to be filed with the Court.

**(d)**     **No Collusion; Good-Faith *Bona Fide* Offer.**

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that: (i) it has not engaged in any collusion with respect to the bidding, and (ii) its Bid is a good-faith *bona fide* offer and it intends to consummate the proposed transaction on the terms of its Qualified Bid if selected as the Successful Bidder.

**8.**     **Backup Bidder.**

    (a)    Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted for the Assets, the Qualified Bidder with the next-highest or otherwise second-best Bid at the Auction for such Assets, as determined by the Debtors in the exercise of their reasonable business judgment, and in consultation with the Consultation Parties (the "Backup Bid"), shall be required to serve as a backup bidder (the "Backup Bidder") for such Assets, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

    (b)    The identity of the Backup Bidder and the amount and material terms of the Backup Bid shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until the closing of the transaction with the applicable Successful Bidder. The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder. For the avoidance of doubt, the Stalking Horse Bidder may be selected as the Backup Bidder and such Stalking Horse Bid shall remain irrevocable if selected as Backup Bidder until the Closing of a Successful Bid for such Assets contemplated by such Stalking Horse Bid.

    (c)    If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may select the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. The defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all remedies available against the defaulting Successful Bidder, including specific performance, if applicable.

Margin comments:
- **Deleted:** or as otherwise provided in the Stalking Horse Agreement
- **Deleted:** or as otherwise provided in the Stalking Horse Agreement
- **Deleted:** , unless otherwise provided in the Stalking Horse Agreement should the Stalking Horse Bidder be the Successful Bidder

*AFS COMMENTS 12.20.2022*

9. **Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, and in consultation with the Consultation Parties and with the consent of the Stalking Horse Bidder, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) cancelling the Auction; and (e) rejecting any or all bids or Bids; *provided, however*, that any changes to the dates and deadlines set forth herein shall (i) comply with any milestones contained in the Debtors' DIP financing approved by the Bankruptcy Court in these cases or (ii) be made with the consent of the DIP Lender; *provided further*, that nothing in this Section shall limit any rights or remedies of the Stalking Horse Bidder under the Stalking Horse Agreement with respect to material modifications to these Bidding Procedures, the Bidding Procedures Order or the agreed form of sale order. For the avoidance of doubt, nothing contained herein or elsewhere in these Bid Procedures shall constitute or be construed as a waiver of any of the rights of the Consultation Parties, including, without limitation, the right of the Committee to object to any sale of the Assets (including, but not limited to, a sale to the Stalking Horse Bidder) and/or the right of the Committee to seek an extension of any of the dates or deadlines included herein.

10. **Sale Hearing.**

A hearing to consider approval of the Sale of the Assets to the Successful Bidders (or to approve the Stalking Horse Agreement, as applicable, if no Auction is held) (the "Sale Hearing") is currently scheduled to take place at **2:00 p.m. (ET) on February 7, 2023** before the Honorable Laurie Selber Silverstein in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 6th Floor, Courtroom No. 2, Wilmington, Delaware 19801.

**The Sale Hearing may be continued to a later date by the Debtors, by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party (excluding the Stalking Horse Bidder).**

At the Sale Hearing, the Debtors shall present the Successful Bids to the Court for approval.

For the avoidance of doubt, nothing contained in these Bid Procedures affects the right of the Committee or any other party in interest to object to any sale of the Assets at the Sale Hearing, including, but not limited to, a sale to the Stalking Horse Bidder.

11. **Bidding Protections.**

To provide an incentive and to compensate the Stalking Horse Bidder for performing the substantial due diligence and incurring the expenses necessary and entering into a Stalking Horse Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Debtors have agreed to pay the Stalking Horse Bidder, under the conditions and in the amount set forth in the Bidding Procedures Order, a reasonable expense reimbursement

[Margin comments:
Deleted: January 17
Deleted: (a) a break-up fee in the amount of $300,000 (the "Break-Up Fee"), payable pursuant to the terms of the Stalking Horse Agreement, and (b)]

*AFS COMMENTS 12.20.2022*

not to exceed $75,000 (the "Expense Reimbursement" or "Bid Protections"), payable pursuant to the terms of the Stalking Horse Agreement. The Debtors have agreed to pay the Stalking Horse Bidder, under the conditions set forth herein and in the Stalking Horse Agreement and in the amount set forth in the Bidding Procedures Order, Bid Protections in the aggregate amount of $75,000.

The obligation of the Debtors to pay the Expense Reimbursement: (i) shall be entitled to administrative expense status under sections 503(b) and 507(a)(2) of the Bankruptcy Code, *provided, however,* that the Expense Reimbursement shall be payable directly out of the proceeds of, and as a precondition to an alternative transaction; (ii) shall survive the termination of the Stalking Horse Agreement; and (iii) shall be payable in accordance with the terms set forth in the Stalking Horse Agreement; *provided, however*, that (i) that the amount of the DIP Lender's Closing Fee (as defined in the DIP Motion), if any, shall be credited against any Break-Up Fee (if any) and such Break-Up Fee shall be reduced on a dollar for dollar basis; and (ii) no costs and/or expenses incurred by the DIP Lender in its capacity as DIP Lender shall be reimbursable by the Debtors through the Expense Reimbursement, and vice versa.

