**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WINC, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 22-11238 (LSS)<br>(Jointly Administered)<br>Related DI Nos.: 14, 44, 75 & 82 |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' (A) OBJECTION
TO DEBTORS' MOTION FOR ENTRY OF FINAL ORDER AUTHORIZING DEBTORS
TO OBTAIN POSTPETITION FINANCING AND (B) REQUEST FOR ADJOURNMENT**

The Official Committee of Unsecured Creditors (the "Committee") of Winc, Inc., BWSC, LLC, and Winc Lost Poet, LLC (collectively, the "Debtors") appointed pursuant to section 1102 of title 11 of the United States Code §§ 101 *et seq*. ("Bankruptcy Code") in the above-captioned chapter 11 cases ("Chapter 11 Cases"), by and through its undersigned proposed counsel, files this (A) Objection to Debtors' Motion for Entry of Final Order Authorizing Debtors to Obtain Postpetition Financing and (B) Request for Adjournment (the "Objection"), and in support thereof states as follows:

## I. PRELIMINARY STATEMENT

1. In the 9 days since the last court appearance in these Chapter 11 Cases (including over the Christmas weekend), the Committee has reviewed responses to information requests, offered solutions and compromises to final orders, and spoken with Debtors' counsel about administratively solvency. The Committee has been clear that it is interested in finding fair and practical solutions that secure administrative solvency. Though the parties reached consensual resolutions for most of the issues raised in the Preliminary Objection,[2] the Committee's concerns

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A). The Debtors' mailing address for purposes of these chapter 11 cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

[2] To the extent unresolved, the objections contained in the Preliminary Objection are incorporated herein.

1

with DIP Financing remain unresolved, necessitating the filing of this Objection and request for adjournment. As of now, the Friday afternoon before the extended New Year holiday weekend, there are four areas of discussion and objection:

- DIP Financing: The protections granted to the DIP Lender and Prepetition Secured Lender are overbroad and beyond what is necessary for adequate protection. The proposed Final Order threatens to close off meaningful recovery for unsecured creditors by encumbering litigation proceeds and other assets carved out of the sale, hamstringing the Committee with use restrictions, and eliminating core protections such as marshaling and section 506(c) and 552(b) rights, which are designed to protect junior creditors in a thin estate. The elimination of these core protections is all the more troubling when considered in the shadow of the DIP Budget which appears designed to build up inventory and reduce cure costs for the benefit of the DIP Lender/Stalking Horse in a case premised on an accelerated sale timeline with no assurance of administrative solvency. Absent material revisions to protect unsecured creditors, the Final DIP Order should not be entered.

- Retention of Canaccord Genuity LLC: If approved in its current form, Canaccord's fees will render the estate administratively insolvent. The Committee opposes the retention of Canaccord absent material changes to the proposed compensation structure, which is neither market nor otherwise appropriate for these cases or the proposed transactions. The Committee, Debtors and Canaccord agreed to adjourn the hearing on Canaccord's retention application to January 17 (with an objection deadline of January 11).

- Verification of Stalking Horse Terms and Ongoing Issues with APA: The Committee is reviewing and investigating the terms of the Stalking Horse Asset Purchase Agreement ("APA"), but its initial review raises serious concerns regarding the effect that this transaction will have on the estate post-close. Some examples of areas that are concerning to the Committee, the APA must be clarified to ensure that (a) the estate is not left with open purchase orders or other administrative costs associated with inventory that the DIP Lender/Stalking Horse is acquiring, (b) the estate must retain certain key assets to fund unsecured creditor recoveries, including D&O actions and prepayments unrelated to purchased assets, and (c) other issues that the Committee is prepared to discuss with the DIP Lender/Stalking Horse.

- Post-Sale Administrative Solvency: Each of the foregoing concerns funnels into the Committee's continuing and overarching concern that these cases will be left administratively insolvent following the sale. The Debtors, DIP Lender/Stalking Horse and other interested parties have not provided sufficient assurances regarding the remaining assets and liabilities following closing, including whether there will be sufficient resources to confirm a plan, pay post-closing professional fees and other administrative claims, and ensure a source

of value available for general unsecured creditors whose contracts will not be assumed and assigned in the sale.

