**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **WINC, INC., et al.,** | **Case No. 22-11238 (LSS)** |
| Debtors. | **Jointly Administered** |
| | **Hearing Date: January 17, 2023**<br>**Hearing Date: 2:00 PM**<br>**Objection Date: January 9, 2023** |
| | **Ref: Docket Nos. 47, 85 and 91** |

**ORACLE'S LIMITED OBJECTION AND RESERVATION OF RIGHTS**

Oracle America, Inc., successor in interest to NetSuite, Inc. ("Oracle"), a creditor and contract counter-party in the above-captioned jointly administered Chapter 11 cases, submits this limited objection to and reservation of rights ("Rights Reservation") regarding: (1) *Debtors' Motion for Entry of (A) an Order (I) Approving Bidding Procedures in Connection With the Sale of the Debtors' Assets and Related Bid Protections, (II) Approving Form and Manner of Notice, (III) Scheduling Auction and Sale Hearing, (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Leases, and (V) Granting Related Relief; and (B) an Order (I) Approving Purchase Agreements, and (II) Authorizing a Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interest* [Dkt. No. 47] ("Sale Motion"); and (2) *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection With Sale* [Dkt. No. 91] ("Assumption Notice"), filed by Winc, Inc., *et al.* ("Debtors").

## I.    INTRODUCTION

1.      In connection with the Sale Motion, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign certain executory contracts between the Debtors and Oracle.

2.      Oracle objects to, and reserves its rights regarding, the proposed assumption and assignment for several reasons.

a)      First, the targeted Oracle agreements are, or pertain to, one or more licenses of intellectual property which are not assignable absent Oracle's consent pursuant to both the underlying license agreements and applicable law.

b)      Second, the Assumption Notice may not provide a complete description of the contracts to be assumed and assigned. Oracle is in the process of reviewing its records in order to determine the scope of its relationship with the Debtors and to also determine whether the Debtors have provided a complete list of active agreements. Therefore, at this time, Oracle is also unable to determine the accuracy of the proposed cure amount.

c)      Third, no adequate assurance information has been provided with respect to the Stalking Horse (defined below). In addition, the Stalking Horse may not be the ultimate purchaser/assignee and therefore Oracle is unable to determine whether the successful bidder will be capable of performing under the terms of the Oracle contracts the Debtors seek to assume and assign.  Until the ultimate purchaser is known, Oracle reserves its rights on this point.

d)      Finally, the APA (defined below) could potentially include the unauthorized shared use of Oracle's licenses, in a manner which is not permitted by Oracle's agreements.  Oracle objects to any unauthorized shared use of its licenses by the Debtors.

3.      Accordingly, Oracle requests that the Court deny the Debtors' request for authority to assume and assign, transfer, or share use of, any Oracle agreement without Oracle's consent.

## II.      FACTUAL BACKGROUND

4.      The Debtors filed the above captioned cases on November 30, 2022 and an order directing joint administration was entered shortly thereafter. The Debtors continue to operate as debtors in possession.

5.      On December 7, 2022, the Debtors filed the Sale Motion, which seeks Court authority to sell substantially all assets of the Debtors. The Sale Motion identifies Project Crush Acquisition Corp. LLC as the stalking horse bidder (the "Stalking Horse").

6.      On December 22, 2022, the Debtors filed the *Notice of Filing of Revised Asset Purchase Agreement* [Dkt. No. 80] ("APA Notice").  Attached as Exhibit "1" to the APA Notice is the Amended and Restated Asset Purchase Agreement between the Debtors and the Stalking Horse ("APA").   The APA contemplates certain information sharing between the Debtor and the Stalking Horse, pursuant to a Transition Services Agreement ("TSA") which will be entered into after the sale closing:

> Post-Closing Access; Transition Services. The Parties will negotiate in good faith, prior to the Closing, a transition services agreement in form and substance reasonably acceptable to the Parties (the "Transition Services Agreement"), which will provide for the provision of services after the Closing Date, at Buyer's sole cost (which cost shall include, without limitation, all costs of Sellers after the Closing Date related to the continued operation as debtors-in-possession and all costs after the Closing Date associated with the continuation of the Voluntary Bankruptcy Cases), by the Sellers necessary to operate the Business in substantially the same manner as currently conducted in accordance with the term set forth therein ….

APA § 8.8.

7.      The scope of the information to be shared between the Debtors and the Stalking Horse via the TSA is unclear, as is the platform by which access to such information will be provided.

8.      On December 28, 2022, the Debtors filed their Assumption Notice. Exhibit "1" to the Assumption Notice identifies several Oracle agreements (collectively, the "Oracle Agreements") that may be assumed and assigned.

9.      The Oracle Agreements are described in the Assumption Notice as follows:

| Debtor Counterparty | Counterparty Name | Description of Contract | Amount Required to Cure Default Thereunder, if any |
|---|---|---|---|
| Winc. Inc. | Oracle America, Inc. | Renewal Order – Estimate #972473 DTD 2/7/2022 | $0.00 |
| Winc. Inc. | Oracle America, Inc. | Oracle Cloud Services Agreement | $0.00 |
| Winc. Inc. | Oracle America, Inc. | Oracle Ordering Document | $0.00 |
| Winc. Inc. | Oracle America, Inc. | Third Party Service Agreement DTD 8/19/2022 | $31,605.25 |
| Winc. Inc. | Oracle America, Inc. | Oracle NetSuite Estimate #1062310 DTD 8/9/2022 | $0.00 |

## III.    ARGUMENT

### A.    Debtors May Not Assume And Assign Any Oracle Agreement Absent Oracle's Consent Because The Oracle Agreement May Pertain To One Or More Licenses Of Intellectual Property.

