**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:**<br>**January 17, 2023 at 2:00 p.m. (ET)** |

**STATEMENT OF CANACCORD GENUITY LLC IN FURTHER
SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN
ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
CANACCORD GENUITY LLC AS INVESTMENT BANKER FOR THE DEBTORS**

Canaccord Genuity LLC ("Canaccord") respectfully requests that the Court authorize its retention in these Chapter 11 Cases on modified terms, which primarily consist of a revised Transaction Fee in the amount of $975,000, one additional Monthly Fee of $100,000, and up to $75,000 in additional expense reimbursement.[2]

**BACKGROUND**

By now, the Court is familiar with Canaccord's efforts on behalf of the Debtors and the circumstances of these Chapter 11 Cases. Canaccord has worked hard with the management team since March 2022 to sell the Debtors' business at a value-maximizing price. The process was

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A). The Debtors' mailing address for purposes of these Chapter 11 Cases is 1751 Berkeley Street, Studio 3, Santa Monica, CA 90404.

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the *Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Canaccord Genuity LLC as Investment Banker for the Debtors, Effective as of the Petition Date; and (II) Waiving the Information Requirements of Local Rule 2016-2(d)* [Docket No. 67] (the "Application").

unfortunately challenging, especially as the M&A markets softened as 2022 progressed.  In the end, the market yielded only one viable bid received—the bid from the proposed purchaser, Project Crush Acquisition, LLC, which the Debtors have valued between $29 million and $39 million, with a midpoint valuation of $34 million.[3]  If consummated, the bid will allow the Company to continue to operate, preserve jobs and vendor relationships, and relieve these estates of approximately $18 million to $28 million in liabilities that the proposed buyer has agreed to assume.  And most importantly, the Debtors will remain administratively solvent as of the closing, and, with some measured discipline, will have a path to bring these Chapter 11 Cases to an efficient conclusion while ensuring a distribution to unsecured creditors.

At all times throughout its engagement, Canaccord has exercised the professionalism and integrity with which Canaccord approaches all of its assignments.  These values have positioned Canaccord as one of the leading independent and full-service global investment banking firms in the middle market.  The Debtors' business unfortunately did not attract any qualified overbids, but it was not for the lack of effort of the debtors and the team of seven Canaccord professionals assigned to this process.  Indeed, Canaccord worked with a number of interested parties, both prior to and after the Petition Date, all the way through the bid deadline.  Canaccord's efforts led to one competing bid that ultimately was not a qualifying bid under the Debtors' bid procedures.  The Debtors' summary of the marketing campaign and attempts to qualify other bidders shows that the assets were aggressively marketed in an active marketplace in order to assure that the estates would receive the maximum benefit possible.  For more than ten months, Canaccord worked to get the best bid possible and Canaccord believes it fulfilled that goal.

---

[3] *See Declaration of Morgan Ley in Support of Sale to the Stalking Horse Bidder* [Docket No. 184], ¶[20].

Four parties have filed objections to Canaccord's retention application.[4]   Three of the objecting parties – the DIP Lender (which is the same entity as the Purchaser), Banc of California, N.A. (the Debtors' prepetition lender), and the Office of the United States Trustee recognize the value Canaccord brought to the marketing and sale process and focus their objections on the $2 million Transaction Fee originally proposed in the Canaccord retention application.  The Official Committee of Unsecured Creditors, however, not only challenges the compensation requested by Canaccord, but also questions Canaccord's professionalism, integrity, and dedication to maximizing value in these Chapter 11 Cases.  For the reasons stated above, Canaccord vehemently disagrees with the Committee and stands behind its work.  Indeed, the factual record demonstrates that the Committee's attacks are unjustified and unfair.

At the same time, Canaccord recognizes the challenges posed by the $2 million Transaction Fee agreed to in March 2022 in light of the ultimate value achieved through the marketing process and the costs of the Chapter 11 Cases.  Since the filing of these cases, Canaccord has consistently communicated its willingness to engage in good faith negotiations with all stakeholders on the terms of Canaccord's proposed compensation, especially if the auction process did not reveal a significant increase in bid value.  Indeed, when the Committee made a proposal to Canaccord on January 6, 2023, Canaccord responded within 24 hours with what Canaccord believed to be a fair

