**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WINC, INC., *et al.*,[1]<br><br>            Debtors. | Chapter 11<br><br>Case No. 22-11238 (LSS)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 47, 80, & 85** |

**DECLARATION OF CAROL BRAULT IN SUPPORT**
**OF SALE TO THE STALKING HORSE BIDDER**

I, Carol Brault, hereby declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, to the best of my knowledge and belief, that:

1.  I am the Chief Financial Officer of Winc, Inc. ("Winc"). I have served in the role of Chief Financial Officer of Winc since 2021. Prior to my role as Chief Financial Officer, I served as Vice President of Finance of Winc, Inc. during the period from 2018 through 2021. As a result of this, I am familiar with the above-captioned debtors and debtors in possession (collectively, the "Debtors"), the Debtors' business and financial affairs, and the Debtors' chapter 11 cases (the "Chapter 11 Cases").[2] As Chief Financial Officer, my duties include, among other things, providing oversight of the administration of the Debtors' estates, managing the Debtors' accounting department, developing, with the assistance of the Debtors' professionals, the Debtors' budget, overseeing the Debtors' payment of operational expenses, including vendor payments, and participating in interviews and business discussions throughout the sale process in connection with

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A). The Debtors' mailing address for purposes of these chapter 11 cases is 12405 Venice Boulevard, Box #1, Los Angeles, CA 90066.

[2] Capitalized terms used but not defined have the meaning given to them in the *Declaration of Carol Brault in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 15] (the "First Day Declaration") or the Motion (as defined below), as the context indicates.

30028167.3

the Chapter 11 Cases. Prior to the Petition Date, I supervised an accounting department of eleven (11) individuals. Following the Petition Date, I have continued to supervise Winc's accounting department, currently comprising seven (7) individuals. However, due to attrition and other factors, I have also assumed additional responsibilities associated with managing the Debtors' operations and affairs.

2. I submit this declaration (this "Declaration") in support of the Debtors' request, as set forth in the *Debtors' Motion for Entry of (A) an Order (I) Approving Bidding Procedures in Connection with the Sale of the Debtors' Assets and Related Bid Protections, (II) Approving Form and Manner of Notice, (III) Scheduling Auction and Sale Hearing, (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Leases, and (V) Granting Related Relief; and; (B) an Order (I) Approving Purchase Agreements, and (II) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests* [Docket No. 47] (the "Motion"), that the Court enter an order approving the sale (the "Sale") of substantially all of the Debtors' assets (the "Assets") to the Stalking Horse Bidder.[3]

3. This Declaration incorporates the statements and testimony set forth in the First Day Declaration.

4. Except as otherwise indicated, all statements set forth in this Declaration are based upon my personal knowledge, information supplied to me by the professionals retained by the Debtors, my review of relevant documents, and my opinion based upon my professional experience and knowledge of the Debtors and the Assets. If called as a witness, I could and would competently testify to the matters set forth in this Declaration. I am duly authorized to submit this Declaration on behalf of the Debtors in support of the Sale.

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Motion.

30028167.3

**A. The Sale Process**

5. As set forth in the Motion and First Day Declaration, as part of the Debtors' efforts to secure a value-maximizing transaction for their Assets, prior to the Petition Date, the Debtors retained Canaccord Genuity LLC ("Canaccord"), an experienced investment banker, to assist the Debtors in exploring value-maximizing alternatives and to canvass the market for interested buyers.

6. Throughout the Sale process, I held numerous telephone and videoconference meetings with Canaccord and potentially interested bidders to provide such bidders with information about the Debtors, their business, their financials, and other relevant information. As a result of my involvement in these diligence inquiries and given my extensive knowledge of the Debtors' business and operations, I believe that potentially interested bidders had sufficient time to conduct diligence on the Assets and the Debtors' business and submit a bid for the Assets.

**B. Approval of the Sale Is Justified by Compelling Business Circumstances and Purpose**

7. I believe that the Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for approval of the Sale. The sound business reasons for the Sale include, but are not limited to, that: (a) the Sale constitutes the highest and best value for the Assets, after an extensive marketing and sale process conducted by an experienced investment banker; (b) the Sale presents the best opportunity under the circumstances to realize the value of the Assets; and (c) the Sale maximizes the value of the Debtors' estates in a timely and efficient manner. In my business judgment, the Stalking Horse Agreement represents the highest and best value for the Assets, particularly given that the Debtors have not received any other bid for the Assets that exceeds the value of the Stalking Horse Agreement.

8. In short, I believe that consummating the Sale in accordance with the proposed order and Stalking Horse Agreement constitutes a reasonable and sound exercise of the Debtors'

business judgment, is in the best interests of the Debtors, their estates, and their creditors, and should be approved.

9. I also believe that the Debtors and the Stalking Horse Bidder have acted in good faith, and at arm's length, in connection with the Sale in that, among other things: (a) the Debtors were free to deal with any other party interested in acquiring the Stalking Horse Assets; and (b) the Sale was subject to the competitive bidding and auction process contemplated by the Bidding Procedures Order.

10. I am aware of no undue influence or improper conduct by the Stalking Horse Bidder in connection with the negotiation of the Sale or the Sale process. I am not aware of any facts that would give rise to a claim against the Stalking Horse Bidder or Buyer Parties (as defined below) for actions or inactions in connection with the Sale process. I also not aware of any facts indicating that the Sale was entered into for the purpose of hindering, delaying or defrauding creditors.

11. To the best of my knowledge, information, and belief, and after discussions with the Debtors' bankruptcy counsel, I do not believe that the Stalking Horse Bidder qualifies as an "insider," as such term is defined in section 101(31) of the Bankruptcy Code. Specifically, (i) neither the Stalking Horse Bidder, nor any of its principals (collectively, the "Buyer Parties"), has control over the Debtors or their operations; (ii) none of the Buyer Parties are directors, members, or management of the Debtors, or relatives of the foregoing; and (iii) none of the Buyer Parties are affiliates (as such term is defined in section 101(2) of the Bankruptcy Code) of the Debtors.

12. Given the Debtors' performance to date, their current cash balance, projected liabilities to be incurred, the terms of the Stalking Horse Agreement, my discussions with the Debtors' professionals, and various interested parties, I believe that all administrative expenses

incurred in the Chapter 11 Cases will be either assumed by the Stalking Horse Bidder under the terms of the Stalking Horse Agreement or will be satisfied by sale proceeds and cash on hand.

13. The Debtors: (i) have full corporate power and authority to execute all documents related to the Sale, and the Sale has been duly and validly authorized by all necessary corporate action of the Debtors; (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Sale; (iii) have taken all corporate action necessary to authorize and approve the Sale and the consummation by the Debtors of the transactions contemplated thereby, and (iv) no consents or approvals are required for the Debtors to consummate the Sale.

14. In my business judgment, under the circumstances of the Chapter 11 Cases and based on the Sale process, the Sale is the best way to maximize the value of the Assets for the Debtors' estates.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my information, knowledge, and belief.

Dated: January 17, 2023

/s/ Carol Brault
Carol Brault
Chief Financial Officer
Winc, Inc.