**<u>EXHIBIT 2</u>**

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 47** |

**ORDER AUTHORIZING (I) THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER THE PROJECT CRUSH ACQUISITION CORP LLC ASSET PURCHASE AGREEMENT AND RELATED DOCUMENTS; (III) THE DEBTORS TO ASSUME AND ASSIGN CERTAIN CONTRACTS AND UNEXPIRED LEASES; (IV) WAIVER OF THE STAY PERIODS UNDER BANKRUPTCY RULES 6004(h) AND 6006(d); AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors, for the entry of an order (i) approving bidding procedures (the "Bidding Procedures"), substantially in the form attached as **Annex 1** to the Bidding Procedures Order (as defined below), to govern the marketing and sale of all or substantially all of the Debtors' assets (the "Assets"), and approving bid protections in connection therewith; (ii) authorizing the Debtors to schedule an auction to sell the Assets (the "Auction") and scheduling the hearing to approve a sale of the Assets; (iii) approving the form and manner of notice of the proposed sale transactions, the Bidding Procedures, the Auction, the Sale Hearing, and related dates and deadlines; (iv) authorizing procedures governing the assumption and assignment of certain executory contracts and unexpired leases (the "Assumed Contracts") to the

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A).  The Debtors' go-forward mailing address for purposes of these chapter 11 cases is 12405 Venice Boulevard, Box #1, Los Angeles, CA 90066.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion and the Purchase Agreement (as defined below), unless otherwise indicated herein.

prevailing bidder(s) acquiring the Debtors' Assets (a "Successful Bidder"); and (v) granting related relief; and the Court having entered on December 22, 2022, that certain *Order (I) Approving Bidding Procedures in Connection With the Sale of the Debtors' Assets and Related Bid Protections; (II) Approving Form and Manner of Notice; (III) Scheduling Auction and Sale Hearing; (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Leases; and (V) Granting Related Relief* [Docket No. 85] (the "Bidding Procedures Order"); and no Qualified Bids, other than the Stalking Horse Bid from the Purchaser, having been received by the Bid Deadline and, as a result, the Auction having been cancelled in accordance with the Bidding Procedures Order; and Project Crush Acquisition Corp LLC (the "Purchaser") having submitted the highest and best offer for the Debtors' Assets that are identified in the Purchase Agreement (as defined below); and the Court having conducted a hearing on the Motion commencing on January 17, 2023 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the Purchase Agreement (as defined below), the Bidding Procedures Order, and the record of the hearing before the Court on December 22, 2022 (the "Bidding Procedures Hearing") at which the Bidding Procedures Order was approved and any objections to the Bidding Procedures were withdrawn or overruled; and the appearance of all interested parties and all responses and objections to the Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and upon all of the proceedings held before the Court; and all objections and responses to the relief requested in the Motion having been heard and overruled, withdrawn, or resolved on the terms set forth in this Order; and it appearing that due notice of the Motion, the Sale Hearing, the Purchase

Agreement (as defined below), the purchase and sale of the Transferred Assets (as defined in the Purchase Agreement) pursuant to the terms of the Purchase Agreement (as defined below) (the "Transaction"), and the Bidding Procedures Order has been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders, and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon, it is hereby:

**FOUND AND CONCLUDED THAT**:[3]

### Findings of Fact, Conclusions of Law, Jurisdiction, Venue, and Final Order

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Chapter 11 Cases pursuant to Bankruptcy Rule 9014.

B.      To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[3] All findings of fact and conclusions of law announced by the Bankruptcy Court at the Sale Hearing in relation to the Motion are hereby incorporated to the extent not inconsistent herewith.

29915103.73

D.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, and to the extent necessary under

Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable

by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the

implementation of this Order and expressly directs entry of this Order as set forth herein which

shall not be subject to any stay.

### Notice of the Transaction, the Purchase Agreement, Sale Hearing, Bid Deadline, and Cure Amounts

E.      As evidenced by the affidavits or declarations of service previously filed with this

Court, [Docket Nos. 55, 141, 153], proper, timely, adequate, and sufficient notice of the Motion,

the Bid Deadline (as defined below), the Sale Hearing, the Purchase Agreement (as defined below),

and the Transaction has been provided in accordance with sections 102(1), 363 and 365 of the

Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, and 9014.  The Debtors have complied

with all obligations to provide notice of the Motion, the Bid Deadline, the Sale Hearing, the

Purchase Agreement (as defined below), and the Transaction as required by the Bidding

Procedures Order.  The aforementioned notices are good, sufficient, and appropriate under the

circumstances, and no other or further notice of the Motion, the Bid Deadline, the Sale Hearing,

the Purchase Agreement (as defined below), or the Transaction is required for the entry of this

Order.

F.      A reasonable opportunity to object or to be heard regarding the relief requested in

the Motion was afforded to all interested persons and entities.

G.      In accordance with the Bidding Procedures Order, and as evidenced by the

affidavits or declarations of service and publication previously filed with this Court [Docket Nos.

99, 116], on December 28, 2022158], the Debtors filed and have served the *Notice of Possible*

29915103.73

*Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 91] (on December 28, 2022, the *Supplemental Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* [Docket No. 151] on January 10, 2023, and the *Second Supplemental Cure Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* [Docket No. 183] on January 16, 2023 (collectively, the "Cure Notice") regarding the potential assumption and assignment of certain of the Assumed Contracts and of the amount necessary to cure any defaults pursuant to section 365(b) of the Bankruptcy Code (all such amounts in connection with any Assumed Contract, the "Cure Amounts") upon the non-Debtor counterparties to the Assumed Contracts.  The service of the Cure Notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Assumed Contracts, including with respect to adequate assurance of future performance or establishing a Cure Amount for the respective Assumed Contracts.  All non-Debtor counterparties to each Assumed Contract set forth in the Cure Notice have had an adequate opportunity to object to assumption and assignment of the applicable Assumed Contract and the Cure Amount set forth in the Cure Notice, and including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code.  The deadline to file an objection to the assumption and assignment to the Purchaser of any Assumed Contract (a "Contract Objection") has expired, and to the extent any such entity timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn or overruled.  To the extent that any such party did not timely file a Contract Objection by the Contract Objection deadline, such party shall be deemed to

have consented to (i) the assumption and assignment of the Assumed Contract, and (ii) the proposed Cure Amount set forth on the Contract Notice.

**The Stalking Horse Bid**

H.       On ~~December 21~~January 17, ~~2022~~ 2023, the Purchaser and the Debtors entered into that certain Second Amended and Restated Asset Purchase Agreement that is attached to this Order as **Exhibit A** (the "Purchase Agreement"), which provided for (a) a purchase price of $11,000,000 for the Transferred Assets, less the sum of (1) the aggregate amount of any unpaid and outstanding obligations under the DIP Facility (as defined in the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361,362, 364(c)(1), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* [Docket No. 134] (the "Final DIP Financing Order")) (whether or not then due and owing), including all accrued and unpaid principal and interest balance thereof, as of the Closing Date, and (2) any and all fees, costs or expenses provided for under the Final DIP Financing Order (including those due upon Closing), including any and all fees, costs and expenses owed to counsel or advisors to the DIP Lender under the Final DIP Financing Order to the extent not previously paid by the Debtors prior to the Closing; and (b) the assumption of Assumed Liabilities (collectively, the "Stalking Horse Bid").~~ (each as~~ modified by the terms of the Settlement Term Sheet (as defined below)).

I.        In connection with entry into the Purchase Agreement, the Purchaser, certain affiliates of the Purchaser, and certain of the Debtors intend to enter into that certain Transition Services Agreement, a form of which is attached to this Order as **Exhibit B-1** (the "TSA"), and

that certain Master Service Agreement, a form of which is attached to this Order as **Exhibit B-2** (the "**MSA**," and collectively with the TSA and Purchase Agreement, the "**Sale Documents**").

J.      On January 17, 2023, the Official Committee of Unsecured Creditors of the Debtors, the Debtors, and the Purchaser agreed to the terms set forth in that certain *Settlement Term Sheet and Addendum to Sale Order*, attached hereto as **Exhibit C** (the "**Settlement Term Sheet**"), including the terms of the Credit Bid (as defined below).

I.K.      Pursuant to the Purchase Agreement and section 363(k) of the Bankruptcy Code, the Purchaser has credit bid all the outstanding secured obligations, including any and all fees, costs and expenses permitted under the postpetition financing facility approved pursuant to the terms of the Final DIP Financing Order (, as modified by the Settlement Term Sheet (such bid, the "Credit Bid"), and such Credit Bid constitutes a valid and proper component of the Stalking Horse Bid pursuant to the Bidding Procedures.

J.L.      As provided in the Bid Procedures, the Stalking Horse Bid, including the Credit Bid, constitutes a Qualified Bid (as defined in the Bidding Procedures).

### **Highest or Otherwise Best Offer**

K.M.    As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have complied in all respects with the Bidding Procedures Order.  The sale was duly noticed and conducted in a non-collusive, fair, and good faith manner and the process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets and assume the Assumed Liabilities.  The bid deadline was January 9, 2023 at 12:00 p.m. (Prevailing Eastern Time) (the "Bid Deadline").

L.N.    The Assets were adequately marketed by the Debtors and their advisors, and the consideration provided by the Purchaser under the ~~Purchase Agreement~~Sale Documents, including the Credit Bid, constitutes the highest and best offer and provides fair and reasonable consideration to the Debtors for the Transferred Assets and the assumption of the Assumed Liabilities.  The ~~Purchase Agreement~~ Stalking Horse Bid presents the best opportunity to maximize and realize the value of the Transferred Assets for the benefit of the Debtors, their estates, and their creditors.  The Debtors' determination that the consideration provided by the Purchaser under the ~~Purchase Agreement~~Sale Documents and in accordance with the Settlement Term Sheet, including the Credit Bid, constitutes the highest and best offer for the Transferred Assets and a valid and sound exercise of the Debtors' business judgment.

M.O.    Approval of the Motion and the ~~Purchase Agreement~~Sale Documents, and the consummation of the Transaction contemplated thereby, are in the best interests of the Debtors, their creditors, their estates, and other parties in interest.  The Debtors have demonstrated good, sufficient, and sound business reasons and justifications for entering into the Transaction and the performance of their obligations under the ~~Purchase Agreement~~Sale Documents.

N.P.    Entry of this Order approving the ~~Purchase Agreement~~ Sale Documents, and all of the provisions thereof~~.~~, is a condition precedent to the Purchaser's consummation of the Transaction.

O.Q.    The ~~Purchase Agreement was~~ Sale Documents were not entered into, and neither the Debtors nor the Purchaser has entered into the ~~Purchase Agreement~~Sale Documents, or proposes to consummate the Transaction, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors.  Neither the Debtors nor the Purchaser is entering into the ~~Purchase Agreement~~Sale Documents, or proposing to consummate the Transaction, fraudulently,

for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

P.R.    The terms and conditions set forth in the ~~Purchase Agreement~~Sale Documents, including the form and total consideration to be realized by the Debtors pursuant to the ~~Purchase Agreement~~Sale Documents, including the Credit Bid:  (i) are in the best interests of the Debtors' creditors and estates; and (ii) constitute fair value, full and adequate consideration, reasonably equivalent value, and reasonable market value for the Transferred Assets.

