# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WINC, INC., *et al.*,[1] | Case No. 22-11238 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 47** |

**ORDER AUTHORIZING (I) THE SALE OF THE DEBTORS' ASSETS FREE
AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER
INTERESTS; (II) THE DEBTORS TO ENTER INTO AND PERFORM THEIR
OBLIGATIONS UNDER THE PROJECT CRUSH ACQUISITION CORP LLC ASSET
PURCHASE AGREEMENT AND RELATED DOCUMENTS; (III) THE DEBTORS TO
ASSUME AND ASSIGN CERTAIN CONTRACTS AND UNEXPIRED LEASES;
(IV) WAIVER OF THE STAY PERIODS UNDER BANKRUPTCY RULES
6004(h) AND 6006(d); AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors, for the entry of an order (i) approving

bidding procedures (the "Bidding Procedures"), substantially in the form attached as **Annex 1** to

the Bidding Procedures Order (as defined below), to govern the marketing and sale of all or

substantially all of the Debtors' assets (the "Assets"), and approving bid protections in connection

therewith; (ii) authorizing the Debtors to schedule an auction to sell the Assets (the "Auction") and

scheduling the hearing to approve a sale of the Assets; (iii) approving the form and manner of

notice of the proposed sale transactions, the Bidding Procedures, the Auction, the Sale Hearing,

and related dates and deadlines; (iv) authorizing procedures governing the assumption and

assignment of certain executory contracts and unexpired leases (the "Assumed Contracts") to the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A).  The Debtors' go-forward mailing address for purposes of these chapter 11 cases is 12405 Venice Boulevard, Box #1, Los Angeles, CA 90066.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion and the Purchase Agreement (as defined below), unless otherwise indicated herein.

prevailing bidder(s) acquiring the Debtors' Assets (a "Successful Bidder"); and (v) granting related relief; and the Court having entered on December 22, 2022, that certain *Order (I) Approving Bidding Procedures in Connection With the Sale of the Debtors' Assets and Related Bid Protections; (II) Approving Form and Manner of Notice; (III) Scheduling Auction and Sale Hearing; (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Leases; and (V) Granting Related Relief* [Docket No. 85] (the "Bidding Procedures Order"); and no Qualified Bids, other than the Stalking Horse Bid from the Purchaser, having been received by the Bid Deadline and, as a result, the Auction having been cancelled in accordance with the Bidding Procedures Order; and Project Crush Acquisition Corp LLC (the "Purchaser") having submitted the highest and best offer for the Debtors' Assets that are identified in the Purchase Agreement (as defined below); and the Court having conducted a hearing on the Motion commencing on January 17, 2023 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the Purchase Agreement (as defined below), the Bidding Procedures Order, and the record of the hearing before the Court on December 22, 2022 (the "Bidding Procedures Hearing") at which the Bidding Procedures Order was approved and any objections to the Bidding Procedures were withdrawn or overruled; and the appearance of all interested parties and all responses and objections to the Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and upon all of the proceedings held before the Court; and all objections and responses to the relief requested in the Motion having been heard and overruled, withdrawn, or resolved on the terms set forth in this Order; and it appearing that due notice of the Motion, the Sale Hearing, the Purchase

Agreement (as defined below), the purchase and sale of the Transferred Assets (as defined in the Purchase Agreement) pursuant to the terms of the Purchase Agreement (as defined below) (the "Transaction"), and the Bidding Procedures Order has been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders, and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon, it is hereby:

**FOUND AND CONCLUDED THAT**:[3]

### Findings of Fact, Conclusions of Law, Jurisdiction, Venue, and Final Order

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Chapter 11 Cases pursuant to Bankruptcy Rule 9014.

B.      To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[3]  All findings of fact and conclusions of law announced by the Bankruptcy Court at the Sale Hearing in relation to the Motion are hereby incorporated to the extent not inconsistent herewith.

D.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of this Order as set forth herein which shall not be subject to any stay.

## Notice of the Transaction, the Purchase Agreement, Sale Hearing, Bid Deadline, and Cure Amounts

E.      As evidenced by the affidavits or declarations of service previously filed with this Court, [Docket Nos. 55, 141, 153], proper, timely, adequate, and sufficient notice of the Motion, the Bid Deadline (as defined below), the Sale Hearing, the Purchase Agreement (as defined below), and the Transaction has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, and 9014.  The Debtors have complied with all obligations to provide notice of the Motion, the Bid Deadline, the Sale Hearing, the Purchase Agreement (as defined below), and the Transaction as required by the Bidding Procedures Order.  The aforementioned notices are good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bid Deadline, the Sale Hearing, the Purchase Agreement (as defined below), or the Transaction is required for the entry of this Order.

F.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

G.      In accordance with the Bidding Procedures Order, and as evidenced by the affidavits or declarations of service and publication previously filed with this Court [Docket Nos. 99, 116, 158], the Debtors filed and have served the *Notice of Possible Assumption and Assignment*

*of Certain Executory Contracts and Unexpired Leases* [Docket No. 91] on December 28, 2022, the *Supplemental Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* [Docket No. 151] on January 10, 2023, and the *Second Supplemental Cure Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with Sale* [Docket No. 183] on January 16, 2023 (collectively, the "Cure Notice") regarding the potential assumption and assignment of certain of the Assumed Contracts and of the amount necessary to cure any defaults pursuant to section 365(b) of the Bankruptcy Code (all such amounts in connection with any Assumed Contract, the "Cure Amounts") upon the non-Debtor counterparties to the Assumed Contracts.  The service of the Cure Notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Assumed Contracts, including with respect to adequate assurance of future performance or establishing a Cure Amount for the respective Assumed Contracts.  All non-Debtor counterparties to each Assumed Contract set forth in the Cure Notice have had an adequate opportunity to object to assumption and assignment of the applicable Assumed Contract and the Cure Amount set forth in the Cure Notice, and including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code.  The deadline to file an objection to the assumption and assignment to the Purchaser of any Assumed Contract (a "Contract Objection") has expired, and to the extent any such entity timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn or overruled.  To the extent that any such party did not timely file a Contract Objection by the Contract Objection

deadline, such party shall be deemed to have consented to (i) the assumption and assignment of the Assumed Contract, and (ii) the proposed Cure Amount set forth on the Contract Notice.

