**<u>Exhibit B-2</u>**

**MSA**

# MASTER SERVICES AGREEMENT

This **MASTER SERVICES AGREEMENT** (this "Agreement") is effective as of _____, 2023 (the "Effective Date") by and between Project Crush Acquisition Corp LLC ("Buyer") and [●] ("DTC Sub", and together with Buyer, the "Buyer Parties") and BWSC, LLC ("Seller").  Buyer, DTC Sub and Seller may each be referred to individually as a "Party" and together as the "Parties."

**WHEREAS**, Seller and its debtor affiliates, Winc, Inc. and Winc Lost Poet, LLC, are engaged, among other things, in the business of producing, marketing, and selling alcoholic and non-alcoholic beverage products and related merchandise available for purchase through wholesale and direct-to-consumer channels, including through subscription agreements with consumers (the "Business");

**WHEREAS**, Buyer, Seller, and the other parties thereto have entered into an Asset Purchase Agreement dated as of December 7, 2022, as amended by that certain Amended and Restated Asset Purchase Agreement, dated as of December 21, 2022 (as amended, the "APA"), under which, in accordance with Sections 363, 365, and the other applicable provisions of the United States Bankruptcy Code, Buyer and its designated Affiliates purchased all of the Transferred Assets (as defined in the APA), free and clear of all Liens, together with the Assumed Liabilities (as defined in the APA) of Seller and its debtor affiliates, upon the terms and conditions set forth therein (the "Transactions");

**WHEREAS**, in connection with the Transactions, the Buyer Parties and Seller entered into a Transition Services Agreement, dated as of the date hereof (the "TSA"), pursuant to which Seller shall provide certain transitional services to the Buyer Parties, upon the terms and conditions set forth therein; and

**WHEREAS**, Seller desires that Buyer Parties provide to Seller certain services described herein with respect to the Business and Buyer Parties desire to provide such services;.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1. Defined Terms.  Capitalized terms used but not otherwise defined in this Agreement will have the meanings given to them in the TSA.

2. Term.
    a. This Agreement shall commence on the Effective Date and shall continue until the expiration or termination of the TSA, upon which this Agreement shall automatically terminate and be of no further effect (the "Term").

    b. Notwithstanding anything to the contrary in this Agreement, (i) the termination of this Agreement will not affect Seller's obligation to pay any Consulting Fees owed under this Agreement and not paid by Seller to the Buyer Parties as of the effective

date of termination and (ii) upon the termination of this Agreement Seller shall promptly pay all Fees owed to the Buyer Parties for all services rendered prior to termination or expiration pursuant to the terms set forth herein; <u>provided</u>, <u>however</u>, that the maximum amount payable to Buyer at such time shall not exceed the amount of Transition Proceeds then held by Seller.

3. <u>Appointment of Buyer Parties</u>.  Seller hereby engages the Buyer Parties as a consultant, and the Buyer Parties hereby agree to provide consulting and administrative services to the Seller, on the terms and conditions provided in this Agreement as a consultant to the Business.

4. <u>Scope of Services</u>.  Subject to any limitations imposed by applicable law or regulation, the Buyer Parties hereby agree to provide Seller with all administrative services, in such manner and on such matters as may be reasonably requested by Seller from time to time, including, without limitation, (i) administrative or other "back-office" activities in connection with the Business, (ii) finance, accounting, and legal services required with respect to the Business, (iii) marketing, manpower, and any other functions related to the Business, (iv) sufficient personnel to allow Seller to provide the Transition Services, and (iv) any other services Seller requires in order to provide the Transition Services pursuant to the TSA (collectively, the "<u>Consulting Services</u>").

5. <u>Consulting Fee</u>. In consideration for the Consulting Services, Seller will pay the Buyer Parties a weekly consulting fee (the "<u>Consulting Fee</u>").  The Consulting Fee shall be calculated as the greater of (i) Buyer Parties' actual and documented cost of providing the Consulting Services during the prior week, as set forth in an invoice provided by Buyer to Seller at least one day prior to the payment of such Consulting Fee and (ii) an amount equal to eighty percent (80%) of Transition Proceeds received by Seller during the prior week as reduced by any Fees. The Consulting Fee shall be payable on or before the last business day of each week and Seller may, and Seller shall be permitted to, offset the Consulting Fee against any Fee that is due from Buyer Parties to Seller in accordance with the TSA.

6. <u>Indemnification</u>.  Buyer Parties shall indemnify and hold Seller and Seller's members, officers, directors, agents and employees (each an "<u>Indemnified Party</u>") harmless from and against any claim, damage, loss, expense (including reasonable and out-of-pocket attorneys' fees), penalty, fine, or liability of any kind whatsoever (each, a "<u>Loss</u>"), or any action therefore, by or on behalf of any third party that arise from or are in connection with any claims relating to Buyer Parties' provision of Consulting Services hereunder during the Term, (ii) the Buyer Parties' material breach of or failure to comply with any of the Buyer Parties' agreements or covenants contained in this Agreement, and (iii) Buyer Parties' fraud, negligence (including omissions), or willful misconduct of the Buyer Parties, their officers, directors, employees, agents, or representatives; provided, however, that (i) the Buyer Parties shall not indemnify any Indemnified Party for any Loss resulting from the fraud, gross negligence or willful misconduct of such Indemnified Party and (ii) notwithstanding anything to the contrary herein, for the avoidance of doubt, the Buyer Parties shall not be responsible under this Section 6 for any Loss to the extent arising, accruing or relating to periods prior to the Effective Date.

- 3 -

7. <u>Assignment</u>.  This Agreement shall not be assigned in whole or in part by either Party.

8. <u>Governing Law</u>.  This Agreement shall be interpreted under the laws of the State of Delaware.

9. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts and by each of the Parties hereto in separate counterparts, each of which when so executed will be deemed to be an original and all of which together will constitute one and the same agreement.

[Signature Page Follows]

280647932 v4

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed as of the date first above written by its officer or representative thereunto duly authorized.

| **BUYER PARTIES:** | **SELLER:** |
|---|---|
| **Project Crush Acquisition Corp LLC** | **BWSC, LLC** |
| By: _____ | By: _____ |
| Name: _____ | Name: _____ |
| Title: _____ | Title: _____ |

**[●]**

By: _____

Name: _____

Title: _____