**12. Return of Deposit; Remedies.**

The Deposit of the Successful Bidder shall be applied to the respective Purchase Price of such transaction at closing. The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors (in consultation with the Consultation Parties) and shall be returned (other than with respect to the Successful Bidder, and the Backup Bidder) on or within five (5) business days after the Auction, including the Deposit of the Stalking Horse Bidder if it is not the Successful Bidder or Backup Bidder. Upon the return of the Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, and except as otherwise provided in the Stalking Horse Agreement, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors (except, in the case of a Stalking Horse Bidder, as otherwise provided in the Stalking Horse Agreement), and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court, *provided* that nothing herein shall prohibit any party from seeking an additional hearing or order of the Court.

**13. Fiduciary Out.**

Nothing in these Bidding Procedures shall require the board of directors, board of managers, or similar governing body of a Debtor to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent such board of directors, board of managers, or such similar governing body determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.

Margin comments:
- Deleted: 200
- Deleted: and together with each applicable Breakup Fee, the
- Deleted: 500
- Deleted: and Break-Up Fee
- Deleted: Break-Up Fee and

*AFS COMMENTS 12.20.2022*

**14. Contract Procedures.**

Within three (3) business days from the entry of the Bidding Procedures Order, the Debtors shall file and serve on all counterparties (the "Counterparties") to their executory contracts and unexpired leases (the "Contracts") a notice (the "Cure Notice") of (a) the potential assumption by the Debtors and assignment to the Successful Bidder(s) of the Contracts, and (b) the proposed amount necessary, under section 365(b)(1) of the Bankruptcy Code, to cure any outstanding monetary defaults and compensate the Counterparties for any pecuniary losses in connection with such assumption and assignment (the "Proposed Cure Amounts"), which shall be included on a schedule attached to the Cure Notice (the "Executory Contracts Schedule").

If at any time after the issuance of the Cure Notice but prior to the Sale Hearing it is discovered that a Contract should have been listed on the Executory Contracts Schedule but was not (any such Contract, a "Previously Omitted Contract"), the Debtors shall (in consultation with the Consultation Parties), promptly following discovery thereof (but in no event later than two (2) Business Days following discovery thereof), file and serve a notice on the non-Debtor counterparty(ies) to such Previously Omitted Contract notifying such counterparties of the Debtors' intention to assume and assign such Previously Omitted Contract to the Successful Bidder, including the Proposed Cure Amounts relating thereto (the "Previously Omitted Contract Notice").

Each Counterparty shall have until 4:00 p.m. (prevailing Eastern time) on the date that is fourteen (14) days after the filing and service by the Debtors to the Counterparty of the Cure Notice or the Previously Omitted Contract Notice (as applicable) (the "Contract Objection Deadline") to object to the assumption and assignment of its Contract on any grounds, including, without limitation, the amount of the Proposed Cure Amounts, but excluding any objection as to adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code or, other than the Stalking Horse Bidder, on the basis of the identity of the Successful Bidder. Any unresolved objections shall be heard at the Sale Hearing, unless otherwise agreed by the parties; provided that the Debtors shall have the right to adjourn any Sale Hearing without the consent of any objecting party. If any objections to the amount of Proposed Cure Amounts remain unresolved as of the date of the Closing of the Sale of any Assets, the Debtors may (but are not required to) deposit the disputed amount of Proposed Cure Amounts relating to such Asset(s) in a segregated account to hold pending resolution of such objections.

Each Counterparty may raise objections as to adequate assurance of future performance or on the basis of the identity of the Successful Bidder until 4:00 p.m. (prevailing Eastern time) on the date that is five (5) days after the filing and service by the Debtors to the Counterparty of a notice identifying the applicable Successful Bidder, which, for the avoidance of doubt, may be provided with the Cure Notice or the Previously Omitted Contract Notice or at any time thereafter with respect to the Stalking Horse Bidder; provided, however, that objections, if any, on the basis of the identity of the Successful Bidder shall not, in any event, be raised later than one (1) hour prior to the commencement of the Sale Hearing (the "Buyer Specific Objection Deadline"). Any such objection must be filed and served on the Debtors and their counsel, the Committee and its counsel and the applicable Successful Bidder or Stalking Horse Bidder (if any), as applicable, and its counsel, so as to be actually received by the Buyer Specific Objection Deadline. Any such unresolved objections shall be heard at the Sale Hearing, unless otherwise agreed by the parties.