2.      The Committee has no choice but to ask the Court to adjourn the Final DIP hearing from January 6 hearing to January 17 (currently scheduled sale hearing) given the (a) accelerated timeline; (b) Christmas and New Year holidays; and (c) opportunity to negotiate solutions for the 4 issue categories, and, if a settlement is not possible, then sufficient time for the Committee to take depositions and prepare for a contested hearing.  The Committee remains hopeful that a consensual adjournment and a global resolution is achievable.

3.      As it stands, the Court is being asked to approve a Final DIP Order that, in conjunction with the sale and other relief sought by the Debtor, will tilt these Chapter 11 Cases towards administrative insolvency following a process designed for the benefit of the Debtors' founder.  The Committee seeks to explore and achieve a resolution that addresses the DIP Financing and sale terms that risk creating an administratively insolvent estate with no recoveries for unsecured creditors—but until such a resolution is reached, the Committee will oppose any transactions that individually or collectively lead to such a result.  Absent an adjournment, and barring agreed upon changes to the Final DIP Order, the Committee requests that the DIP application be denied.

## II.    OBJECTION

4.      The Committee previously filed its *Omnibus (I) Preliminary Objection to Debtors' (A) Motion for Entry of Order Authorizing Debtors to Obtain Postpetition Financing, (B) Motion for Approval of Bid Procedures, and (C) To Certain Other Relief and (II) Request for Adjournment* [Docket No. 75] (the "Preliminary Objection") on December 21, 2022.[3]  The Committee

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Preliminary Objection.

incorporates by reference the Preliminary Objection as if fully set forth herein unless otherwise indicated.

5. The terms of the proposed DIP Financing would encumber litigation recoveries that may prove to be an important alternative source of recoveries for unsecured creditor recoveries, while stripping the estate and creditors of core protections against the risk of administrative insolvency. Taken together, the approval of the DIP Financing (in conjunction with Canaccord's compensation structure) as proposed by the Debtors should be denied absent significant revisions.

6. On December 22, 2022, the Court entered a Further Interim Order resulting from an interim compromise between the Debtors, Committee, and DIP Lender [Docket No. 82] (the "Further Interim Order"). The Further Interim Order did not, however, resolve the substance of most of the Committee's concerns voiced in the Preliminary Objection, which are incorporated herein. Several important issues remain unresolved, including:

> (i) liens on avoidance actions, certain other claims and causes of action, and the proceeds thereof, which are necessary for unsecured creditors to achieve a meaningful recovery (Preliminary Objection, p. 9);
>
> (ii) overbroad releases against public policy (Preliminary Objection, p. 9);
>
> (iii) overly restrictive terms on the usage of the DIP Facility, including an underfunded investigation budget (Preliminary Objection, p. 10); and
>
> (iv) waivers of rights to marshalling and rights under sections 506(c) and 552(b) (Preliminary Objection, p. 11).

7. Though it is clear that the Debtors need post-petition financing, the DIP Facility was not market-tested and the Debtors did not seek alternatives. The positioning of these cases as a last-minute pivot to Chapter 11 with a secured super-priority loan from the Stalking Horse as the only financing option reinforces the Committee's concerns that the DIP Lender has negotiated the terms of the DIP Facility to leverage its position and chill bidding.

8.	If the DIP Lender/Stalking Horse is the winning bidder, the $11 million proceeds are currently projected to pay $8.7 million in secured debt, $2 million to Canaccord, and other closing expenses. The estate is unlikely to have sufficient cash to pay all priority and administrative claims, fund a post-sale process through confirmation of a plan, or provide a cash distribution to general unsecured creditors. In light of this, the DIP Lender and Prepetition Secured Lender should not be permitted to encumber or block value for unsecured creditors, including litigation recoveries; deposits and other assets that are excluded from the sale; surcharge rights under the section 506(c) of the Bankruptcy Code; and the ability to marshal assets.