10.    Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

11.    Federal law makes non-exclusive copyright licenses non-assignable absent consent of the licensor.  *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *see also In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

12.    Oracle's agreements are, or pertain to, non-exclusive licenses of copyrighted software.  Therefore, pursuant to Bankruptcy Code section 365, the Debtors may not assume and assign any Oracle agreement without Oracle's consent.

13.    For the reasons discussed herein, Oracle does not consent to the Debtors' proposed assumption and assignment of the Oracle Agreements at this time.

### B.     The Debtors May Not Have Adequately Identified The Oracle Agreements To Be Assumed and Assigned.

14.     The Assumption Notice generally describes the Oracle Agreements the Debtors seek to assume and assign.

15.     Oracle is in the process of reviewing its records in order to determine whether the Debtors have adequately identified the Oracle Agreements and have included a complete list of all active agreements with Oracle.

16.     If not already identified in the Assumption Notice and in order to clarify which Oracle contracts Debtors hope to assume and assign, Oracle requests that the Debtors specify, the (a) identification or contract number; (b) the contract date; (c) any associated support or support renewals; and (d) the governing license agreement.

17.     This information will enable Oracle to evaluate whether the Oracle Agreements are assignable, supported, expired or in default, and, if in payment default, the appropriate cure amount.

18.     Additionally, the information will allow Oracle to assess whether Oracle may accept performance from an entity other than the Debtors. Oracle reserves its right to be heard on this issue until after the Oracle Agreements the Debtors seek to assume and assign are identified with greater specificity.

### C.     The Debtors May Not Have Provided The Correct Cure Amount.

19.     Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

20.     The Debtors have identified a $31,605.25 cure amount for one of the Oracle Agreements.

21.     However, as previously noted, as of the filing of this Rights Reservation, Oracle is still in the process of reviewing its records.  As a result, Oracle is unable to determine whether the cure amount is accurate.

22.     Therefore, Oracle reserves its right to be heard regarding all cure amounts until after the contract or contracts the Debtors seek to assume and assign are identified which would allow Oracle to determine the correct cure amounts owed under each of them.

### D.     The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.

23.     Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1).

24.     The Debtors have not provided adequate assurance information regarding the Stalking Horse and the Sale Motion is subject to overbid and if necessary, an auction will be held on January 11, 2023, after the deadline for Oracle to object to the Sale Motion[1].

25.     To satisfy Bankruptcy Code section 365(b), Oracle requests that the Debtors provide the following information about the ultimate purchaser: (a) financial bona fides; (b) confirmation that the purchaser is not an Oracle competitor; and (c) confirmation that the ultimate assignee will (i) execute an Oracle Assignment Agreement and related documentation which identifies with specificity the Oracle executory contract(s) to be assigned; and, if appropriate (ii) enter into an Oracle Master License Agreement.

26.     Absent these assurances, Oracle cannot determine the proposed assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform the terms of the Oracle Agreements.

---

[1] Oracle is aware that pursuant to the Assumption Notice, counterparties have until five (5) days after the filing and service of the notice identifying the successful bidder in which to file an objection to adequate assurance, if the purchaser is someone other than the Stalking Horse. In order to save duplicate filings, Oracle incorporates its objection to adequate assurance here in this Rights Reservation.

27.     Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C).

**E.      Oracle's Agreements Do Not Authorize Simultaneous Use By**
**         The Debtors and the Stalking Horse/Eventual Purchaser.**

28.     The APA contemplates that undisclosed transitional or shared services may be provided between the Debtors and the Stalking Horse.

29.     Precise information about the nature of these proposed services is not provided as the TSA has not been filed with the Court and will not be entered into until after the sale closing.

30.     This omission precludes Oracle from determining how, or if, its contracts will be affected. Simultaneous use of, and access to, Oracle's licensed software exceeds the scope of the permitted uses under the Oracle Agreements.

31.     It would potentially result in an unauthorized "splitting" of the licenses between the Debtors and the ultimate purchaser.

32.     Until Oracle receives additional information regarding both the scope of the potential usage and the method for accessing the information, Oracle is unable to determine how its contracts will be impacted by the TSA.

33.     In addition, since the proposed sale is subject to overbid, the Stalking Horse may not be the ultimate purchaser. Therefore, Oracle reserves all rights regarding any subsequent APA which proposes to include transitional use or TSA, and which involves an as-yet unknown buyer.

34.     Oracle objects to the extent that any transitional or shared use arrangement purports to grant to both the Debtors and purchaser(s) the right to shared use of the Oracle licenses beyond the licenses' terms.

35.     Oracle reserves all rights regarding any transitional use, including under any final APA or TSA, pending Oracle's further review of the same.

## IV.    <u>CONCLUSION</u>

36.    For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request for authority to assume and assign, transfer or share use of the Oracle Agreements, or any Oracle agreement. Oracle reserves its right to be heard further on all issues set forth herein.

Dated: January 9, 2023
Wilmington, Delaware

**MARGOLIS EDELSTEIN**

By:        /s/ James E. Huggett
        James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 888-1112
E-mail: jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.
**DOSHI LEGAL GROUP, P.C.**
1979 Marcus Avenue, Suite 210E
Lake Success, NY 11042
Tel: (516) 622-2335
E-Mail: amish@doshilegal.com

Shawn M. Christianson, Esq.
Valerie Bantner Peo, Esq.
**BUCHALTER, A PROFESSIONAL CORPORATION**
425 Market Street, Suite 2900
San Francisco, California 94105-2491
Tel: (415) 227-0900

Peggy Bruggman, Esq.
Benjamin Wheeler, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California 94065
Telephone: (650) 506-5200

**Attorneys for Oracle America, Inc.**