---

[4] *See Objection to Debtors Application for Entry of an Order (I) Authorizing the Employment and Retention of Canaccord Genuity LLC as Investment Banker for the Debtors, Effective as of the Petition Date; and (II) Waiving the Information Requirements of Local Rule 2016-2(d)* [Docket No. 155]; *Limited Objection of Project Crush Acquisition Corp. LLC, as DIP Lender, to Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Canaccord Genuity LLC as Investment Banker for the Debtors, Effective as of the Petition Date; and (II) Waiving the Information Requirements of Local Rule 2016-2(d)* [Docket No. 156]; *Banc of California, N.A.'s Objection to Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Canaccord Genuity LLC as Investment Banker for the Debtors, Effective as of the Petition Date; and (II) Waiving the Information Requirements of Local Rule 2016-2(d)* [Docket No. 157]; and *Official Committee of Unsecured Creditors' Omnibus Objection to (A) Debtors' Motion for Entry of an Order (I) Approving Stalking Horse Purchase Agreement and (II) Authorizing a Sale Free and Clear of All Liens, Claims, Encumbrances, and other Interests; (B) Application to Retain Canaccord Genuity, LLC as Investment Banker; and (C) Certain Inventory Payments* [Docket No. 159] (the "Committee Objection").

and reasonable compromise that would essentially render the Committee's Objection moot before it was even filed. The Committee did not respond to the Canaccord proposal until January 15, 2023 and, in the meantime, demanded three depositions on shortened notice over a holiday weekend, including that of Morgan Ley of Canaccord. Nevertheless, Canaccord again immediately engaged with the Committee in an effort to agree to terms that are eminently reasonable and in line with the deal ultimately reached with the Debtors. Unfortunately, those efforts proved unsuccessful and the Committee proceeded with the deposition of Morgan Ley on Martin Luther King Day.

Canaccord remains committed to achieving a fair and reasonable outcome for these estates and, therefore, has agreed to reduce the Transaction Fee to $975,000, limit the Monthly Fees to one more Monthly Fee of $100,000, and is requesting additional expense reimbursement in an amount not to exceed $75,000, primarily to cover the additional litigation expenses Canaccord has incurred.[5]

## ARGUMENT

### A. Courts in the Third Circuit Routinely Approve Transaction Fees Within the Range Canaccord Requests

Canaccord respectfully submits that its modified compensation request is eminently reasonable and well supported by comparable cases in the Third Circuit. As modified, the proposed Transaction Fee of $975,000 represents only 2.50% to 3.36% of the value of the

---

[5] Prior to the Petition Date, Canaccord received a $75,000 advanced retainer to cover its expenses. Given this litigation and travel costs, Canaccord believes it has exceed that initial estimate.

Purchaser's bid, which the Debtors estimate to range from $29 million to $39 million.[6]  At the

midpoint valuation of $34 million, the proposed Transaction Fee is at 2.87%.[7]

Courts in the Third Circuit have consistently agreed that compensation for investment

bankers within this range is fair and reasonable.  In fact, the Court need not look further than the

case of *In re Garces Restaurant Group, Inc.*, which has a very similar fact pattern to this case.  *See*

*In re Garces Rest. Grp., Inc.*, 2019 WL 182547 (Bankr. D.N.J. 2019).  Jeffrey R. Manning of

CohnReznick Capital Markets Securities, LLC ("CRC"), the Committee's declarant in support of

the Committee Objection was even involved.  But in *Garces,* Mr. Manning was defending the

reasonableness of his own proposed transaction fee, which equated to more than 5.81% of the total

sale consideration, over the objection of an unsecured creditors' committee that challenged CRC's

application.

In *Garces*, the debtors engaged CRC to assist in a sale of their assets and proposed to pay

CRC a transaction fee of $200,000, plus 5% of the first $5 million of consideration from a sale.  *In*

*re Garces Rest. Grp., Inc.*, 2019 WL 182547 (Bankr. D.N.J. 2019).[8]  Much like Canaccord, CRC

engaged in a prepetition marketing effort that began with a large group of potentially interested

parties, eventually culminating in one preferred bidder that did not initially transact prepetition,

resulting in Chapter 11 filings.  *Id.* at 1.  Claiming administrative insolvency concerns, the

Committee objected to the reasonableness of the fees when CRC filed its fee application and

challenged CRC's efforts as investment banker.  *Id.* at 2.  The *Garces* Court found that "although

---

[6] *See Declaration of Morgan Ley in Support of Sale to the Stalking Horse Bidder* [Docket No. 184], ¶[20].

[7] Moreover, even if the Court were to analyze Canaccord's total compensation received prepetition and proposed to be received postpetition since March 2022, which is not typical, Canaccord's total proposed compensation is reasonable.  In total, Canaccord proposes to be paid $1,175,000.00, which equates to 3.01% to 4.05% of the value of the Purchaser's bid, and 3.46% at the midpoint bid valuation of $34 million.