Q.S.    As part of the consideration for the Transferred Assets, the Purchaser will assume certain Assumed Liabilities.  The Purchaser's agreement to assume the Assumed Liabilities is essential to provide for the payment of other liabilities that would potentially not be satisfied absent consummation of the Transaction.

R.T.    The Purchaser is the Successful Bidder for the Transferred Assets in accordance with the Bidding Procedures Order.  The Purchaser has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the ~~Purchase Agreement~~Sale Documents, and the sale and the ~~Purchase Agreement~~ Sale Documents likewise comply with the Bidding Procedures Order and any other applicable order of this Court.

### **Good Faith of the Debtors and the Purchaser**

S.U.    The sale process conducted by the Debtors, including, without limitation, the Bidding Procedures set forth in the Bidding Procedures Order, was at arm's length, non-collusive, and in good faith.

T.V.    The Debtors, the Purchaser, and their respective professionals and advisors have complied in good faith with the Bidding Procedures Order in all respects.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and evidence adduced and representations proffered by counsel at the Bidding Procedures Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order, the Debtors (a) afforded all creditors and other parties in interest and all potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Transferred Assets; (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets; and (c) considered any bids submitted on or before the Bid Deadline.

U.W.   The Purchase Agreement Sale Documents and the Transaction contemplated thereunder were proposed, negotiated, and entered into by and among the Debtors and the Purchaser without collusion, in good faith, and at arm's length.

V.X.    Neither the Purchaser nor any of its Affiliates, present or contemplated members, officers, directors or shareholders is an "insider" of the Debtors, as the term "insider" is defined in section 101(31) of the Bankruptcy Code.  The Purchaser is entering into the Transaction in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with the Chapter 11 Cases and the Transaction.  Neither the Debtors, the Purchaser nor any Affiliate of either have engaged in any action or inaction that would cause or permit the Purchase Agreement Sale Documents or the Transaction to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code.

### The Requirements of Section 363 Are Satisfied

~~W.~~Y.    The Debtors have demonstrated a sufficient basis and compelling circumstances requiring the Debtors to (i) enter into the ~~Purchase Agreement~~Sale Documents; (ii) sell the Transferred Assets; and (iii) assume and assign the Assumed Contracts, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors.  Such business reasons include, without limitation, the fact that: (i) the ~~Purchase Agreement constitutes~~ Sale Documents constitute the highest and best offer for the Transferred Assets; (ii) the ~~Purchase Agreement presents~~ Sale Documents present the best opportunity to maximize and realize the value of the Transferred Assets for the benefit of the Debtors, their estates and their creditors; and (iii) unless the sale is concluded expeditiously, the recoveries of the Debtors' estates and constituencies are likely to be adversely affected and there is a significant risk that a significant amount of liabilities that will be assumed by the Purchaser under the ~~Purchase Agreement~~ Sale Documents will not be satisfied.

~~X.~~Z.    The ~~Purchase Agreement is a~~ Sale Documents are valid and binding ~~contract~~ contracts between the Debtors and the Purchaser and shall be enforceable pursuant to ~~its~~ their terms.

~~Y.~~AA.    The Transferred Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.

~~Z.~~BB.    The sale of all Transferred Assets to the Purchaser under the terms of the ~~Purchase Agreement~~ Sale Documents satisfies the applicable provisions of section 363(f) of the Bankruptcy Code, and except as expressly provided in the ~~Purchase Agreement~~ Sale Documents and as otherwise set forth in this Order with respect to the Assumed Liabilities and permitted

encumbrances, if any, (i) the transfer of the Transferred Assets to the Purchaser and (ii) the assumption or assignment to the Purchaser or an Affiliate of the Purchaser of the Assumed Contracts and the Assumed Liabilities, in each case, will be free and clear of all Claims and Liens and will not subject the Purchaser, any Affiliates of Purchaser or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their respective assets (including the Transferred Assets), to any liability for any Claims or Liens whatsoever (including, without limitation, under any theory of equitable law, antitrust, setoff (except with respect to setoffs that were effected prior to the Petition Date), or successor or transferee liability).

AA.CC.        The Purchaser would not have entered into the ~~Purchase Agreement~~ Sale Documents and would not consummate the Transaction, thus adversely affecting the Debtors, their estates, their creditors, their employees, and other parties in interest, if the sale of the Transferred Assets was not free and clear of all Claims and Liens or if the Purchaser would be liable for any Claims or Liens, including, without limitation and as applicable, certain liabilities that expressly are not assumed by the Purchaser as set forth in the ~~Purchase Agreement~~ Sale Documents or in this Order.  The Purchaser asserts that it will not consummate the Transaction unless the ~~Purchase Agreement~~ Sale Documents specifically ~~provides~~provide, and this Court specifically orders, that the Purchaser, its property, its successors or assigns and their property, and the Transferred Assets will not have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Claim or Lien, or any successor or transferee liability for ~~either of~~ the Debtors, in each case, other than the Assumed Liabilities and any permitted encumbrances.

BB.DD.        The transfer of the Transferred Assets to the Purchaser under the ~~Purchase Agreement~~ Sale Documents is a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Transferred Assets free and clear of all Claims and Liens (except as provided in the ~~Purchase Agreement~~Sale Documents, solely with respect to Assumed Liabilities and any permitted encumbrances).  The Debtors may sell their interests in the Transferred Assets free and clear of all Claims and Liens because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.  The transfer of the Transferred Assets to the Purchaser will vest the Purchaser with good and marketable title to the Transferred Assets free and clear of all Claims and Liens (except~~,~~ as provided in the ~~Purchase Agreement~~Sale Documents, solely with respect to Assumed Liabilities and any permitted encumbrances).  For the avoidance of doubt, the Assumed Lien Contracts (as defined in the Settlement Term Sheet), shall be assumed by the Debtors and assigned to the Purchaser pursuant to the Sale Documents, and Purchaser has agreed to pay the cure costs related to the Assumed Lien Contracts at such time or some other time as may be agreed to by the Purchaser and the applicable counterparty.

CC.EE.        The Purchaser is not deemed to be a successor to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume or in any way be responsible for any liability or obligation of any of the Debtors or their estates by reason thereof. The Purchaser is not deemed to be a continuation or substantial continuation of the Debtors or their estates, and there is no continuity between the Purchaser and the Debtors.  The Purchaser does not have a common identity of incorporators, directors, or equity holders with the Debtors.   The Purchaser is not holding itself out to the public as a continuation of the Debtors or their estates,

and the Transaction does not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Debtors.

~~DD.~~FF.      There is no legal or equitable reason to delay the Transaction.    The Transaction must be approved and consummated promptly to preserve and maximize the value of the Debtors' Assets.

~~EE.~~GG.      The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for the Transaction pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the immediate consummation of the Transaction, the value of the Transferred Assets will be harmed.    To maximize the value of the Transferred Assets, it is essential that the Transaction occur within the timeframe set forth in the ~~Purchase Agreement~~Sale Documents.    Time is of the essence in consummating the Transaction.    Accordingly, there is good cause to waive the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d).    In addition, the Court finds that there are no unresolved objections which might form the basis for an appealable issue.

~~FF.~~HH.      The sale and assignment of the Transferred Assets outside of a Chapter 11 plan pursuant to the ~~Purchase Agreement~~ Sale Documents neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan for the Debtors.    Neither the ~~Purchase Agreement~~ Sale Documents nor the Transaction contemplated thereby constitutes a *sub rosa* chapter 11 plan.

### Assumption and Assignment of the Assumed Contracts

~~GG.~~II.  The assumption and assignment of the Assumed Contracts (as such Assumed Contracts may be amended, supplemented, or otherwise modified as provided in the ~~Purchase~~

~~Agreement~~Sale Documents and the Settlement Term Sheet) that are designated for assumption and assignment pursuant to the terms of this Order, the Bidding Procedures Order and the ~~Purchase Agreement~~ Sale Documents is integral to the Purchase Agreement, is in the best interests of the Debtors and their estates, creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

~~HH.~~JJ. The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Assumed Contracts.  The Debtors will have (i) cured or provided adequate assurance of cure of any default existing prior to the consummation of the Transaction contemplated by the ~~Purchase Agreement~~ Sale Documents (the "Closing") under all of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any counterparty to an Assumed Contract for actual pecuniary loss to such entity resulting from a default prior to the Closing under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  The assignment of each of the Assumed Contracts is free and clear of all Claims and Liens, except as expressly permitted in the ~~Purchase Agreement~~ Sale Documents and this Order.

~~II.~~KK.  The Purchaser has demonstrated adequate assurance of future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the ~~Purchase Agreement~~ Sale Documents shall be assigned and transferred to the Purchaser (in accordance with the timing specified in section 1.2(a) of the Purchase Agreement and the Settlement Term Sheet), and remain in full force and effect for the

benefit of, the Purchaser. notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

JJ.LL.   No defaults exist in the Debtors' performance under the Assumed Contracts as of the date of this Order other than the failure to pay amounts equal to the Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

**IT IS HEREBY ORDERED THAT:**

**General Provisions**

1.       The Motion is granted and approved as set forth herein.  The Debtors are authorized to (a) sell the Transferred Assets to the Purchaser in accordance with the Purchase Agreement and and (b) transfer, assign and convey the Transferred Assets, including the Assumed Contracts to the Purchaser on the Closing Date, in each case in accordance with the Sale Documents.  Pursuant to section 363(k) of the Bankruptcy Code, the Purchaser is authorized to Credit Bid pursuant to the terms of the Final DIP Financing Order, as modified by the terms of the Settlement Term Sheet.

2.       All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing, or by stipulation filed with the Court, or as resolved in this Order, and all reservations of rights included therein, are hereby overruled on the merits with prejudice.  All non-Debtor counterparties to the Assumed Contracts given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.  All holders of Claims or Liens who did not object, or withdrew their objections to the Transaction, are deemed to have consented to the Transaction pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of Claims or Liens are adequately protected – thus satisfying section 363(e) of the Bankruptcy Code; *provided*, *however*, that setoff rights will be extinguished as to the Transferred Assets and the Purchaser to the extent there is no longer mutuality after the consummation of the Transaction, except with respect to setoffs that

29915103.13

were validly effected prior to the Petition Date; *provided further,* that, the right of any party to seek satisfaction of a setoff claim from the proceeds of the sale shall be preserved, and the defenses and counterclaims of the Debtors and other parties in interest shall likewise be preserved.

**Approval of the ~~Purchase Agreement~~Sale Documents**

3.    ~~The Purchase Agreement (and all ancillary documents executed in connection with the Purchase Agreement, including the [Transition Services Agreement (the "TSA")])~~The Sale Documents, all of the terms and conditions thereof, and the Transaction contemplated therein are approved in all respects.  The failure specifically to include any particular provision of the ~~Purchase Agreement~~ Sale Documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent that the ~~Purchase Agreement~~ Sale Documents be authorized and approved in ~~its~~ their entirety.  The transfer of the Transferred Assets by the Debtors to the Purchaser shall be a legal, valid, and effective transfer of the Transferred Assets.  The consummation of the Transaction is hereby approved and authorized under section 363(b) of the Bankruptcy Code.  The automatic stay pursuant to section 362 of the Bankruptcy Code, to the extent applicable, is hereby modified to allow the Purchaser to enforce its rights pursuant to the ~~Purchase Agreement~~Sale Documents.  Any amount owed by the Debtors to the Purchaser pursuant to the ~~Purchase Agreement~~ Sale Documents shall be entitled to treatment as an administrative claim.