**The Stalking Horse Bid**

H.      On January 17, 2023, the Purchaser and the Debtors entered into that certain Second Amended and Restated Asset Purchase Agreement that is attached to this Order as **Exhibit A** (the "Purchase Agreement"), which provided for (a) a purchase price of $11,000,000 for the Transferred Assets, less the sum of (1) the aggregate amount of any unpaid and outstanding obligations under the DIP Facility (as defined in the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361,362, 364(c)(1), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* [Docket No. 134] (the "Final DIP Financing Order")) (whether or not then due and owing), including all accrued and unpaid principal and interest balance thereof, as of the Closing Date, and (2) any and all fees, costs or expenses provided for under the Final DIP Financing Order (including those due upon Closing), including any and all fees, costs and expenses owed to counsel or advisors to the DIP Lender under the Final DIP Financing Order to the extent not previously paid by the Debtors prior to the Closing; and (b) the assumption of Assumed Liabilities (collectively, the "Stalking Horse Bid") (each as modified by the terms of the Settlement Term Sheet (as defined below)).

I.      In connection with entry into the Purchase Agreement, the Purchaser, certain affiliates of the Purchaser, and certain of the Debtors intend to enter into that certain Transition Services Agreement, a form of which is attached to this Order as **Exhibit B-1** (the "TSA"), and

that certain Master Service Agreement, a form of which is attached to this Order as **Exhibit B-2** (the "MSA," and collectively with the TSA and Purchase Agreement, the "Sale Documents").

J.        On January 17, 2023, the Official Committee of Unsecured Creditors of the Debtors, the Debtors, and the Purchaser agreed to the terms set forth in that certain *Settlement Term Sheet and Addendum to Sale Order*, attached hereto as **Exhibit C** (the "Settlement Term Sheet"), including the terms of the Credit Bid (as defined below).

K.        Pursuant to the Purchase Agreement and section 363(k) of the Bankruptcy Code, the Purchaser has credit bid all the outstanding secured obligations, including any and all fees, costs and expenses permitted under the postpetition financing facility approved pursuant to the terms of the Final DIP Financing Order, as modified by the Settlement Term Sheet (such bid, the "Credit Bid"), and such Credit Bid constitutes a valid and proper component of the Stalking Horse Bid pursuant to the Bidding Procedures.

L.        As provided in the Bid Procedures, the Stalking Horse Bid, including the Credit Bid, constitutes a Qualified Bid (as defined in the Bidding Procedures).

### Highest or Otherwise Best Offer

M.        As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have complied in all respects with the Bidding Procedures Order.  The sale was duly noticed and conducted in a non-collusive, fair, and good faith manner and the process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets and assume the Assumed Liabilities.  The bid deadline was January 9, 2023 at 12:00 p.m. (Prevailing Eastern Time) (the "Bid Deadline").

29915103.13

N.     The Assets were adequately marketed by the Debtors and their advisors, and the consideration provided by the Purchaser under the Sale Documents, including the Credit Bid, constitutes the highest and best offer and provides fair and reasonable consideration to the Debtors for the Transferred Assets and the assumption of the Assumed Liabilities.  The Stalking Horse Bid presents the best opportunity to maximize and realize the value of the Transferred Assets for the benefit of the Debtors, their estates, and their creditors.  The Debtors' determination that the consideration provided by the Purchaser under the Sale Documents and in accordance with the Settlement Term Sheet, including the Credit Bid, constitutes the highest and best offer for the Transferred Assets and a valid and sound exercise of the Debtors' business judgment.

O.     Approval of the Motion and the Sale Documents, and the consummation of the Transaction contemplated thereby, are in the best interests of the Debtors, their creditors, their estates, and other parties in interest.  The Debtors have demonstrated good, sufficient, and sound business reasons and justifications for entering into the Transaction and the performance of their obligations under the Sale Documents.

P.     Entry of this Order approving the Sale Documents, and all of the provisions thereof, is a condition precedent to the Purchaser's consummation of the Transaction.

Q.     The Sale Documents were not entered into, and neither the Debtors nor the Purchaser has entered into the Sale Documents, or proposes to consummate the Transaction, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors.  Neither the Debtors nor the Purchaser is entering into the Sale Documents, or proposing to consummate the Transaction, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United

States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

R.    The terms and conditions set forth in the Sale Documents, including the form and total consideration to be realized by the Debtors pursuant to the Sale Documents, including the Credit Bid:  (i) are in the best interests of the Debtors' creditors and estates; and (ii) constitute fair value, full and adequate consideration, reasonably equivalent value, and reasonable market value for the Transferred Assets.

S.    As part of the consideration for the Transferred Assets, the Purchaser will assume certain Assumed Liabilities.  The Purchaser's agreement to assume the Assumed Liabilities is essential to provide for the payment of other liabilities that would potentially not be satisfied absent consummation of the Transaction.

T.    The Purchaser is the Successful Bidder for the Transferred Assets in accordance with the Bidding Procedures Order.  The Purchaser has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the Sale Documents, and the sale and the Sale Documents likewise comply with the Bidding Procedures Order and any other applicable order of this Court.

### Good Faith of the Debtors and the Purchaser

U.    The sale process conducted by the Debtors, including, without limitation, the Bidding Procedures set forth in the Bidding Procedures Order, was at arm's length, non-collusive, and in good faith.