9.	A waiver of the Debtors' rights to seek surcharge against the prepetition collateral under section 506(c) has a substantial risk of harming the estates in these cases. The ability to surcharge collateral may well be critical to maintaining administrative solvency. While the Committee is aware that bankruptcy courts sometimes do grant 506(c) waivers, there has been no substantiated basis offered for such a waiver under the facts and circumstances of these cases. The DIP Lender/Stalking Horse set these cases on an expedited timeline by pivoting to a 363 sale (then switching from an equity purchase to an asset purchase) and ensuring that it would be able to control the sale process and result as the only viable post-petition financing option under the exigency it created. The Prepetition Secured Lenders and Debtors subscribed to this process, which is materially likely to leave the estate insolvent. These parties should not be permitted to strip the estate and unsecured creditors of further value and protections designed for this very situation, simply to ensure without any doubt that the Debtors will be able to transfer all of their assets as a cleansed going concern business to the company's founder. *See, e.g., In re Lockwood Corp.*, 223 B.R. 170 (8th Cir. B.A.P. 1998) (holding 506(c) waiver unenforceable because it would result in windfall to secured creditor).

10. Further, the harm to unsecured creditors from providing the lenders with superfluous adequate protection liens in unencumbered assets is compounded by the request to waive any marshalling requirements, which would allow the lenders to look first to previously unencumbered assets to satisfy a diminution claim for interests in entirely unrelated property secured prepetition, when in fact they should be looking first to other assets.  The Committee requests that the Court remove the marshaling waiver from the Final DIP Order, as well as any adequate protection liens on unencumbered assets such as avoidance and commercial tort claim recoveries, and any other assets (such as deposits and insurance policies) that are excluded from the proposed sale to the Stalking Horse.

11. In sum, the proposed Final DIP Order would grant the DIP Lender and Prepetition Secured Lender protections that are inappropriate for these Chapter 11 Cases, at the financial expense of estates on the brink of administrative insolvency.  The Court should deny entry of the Final DIP Order unless modified in accordance with the terms of this Objection, which the Committee is ready and willing to discuss with all parties over the weekend and into next week.

## REQUEST FOR ADJOURNMENT

12. The Committee requests an adjournment of the Final DIP Hearing.  The Committee is amenable to a further interim draw under the DIP Facility if necessary, so long as adequate safeguards are put into place to address the concerns raised herein.  The Committee requests that the Final DIP Hearing be adjourned to January 17, 2023, concurrent with hearings on the Sale and Canaccord Application.  The Committee is hopeful that with that extension of time, the parties will be able to reach a global resolution.

## RESERVATION OF RIGHTS

13. The Committee reserves all of its rights with respect to the DIP Motion, including, but not limited to, the right to file any further or supplemental objections to the same at any time,

and make additional arguments at any hearing on the DIP Motion, and nothing herein shall be construed as a waiver of any such rights or any arguments or objections that the Committee may raise therein or in the future.

## CONCLUSION

Wherefore, the Committee respectfully requests that this Court enter an order (i) adjourning the current hearing scheduled on the DIP Motion on January 6, 2023 to January 17, 2023, (ii) modifying the terms of the proposed Final DIP Order as set forth above, and (iii) granting such other relief as the Court deems proper.

Dated:   December 30, 2022

*/s/ Mark T. Hurford*
**A.M. SACCULLO LEGAL, LLC**
27 Crimson King Drive
Bear, DE 19701
Telephone: (302) 836-8877
Facsimile: (302) 836-8787
Email: Mark@saccullolegal.com

George P. Angelich (*Pro hac vice)*
**ARENTFOX SCHIFF LLP**
1301 Avenue of the Americas, 42nd Floor
New York, NY 10019
Telephone : (212) 457-5423
Email : George.Angelich@afslaw.com

Justin A. Kesselman (*Pro hac vice*)
James E. Britton (*Pro hac vice*)
**ARENTFOX SCHIFF LLP**
800 Boylston Street, 32nd Floor
Boston, MA 02199
Telephone: (617) 973-6102
Email: Justin.Kesselman@afslaw.com
         James.Britton@afslaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

AFDOCS:26707791.1