[8] A copy of the *Garces* case is attached hereto as **Exhibit A**.

there ended up being no [other] bids at the auction, it was not for the lack of effort on behalf of the debtors and Mr. Manning." *Id.*

In support of CRC's fee application, Mr. Manning provided testimony that cited similar cases and the reasonableness of their fees, testifying that they were similar in size and complexity. The Court found the testimony credible and noted that the percentages in the cited cases averaged 5.54%. *Id.* at 6. Based on this evidence, the Court held that CRC's proposed transaction fee, which equated to slightly higher than 5.81% of the total sale consideration fell within the realm of reasonableness. *Id.*

Despite his testimony in *Garces*, in this case, Mr. Manning testifies: "[f]or a deal of this size, the investment banking market-rate transaction fee would normally be 2.0-3.0% of total consideration."[9] Mr. Manning does not cite any comparisons, other than to say his conclusion is "consistent with Canaccord's own transaction fees . . . in prior cases."[10] Mr. Manning does not identify the cases he reviewed where Canaccord was retained or the facts and circumstances of those cases.

The reality is that there is no formula that dictates exactly what percentage constitutes a reasonable amount for investment banking M&A fees. Indeed, every case is different and presents its own challenges. A review of the precedent within the District of Delaware demonstrates that Courts approve a wide range of transaction fees, well within the range Canaccord now proposes. *See In re NewAge, Inc.*, Case No. 22-10819-LSS (approving a $1.5 million sale transaction fee in

---

[9] *See Declaration of Jeffrey R. Manning, Sr. in Support of Official Committee of Unsecured Creditors' Omnibus Objection to (A) Debtors' Motion for Entry of an Order (I) Approving Stalking Horse Purchase Agreement and (II) Authorizing a Sale Free and Clear of All Liens, Claims, Encumbrances, and other Interests; (B) Application to Retain Canaccord Genuity, LLC as Investment Banker, ¶ 28*

[10] *See Declaration of Jeffrey R. Manning, Sr. in Support of Official Committee of Unsecured Creditors' Omnibus Objection to (A) Debtors' Motion for Entry of an Order (I) Approving Stalking Horse Purchase Agreement and (II) Authorizing a Sale Free and Clear of All Liens, Claims, Encumbrances, and other Interests; (B) Application to Retain Canaccord Genuity, LLC as Investment Banker, ¶ 28*

favor of Houlihan Lokey Capital, Inc. equating to 5.36% of $28 million sale consideration); *In re Enjoy Technology, Inc., et al.*, Case No. 22-10580-JKS (Bankr. D. Del. 2022) (approving a $5 million transaction fee in favor of Centerview Partners LLC equating to 4.55% of $110 million sale consideration); *In re Genapsys, Inc.*, Case No. 22-10621-BLS (Bankr. D. Del. 2022) (approving a $1.175 million sale transaction fee in favor of Lazard Frères & Co. LLC equating to 2.80% on $42 million in sale consideration); *In re Knotel, Inc., et al.*, Case No. 21-10146-MFW (Bankr. D. Del. 2021) (approving a $2.5 million sale transaction fee in favor of Moelis & Company LLC equating to 3.57% of $70 million in sale consideration); *In re Valeritas Holdings, Inc.*, Case No. 20-10290-LSS (Bankr. D. Del. 2020) (approving a $1.25 million transaction fee equating to 5.1% of the $24.5 million sale proceeds); *In re Limited Stores Company, LLC, et al.*, Case No. 17-10124-CTG (Bankr. D. Del. 2017) (approving a $1.5 million transaction fee in favor of Guggenheim Securities, LLC equating to 5.61% of the $26.75 million in sale consideration).

**B. The Engagement Letter Reference to 2.0% of Aggregate Consideration is Irrelevant**

The Committee will likely argue that the definition of "Aggregate Consideration" in the Canaccord Retention Letter supports limiting Canaccord's fee to 2.0% the total bid value. But that argument ignores the express language of the Engagement Letter, which states that Canaccord shall receive the "greater of $2 million or 2.0% of the Aggregate Sale Consideration." *See* Engagement Letter [Docket No. 90]. This construct is typical in investment banking engagement letters and sets a floor for compensation. In other words, the definition of Aggregate Sale Consideration only becomes relevant *after* Canaccord has attained the floor level of compensation agreed upon with the Company.

The Committee argues that the $2 million floor should be ignored because the Debtors would have had to obtain $100 million in sale consideration before the floor was hit. *See* Manning

7

Declaration, ¶ 29.  But that argument assumes that everyone knew in March 2022 and, then again in November 2022 when the Retention Letter was signed, exactly how this sale process would unfold.  Moreover, Canaccord has agreed unilaterally to reduce that floor by more than 50% to $975,000  given the outcome of the marketing process.