4.    The Debtors are authorized to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Transaction, including the sale to the Purchaser of the Transferred Assets, in accordance with the terms and conditions set forth in the ~~Purchase Agreement (and any ancillary documents executed in connection therewith, including the TSA~~Sale Documents (as modified by the Settlement Term Sheet, as applicable) and this Order, including,

without limitation, executing, acknowledging, and delivering such deeds, assignments, conveyances, and other assurance, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and confirming to the Purchaser, or reducing to possession, any or all of the Transferred Assets, and entering into any other agreements related to implementing the Transaction, and (b) to assume and assign all Assumed Contracts to the Purchaser in accordance with the timing set forth in section 1.2(a) of the Purchase Agreement and the Settlement Term Sheet.

5.    The Debtors are further authorized to pay, without further order of this Court, whether before, at or after the Closing, any expenses or costs that are required to be paid in order to consummate the Transaction or perform their obligations under the ~~Purchase Agreement~~Sale Documents and the terms of the Settlement Term Sheet; *provided* that the foregoing shall not authorize the payment of professional fees and expenses that otherwise would be subject to Court approval.

6.    All persons and entities are prohibited from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Transferred Assets to the Purchaser in accordance with the ~~Purchase Agreement~~ Sale Documents and this Order; *provided* that the foregoing shall not prohibit any person or entity from appealing this Order or seeking a stay pending such an appeal.

**Sale and Transfer Free and Clear of Claims and Liens**

7.    Except as otherwise expressly provided in the ~~Purchase Agreement~~ Sale Documents and the terms of this Order solely with respect to Assumed Liabilities and permitted encumbrances, if any, the Transferred Assets shall be sold to the Purchaser free and clear of all Claims (as defined and used in the Bankruptcy Code, including section 101(5) thereof), liabilities,

interests, rights, and encumbrances, including, without limitation, any escheat claims or obligations of the Debtors arising prior to the Closing, rights of setoff (except with respect to setoffs that were validly effected prior to the Petition Date), and all other matters of any kind and nature, whether known or unknown, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases (but, for the avoidance of doubt, in each case arising from the ownership or the operation of the Transferred Assets prior to the date of the Closing (the "Closing Date")), and any consensual or nonconsensual lien, statutory lien, real or personal property lien, mechanics' lien, materialmans' lien, warehousemans' lien, tax lien, and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof (all of the foregoing, collectively, "Liens"). For the avoidance of any doubt, the Claims and Liens on those assets of the Debtors not subject to the sale to the Purchaser pursuant to the ~~Purchase Agreement~~Sale Documents, if any, (or pursuant to any other order of the Court approving the sale of any of the Debtors' other assets free and clear of Claims and Liens) shall remain with the same validity, force, priority, and effect on those other assets.  All Liens, Claims, and interests from which the Transferred Assets are sold free and clear shall attach to the proceeds of the sale of the Transferred Assets to be received by the Debtors in the same order and priority that such Liens, Claims and interests had prior to the Closing~~.~~; *provided that* with respect to the Assumed Lien Contracts, Purchaser shall pay the associated cure costs relating to the Assumed Lien Contracts, upon assumption and assignment of the Assumed Lien Contracts or at such other time agreed to by the Purchaser and the respectively counterparty.

8.    ~~At Closing, subject to the terms of the TSA, all~~ All of the Debtors' right, title, and interest in and to, and possession of, the Transferred Assets shall be immediately vested in the Purchaser as set forth in the Sale Documents, pursuant to sections 105(a), 363(b), 363(f), and 365

of the Bankruptcy Code free and clear of any and all Claims and Liens except for Assumed Liabilities and permitted encumbrances, ~~if any~~which include, for avoidance of doubt, Liens arising under section 55631 of the California Food and Agricultural Code.  Such transfer shall constitute a legal, valid, binding, and effective transfer of such Transferred Assets to Purchaser.  All persons or entities, presently, or on or after the Closing, in possession of some or all of the Transferred Assets are directed to surrender possession of the Transferred Assets directly to the Purchaser or its designees on the Closing Date or at such time thereafter as the Purchaser may request. Notwithstanding anything in this Order, with respect to any Transferred Assets, for which legal title remains with the Debtors after Closing pursuant to the Sale Documents, such Transferred Assets shall be held in trust for the benefit of Purchaser and shall not be considered property of the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.  Subject to the rights and obligations under the Sale Documents, Purchaser shall have no right to make any claim or assert any damages at law or in equity against the Debtors with respect to such Transferred Assets and shall be deemed to have waived and forever released Debtors from any and all claims, at law or in equity that Purchaser may have, other than those set forth in the Sale Documents, with respect to Debtors maintaining legal title to, or any other rights in, such Transferred Assets.

9.    The Purchaser is hereby authorized, in connection with the consummation of the Transaction, to allocate the Transferred Assets, Assumed Liabilities, permitted encumbrances, if any, and the Assumed Contracts among its Affiliates, designees, assignees, or successors in a manner consistent with the ~~Purchase Agreement~~Sale Documents, and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Transferred Assets or the rights under any Assumed Contract to its Affiliates, designees, assignees, or successors with all of the rights and protections accorded under this Order and the ~~Purchase Agreement~~Sale Documents, and the

Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing.

10.     This Order: (i) shall be effective as a determination that as of the Closing, (a) no Claims or Liens (other than Assumed Liabilities and permitted encumbrances, if any) will be capable of being asserted against the Purchaser, any Affiliates of Purchaser or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their respective assets (including the Transferred Assets), (b) the Transferred Assets shall have been transferred to the Purchaser free and clear of all Claims and Liens except for Assumed Liabilities and permitted encumbrances, if any, and as provided for in the Sale Documents, and (c) the conveyances described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the ~~Purchase Agreement~~Sale Documents.  The Transferred Assets are sold free and clear of any reclamation rights as defined by the Uniform Commercial Code and analogous state law.

11.     Except as otherwise expressly provided in the ~~Purchase Agreement solely~~ Sale Documents and with respect to the Assumed Liabilities and permitted encumbrances, if any, all persons and entities (and their respective successors and assigns), including, without limitation, all debt security holders, equity security holders, Affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Claims or Liens arising under or out of, in connection with, or in any way relating to, the Debtors, the Transferred Assets, the ownership, sale, or operation of the Transferred Assets prior to Closing or the transfer of the Transferred Assets to the Purchaser~~,~~ are hereby forever barred and estopped from asserting such Claims or Liens against the Purchaser, any Affiliates of Purchaser or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their respective assets (including the Transferred Assets).  Following the Closing, no holder of any Claim or Liens shall interfere with the Purchaser's title to or use and enjoyment of the Transferred Assets based on or related to any such Claim or Lien, or based on any action the Debtors may take in the Chapter 11 Cases.

12.     If any person or entity that has filed financing statements, mortgages, *lis pendens* or other documents or agreements evidencing Claims or Liens against or in the Transferred Assets shall not have delivered to the Debtors prior to the Closing of the Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims and Liens that the person or entity has with respect to the Transferred Assets or otherwise, then only with regard to the Transferred Assets that are purchased by the Purchaser pursuant to the Purchase Agreement and this Order: (i) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf

of the person or entity with respect to the Transferred Assets; (ii) the Purchaser is hereby authorized

to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or

otherwise recorded, shall constitute conclusive evidence of the release of all Claims and Liens

against the Purchaser and the applicable Transferred Assets; and (iii) the Purchaser may seek in

this Court or any other court to compel appropriate parties to execute termination statements,

instruments of satisfaction, and releases of all Claims and Liens with respect to the Transferred

Assets other than Assumed Liabilities and permitted encumbrances, if any.  This Order is deemed

to be in recordable form sufficient to be placed in the filing or recording system of each and every

federal, state, or local government agency, department, or office.  Notwithstanding the foregoing,

the provisions of this Order authorizing the sale and assignment of the Transferred Assets free and

clear of Claims and Liens shall be self-executing, and neither the Debtors nor the Purchaser shall

be required to execute or file releases, termination statements, assignments, consents, or other

instruments to effectuate, consummate, and implement the provisions of this Order.

13.    To the maximum extent permitted by applicable law, the Purchaser shall be

authorized, as of the Closing Date, to operate under any license, permit, registration, and

governmental authorization or approval (collectively, the "Licenses") of the Debtors with respect

to the Transferred Assets, and all Licenses are deemed to have been, and hereby are directed to be,

transferred to the Purchaser ~~as of the Closing Date~~pursuant to the Sale Documents.  To the extent

any Licenses cannot be transferred to the Purchaser in accordance with the previous sentence, such

Licenses: (i) shall be in effect while the Purchaser, with assistance from the Debtors, works

promptly and diligently to apply for and secure all necessary government approvals for the transfer

or issuance of new Licenses to the Purchaser; and (ii) shall terminate on a license-by-license basis

following transfer or issuance of a new License to the Purchaser.  ~~In accordance with the terms of~~

~~the TSA~~To the extent required under the Sale Documents, the Debtors shall maintain the Licenses in good standing to the fullest extent allowed by applicable law for the Purchaser's benefit until equivalent new Licenses are issued to the Purchaser.

14.     Nothing in this Order or the ~~Purchase Agreement~~ Sale Documents releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as owner or operator of property sold or transferred pursuant to this Order after the occurrence of the Closing Date (with respect to such property), *provided, however*, that the foregoing shall not limit, diminish or otherwise alter the Debtors' or the Purchaser's defenses, claims, causes of action, or other rights under applicable non-bankruptcy law with respect to any liability that may exist to a governmental unit at such owned or operated property.  Nothing in this Order or the ~~Purchase Agreement (or the TSA)~~ Sale Documents authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (ii) registration, (iv) authorization, or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  To the extent provided by section 525 of the Bankruptcy Code, a governmental unit may not deny, revoke, suspend, or refuse to renew any permit, license, or similar grant to a person that is or has been a bankrupt or a debtor under the Bankruptcy Code, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a bankrupt or debtor under the Bankruptcy Code, has been insolvent before the commencement of the case under the Bankruptcy Code, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under the Bankruptcy Code or that was discharged under the Bankruptcy Code.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any

defense asserted under this Order, subject to the Debtors' and the Purchaser's rights to assert in that forum or before this Court that any such laws are not in fact police or regulatory law or that the matter should be heard by the Bankruptcy Court.

15.    ~~All~~ Unless otherwise provided herein or the Sale Documents, all persons and entities that are in possession of some or all of the Transferred Assets as of the Closing Date are directed to surrender possession of such Transferred Assets to the Purchaser on the Closing Date.