V.    The Debtors, the Purchaser, and their respective professionals and advisors have complied in good faith with the Bidding Procedures Order in all respects.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and evidence

adduced and representations proffered by counsel at the Bidding Procedures Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order, the Debtors (a) afforded all creditors and other parties in interest and all potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Transferred Assets; (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets; and (c) considered any bids submitted on or before the Bid Deadline.

W.      The Sale Documents and the Transaction contemplated thereunder were proposed, negotiated, and entered into by and among the Debtors and the Purchaser without collusion, in good faith, and at arm's length.

X.      Neither the Purchaser nor any of its Affiliates, present or contemplated members, officers, directors or shareholders is an "insider" of the Debtors, as the term "insider" is defined in section 101(31) of the Bankruptcy Code.  The Purchaser is entering into the Transaction in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with the Chapter 11 Cases and the Transaction.  Neither the Debtors, the Purchaser nor any Affiliate of either have engaged in any action or inaction that would cause or permit the Sale Documents or the Transaction to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code.

<u>**The Requirements of Section 363 Are Satisfied**</u>

Y.      The Debtors have demonstrated a sufficient basis and compelling circumstances requiring the Debtors to (i) enter into the Sale Documents; (ii) sell the Transferred Assets; and

(iii) assume and assign the Assumed Contracts, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors.  Such business reasons include, without limitation, the fact that: (i) the Sale Documents constitute the highest and best offer for the Transferred Assets; (ii) the Sale Documents present the best opportunity to maximize and realize the value of the Transferred Assets for the benefit of the Debtors, their estates and their creditors; and (iii) unless the sale is concluded expeditiously, the recoveries of the Debtors' estates and constituencies are likely to be adversely affected and there is a significant risk that a significant amount of liabilities that will be assumed by the Purchaser under the Sale Documents will not be satisfied.

Z.    The Sale Documents are valid and binding contracts between the Debtors and the Purchaser and shall be enforceable pursuant to their terms.

AA.    The Transferred Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.

BB.    The sale of all Transferred Assets to the Purchaser under the terms of the Sale Documents satisfies the applicable provisions of section 363(f) of the Bankruptcy Code, and except as expressly provided in the Sale Documents and as otherwise set forth in this Order with respect to the Assumed Liabilities and permitted encumbrances, if any, (i) the transfer of the Transferred Assets to the Purchaser and (ii) the assumption or assignment to the Purchaser or an Affiliate of the Purchaser of the Assumed Contracts and the Assumed Liabilities, in each case, will be free and clear of all Claims and Liens and will not subject the Purchaser, any Affiliates of Purchaser or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their

respective assets (including the Transferred Assets), to any liability for any Claims or Liens whatsoever (including, without limitation, under any theory of equitable law, antitrust, setoff (except with respect to setoffs that were effected prior to the Petition Date), or successor or transferee liability).

CC.    The Purchaser would not have entered into the Sale Documents and would not consummate the Transaction, thus adversely affecting the Debtors, their estates, their creditors, their employees, and other parties in interest, if the sale of the Transferred Assets was not free and clear of all Claims and Liens or if the Purchaser would be liable for any Claims or Liens, including, without limitation and as applicable, certain liabilities that expressly are not assumed by the Purchaser as set forth in the Sale Documents or in this Order.  The Purchaser asserts that it will not consummate the Transaction unless the Sale Documents specifically provide, and this Court specifically orders, that the Purchaser, its property, its successors or assigns and their property, and the Transferred Assets will not have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Claim or Lien, or any successor or transferee liability for the Debtors, in each case, other than the Assumed Liabilities and any permitted encumbrances.

DD.    The transfer of the Transferred Assets to the Purchaser under the Sale Documents is a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Transferred Assets free and clear of all Claims and Liens (except as provided in the Sale Documents, solely with respect to Assumed Liabilities and any permitted encumbrances).  The Debtors may sell their interests in the Transferred Assets free and clear of all Claims and Liens because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.  The transfer of the Transferred Assets to the Purchaser

will vest the Purchaser with good and marketable title to the Transferred Assets free and clear of all Claims and Liens (except as provided in the Sale Documents, solely with respect to Assumed Liabilities and any permitted encumbrances).  For the avoidance of doubt, the Assumed Lien Contracts (as defined in the Settlement Term Sheet), shall be assumed by the Debtors and assigned to the Purchaser pursuant to the Sale Documents, and Purchaser has agreed to pay the cure costs related to the Assumed Lien Contracts at such time or some other time as may be agreed to by the Purchaser and the applicable counterparty.

EE.    The Purchaser is not deemed to be a successor to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume or in any way be responsible for any liability or obligation of any of the Debtors or their estates by reason thereof. The Purchaser is not deemed to be a continuation or substantial continuation of the Debtors or their estates, and there is no continuity between the Purchaser and the Debtors.  The Purchaser does not have a common identity of incorporators, directors, or equity holders with the Debtors.  The Purchaser is not holding itself out to the public as a continuation of the Debtors or their estates, and the Transaction does not amount to a consolidation, merger, or *de facto* merger of the Purchaser and the Debtors.

FF.    There is no legal or equitable reason to delay the Transaction.  The Transaction must be approved and consummated promptly to preserve and maximize the value of the Debtors' Assets.

GG.    The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for the Transaction pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the immediate consummation of the Transaction, the value of the

29915103.13

Transferred Assets will be harmed. To maximize the value of the Transferred Assets, it is essential that the Transaction occur within the timeframe set forth in the Sale Documents. Time is of the essence in consummating the Transaction. Accordingly, there is good cause to waive the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d). In addition, the Court finds that there are no unresolved objections which might form the basis for an appealable issue.

HH.     The sale and assignment of the Transferred Assets outside of a Chapter 11 plan pursuant to the Sale Documents neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan for the Debtors. Neither the Sale Documents nor the Transaction contemplated thereby constitutes a *sub rosa* chapter 11 plan.