Canaccord respectfully submits that a transaction fee of 2% in this case would be on the lower end of the range of reasonableness and a higher range, such as the 2.50% to 3.48% proposed by Canaccord is more appropriate given the circumstances of these Chapter 11 Cases.  As the *Garces* Court aptly stated:  "The higher percentage fee in these cases is fairly attributed to the Debtors' shorter marketing period than in other cases and the need to expedite a sale process while preserving the best transaction value. It could also be attributed to the fact that the sale price was at the lower end of the range, and in the Court's experience, lower sale prices result in higher percentage fees." *Id.* at 2.

### C.  Payment of One More Monthly Fee of $100,000 is Reasonable

Canaccord respectfully submits that one additional Monthly Fee of $100,000 is appropriate.  Since the filing of these cases, among other things, Canaccord has been actively engaged in good faith in the continued marketing process, assisted the Debtors in all aspects of the administration of the Chapter 11 Cases, has attended several hearings before the Court, and has sat for a deposition regarding the terms of the Application.  Canaccord should be protected in the event the sale does not ultimately close and respectfully submits that the proposed Monthly Fee is within market and more than reasonable.

Monthly fees are common in this District and the requested Monthly Fee is more than appropriate.  *See In re Newage, Inc.*, Case No. 22-10819-LSS (approving monthly fees of $150,000, subject to crediting); *In re Enjoy Technology, Inc., et al.*, Case No. 22-10580-JKS

(Bankr. D. Del. 2022) (approving monthly fees capped at $150,000 subject to a cap); *In re Genapsys, Inc.*, Case No. 22-10621-BLS (Bankr. D. Del. 2022) (approving three monthly fees of $125,000); *In re Knotel, Inc., et al.*, Case No. 21-10146-MFW (Bankr. D. Del. 2021) (approving four monthly fees at $150,000); *In re Limited Stores Company, LLC, et al.*, Case No. 17-10124-CTG (Bankr. D. Del. 2017) (approving one monthly fee for $150,000 and subsequently monthly fees of $75,000, provided that monthly fees in excess of $300,000 would be credited against any transaction fee).

### D. It Would Be Unreasonable and Inequitable to Compensate Canaccord with a General Unsecured Claim

The Committee goes so far as to suggest that "[t]he Debtors should withdraw the Canaccord Application leaving Canaccord with a general unsecured claim for any potential Transaction Fee." Manning Declaration, ¶ 30. Canaccord respectfully submits that any such result would be unreasonable in this case.

As Judge Drain recognized in the *Frontier Communications* case, sometimes creditors "object to proposed compensation terms not because those terms are unreasonable but, rather, simply to enhance their recovery. There naturally is a higher risk of this happening when the court is presented with a proposed retention or compensation application after the professional's work has, as here, largely been performed and there is little need for the professional's ongoing services." *See In re Frontier Communications Corporation*, Case No. 20-22476 (RDD) (Bankr. S.D.N.Y. October 30, 2020 [Docket No. 1270]. This is exactly the case here. There is no suggestion that these Debtors are administratively insolvent and the Committee seemingly has resolved its issues with the proposed sale. Canaccord respects the Committee's effort to ensure that the estates continue to have ample funds for the Chapter 11 Cases. But no professional should have to subsidize these Chapter 11 Cases, especially when there is no evidence that these Chapter

11 Cases would be administratively insolvent, even if the Debtors were to pay Canaccord the full

$2 million Transaction Fee originally contemplated in the Application.

      In light of the circumstances of these Chapter 11 Cases, the substantial pre- and post-petition efforts of Canaccord, the time-sensitive nature of the sale process, the likelihood that the Debtors will remain administratively solvent, and Canaccord's agreement to limit its proposed compensation as set forth herein, Canaccord respectfully submits that its modified fee proposal is fair and reasonable.  For these reasons and the reasons set forth above, Canaccord requests the Court to approve the Application as modified.


Dated: January 16, 2023
      Wilmington, Delaware

                         **COZEN O'CONNOR**

                         */s/ Simon E. Fraser*
                         Simon E. Fraser (No. 5335)
                         1201 North Market Street, Suite 1001
                         Wilmington, Delaware 19899-1347
                         Telephone: (302) 295-2011
                         Facsimile: (302) 295-2013
                         Email: sfraser@cozen.com


                         -and-

                         **WILLKIE FARR & GALLAGHER LLP**
                         Brian S. Lennon (*pro hac vice* motion pending)
                         Stuart R. Lombardi (*pro hac vice* motion pending)
                         787 Seventh Avenue
                         New York, New York 10019-6099
                         Telephone:  (212) 728-8000
                         Facsimile:  (212) 728-8111
                         blennon@willkie.com
                         slombardi@willkie.com

                         *Counsel to Canaccord Genuity LLC*