**No Successor or Transferee Liability**

16.    Neither the Purchaser, nor any Affiliate, successor, or assignee of the Purchaser, shall be deemed, as a result of any action taken in connection with the ~~Purchase Agreement~~Sale Documents, the consummation of the Transaction contemplated by the ~~Purchase Agreement~~Sale Documents, or the transfer or operation of the Transferred Assets, including the Assumed Contracts, to: (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for the Purchaser, with respect to the Assumed Liabilities to be paid after the Closing or any obligations as an assignee under the Assumed Contracts arising after the Closing); (ii) have, *de facto* or otherwise, merged with or into the Debtors; (iii) be an alter ego or a mere continuation or substantial continuation of the Debtors including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the WARN Act (29 U.S.C. §§ 2101 et seq.) ("WARN"), the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* (the "NLRA"); or (iv) be liable for any environmental liabilities, debts,

claims, or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), any escheat liabilities arising prior to the Closing, or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine.

17.    Other than as expressly set forth in the ~~Purchase Agreement~~ Sale Documents solely with respect to Assumed Liabilities and permitted encumbrances, if any, neither the Purchaser, nor any Affiliate, successor, or assignee of the Purchaser shall have any responsibility for (i) any liability or other obligation of the Debtors or related to the Transferred Assets or (ii) any remaining Claims or Liens against the Debtors or any of their predecessors or Affiliates.  Other than as expressly set forth in the ~~Purchase Agreement~~ Sale Documents solely with respect to Assumed Liabilities and permitted encumbrances, if any, neither the Purchaser, nor any Affiliate, successor, or assignee of the Purchaser, shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or Affiliates') businesses or operations or any of the Debtors' (or their predecessors' or Affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, (i) liabilities on account of any taxes arising, accruing or payable

under, out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing; (ii) liabilities or obligations under WARN; (iii) escheat liabilities arising prior to Closing; or (iv) liabilities or obligations under CERCLA, or any foreign, federal, state, or local labor, employment, or environmental law whether of similar import or otherwise by virtue of the Purchaser's purchase of the Transferred Assets or assumption of the Assumed Liabilities by the Purchaser or an Affiliate of the Purchaser (all liabilities described in paragraph 16 and paragraph 17 of this Order, "Successor or Transferee Liability").

18.    Except as otherwise expressly provided in this Order or the ~~Purchase Agreement~~Sale Documents, nothing shall require the Purchaser to: (i) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement, or other agreements to which the Debtors are a party or have any responsibility therefor including, without limitation, medical, welfare, and pension benefits payable after retirement or other termination of employment; or (ii) assume any responsibility as a fiduciary, plan sponsor, or otherwise, for making any contribution to, or in respect of the funding, investment, or administration of any employee benefit plan, arrangement, or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement, or agreement.

19.    Effective upon the Closing, except with respect to Assumed Liabilities and permitted encumbrances, if any, all persons and entities are forever prohibited from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser, any Affiliates of Purchaser or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their

respective assets (including the Transferred Assets), with respect to any (i) Claim or Lien or (ii) Successor or Transferee Liability, including, without limitation, the following actions with respect to clauses (i) and (ii): (a) commencing or continuing any action or other proceeding pending or threatened; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Claim or Lien; (d) asserting any setoff (except with respect to setoffs that were effected prior to the Petition Date), right of subrogation, or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (f) revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Transferred Assets or conduct any of the businesses operated with such Transferred Assets.

### **Good Faith of the Purchaser**

20.     The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.  The Transaction contemplated by the ~~Purchase Agreement~~ Sale Documents is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transaction (including the assumption and assignment of the Assumed Contracts), unless such authorization and consummation of the sale are duly and properly stayed pending such appeal.

21.     Neither the Debtors, the Purchaser nor any Affiliate of either the Debtors or the Purchaser have engaged in any collusion with other bidders or other parties or have taken any other

action or inaction that would cause or permit the Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code or otherwise. The consideration provided by the Purchaser for the Transferred Assets under the ~~Purchase Agreement~~ Sale Documents is fair and reasonable and is not less than the value of such Transferred Assets, and the Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

22.    The Purchaser is not an "insider" of any of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

**Assumption and Assignment of Assumed Contracts**

23.    To the extent that any entity did not timely file a Contract Objection by the Contract Objection Deadline with respect to any Assumed Contract set forth on the Cure Notice, such entity shall forever be barred and estopped from objecting: (i) to the Cure Amount as the amount to cure all defaults to satisfy section 365 of the Bankruptcy Code and from asserting that any additional amounts are due or defaults exist; (ii) that any conditions to assumption and assignment must be satisfied under such Contract or Lease before it can be assumed and assigned or that any required consent to assignment has not been given; or (iii) that the Purchaser has not provided adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code.

24.    The assumption and assignment of the Assumed Contracts is approved, including, for the avoidance of doubt, the timing set forth in section 1.2(a) of the Purchase Agreement and the Settlement Term Sheet. The Debtors are authorized and directed to assume and assign each of the Assumed Contracts to the Purchaser or an Affiliate of the Purchaser upon the Closing of the Transaction (or thereafter, in accordance with the Purchase Agreement and this Order), free and clear of all Claims and Liens, other than Assumed Liabilities and permitted encumbrances, if any. The payment of the applicable Cure Amounts by the Purchaser, in accordance with the ~~Purchase~~

Agreement Sale Documents and the Settlement Term Sheet shall, in accordance with section 365(b) of the Bankruptcy Code, (i) cure all defaults under the Assumed Contracts as contemplated by section 365 of the Bankruptcy Code as of the Closing Date, (ii) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (iii) together with the assumption of the Assumed Contracts by the Debtors and the assignment of the Assumed Contracts to the Purchaser or an Affiliate of the Purchaser, constitute adequate assurance of future performance thereof.   The Cure Amounts and any payments made to the counterparties under the Assumed Contracts prior to the assumption of the Assumed Contracts shall be deemed payments that were required to be made in full as part of the obligation to assume and assign the Assigned Contracts under this Sale Order and the Purchase Agreement.

25.    Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Amounts by the Purchaser, the Assumed Contracts to be assumed and assigned under the Purchase Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.  Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the counterparty to such Assumed Contract to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  Subject to the payment of the applicable Cure Amounts by the Purchaser, all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser or an Affiliate of the Purchaser of the Assumed Contracts have been satisfied.   Subject to the taking assignment of the Assumed

Contracts and payment of the applicable Cure Amounts by the Purchaser, upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Assumed Contracts, and such Assumed Contracts shall remain in full force and effect for the benefit of the Purchaser. Subject to the payment of the applicable Cure Amounts by the Debtors or the Purchaser, as applicable, each non-Debtor counterparty to the Assumed Contracts shall be forever barred and estopped from (i) asserting against the Debtors or the Purchaser or their respective property any assignment fee, acceleration, default, breach, claim, pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date or arising by reason of the Closing, including any breach related to or arising out of change-in-control in such Assumed Contracts, or any purported written or oral modification to the Assumed Contracts and (ii) asserting against the Purchaser (or its assets, including the Transferred Assets) or its Affiliates, designees, assignees, or successors (or their assets), any Claim or Lien, counterclaim, breach, condition, setoff (except with respect to setoffs that were effected prior to the Petition Date) asserted or capable of being asserted against the Debtors existing as of the Closing Date or arising by reason of the Closing except for the Assumed Liabilities and permitted encumbrances, if any.

26.      Upon the Closing taking assignment of the Assumed Contracts and the payment of the relevant Cure Amounts, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assumed Contracts.  There shall be no assignment fees, increases, or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assumed Contracts.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract

shall not be a waiver of such terms or conditions or of the right of the Debtors or the Purchaser, as the case may be, to enforce every term and condition of such Assumed Contract.  The validity of the assumption and assignment of any Assumed Contract to the Purchaser shall not be affected by any existing dispute between the Debtors and any counterparty to such Assumed Contract.

27.     The assignments of each of the Assumed Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code and shall be free and clear of all Claims and Liens pursuant to section 363(f) of the Bankruptcy Code.

**Other Provisions**

28.     ~~Subject to the challenge rights pursuant to paragraph 14 of the Final DIP Order [Docket No. 134], at~~ At Closing and from the cash proceeds of the ~~Sale~~Transaction, the Debtors shall pay ~~[$X]~~ to the Prepetition Secured Party ~~in full and final satisfaction of the Obligations (as such term is defined in~~ the amount necessary to fully satisfy the Prepetition Senior ~~Loan Documents (as defined in the Final DIP Order)) due and arising under or related to~~ Obligations under the Prepetition Senior Credit Agreement (each such term, as applicable, as defined in the Final DIP Financing Order) in accordance with the terms of the Settlement Term Sheet. The Debtors shall obtain a payoff statement from the Prepetition Secured Party at least one (1) business day prior to closing.

29.     The Debtors shall:  (i) within two business days of the closing of the Transaction, instruct the Escrow Agent under that certain *Escrow Agreement* (the "Natural Merchants Escrow Agreement") entered into in connection with that certain *Asset Purchase Agreement* (as amended, the "Natural Merchants APA") dated as of May 12, 2021, between Debtor BWSC, LLC ("BWSC") and Los Fields, Inc. (f/k/a Natural Merchants, Inc.), Comex Consulting, S.L. ("Comex"), and their related principals and affiliates (collectively, "Natural Merchants"), to release any and all amounts

held in that certain escrow account ending in 9752 at City National Bank pursuant to the Natural Merchants Escrow Agreement and the Natural Merchants APA to Natural Merchants or its designee, and (ii) promptly after the closing of the Transaction, reject the Natural Merchants APA, the Escrow Agreement, the *Consulting Agreement*, dated May 12, 2021, by and between the Winc, Inc. and Comex, and the *Personal Goodwill Purchase Agreement*, and any amendments, modifications, or supplements related to the foregoing, including for the avoidance of doubt, the *First Amendment to Asset Purchase Agreement*, dated August 3, 2022.

30.     Notwithstanding anything to the contrary in this Order or the Purchase Agreement, no contract between the Debtors and Oracle America, Inc., successor in interest to NetSuite, Inc., ("Oracle") will be assumed or assigned without (1) Oracle's prior written consent; (2) cure of any default under such contract; and (3) execution by the Debtor or its successor and the assignee of mutually agreeable assignment documentation in a final form to be negotiated after entry of this Order.  In addition, no provision of this Order or the TSA shall authorize (1) the transfer of any Oracle license agreement to any third party; or (2) use of any Oracle license agreement that is inconsistent with the relevant license grant including, but not limited to, exceeding the number of authorized users, shared use or license splitting, absent Oracle's express prior written consent.

31.     Notwithstanding anything to the contrary herein or in the Purchase Agreement, the Debtors and the Purchaser hereby acknowledge and agree that Summerland Wine Brands, a dba of Terravant Wine Company, LLC ("Summerland") possesses both a valid and binding warehouseman's lien and an artisan's lien on certain wine produced, processed, blended, bottled and currently stored at Summerland's facilities with claims through December 31, 2022 totaling approximately $223,257.11 (the "Summerland Claim"), pursuant to that certain Host Winery Facilities Agreement, dated as of May 16, 2022, by and among BWSC and Summerland. On or

prior to the Closing, the Debtors shall satisfy the Summerland Claim in full. Any and all amounts accrued and owing to Summerland after December 31, 2022 shall be paid in the ordinary course of business, unless otherwise agreed, and Summerland shall maintain any valid liens it may have on the Transferred Assets, solely with respect to any claim owed to Summerland that remains unpaid, in the same order and priority that such valid liens, if any, had prior to the Closing. After the Closing, the Purchaser and Summerland shall agree to the terms regarding the continued storage of any and all wine at Summerland's facilities.