## Assumption and Assignment of the Assumed Contracts

II.     The assumption and assignment of the Assumed Contracts (as such Assumed Contracts may be amended, supplemented, or otherwise modified as provided in the Sale Documents and the Settlement Term Sheet) that are designated for assumption and assignment pursuant to the terms of this Order, the Bidding Procedures Order and the Sale Documents is integral to the Purchase Agreement, is in the best interests of the Debtors and their estates, creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

JJ.     The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Assumed Contracts. The Debtors will have (i) cured or provided adequate assurance of cure of any default existing prior to the consummation of the Transaction contemplated by the Sale Documents (the "Closing") under all of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any counterparty to an Assumed Contract for actual

pecuniary loss to such entity resulting from a default prior to the Closing under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  The assignment of each of the Assumed Contracts is free and clear of all Claims and Liens, except as expressly permitted in the Sale Documents and this Order.

KK.    The Purchaser has demonstrated adequate assurance of future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the Sale Documents shall be assigned and transferred to the Purchaser (in accordance with the timing specified in section 1.2(a) of the Purchase Agreement and the Settlement Term Sheet), and remain in full force and effect for the benefit of the Purchaser, notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

LL.    No defaults exist in the Debtors' performance under the Assumed Contracts as of the date of this Order other than the failure to pay amounts equal to the Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

**IT IS HEREBY ORDERED THAT:**

<u>**General Provisions**</u>

1.    The Motion is granted and approved as set forth herein.  The Debtors are authorized to (a) sell the Transferred Assets to the Purchaser and (b) transfer, assign and convey the Transferred Assets, including the Assumed Contracts to the Purchaser, in each case in accordance with the Sale Documents.  Pursuant to section 363(k) of the Bankruptcy Code, the Purchaser is authorized to Credit Bid pursuant to the terms of the Final DIP Financing Order, as modified by the terms of the Settlement Term Sheet.

2.      All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing, or by stipulation filed with the Court, or as resolved in this Order, and all reservations of rights included therein, are hereby overruled on the merits with prejudice.  All non-Debtor counterparties to the Assumed Contracts given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.  All holders of Claims or Liens who did not object, or withdrew their objections to the Transaction, are deemed to have consented to the Transaction pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of Claims or Liens are adequately protected – thus satisfying section 363(e) of the Bankruptcy Code; *provided*, *however*, that setoff rights will be extinguished as to the Transferred Assets and the Purchaser to the extent there is no longer mutuality after the consummation of the Transaction, except with respect to setoffs that were validly effected prior to the Petition Date; *provided further,* that, the right of any party to seek satisfaction of a setoff claim from the proceeds of the sale shall be preserved, and the defenses and counterclaims of the Debtors and other parties in interest shall likewise be preserved.

### Approval of the Sale Documents

3.      The Sale Documents, all of the terms and conditions thereof, and the Transaction contemplated therein are approved in all respects.  The failure specifically to include any particular provision of the Sale Documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent that the Sale Documents be authorized and approved in their entirety.  The transfer of the Transferred Assets by the Debtors to the Purchaser shall be a legal, valid, and effective transfer of the Transferred Assets.  The consummation of the Transaction is hereby approved and authorized under section 363(b) of the Bankruptcy Code.  The automatic stay pursuant to section 362 of the Bankruptcy Code, to the extent applicable, is hereby modified to

29915103.13

allow the Purchaser to enforce its rights pursuant to the Sale Documents.  Any amount owed by the Debtors to the Purchaser pursuant to the Sale Documents shall be entitled to treatment as an administrative claim.

4.     The Debtors are authorized to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Transaction, including the sale to the Purchaser of the Transferred Assets, in accordance with the terms and conditions set forth in the Sale Documents (as modified by the Settlement Term Sheet, as applicable) and this Order, including, without limitation, executing, acknowledging, and delivering such deeds, assignments, conveyances, and other assurance, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and confirming to the Purchaser, or reducing to possession, any or all of the Transferred Assets, and entering into any other agreements related to implementing the Transaction, and (b) to assume and assign all Assumed Contracts to the Purchaser in accordance with the timing set forth in section 1.2(a) of the Purchase Agreement and the Settlement Term Sheet.

5.     The Debtors are further authorized to pay, without further order of this Court, whether before, at or after the Closing, any expenses or costs that are required to be paid in order to consummate the Transaction or perform their obligations under the Sale Documents and the terms of the Settlement Term Sheet; *provided* that the foregoing shall not authorize the payment of professional fees and expenses that otherwise would be subject to Court approval.

6.     All persons and entities are prohibited from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Transferred Assets to the Purchaser in accordance with the Sale Documents and this Order;

29915103.13

*provided* that the foregoing shall not prohibit any person or entity from appealing this Order or seeking a stay pending such an appeal**.**

## Sale and Transfer Free and Clear of Claims and Liens

7.     Except as otherwise expressly provided in the Sale Documents and the terms of this Order solely with respect to Assumed Liabilities and permitted encumbrances, if any, the Transferred Assets shall be sold to the Purchaser free and clear of all Claims (as defined and used in the Bankruptcy Code, including section 101(5) thereof), liabilities, interests, rights, and encumbrances, including, without limitation, any escheat claims or obligations of the Debtors arising prior to the Closing, rights of setoff (except with respect to setoffs that were validly effected prior to the Petition Date), and all other matters of any kind and nature, whether known or unknown, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases (but, for the avoidance of doubt, in each case arising from the ownership or the operation of the Transferred Assets prior to the date of the Closing (the "Closing Date")), and any consensual or nonconsensual lien, statutory lien, real or personal property lien, mechanics' lien, materialmans' lien, warehousemans' lien, tax lien, and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof (all of the foregoing, collectively, "Liens"). For the avoidance of any doubt, the Claims and Liens on those assets of the Debtors not subject to the sale to the Purchaser pursuant to the Sale Documents, if any, (or pursuant to any other order of the Court approving the sale of any of the Debtors' other assets free and clear of Claims and Liens) shall remain with the same validity, force, priority, and effect on those other assets. All Liens, Claims, and interests from which the Transferred Assets are sold free and clear shall attach to the proceeds of the sale of the Transferred Assets to be received by the Debtors in the same order and

priority that such Liens, Claims and interests had prior to the Closing; *provided that* with respect

to the Assumed Lien Contracts, Purchaser shall pay the associated cure costs relating to the

Assumed Lien Contracts, upon assumption and assignment of the Assumed Lien Contracts or at

such other time agreed to by the Purchaser and the respectively counterparty.