32.    The Debtors, pursuant to the Cure Notice, have scheduled that certain memorandum of understanding, dated May 16, 2022, by and among BWSC and Summerland (the "MOU") for possible assumption and assignment. Notwithstanding anything to the contrary herein or in the Purchase Agreement, the Debtors and the Purchaser hereby acknowledge that the MOU has expired and is therefore not executory and is not subject to assumption and/or assignment to the Purchaser. Summerland agrees to negotiate with Purchaser on a new agreement in good faith.

~~29.~~33.  This Order is binding upon and inures to the benefit of any successors and assigns of the Debtors or the Purchaser, including any trustee appointed in any subsequent case of the Debtors under Chapter 7 of the Bankruptcy Code.

~~30.~~34.  The provisions of this Order and the ~~Purchase Agreement~~ Sale Documents are non-severable and mutually dependent.

~~31.~~35.  The ~~Purchase Agreement~~ Sale Documents and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

32.36.   No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including, without limitation, the Purchase Agreement and the Transaction.

33.37.   The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser or its designees, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transaction.  This Court retains jurisdiction to compel delivery of the Transferred Assets, to protect the Purchaser (and its assets, including the Transferred Assets) and its Affiliates, designees, assignees, or successors (or their assets), against any Claims, Liens, and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363, or 365 of the Bankruptcy Code (or other applicable provisions) necessary to transfer the Transferred Assets and the Assumed Contracts to the Purchaser.

34.38.   The requirements set forth in Bankruptcy Rules 6003(b), 6004, and 6006 have been satisfied or are otherwise hereby waived.

35.39.   As provided by Bankruptcy Rules 7062 and 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d).  Time is of the essence in closing the sale and the Debtors and the Purchaser intend to close the sale on or before January 20, 2023.

36.40.   This Order and the Purchase Agreement shall be binding in all respects upon all creditors of (whether known or unknown), and holders of equity interests in, the Debtors, any holders of Claims or Liens in, against, or on all or any portion of the Transferred Assets, all

successors and assigns of the Purchaser, the Debtors and their Affiliates and subsidiaries, and any subsequent trustees appointed in the Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy Code, and shall not be subject to rejection. Nothing contained in any Chapter 11 plan confirmed in the Chapter 11 Cases, any order confirming any such Chapter 11 plan, or any order approving wind-down or dismissal of the Chapter 11 Cases or any subsequent Chapter 7 cases shall conflict with or derogate from the provisions of the Purchase Agreement or this Order, and to the extent of any conflict or derogation between this Order or the Purchase Agreement and such future plan or order, the terms of this Order and the Purchase Agreement shall control.

37.41.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

38.42.  To the extent any provisions of this Order conflict with, or are otherwise inconsistent with, the terms and conditions of the Purchase Agreement or the Bidding Procedures Order, this Order shall govern and control.

39.43.  The Debtors have all necessary authorizations to sell and are hereby permitted to sell to the Purchaser all claims or causes of action of the Debtors against other parties arising out of events occurring prior to the Closing Date that constitute a Transferred Asset. The Purchaser may pursue any claim (i) that the Debtors may have that constitutes a Transferred Asset, or (ii) that the Purchaser may have that arises out of or is related to the Transferred Assets purchased by the Purchaser (notwithstanding the foregoing, the Purchaser will not be able to assert rights specifically retained by the Debtors in the Purchase Agreement).

40.44.  Effective immediately following the Closing, the Debtors fully and forever waive, release and discharge Purchaser and its current officers, directors, representatives, affiliates, controlling persons, members, employees, agents, attorneys, financial advisors, consultants,

representatives, shareholders, partners, successors and assigns ("Purchaser Released Person") from any liability whatsoever on or otherwise in relation to any claim, counterclaim, setoff, recoupment, action or cause of action of any kind or nature whatsoever and other similar rights, demands, lawsuits and complaints, debts, losses, obligations, liabilities, rights, rights of recovery and damages of every kind or nature whatsoever, whether known or unknown, asserted or unasserted, and whether for general, special, statutory, punitive or other damages, sanctions, costs, or attorney's fees, or for equitable, declaratory, injunctive, reimbursement, or other relief, in each case including all derivative claims and whether currently pending or in process and whether arising in the past, present or future and in respect of (i) the Transaction and the Purchase Agreement (and any ancillary documents, including the TSA), including the negotiation, formulation, preparation, or consummation thereof and (ii) any action or failure to take action at any time at or prior to the Closing that the Debtors have or are entitled to make or assert, file or bring against any Purchaser Released Person.  For the avoidance of doubt, and notwithstanding anything to the contrary, nothing herein shall release claims or causes of actions arising from an act or omission determined to have constituted willful misconduct, gross negligence, or fraud.  The releases set forth herein do not extend to any rights or obligations of the parties under the Purchase Agreement (or any ancillary documents, including the TSA) that survive the Closing pursuant to the terms of the Purchase Agreement (and any documents or instruments delivered pursuant thereto, including the TSA).

**Exhibit B-1**

**TSA**

280250807 v6
29915103.73

FILING VERSION

## TRANSITION SERVICES AGREEMENT

**THIS TRANSITION SERVICES AGREEMENT** ("TSA") is effective the day of _____, 2023, ("Effective Date") by and among, on the one hand, [Project Crush Acquisition Corp LLC] ("Buyer") and [●] ("DTC Sub", and together with Buyer, the "Buyer Parties"), and on the other hand, BWSC, LLC ("Seller") and, solely for purposes of Section 4, Winc, Inc. ("Winc"). Buyer, DTC Sub, and Seller may each be referred to individually as a "Party" and together as the "Parties."

**WHEREAS**, Seller and its debtor affiliates, Winc, Inc., and Winc Lost Poet, LLC, are engaged, among other things, in the business of producing, marketing and selling alcoholic and non-alcoholic beverage products and related merchandise available for purchase through wholesale and direct-to-consumer channels, including through subscription agreements with consumers (the "Business");

**WHEREAS**, the Buyer, Seller and the other parties thereto have entered into an Asset Purchase Agreement dated as of December 7, 2022, as amended by that certain Amended and Restated Asset Purchase Agreement, dated as of December 21, 2022 (as amended, the "APA"), under which, in accordance with Sections 363, 365 and the other applicable provisions of the United States Bankruptcy Code, Buyer and its designated Affiliates purchased all of the Transferred Assets (as defined in the APA), free and clear of all Liens, together with the Assumed Liabilities of Seller and its debtor affiliates, upon the terms and conditions set forth therein (the "Transactions");

**WHEREAS**, in connection with the Transactions contemplated by the APA, the Parties acknowledge that the alcohol beverage industry is subject to unique and extensive licensing, regulatory, and tax obligations under multiple federal, state, and local laws, including but not limited to the Federal Alcohol Administration Act, the Internal Revenue Code, the Food, Drug and Cosmetic Act, Titles 21, 24, and 27 of the Code of Federal Regulations, the California Business and Professions Code, and the alcohol beverage and tax laws ("Alcohol Beverage Laws") of each state and each other jurisdiction of the United States ("U.S. Jurisdictions");

**WHEREAS**, as an integral part of the Transactions, the Buyer Parties further desire that Seller maintains its independence, certain operations, and compliance obligations until such time as the Buyer Parties can transfer or obtain new licenses or permits as required by the federal government and all applicable U.S. Jurisdictions; and

**WHEREAS**, in connection with the Transactions and pursuant to the APA, Seller desires to provide certain transition services to the Buyer Parties, and the Buyer Parties desire to receive such transition services in exchange for payment, on the terms and conditions set forth in this TSA.

**NOW, THEREFORE**, in consideration of the mutual agreements, representations, and warranties hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**SECTION 1**. Defined Terms. Capitalized terms used but not otherwise defined in this TSA will have the meaning given to them in the APA.

**SECTION 2**.  Term and Termination.

a.  Commencing on the Closing Date and continuing until the earlier of (i) such time that the applicable Buyer Parties obtain all licenses and permits required by Alcohol Beverage Laws to allow Buyer Parties to conduct the Business and (ii) January 31, 2024 (the "Term").

b.  The Buyer Parties may terminate this TSA for convenience, either as to the entire TSA or only with respect to a particular Transition Service, upon written notice to the Seller, and in such case, the applicable Transition Service shall terminate on the termination date specified in such written notice and Schedule A shall be deemed amended to delete such Transition Service as of the termination date, and this TSA shall be of no further force and effect for such Transition Service. For the avoidance of doubt, this TSA shall be deemed terminated in its ~~entirely~~ entirety upon the termination of all of the Transition Services hereunder. In addition, the Buyer Parties may terminate this Agreement immediately upon written notice to Seller in the case of a material breach of this Agreement by Seller if Seller has not cured such material breach within 10 days after receipt of written notice thereof sent by the Buyer Parties.

c.  Seller shall provide the Buyer Parties with prompt written notice if Seller reasonably believes that Buyer Parties' actions or nonperformance under this TSA have caused Seller to be administratively insolvent. In such event, Buyer Parties shall have 10 days after receipt of such written notice to cure any defaults under this TSA (the "Cure Period").  If such defaults are not cured within the Cure Period, Seller shall have the ability to seek relief from the Bankruptcy Court and, in such event, shall provide Buyer Parties, subject to applicable laws, an opportunity to object and be heard.  Seller shall notify the Buyer Parties of their intent to seek relief from the Bankruptcy Court and provide the Buyer Parties with a copy of any notices, documents, or filings with respect hereto.

d.  Upon the expiration or termination of this TSA in accordance with its terms or the termination of the provisions of any Transition Services hereunder, in addition to any other rights or remedies of the Parties under this TSA or Law: (1) the Seller shall promptly cease the performance of such Transition Services pursuant to this Agreement, unless a Buyer Party instructs the Seller by written notice to complete work-in-process pursuant to the same terms and conditions as set forth herein, (2) the Buyer Parties shall pay all Fees owed to the Seller for the terminated Transition Services prior to termination pursuant to the terms set forth herein, and (3) the Seller shall convey, by bill of sale, assignment, or other necessary conveyance documents or instruments (i) any raw materials, finished goods, work-in-process of any type, consigned goods, and merchandise acquired by the Sellers after the Closing that would have constituted Inventory if acquired by the Sellers prior to the Closing ("Interim Inventory") and (ii) any Transferred Assets relating to or used by the Seller to provide such Transition Services that were not previously transferred to the applicable Buyer Party at the Closing ("Delayed Transferred Assets").  Buyer Parties shall bear all costs and expenses associated with the transfer, packaging, shipment, and delivery of any Interim Inventory or such Transferred Assets, to the extent necessary or applicable.

For the avoidance of doubt, except in the ordinary course of business, no Interim Inventory or Delayed Transferred Assets shall be transferred, leased, mortgaged, encumbered or assigned to any Person other than to the Buyer Parties either during or at the expiration of the Term.