8.    All of the Debtors' right, title, and interest in and to, and possession of, the

Transferred Assets shall be immediately vested in the Purchaser as set forth in the Sale Documents,

pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code free and clear of any

and all Claims and Liens except for Assumed Liabilities and permitted encumbrances, which

include, for avoidance of doubt, Liens arising under section 55631 of the California Food and

Agricultural Code.  Such transfer shall constitute a legal, valid, binding, and effective transfer of

such Transferred Assets to Purchaser.  All persons or entities, presently, or on or after the Closing,

in possession of some or all of the Transferred Assets are directed to surrender possession of the

Transferred Assets directly to the Purchaser or its designees on the Closing Date or at such time

thereafter as the Purchaser may request.  Notwithstanding anything in this Order, with respect to

any Transferred Assets, for which legal title remains with the Debtors after Closing pursuant to

the Sale Documents, such Transferred Assets shall be held in trust for the benefit of Purchaser and

shall not be considered property of the Debtors' estates within the meaning of section 541 of the

Bankruptcy Code.  Subject to the rights and obligations under the Sale Documents, Purchaser shall

have no right to make any claim or assert any damages at law or in equity against the Debtors with

respect to such Transferred Assets and shall be deemed to have waived and forever released

Debtors from any and all claims, at law or in equity that Purchaser may have, other than those set

forth in the Sale Documents, with respect to Debtors maintaining legal title to, or any other rights

in, such Transferred Assets.

29915103.13

9.      The Purchaser is hereby authorized, in connection with the consummation of the Transaction, to allocate the Transferred Assets, Assumed Liabilities, permitted encumbrances, if any, and the Assumed Contracts among its Affiliates, designees, assignees, or successors in a manner consistent with the Sale Documents, and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Transferred Assets or the rights under any Assumed Contract to its Affiliates, designees, assignees, or successors with all of the rights and protections accorded under this Order and the Sale Documents, and the Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing.

10.     This Order: (i) shall be effective as a determination that as of the Closing, (a) no Claims or Liens (other than Assumed Liabilities and permitted encumbrances, if any) will be capable of being asserted against the Purchaser, any Affiliates of Purchaser or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their respective assets (including the Transferred Assets), (b) the Transferred Assets shall have been transferred to the Purchaser free and clear of all Claims and Liens except for Assumed Liabilities and permitted encumbrances, if any, and as provided for in the Sale Documents, and (c) the conveyances described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or

insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Sale Documents.  The Transferred Assets are sold free and clear of any reclamation rights as defined by the Uniform Commercial Code and analogous state law.

11.    Except as otherwise expressly provided in the Sale Documents and with respect to the Assumed Liabilities and permitted encumbrances, if any, all persons and entities (and their respective successors and assigns), including, without limitation, all debt security holders, equity security holders, Affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Claims or Liens arising under or out of, in connection with, or in any way relating to, the Debtors, the Transferred Assets, the ownership, sale, or operation of the Transferred Assets prior to Closing or the transfer of the Transferred Assets to the Purchaser are hereby forever barred and estopped from asserting such Claims or Liens against the Purchaser, any Affiliates of Purchaser or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their respective assets (including the Transferred Assets).  Following the Closing, no holder of any Claim or Liens shall interfere with the Purchaser's title to or use and enjoyment of the Transferred Assets based on or related to any such Claim or Lien, or based on any action the Debtors may take in the Chapter 11 Cases.

12.    If any person or entity that has filed financing statements, mortgages, *lis pendens* or other documents or agreements evidencing Claims or Liens against or in the Transferred Assets shall not have delivered to the Debtors prior to the Closing of the Transaction, in proper form for

filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims and Liens that the person or entity has with respect to the Transferred Assets or otherwise, then only with regard to the Transferred Assets that are purchased by the Purchaser pursuant to the Purchase Agreement and this Order: (i) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Transferred Assets; (ii) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Claims and Liens against the Purchaser and the applicable Transferred Assets; and (iii) the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Claims and Liens with respect to the Transferred Assets other than Assumed Liabilities and permitted encumbrances, if any.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Transferred Assets free and clear of Claims and Liens shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

13.     To the maximum extent permitted by applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "Licenses") of the Debtors with respect to the Transferred Assets, and all Licenses are deemed to have been, and hereby are directed to be, transferred to the Purchaser pursuant to the Sale Documents.  To the extent any Licenses cannot

be transferred to the Purchaser in accordance with the previous sentence, such Licenses: (i) shall be in effect while the Purchaser, with assistance from the Debtors, works promptly and diligently to apply for and secure all necessary government approvals for the transfer or issuance of new Licenses to the Purchaser; and (ii) shall terminate on a license-by-license basis following transfer or issuance of a new License to the Purchaser.  To the extent required under the Sale Documents, the Debtors shall maintain the Licenses in good standing to the fullest extent allowed by applicable law for the Purchaser's benefit until equivalent new Licenses are issued to the Purchaser.