**SECTION 3.**  Compliance with Laws and Regulations.  During the Term, to the extent funds are available, or made available, to Seller to do so, including, without limitation, any amounts required to acquire or secure any bond (solely to the extent approved in advance by the Buyer Parties; provided, that, to the extent such bond is necessary under applicable Law in order for Seller to perform any Transition Service and such bond is not approved or otherwise obtained by the Buyer Parties, Seller shall not be required to perform such Transition Service until such time as such bond is approved or obtained), Seller agrees to (i) maintain all licenses, permits, and bonds necessary to fulfill its obligations under this TSA in full force and effect as and to the extent required by applicable Alcohol Beverage Laws of the U.S. Jurisdictions; (ii) fulfill in all material respects the obligations to pay excise taxes; (iii) maintain operational, procedural, and reporting obligations, in all material respects, as and to the extent required by federal law and the law of all applicable U.S. Jurisdictions; and (iv) maintain accurate records and documentation regarding the operations of the Business consistent with Seller's current recordkeeping system or such other recordkeeping system that the Parties implement during the Term, in each case, at the sole cost and expense of the Buyer Parties.  In the event the Buyer Parties implement new recordkeeping systems during the Term, Seller will use commercially reasonable efforts to cooperate with the Buyer Parties, at the Buyer Parties' sole cost and expense, to facilitate the transfer of such records and documentation in such format and manner as reasonably requested by the Buyer Parties.  No product of any Assumed Lien Contracts (as defined in the Settlement Term Sheet) will be sold by the Seller or the Buyer Parties without first complying with the California Food and Agricultural Code Producers' Lien with respect to such product.

**SECTION 4.**  Seller's Obligations.

a.  During the Term, to the extent funds are available, or made available, to Seller to do so, Seller shall provide (a) the services outlined in Schedule A, (the "Transition Services") and (b) any service, system, function, or responsibility not specifically described in Schedule A, but that is inherently required for the proper performance and delivery of a service, system, function or responsibility of the Business, as requested by the Buyer Parties. Notwithstanding any provisions of this TSA to the contrary, Seller shall have no obligation to perform any Transition Services or any other obligations under this TSA, and shall not be in breach of this TSA, at any time when there are not sufficient funds available from Transition Proceeds (as hereinafter defined) or from other funds made available by Buyer Parties to permit Seller to perform such Transition Services or any other such obligations.

b.  As promptly as practicable after the Effective Date, Buyer Parties on behalf of Seller shall obtain commercial insurance policies necessary for Seller to operate the Business and provide the Transition Services pursuant to this TSA. All costs and expenses of Seller associated with obtaining such insurance policies shall be payable by Buyer Parties as Fees and Buyer Parties shall provide all necessary assistance to Seller in connection with obtaining such insurance policies.  Seller, as the insured party, shall provide any necessary cooperation to Buyer Parties in connection with obtaining such insurance policies.  Until

the earlier of (x) such time as such necessary insurance policies are obtained for Seller and (y) sixty (60) days after the Effective Date, Winc shall (i) maintain and not terminate its existing commercial insurance policies with respect to the Business (the "Winc Insurance Policies") for the benefit of Seller (which shall not include, for the avoidance of doubt, any directors and officers indemnification policies); provided, that, under no circumstance shall Winc be obligated to obtain or renew any Winc Insurance Policies or incur any costs or expenses associated with the coverage under such Winc Insurance Policies during the sixty-day period beginning after the Effective Date and (ii) not be wound up, liquidated or dissolved or close or dismiss its Voluntary Bankruptcy Case or convert to a case under Chapter 7 of the Bankruptcy Code; provided, however, that with respect to the foregoing clause (ii), Winc shall have the same rights and be subject to the same notice provisions as Seller under Section 2(c) of this TSA. Premiums paid in respect of the Winc Insurance Policies that are allocable to Seller during the Term shall be payable as Fees without regard to when such premiums are paid. Seller acknowledges and agrees that the Buyer Parties shall have all rights to claims, and proceeds thereof, under the Winc Insurance Policies solely to the extent arising during the Term and relating to the Business (including all credits, proceeds, causes of actions or rights thereunder) and, for the avoidance of doubt, all such proceeds received shall constitute Transition Proceeds and shall be subject to this TSA.

**SECTION 5.** Funds Collected from Distribution Pursuant to Agreement.

a. All sales made by Seller in the operation of the Business during the Term shall be made in the ordinary course of business, consistent in all manners with the customs and practices used by Seller prior to the Effective Date. To the extent that an employee, officer, director or consultant of Seller (other than any employee of any Buyer Party) desires to enter into an agreement or contract in respect of the operation of the Business and the provision of the Transition Services that would result in Fees (as defined below) to be paid by any Buyer Party, the Buyer Parties' prior written approval shall be required before such Fees are funded pursuant to this Section 5(a). All monies collected by Seller from sales of products during the Term shall be used (i) to fund any out-of-pocket fees, expenses, or costs of Seller, including, without limitation any ~~Excess~~ Buyer Post-Closing Administration Expenses (as hereinafter defined), that Seller has actually incurred solely in connection with the provision of the Transition Services during the Term (the "Fees"), (ii) to pay for the Buyer Parties' provision of certain services to Seller during the Term pursuant to that certain Master Services Agreement, and (iii) to the extent there are any amounts remaining after payment of Fees and amounts payable pursuant to clauses (i) and (ii) above, such amounts shall be held in a separate account for the benefit of the Buyer Parties (the "Fund Account") until the expiration of the Term or such earlier time as Buyer Parties indicate that the Buyer Parties have obtained Licenses that will permit Buyer Parties to receive such amounts and directs Sellers to disburse such amounts to Buyer Parties, at which point Seller shall immediately transfer, without any consideration therefore, such amounts. For the avoidance of doubt, except as provided in this TSA, in no event shall Seller, any other Seller Party pursuant to the APA, nor any third party (including creditors or their successors or assigns) have any right to or interest in any monies collected by or on behalf of Seller in

-4-

respect of the operation of the Business and provision of the Transition Services from and after the Closing Date (all such monies, the "Transition Proceeds").

b. During the Term, Seller shall be responsible for and pay out of Seller's or its Affiliates' own funds and in no event shall any Transition Proceeds (as hereinafter defined) be used to pay any, (i) fees, expenses, or costs ~~(~~, including all legal, accounting, financial advisory, valuation, investment banking and other third party advisory or consulting fees and expenses~~)~~, incurred by or on behalf of Seller or its Affiliates in connection with any Voluntary Bankruptcy Case and unrelated to the provision of Transition Services and (ii) fees, expenses, or costs incurred in connection with the wind down of Seller pursuant to the Voluntary Bankruptcy Cases (~~(i) and (ii), collectively, the "~~collectively, "Seller Wind Down Expenses"). Fees, expenses, or costs, including any legal, accounting, financial advisory, valuation, investment banking and other third party advisory or consulting fees and expenses, incurred by or on behalf of Seller or its Affiliates solely in connection with the provision of Transition Services (collectively, "Buyer Post-Closing ~~Administration Expenses") in an aggregate amount of up to $[●] (the "Post-Closing Administration Expense Cap"). Post-Closing Administration Expenses in excess of the Post-Closing Administration Cap ("Excess~~ Administration Expenses") shall be payable by Buyer Parties as Fees ~~in accordance~~ pursuant to a detailed monthly invoice setting forth the amount ~~of and detailed description of such Buyer~~ Post-Closing Administration Expenses incurred for the preceding calendar month, ~~the amount of the Post-Administration Expense Cap, if any, used to pay such Post-Closing Administration Expenses, and the amount of Excess Administration Expenses~~ incurred by Seller for such calendar month (each a "Monthly Invoice") that is submitted by Seller to Buyer for such purpose pursuant to ~~Section 5(c~~the procedures set forth in Sections 5(c) and 5(d). For the avoidance of doubt, the additional amount of statutory fees due and payable pursuant to section 1930 of title 28 of the United States Code and costs of preparing any monthly operating reports incurred by Seller solely as a result of providing the Transition Services shall be deemed to be ~~Excess~~ Buyer Post-Closing Administration Expenses for all purposes of this Agreement. For informational purposes, within fifteen (15) days after the Effective Date, Seller shall deliver to Buyer a budget for the 13-week period following Closing (the "Initial Budget") setting forth the anticipated Buyer Post-Closing Administration Expenses and shall provide an updated 13-week budget with each Monthly Invoice (together with the Initial Budget, the "Budget") Notwithstanding anything to the contrary in this Agreement, in no event shall the Buyer Parties be responsible for, or pay, and no Transition Proceeds shall be used to pay or fund, any: (a) legal fees in connection with any Legal Proceeding of Seller that is not directly related to the provision of Transition Services or (b) accounting, legal, financial advisory, valuation, investment banking, or other third party advisory or consulting fees and expenses of Seller that are not directly related to the Transition Services (and otherwise would not have been incurred in the absence of this TSA and the provision of the Transition Services)~~,~~ or (c) except as provided in this Section 5(b), statutory fees due and payable pursuant to section 1930 of title 28 of the United States Code, costs of preparing any monthly operating reports, and any costs related to closing the Voluntary Bankruptcy Cases;

c. Subject to Section 5(a), Seller shall provide or cause to be provided to the Buyer Parties, within 10 days after the end of each calendar month, a monthly report that shall include (i)

the total revenue received from sales of products during such month, (ii) a detailed accounting of Fees paid by or on behalf of Seller during such month, (iii) a detailed accounting of amounts paid pursuant to the Master Services Agreement during such month, (iv) the amount, if any, deposited into, or disbursed from, the Fund Account during such month, (v) the amount and cost of any Interim Inventory acquired by Seller during such month, and (vi)  a Monthly Invoice, updated Budget, and ~~report of~~ reports of (A) all variances from the then-current Budget ~~.~~, (B) Seller Wind Down Expenses for such month, and (C) Buyer Post-Closing Administration for such month.

d.  During the 15 day period following delivery of a Monthly Invoice, Buyer shall have the right to review such Monthly Invoice and object to any items included in such Monthly Invoice that it, in its reasonable and good faith discretion, disagrees with or disputes. In the event of such a dispute~~, including, without limitation,~~ with ~~regards~~ regard to any ~~Excess Administration Expenses~~ items reflected in ~~any~~ a Monthly Invoice or any Budget submitted by Seller to the Buyer Parties, the Buyer Parties shall promptly deliver a written statement (email being sufficient) to Seller, and in no event later than 10 days after the receipt of such Monthly Invoice from Seller, listing all disputed items and providing a reasonably detailed description of each disputed item.  Seller and the Buyer Parties shall seek to resolve all such disputes expeditiously and in good faith; provided, however, that Seller shall continue performing the Transition Services in accordance with this TSA pending resolution of any dispute.  If the Parties are unable to resolve any dispute, then such dispute shall be submitted to the Bankruptcy Court for determination and the determination of the Bankruptcy Court shall be binding on the Parties.  In the event such resolution results in the Fees that were funded, paid or reimbursed exceeding the actual and determined amount of Fees, such excess amount shall be promptly remitted to the Fund Account.

**SECTION 6**.  Other Actions and Presentation of Documentation. The Parties may take such other actions or present such other documents to federal, state, and local alcohol beverage licensing authorities as necessary to effectuate the intent of this TSA.

**SECTION 7.**  Personnel.  Seller will make arrangements to provide sufficient number of experienced personnel as independent contractors, to perform the Transition Services and all costs and expenses associated with the retention of such personnel shall be payable by Buyer Parties as Fees.