14.      Nothing in this Order or the Sale Documents releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as owner or operator of property sold or transferred pursuant to this Order after the occurrence of the Closing Date (with respect to such property), *provided, however*, that the foregoing shall not limit, diminish or otherwise alter the Debtors' or the Purchaser's defenses, claims, causes of action, or other rights under applicable non-bankruptcy law with respect to any liability that may exist to a governmental unit at such owned or operated property.  Nothing in this Order or the Sale Documents authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (ii) registration, (iv) authorization, or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  To the extent provided by section 525 of the Bankruptcy Code, a governmental unit may not deny, revoke, suspend, or refuse to renew any permit, license, or similar grant to a person that is or has been a bankrupt or a debtor under the Bankruptcy Code, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a bankrupt or debtor under the Bankruptcy Code, has been insolvent before the commencement of the case under the Bankruptcy Code, or during the case but before the debtor

is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under the Bankruptcy Code or that was discharged under the Bankruptcy Code. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order, subject to the Debtors' and the Purchaser's rights to assert in that forum or before this Court that any such laws are not in fact police or regulatory law or that the matter should be heard by the Bankruptcy Court.

15.    Unless otherwise provided herein or the Sale Documents, all persons and entities that are in possession of some or all of the Transferred Assets as of the Closing Date are directed to surrender possession of such Transferred Assets to the Purchaser on the Closing Date.

## No Successor or Transferee Liability

16.    Neither the Purchaser, nor any Affiliate, successor, or assignee of the Purchaser, shall be deemed, as a result of any action taken in connection with the Sale Documents, the consummation of the Transaction contemplated by the Sale Documents, or the transfer or operation of the Transferred Assets, including the Assumed Contracts, to: (i) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for the Purchaser, with respect to the Assumed Liabilities to be paid after the Closing or any obligations as an assignee under the Assumed Contracts arising after the Closing); (ii) have, *de facto* or otherwise, merged with or into the Debtors; (iii) be an alter ego or a mere continuation or substantial continuation of the Debtors including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the WARN Act (29 U.S.C. §§ 2101 et seq.) ("WARN"), the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age

Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* (the "<u>NLRA</u>"); or (iv) be liable for any environmental liabilities, debts, claims, or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), any escheat liabilities arising prior to the Closing, or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine.

17.     Other than as expressly set forth in the Sale Documents solely with respect to Assumed Liabilities and permitted encumbrances, if any, neither the Purchaser, nor any Affiliate, successor, or assignee of the Purchaser shall have any responsibility for (i) any liability or other obligation of the Debtors or related to the Transferred Assets or (ii) any remaining Claims or Liens against the Debtors or any of their predecessors or Affiliates.  Other than as expressly set forth in the Sale Documents solely with respect to Assumed Liabilities and permitted encumbrances, if any, neither the Purchaser, nor any Affiliate, successor, or assignee of the Purchaser, shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or Affiliates') businesses or operations or any of the Debtors' (or their predecessors' or Affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or

unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, (i) liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Transferred Assets prior to the Closing; (ii) liabilities or obligations under WARN; (iii) escheat liabilities arising prior to Closing; or (iv) liabilities or obligations under CERCLA, or any foreign, federal, state, or local labor, employment, or environmental law whether of similar import or otherwise by virtue of the Purchaser's purchase of the Transferred Assets or assumption of the Assumed Liabilities by the Purchaser or an Affiliate of the Purchaser (all liabilities described in paragraph 16 and paragraph 17 of this Order, "Successor or Transferee Liability").

18.     Except as otherwise expressly provided in this Order or the Sale Documents, nothing shall require the Purchaser to: (i) continue or maintain in effect, or assume any liability in respect of any employee, collective bargaining agreement, pension, welfare, fringe benefit or any other benefit plan, trust arrangement, or other agreements to which the Debtors are a party or have any responsibility therefor including, without limitation, medical, welfare, and pension benefits payable after retirement or other termination of employment; or (ii) assume any responsibility as a fiduciary, plan sponsor, or otherwise, for making any contribution to, or in respect of the funding, investment, or administration of any employee benefit plan, arrangement, or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement, or agreement.

19.     Effective upon the Closing, except with respect to Assumed Liabilities and permitted encumbrances, if any, all persons and entities are forever prohibited from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser, any Affiliates of Purchaser or any their respective officers, directors, representatives, controlling persons, members,

29915103.13

employees, agents, representatives, shareholders, partners, successors and assigns or any of their respective assets (including the Transferred Assets), with respect to any (i) Claim or Lien or (ii) Successor or Transferee Liability, including, without limitation, the following actions with respect to clauses (i) and (ii): (a) commencing or continuing any action or other proceeding pending or threatened; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Claim or Lien; (d) asserting any setoff (except with respect to setoffs that were effected prior to the Petition Date), right of subrogation, or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (f) revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Transferred Assets or conduct any of the businesses operated with such Transferred Assets.

### Good Faith of the Purchaser

20.     The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.  The Transaction contemplated by the Sale Documents is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transaction (including the assumption and assignment of the Assumed Contracts), unless such authorization and consummation of the sale are duly and properly stayed pending such appeal.

29915103.13

21.     Neither the Debtors, the Purchaser nor any Affiliate of either the Debtors or the Purchaser have engaged in any collusion with other bidders or other parties or have taken any other action or inaction that would cause or permit the Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code or otherwise.  The consideration provided by the Purchaser for the Transferred Assets under the Sale Documents is fair and reasonable and is not less than the value of such Transferred Assets, and the Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

22.     The Purchaser is not an "insider" of any of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

## Assumption and Assignment of Assumed Contracts

23.     To the extent that any entity did not timely file a Contract Objection by the Contract Objection Deadline with respect to any Assumed Contract set forth on the Cure Notice, such entity shall forever be barred and estopped from objecting: (i) to the Cure Amount as the amount to cure all defaults to satisfy section 365 of the Bankruptcy Code and from asserting that any additional amounts are due or defaults exist; (ii) that any conditions to assumption and assignment must be satisfied under such Contract or Lease before it can be assumed and assigned or that any required consent to assignment has not been given; or (iii) that the Purchaser has not provided adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code.