**SECTION 8.**  Representations and Warranties.

a.  The Buyer Parties represent and warrant that each shall diligently devote its best efforts to obtain the requisite license and permits on or before the end of the Term; provided, that nothing in this Section 8(b) shall be construed to alter the Term or scope of Transition Services.

b.  The Buyer Parties and Seller each represent and warrant (i) it has all requisite corporate power and authority to execute and deliver this TSA and to perform its obligations hereunder, (ii) all acts or proceedings required to be taken by it to authorize the execution and delivery of this TSA and the performance of its obligations hereunder has been

-6-

properly taken, and (iii) this TSA has been duly authorized, executed, and delivered by it and constitutes the legal, valid, and binding obligation of it, enforceable against it in accordance with the TSA's terms.

c.   Each Party will keep, or cause to be kept, and maintain all records customarily required by governmental authorities through the end of the Term.  Each Party will send copies of such records to the other Party upon the other Party's request on or prior to the expiration of the Term; provided, that, Seller shall make electronic copies of all such material records available to the Buyer Parties prior to the expiration of the Term.

**SECTION 9.**  <u>Restrictions on Dissolutions.</u>  Subject to Section 2(c) hereto, prior to the termination or expiration of this TSA, Seller agrees not to (i) be wound up, liquidated or dissolved and (ii) close or dismiss its Voluntary Bankruptcy Case or convert to a case under Chapter 7 of the Bankruptcy Code.

**SECTION 10**.  <u>General Terms</u>.

a.   <u>Amendment and Waiver</u>.  This TSA may be amended only by a writing executed by each of the Parties.  No waiver of compliance with any provision or condition hereof, and no consent provided for herein, will be effective unless evidenced by an instrument in writing duly executed by the Party sought to be charged therewith.  No failure on the part of any Party to exercise, and no delay in exercising, any of its rights hereunder will operate as a waiver thereof, nor will any single or partial exercise by any Party of any right preclude any other or future exercise thereof or the exercise of any other right.

b.   <u>Notice</u>.  Each notice, report, demand, waiver, consent, and other communication required or permitted to be given hereunder will be in writing and will be sent (and deemed given upon receipt) (i) by registered or certified first-class mail, postage prepaid and return receipt requested, (ii) by Federal Express or comparable overnight courier, or (iii) by email, followed by the original via certified first-class mail, addressed as follows:

If to a Buyer Party:

Project Crush Acquisition Corp LLC
927 Santa Fe Avenue,
Los Angeles, CA 90021
Attn: Mark T. Lynn, Chief Executive Officer
Email: mark@amass.com

with a copy to (which shall not constitute notice):

Cooley LLP
1333 2nd Street
Suite 400
Santa Monica, CA 90401
Attention: Matt Hallinan; Erin Kirchner; Matt Silverman; Eric Walker
Email: mhallinan@cooley.com; ekirchner@cooley.com; msilverman@cooley.com; ewalker@cooley.com

If to Seller:

Winc, Inc.
1751 Berkeley Street, Studio 3
Santa Monica, CA 90404
Attn: Mr. Brian Smith
Email: Brian@winc.com

with a copy to (which shall not constitute notice):
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801
Attention: Craig Grear; Matthew Lunn
Email: cgrear@ycst.com; mlunn@ycst.com

c.    <u>Binding Effect; No Assignment</u>.  This TSA will be binding upon and will inure to the benefit of the Parties and their respective successors and assigns and, except as aforementioned, this TSA creates no rights of any nature in any person not a Party hereto.  Neither Party shall assign any of its rights or delegate any of its responsibilities, liabilities, or obligations under this TSA.

d.    <u>Indemnification</u>.  Buyer Parties shall indemnify and hold Seller and Seller's members, officers, directors, agents and employees (each an "<u>Indemnified Party</u>") harmless from and against any claim, damage, loss, expense (including reasonable and out-of-pocket attorneys' fees), penalty, fine, or liability of any kind whatsoever (each, a "<u>Loss</u>"), or any action therefore, by or on behalf of any third party that arise from or are in connection with (i) any claims relating to Seller's provision of Transition Services hereunder, (ii) the Buyer Parties' failure to pay over to the appropriate taxing authority any taxes relating to the operation of the Business for any taxable period beginning after the Effective Date and ending at the expiration or termination of the Term, (iii) any warranty, recalls, or products liability claims relating to the Inventory, solely to the extent such Inventory was sold during the Term pursuant to this TSA, (iv) any claims relating to hazardous or toxic component materials, solely to the extent such claims arise or related to the operation of the Business during the Term, (v) any claims relating to improper or incomplete labeling or warnings, solely to the extent such claims arise or are in connection with the sale of any Inventory during the Term pursuant to this TSA, (vi) the Buyer Parties' material breach of or failure to comply with any of the Buyer Parties' agreements or covenants contained in this Agreement, (vii) the fraud, negligence (including omissions), or willful misconduct of the Buyer Parties, their officers, directors, employees, agents, or representatives; and (viii) any liability or other claims asserted by customers of the Business against an  Indemnified Party, solely to the extent such liability or other claims arise or are in connection with the sale of any Inventory during the Term pursuant to this TSA; <u>provided</u>, <u>however</u>, that the Buyer Parties shall not indemnify any Indemnified Party for any such matters resulting from the fraud, gross negligence or willful misconduct of such Indemnified Party.

e.    <u>Governing Law</u>.  THE PARTIES AGREE THAT, SO LONG AS IT ACCEPTS JURISDICTION, THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE (THE "<u>BANKRUPTCY COURT</u>") SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO THE INTERPRETATION,

-8-

IMPLEMENTATION, AND ENFORCEMENT OF THIS TSA AND ANY DOCUMENT EXECUTED PURSUANT HERETO (COLLECTIVELY, THE "DISPUTED MATTERS"), AND THE PARTIES HEREBY EXPRESSLY CONSENT TO AND AGREE NOT TO CONTEST IN ANY WAY SUCH JURISDICTION. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PRECEDING SENTENCE, IN THE EVENT THAT THE BANKRUPTCY COURT CANNOT OR DOES NOT ACCEPT JURISDICTION OVER ANY DISPUTED MATTER, THE PARTIES HEREBY AGREE THAT THE COURTS OF THE COUNTY OF NEW CASTLE, STATE OF DELAWARE AND OF THE UNITED STATES LOCATED IN THE DISTRICT OF DELAWARE SHALL HAVE EXCLUSIVE JURISDICTION OVER SUCH DISPUTED MATTER, AND THE PARTIES HEREBY EXPRESSLY CONSENT TO AND AGREE NOT TO CONTEST IN ANY WAY SUCH JURISDICTION. FOR THE PURPOSE OF ANY LITIGATION RELATING TO THE DISPUTED MATTERS, THE PARTIES WAIVE ANY OBJECTION THAT THEY AT ANY TIME MAY HAVE TO THE LAYING OF VENUE IN ANY SUCH COURT AND TO ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. THE PARTIES HEREBY WAIVE PERSONAL SERVICE OF ANY PROCESS IN CONNECTION WITH ANY SUCH ACTION OR PROCEEDING AND AGREE THAT THE SERVICE THEREOF MAY BE MADE BY CERTIFIED OR REGISTERED MAIL ADDRESSED TO OR BY PERSONAL DELIVERY TO ANY OTHER PARTY AT SUCH OTHER PARTY'S ADDRESS SET FORTH ON THE SIGNATURE PAGE HERETO. IN THE ALTERNATIVE, IN ITS DISCRETION, ANY OF THE PARTIES MAY EFFECT SERVICE UPON ANY OTHER PARTY IN ANY OTHER FORM OR MANNER PERMITTED BY APPLICABLE LAW.

f.      Waiver of Jury Trial. THE PARTIES HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY PROCEEDING ARISING OUT OF OR RELATING TO THIS TSA OR ANY OF THE CONTEMPLATED TRANSACTIONS OR RELATIONSHIPS CREATED UNDER OR BY THIS TSA, WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. THE PARTIES AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS SECTION OF THE AGREEMENT WITH ANY COURT OR OTHER TRIBUNAL AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED-FOR AGREEMENT AMONG THE PARTIES IRREVOCABLY TO WAIVE TRIAL BY JURY.

g.      Representation of Counsel; Mutual Negotiation. Each Party has had the opportunity to be represented by counsel of its choice in negotiating this TSA. This TSA will therefore be deemed to have been negotiated and prepared at the joint request and direction of the Parties, at arm's length, with the advice and participation of counsel.

h.      Headings. The headings herein are included for ease of reference only and shall not control or affect the meaning or construction of the provisions of this TSA.

i.      Entire Agreement. This TSA all documents to be delivered by the Parties pursuant hereto collectively represent the entire understanding and agreement between the parties with respect to the subject matter hereof. This TSA cannot be amended, supplemented or modified

except by an agreement in writing which makes specific reference to this TSA, or an agreement delivered pursuant hereto, as the case may be, and which is signed by all Parties.

j.    <u>Severability</u>.  The Parties intend that the provisions of this TSA be enforced to the fullest extent permissible under applicable law and public policies applied in each jurisdiction in which enforcement is sought.  Accordingly, if any particular provision of this TSA shall be adjudicated by a court of competent jurisdiction to be invalid, prohibited or unenforceable for any reason, so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party, such provision, as to such jurisdiction, shall be ineffective, without invalidating the remaining provisions of this TSA or affecting the validity or enforceability of this TSA or affecting the validity or enforceability of such provision in any other jurisdiction.  Notwithstanding the foregoing, so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party, if such provision could be more narrowly drawn so as not to be invalid, prohibited or unenforceable in such jurisdiction, it shall, as to such jurisdiction, be so narrowly drawn, without invalidating the remaining provisions of this TSA or affecting the validity or enforceability of such provision in any other jurisdiction.

k.    <u>Relationship of the Parties</u>.  Each Party agrees that such Party shall perform its obligations set forth herein as an independent contractor.  Nothing contained in this TSA will be construed as creating a partnership, joint venture, franchise, agency, trust, fiduciary relationship, or other association of any kind between the Parties.  Except as otherwise specifically provided in this TSA, each Party shall be responsible for compliance with all applicable laws and orders of governmental entities and for obtaining required licenses and permits.

l.    <u>Separate Counterparts</u>.  This TSA may be executed simultaneously in two counterparts, each of which together shall constitute one and the same agreement.

*[Remainder of this page intentionally left blank – signature page follows]*

**IN WITNESS WHEREOF,** the Parties hereto have entered into and signed this TSA as of the date first set forth above.

**BUYER PARTIES:**                     **SELLER:**

**Project Crush Acquisition Corp LLC**    **BWSC, LLC**

By: _____         By: _____
Name: _____         Name: _____
Title: _____         Title:



**[●]**                               **Solely for purposes of Section 4
                                      WINC, INC.**

By: _____         By: _____
Name: _____         Name: _____
Title: _____         Title:

## **SCHEDULE A**

Transition Services

1. Licensing and Brand Registration Support.   In coordination with and in support of, the Buyer Parties' personnel, Seller will assist Buyer Parties regarding:
   a. Maintenance and transitioning of licensing, brand registration and price posting.
   b. Support for transition to new distributors in select markets where a Buyer Party already has operations.