24.     The assumption and assignment of the Assumed Contracts is approved, including, for the avoidance of doubt, the timing set forth in section 1.2(a) of the Purchase Agreement and the Settlement Term Sheet.  The Debtors are authorized and directed to assume and assign each of the Assumed Contracts to the Purchaser or an Affiliate of the Purchaser upon the Closing of the Transaction (or thereafter, in accordance with the Purchase Agreement and this Order), free and

clear of all Claims and Liens, other than Assumed Liabilities and permitted encumbrances, if any. The payment of the applicable Cure Amounts by the Purchaser, in accordance with the Sale Documents and the Settlement Term Sheet shall, in accordance with section 365(b) of the Bankruptcy Code, (i) cure all defaults under the Assumed Contracts as contemplated by section 365 of the Bankruptcy Code as of the Closing Date, (ii) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (iii) together with the assumption of the Assumed Contracts by the Debtors and the assignment of the Assumed Contracts to the Purchaser or an Affiliate of the Purchaser, constitute adequate assurance of future performance thereof.   The Cure Amounts and any payments made to the counterparties under the Assumed Contracts prior to the assumption of the Assumed Contracts shall be deemed payments that were required to be made in full as part of the obligation to assume and assign the Assigned Contracts under this Sale Order and the Purchase Agreement.

25.     Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Amounts by the Purchaser, the Assumed Contracts to be assumed and assigned under the Purchase Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.  Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the counterparty to such Assumed Contract to terminate, recapture, impose any penalty or fee, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  Subject to the payment of the applicable Cure Amounts by the Purchaser, all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the

assumption by the Debtors and assignment to the Purchaser or an Affiliate of the Purchaser of the Assumed Contracts have been satisfied.  Subject to taking assignment of the Assumed Contracts and payment of the applicable Cure Amounts by the Purchaser, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Assumed Contracts, and such Assumed Contracts shall remain in full force and effect for the benefit of the Purchaser.  Subject to the payment of the applicable Cure Amounts by the Debtors or the Purchaser, as applicable, each non-Debtor counterparty to the Assumed Contracts shall be forever barred and estopped from (i) asserting against the Debtors or the Purchaser or their respective property any assignment fee, acceleration, default, breach, claim, pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing Date or arising by reason of the Closing, including any breach related to or arising out of change-in-control in such Assumed Contracts, or any purported written or oral modification to the Assumed Contracts and (ii) asserting against the Purchaser (or its assets, including the Transferred Assets) or its Affiliates, designees, assignees, or successors (or their assets), any Claim or Lien, counterclaim, breach, condition, setoff (except with respect to setoffs that were effected prior to the Petition Date) asserted or capable of being asserted against the Debtors existing as of the Closing Date or arising by reason of the Closing except for the Assumed Liabilities and permitted encumbrances, if any.

26.    Upon taking assignment of the Assumed Contracts and the payment of the relevant Cure Amounts, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assumed Contracts.  There shall be no assignment fees, increases, or any other fees charged to the Purchaser or the Debtors as a result of the

assumption and assignment of the Assumed Contracts.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions or of the right of the Debtors or the Purchaser, as the case may be, to enforce every term and condition of such Assumed Contract.  The validity of the assumption and assignment of any Assumed Contract to the Purchaser shall not be affected by any existing dispute between the Debtors and any counterparty to such Assumed Contract.

27.    The assignments of each of the Assumed Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code and shall be free and clear of all Claims and Liens pursuant to section 363(f) of the Bankruptcy Code.

**Other Provisions**

28.    At Closing and from the cash proceeds of the Transaction, the Debtors shall pay to the Prepetition Secured Party the amount necessary to fully satisfy the Prepetition Senior Obligations under the Prepetition Senior Credit Agreement (each such term, as applicable, as defined in the Final DIP Financing Order) in accordance with the terms of the Settlement Term Sheet.  The Debtors shall obtain a payoff statement from the Prepetition Secured Party at least one (1) business day prior to closing.

29.    The Debtors shall:  (i) within two business days of the closing of the Transaction, instruct the Escrow Agent under that certain *Escrow Agreement* (the "Natural Merchants Escrow Agreement") entered into in connection with that certain *Asset Purchase Agreement* (as amended, the "Natural Merchants APA") dated as of May 12, 2021, between Debtor BWSC, LLC ("BWSC") and Los Fields, Inc. (f/k/a Natural Merchants, Inc.), Comex Consulting, S.L. ("Comex"), and their related principals and affiliates (collectively, "Natural Merchants"), to release any and all amounts held in that certain escrow account ending in 9752 at City National Bank pursuant to the Natural

Merchants Escrow Agreement and the Natural Merchants APA to Natural Merchants or its designee, and (ii) promptly after the closing of the Transaction, reject the Natural Merchants APA, the Escrow Agreement, the *Consulting Agreement*, dated May 12, 2021, by and between the Winc, Inc. and Comex, and the *Personal Goodwill Purchase Agreement*, and any amendments, modifications, or supplements related to the foregoing, including for the avoidance of doubt, the *First Amendment to Asset Purchase Agreement*, dated August 3, 2022.

30.     Notwithstanding anything to the contrary in this Order or the Purchase Agreement, no contract between the Debtors and Oracle America, Inc., successor in interest to NetSuite, Inc., ("Oracle") will be assumed or assigned without (1) Oracle's prior written consent; (2) cure of any default under such contract; and (3) execution by the Debtor or its successor and the assignee of mutually agreeable assignment documentation in a final form to be negotiated after entry of this Order.  In addition, no provision of this Order or the TSA shall authorize (1) the transfer of any Oracle license agreement to any third party; or (2) use of any Oracle license agreement that is inconsistent with the relevant license grant including, but not limited to, exceeding the number of authorized users, shared use or license splitting, absent Oracle's express prior written consent.