2. Winery Operations
   a. Produce, blend, store, filter, finish and bottle, or cause to be produced, blended, stored, filtered, finished and bottled, wine as necessary to preserve continuity for the Business.
   b. File, or cause to be filed, federal reports of operations, excise tax returns, and any other documentation required or requested by the Alcohol and Tobacco Tax and Trade Bureau.
   c. File, or cause to be filed, all applicate state reports and excise returns.
   d. Store, or cause to be stored, finished goods with respect to the Business.
   e. To the extent permissible by state law, solicit and accept orders for sales of the Seller's product in the ordinary course of business, consistent in all manner with the customs and practices used by Seller prior to the Effective Date.

3. Relationship Management and Ongoing Reporting.  In coordination with and in support of the Buyer personnel, Seller will assist, or cause to assist, the Buyer Parties with the following tasks:

   a. Active discount and advertising agreements, as well as any other contractual arrangements related to the products sold or for sale / distribution.

   b.  Statutory Reporting filings.

   c. Managing invoice payment resolution with customers.

   d. Reconciling invoice discrepancies.

**Exhibit C**

**Settlement Term Sheet**

## SETTLEMENT TERM SHEET AND ADDENDUM TO SALE ORDER

This Term Sheet sets forth certain of the terms and conditions for settlement and resolution of certain claims and other matters, by and among, Winc, Inc. et al, as debtors and debtors-in-possession (the "Debtors") in the chapter 11 cases jointly administered under case number 22-11238 (the "Chapter 11 Cases") filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), the official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Creditors' Committee"), and Project Crush Acquisition Corp LLC, as DIP Lender and Stalking Horse ("PCAC" and, together with the Debtor, the Creditors' Committee, and ~~BOC,~~Bane of California, N.A. ("BOC"), the "Parties").

| General Framework | This Term Sheet describes terms for a settlement between the Parties of the Creditors' Committee's objection to the Sale. This Term Sheet shall be approved by the Parties and made an exhibit to the Sale Order. |
| --- | --- |
| | This Term Sheet is subject to agreement by the Parties regarding the terms of the Asset Purchase Agreement (the "APA~~),~~"), Sale Order, Transition Services Agreement (the "TSA~~),~~"), Master Services Agreement (the "MSA~~),~~"), and related Sale documents. |
| | Certain terms set forth herein are subject to memorialization and implementation in the Plan, which will be filed with the Bankruptcy Court and for which the Debtors will seek confirmation. |
| Sale Order | The Committee agrees (a) not to object to or contest any motion seeking entry of the Sale Order consistent with this Term Sheet, (b) to support entry of the Sale Order consistent with this Term Sheet at the January 17, 2023 sale hearing, and (c) upon closing of the Sale, will release, waive and discharge any and all rights to commence any action, claim, objection or complaint against PCAC. |
| Sale Closing | The Parties agree to use commercially reasonable efforts to cause the Sale to be consummated on or prior to January 20, 2023. |
| | At the closing of the Sale, the Parties agree that PCAC as DIP Lender will be entitled to credit bid $4,165,963.49 plus 50% of the Net Sale Proceeds (defined below). At or immediately after the closing of the Sale, the Debtors will indefeasibly pay, by wire transfer, all outstanding obligations to BOC as Prepetition Secured Lender, in full and final satisfaction of the BOC Secured Claim (as defined below), *provided that*, the total amount of principal, interest, and fees payable to BOC shall not exceed $3,558,~~646.00 plus reasonable attorney fees and~~645.56, plus no more than $175,000 for BOC's bankruptcy counsel's reasonable fees and expenses (which are subject to review by the Parties, in summary form) plus reasonable lender expenses and non-default interest accruing for the period beginning January 4, 2023 through and including the closing of the sale of substantially all of the Debtors' assets to PCAC (the "BOC Secured Claim~~"), subject to the Committee's Challenge Period deadline of~~ |

**Formatted:** Underline

**Formatted:** Underline

**Formatted:** Underline

**Formatted:** DocumentID, Left

| | |
|---|---|
| | ~~February 20, 2023.  —~~"). <u>The challenge deadline of February 20, 2023 to the BOC Secured Claim is deemed waived.  The Debtors shall reserve the sum of $103,000 in cash on account of a letter of credit issued by BOC at the behest of Winc, Inc. (the "LC"), which reserve shall remain in place until BOC confirms in writing to the Debtors that the LC has been fully and finally terminated.  If the LC is drawn by the beneficiary and BOC satisfies such draw, then the Debtors shall promptly pay to BOC the additional sum of up to $100,000 on account of the LC and any expenses up to $3,000 incurred by BOC in connection therewith.</u><br><br>At Sale closing, all liens, security interests, and encumbrances of any kind in favor of PCAC and/or BOC<u>, subject to payment of the BOC Secured Claim, as set forth herein,</u> on Excluded Assets (as defined in the APA) shall be deemed released and discharged. |
| **Disputed Payment and Lien Claim Settlement** | The Debtors shall not make the Disputed Payments totaling $996,419, as defined in the Committee's objection by email dated January 13, 2023, *provided that* the Creditors' Committee withdraws its objection to the $8,000 payment to that certain software provider designated by PCAC and the Debtors will make such proposed payment of $8,000 to such software provider prior to the Sale closing.<br><br>PCAC will designate the following contracts and/or purchase orders (the "<u>Assumed Lien Contracts</u>") to be assumed by Debtors and assigned or sold to PCAC under the APA, and PCAC will agree to be responsible for the associated cure costs relating to the Assumed Lien Contracts, effective at the conclusion of the transition period under the TSA, or some other time that may be agreed to between PCAC and the parties to the Assumed Lien Contracts, which shall resolve any lien claims relating to the Assumed Lien Contracts on or against the Debtors' assets, including but not limited to claims and liens under the Perishable Agricultural Commodities Act and the California equivalent: (1) Kylix Vineyards California, L.P., (2) Highland Vineyard SB, LLC, (3) SB Comino, LLC, (4) SWG Paso Vineyard, LLC, (5) Loma de Rio Vineyards, LLC, (6) Alta Loma Vineyard, LLC, (7) Coastal Vineyard Care Associates, and (8) John Hancock Life Insurance, Co.<br><br>~~–~~For the avoidance of doubt, the Debtors' estates will not be responsible for paying any cure costs or lien claims relating to the Assumed Lien Contracts. |
| **Sale Proceeds Utilization** | At the Sale closing, the Debtors shall calculate, subject to agreement by the Parties, the amount of remaining sale proceeds after deducting (i) payment of the PCAC agreed secured DIP claim totaling $4,~~008,831.89~~<u>165,963.49</u>, which shall be ~~effectuate~~<u>effectuated</u> through the credit bid as a credit against the Purchase Price under the APA; (ii) |

*Formatted: Font: Times New Roman*

*Formatted: Underline*

*Formatted: DocumentID, Left*

AFDOCS/23006590.6<br>280696025 v1

| | |
|---|---|
| | payment of the BOC Secured Claim; and (iii) administrative claims (including claims of professionals retained by the Debtors and the Creditors' Committee in the chapter 11 cases) accrued through closing (the "Net Sale Proceeds"). PCAC and the Debtors shall split such Net Sale Proceeds 50/50. PCAC may credit bid its share of the Net Sale Proceeds as a credit against the Purchase Price under the APA. |
| **Canaccord** | The ~~Parties to negotiate in good faith with Canaccord Genuity LLC ("Canaccord") to reach a resolution of Canaccord's~~Committee will support the retention and compensation of Canaccord Genuity, LLC as set forth in the retention order agreed upon at the January 17, 2023 hearing. |
| **Plan** | The Debtors and Committee agree to negotiate in good faith a Plan and related Disclosure Statement and, if possible, file such Plan and related Disclosure Statement by no later than February 17, 2023, and set a confirmation schedule reasonably capable of achieving a target confirmation of the Plan on or before April 14, 2023.<br><br>Documentation with respect to the Plan shall be in a form and substance reasonably satisfactory to the Debtors and Committee.<br><br>The Parties agree that any plan relating to BWSC, LLC ("BWSC") shall (i) assume the APA, TSA and MSA and continue to comply with all obligations thereunder as a reorganized debtor after such plan is confirmed and goes effective, (ii) require the same responsible party at BWSC remain employed at BWSC through the term of the TSA, and (iii) include a condition precedent ~~to~~that a plan for BWSC going effective shall not terminate, revoke or impair BWSC's use of its alcohol license during the term of the TSA unless otherwise agreed by the Parties. |
| **Access to Records** | The post-confirmation Debtors and PCAC shall provide the Creditor Trust with reasonable access to books and records and otherwise cooperate with reasonable requests for information from the Creditor Trust. |
| **Creditor Trust** | On the Effective Date, and unless otherwise agreed to by the Committee and the Debtors, the Creditor Trust will be established and the legal and equitable title to the Creditor Trust Assets will be transferred to the Creditor Trust.<br><br>The "Creditor Trust Assets" will be comprised of (i) cash in an amount to be determined by the Debtors and Committee; (ii) all prepayments, deposits, and other rights arising under or related to Excluded Contracts under the APA; (iii) all rights of the Debtors to tax refunds; (iv) all rights in any insurance policies other than those transferred to PCAC under the APA; (v) any and all estate causes of action and rights of recovery against |

**Formatted:** DocumentID, Left

3

| | |
|---|---|
| | individuals or entities other than those transferred to PCAC under the APA; (vi) the Debtors' books records, other than those transferred to PCAC under the APA; and (vii) any other Excluded Assets under the APA. |
| **Governance of the Creditor Trust** | The "Creditor Trust Agreement" is the trust agreement that documents the powers, duties and responsibilities of the Creditor Trustee, and which agreement will be materially consistent with this Term Sheet. The Creditor Trust Agreement will be filed with the Bankruptcy Court by the plan supplement filing date and incorporated in the confirmation order.

The Creditor Trustee will be selected by the Committee in consultation with the Debtors.

The Creditor Trustee, together with its agents, representatives and professionals, will have the power to administer the Creditor Trust Assets and make distributions in accordance with the terms of the Plan. In such capacity, the Creditor Trustee shall have the authority to (1) establish reserves and invest cash; (2) retain and pay professionals as necessary to carry out the purposes of the Creditor Trust; (3) prepare and file tax returns for the Creditor Trust; (4) object to, reconcile, seek to subordinate, compromise or settle any or all claims and administer distributions to holders of claims, including filed claims and scheduled claims (regardless of whether they were scheduled as undisputed, noncontingent, or liquidated); (5) evaluate, file, litigate, settle, or otherwise pursue any assigned causes of action; (6) make interim and final distributions of Creditor Trust Assets; (7) seek to collect, or enforce the Creditor Trust's rights and remedies under, the Creditor Trust Assets; (8) manage, distribute or liquidate the Creditor Trust Assets; and (9) wind-up the affairs of the Creditor Trust and dissolve it under applicable law.

All other Creditor Trust governance issues shall be determined by the Committee and outlined in the Creditor Trust Agreement. |

AFDOCS/23006590.6
280696025 v1

30048856.5

**Formatted:** DocumentID, Left