31.     Notwithstanding anything to the contrary herein or in the Purchase Agreement, the Debtors and the Purchaser hereby acknowledge and agree that Summerland Wine Brands, a dba of Terravant Wine Company, LLC ("Summerland") possesses both a valid and binding warehouseman's lien and an artisan's lien on certain wine produced, processed, blended, bottled and currently stored at Summerland's facilities with claims through December 31, 2022 totaling approximately $223,257.11 (the "Summerland Claim"), pursuant to that certain Host Winery Facilities Agreement, dated as of May 16, 2022, by and among BWSC and Summerland. On or prior to the Closing, the Debtors shall satisfy the Summerland Claim in full. Any and all amounts

accrued and owing to Summerland after December 31, 2022 shall be paid in the ordinary course of business, unless otherwise agreed, and Summerland shall maintain any valid liens it may have on the Transferred Assets, solely with respect to any claim owed to Summerland that remains unpaid, in the same order and priority that such valid liens, if any, had prior to the Closing.  After the Closing, the Purchaser and Summerland shall agree to the terms regarding the continued storage of any and all wine at Summerland's facilities.

32.    The Debtors, pursuant to the Cure Notice, have scheduled that certain memorandum of understanding, dated May 16, 2022, by and among BWSC and Summerland (the "MOU") for possible assumption and assignment. Notwithstanding anything to the contrary herein or in the Purchase Agreement, the Debtors and the Purchaser hereby acknowledge that the MOU has expired and is therefore not executory and is not subject to assumption and/or assignment to the Purchaser.  Summerland agrees to negotiate with Purchaser on a new agreement in good faith.

33.    This Order is binding upon and inures to the benefit of any successors and assigns of the Debtors or the Purchaser, including any trustee appointed in any subsequent case of the Debtors under Chapter 7 of the Bankruptcy Code.

34.    The provisions of this Order and the Sale Documents are non-severable and mutually dependent.

35.    The Sale Documents and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

36. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including, without limitation, the Purchase Agreement and the Transaction.

37. The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Purchaser or its designees, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transaction. This Court retains jurisdiction to compel delivery of the Transferred Assets, to protect the Purchaser (and its assets, including the Transferred Assets) and its Affiliates, designees, assignees, or successors (or their assets), against any Claims, Liens, and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363, or 365 of the Bankruptcy Code (or other applicable provisions) necessary to transfer the Transferred Assets and the Assumed Contracts to the Purchaser.

38. The requirements set forth in Bankruptcy Rules 6003(b), 6004, and 6006 have been satisfied or are otherwise hereby waived.

39. As provided by Bankruptcy Rules 7062 and 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d). Time is of the essence in closing the sale and the Debtors and the Purchaser intend to close the sale on or before January 20, 2023.

40. This Order and the Purchase Agreement shall be binding in all respects upon all creditors of (whether known or unknown), and holders of equity interests in, the Debtors, any holders of Claims or Liens in, against, or on all or any portion of the Transferred Assets, all

successors and assigns of the Purchaser, the Debtors and their Affiliates and subsidiaries, and any subsequent trustees appointed in the Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy Code, and shall not be subject to rejection.  Nothing contained in any Chapter 11 plan confirmed in the Chapter 11 Cases, any order confirming any such Chapter 11 plan, or any order approving wind-down or dismissal of the Chapter 11 Cases or any subsequent Chapter 7 cases shall conflict with or derogate from the provisions of the Purchase Agreement or this Order, and to the extent of any conflict or derogation between this Order or the Purchase Agreement and such future plan or order, the terms of this Order and the Purchase Agreement shall control.

41.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42.    To the extent any provisions of this Order conflict with, or are otherwise inconsistent with, the terms and conditions of the Purchase Agreement or the Bidding Procedures Order, this Order shall govern and control.

43.    The Debtors have all necessary authorizations to sell and are hereby permitted to sell to the Purchaser all claims or causes of action of the Debtors against other parties arising out of events occurring prior to the Closing Date that constitute a Transferred Asset.  The Purchaser may pursue any claim (i) that the Debtors may have that constitutes a Transferred Asset, or (ii) that the Purchaser may have that arises out of or is related to the Transferred Assets purchased by the Purchaser (notwithstanding the foregoing, the Purchaser will not be able to assert rights specifically retained by the Debtors in the Purchase Agreement).

44.    Effective immediately following the Closing, the Debtors fully and forever waive, release and discharge Purchaser and its current officers, directors, representatives, affiliates, controlling persons, members, employees, agents, attorneys, financial advisors, consultants,

29915103.13

representatives, shareholders, partners, successors and assigns ("Purchaser Released Person") from any liability whatsoever on or otherwise in relation to any claim, counterclaim, setoff, recoupment, action or cause of action of any kind or nature whatsoever and other similar rights, demands, lawsuits and complaints, debts, losses, obligations, liabilities, rights, rights of recovery and damages of every kind or nature whatsoever, whether known or unknown, asserted or unasserted, and whether for general, special, statutory, punitive or other damages, sanctions, costs, or attorney's fees, or for equitable, declaratory, injunctive, reimbursement, or other relief, in each case including all derivative claims and whether currently pending or in process and whether arising in the past, present or future and in respect of (i) the Transaction and the Purchase Agreement (and any ancillary documents, including the TSA), including the negotiation, formulation, preparation, or consummation thereof and (ii) any action or failure to take action at any time at or prior to the Closing that the Debtors have or are entitled to make or assert, file or bring against any Purchaser Released Person.  For the avoidance of doubt, and notwithstanding anything to the contrary, nothing herein shall release claims or causes of actions arising from an act or omission determined to have constituted willful misconduct, gross negligence, or fraud.  The releases set forth herein do not extend to any rights or obligations of the parties under the Purchase Agreement (or any ancillary documents, including the TSA) that survive the Closing pursuant to the terms of the Purchase Agreement (and any documents or instruments delivered pursuant thereto, including the TSA).

29915103.13

**Dated: January 18th, 2023**
**Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**