<u>**Exhibit C**</u>

**Settlement Term Sheet**

# SETTLEMENT TERM SHEET AND ADDENDUM TO SALE ORDER

This Term Sheet sets forth certain of the terms and conditions for settlement and resolution of certain claims and other matters, by and among, Winc, Inc. et al, as debtors and debtors-in-possession (the "Debtors") in the chapter 11 cases jointly administered under case number 22-11238 (the "Chapter 11 Cases") filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), the official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Creditors' Committee"), and Project Crush Acquisition Corp LLC, as DIP Lender and Stalking Horse ("PCAC" and, together with the Debtor, the Creditors' Committee, and Banc of California, N.A. ("BOC"), the "Parties").

| | |
|---|---|
| **General Framework** | This Term Sheet describes terms for a settlement between the Parties of the Creditors' Committee's objection to the Sale. This Term Sheet shall be approved by the Parties and made an exhibit to the Sale Order.<br><br>This Term Sheet is subject to agreement by the Parties regarding the terms of the Asset Purchase Agreement (the "APA"), Sale Order, Transition Services Agreement (the "TSA"), Master Services Agreement (the "MSA"), and related Sale documents.<br><br>Certain terms set forth herein are subject to memorialization and implementation in the Plan, which will be filed with the Bankruptcy Court and for which the Debtors will seek confirmation. |
| **Sale Order** | The Committee agrees (a) not to object to or contest any motion seeking entry of the Sale Order consistent with this Term Sheet, (b) to support entry of the Sale Order consistent with this Term Sheet at the January 17, 2023 sale hearing, and (c) upon closing of the Sale, will release, waive and discharge any and all rights to commence any action, claim, objection or complaint against PCAC. |
| **Sale Closing** | The Parties agree to use commercially reasonable efforts to cause the Sale to be consummated on or prior to January 20, 2023.<br><br>At the closing of the Sale, the Parties agree that PCAC as DIP Lender will be entitled to credit bid $4,165,963.49 plus 50% of the Net Sale Proceeds (defined below). At or immediately after the closing of the Sale, the Debtors will indefeasibly pay, by wire transfer, all outstanding obligations to BOC as Prepetition Secured Lender in full and final satisfaction of the BOC Secured Claim (as defined below), *provided that*, the total amount of principal, interest, and fees payable to BOC shall not exceed $3,558,645.56, plus no more than $175,000 for BOC's bankruptcy counsel's reasonable fees and expenses (which are subject to review by the Parties, in summary form) plus reasonable lender expenses and non-default interest accruing for the period beginning January 4, 2023 through and including the closing of the sale of substantially all of the Debtors' assets to PCAC (the "BOC Secured Claim"). The challenge deadline of February 20, 2023 to the BOC Secured Claim is deemed waived. The |

1

| | |
|---|---|
| | Debtors shall reserve the sum of $103,000 in cash on account of a letter of credit issued by BOC at the behest of Winc, Inc. (the "LC"), which reserve shall remain in place until BOC confirms in writing to the Debtors that the LC has been fully and finally terminated. If the LC is drawn by the beneficiary and BOC satisfies such draw, then the Debtors shall promptly pay to BOC the additional sum of up to $100,000 on account of the LC and any expenses up to $3,000 incurred by BOC in connection therewith.<br><br>At Sale closing, all liens, security interests, and encumbrances of any kind in favor of PCAC and/or BOC, subject to payment of the BOC Secured Claim, as set forth herein, on Excluded Assets (as defined in the APA) shall be deemed released and discharged. |
| **Disputed Payment and Lien Claim Settlement** | The Debtors shall not make the Disputed Payments totaling $996,419, as defined in the Committee's objection by email dated January 13, 2023, *provided that* the Creditors' Committee withdraws its objection to the $8,000 payment to that certain software provider designated by PCAC and the Debtors will make such proposed payment of $8,000 to such software provider prior to the Sale closing.<br><br>PCAC will designate the following contracts and/or purchase orders (the "Assumed Lien Contracts") to be assumed by Debtors and assigned or sold to PCAC under the APA, and PCAC will agree to be responsible for the associated cure costs relating to the Assumed Lien Contracts, effective at the conclusion of the transition period under the TSA, or some other time that may be agreed to between PCAC and the parties to the Assumed Lien Contracts, which shall resolve any lien claims relating to the Assumed Lien Contracts on or against the Debtors' assets, including but not limited to claims and liens under the Perishable Agricultural Commodities Act and the California equivalent: (1) Kylix Vineyards California, L.P., (2) Highland Vineyard SB, LLC, (3) SB Comino, LLC, (4) SWG Paso Vineyard, LLC, (5) Loma de Rio Vineyards, LLC, (6) Alta Loma Vineyard, LLC, (7) Coastal Vineyard Care Associates, and (8) John Hancock Life Insurance, Co.<br><br>For the avoidance of doubt, the Debtors' estates will not be responsible for paying any cure costs or lien claims relating to the Assumed Lien Contracts. |
| **Sale Proceeds Utilization** | At the Sale closing, the Debtors shall calculate, subject to agreement by the Parties, the amount of remaining sale proceeds after deducting (i) payment of the PCAC agreed secured DIP claim totaling $4,165,963.49, which shall be effectuated through the credit bid as a credit against the Purchase Price under the APA; (ii) payment of the BOC Secured Claim; and (iii) administrative claims (including claims of professionals retained |

2

| | |
|---|---|
| | by the Debtors and the Creditors' Committee in the chapter 11 cases) accrued through closing (the "Net Sale Proceeds").  PCAC and the Debtors shall split such Net Sale Proceeds 50/50.  PCAC may credit bid its share of the Net Sale Proceeds as a credit against the Purchase Price under the APA. |
| **Canaccord** | The Committee will support the retention and compensation of Canaccord Genuity, LLC as set forth in the retention order agreed upon at the January 17, 2023 hearing. |
| **Plan** | The Debtors and Committee agree to negotiate in good faith a Plan and related Disclosure Statement and, if possible, file such Plan and related Disclosure Statement by no later than February 17, 2023, and set a confirmation schedule reasonably capable of achieving a target confirmation of the Plan on or before April 14, 2023.<br><br>Documentation with respect to the Plan shall be in a form and substance reasonably satisfactory to the Debtors and Committee.<br><br>The Parties agree that any plan relating to BWSC, LLC ("BWSC") shall (i) assume the APA, TSA and MSA and continue to comply with all obligations thereunder as a reorganized debtor after such plan is confirmed and goes effective, (ii) require the same responsible party at BWSC remain employed at BWSC through the term of the TSA, and (iii) include a condition precedent that a plan for BWSC going effective shall not terminate, revoke or impair BWSC's use of its alcohol license during the term of the TSA unless otherwise agreed by the Parties. |
| **Access to Records** | The post-confirmation Debtors and PCAC shall provide the Creditor Trust with reasonable access to books and records and otherwise cooperate with reasonable requests for information from the Creditor Trust. |
| **Creditor Trust** | On the Effective Date, and unless otherwise agreed to by the Committee and the Debtors, the Creditor Trust will be established and the legal and equitable title to the Creditor Trust Assets will be transferred to the Creditor Trust.<br><br>The "Creditor Trust Assets" will be comprised of (i) cash in an amount to be determined by the Debtors and Committee; (ii) all prepayments, deposits, and other rights arising under or related to Excluded Contracts under the APA; (iii) all rights of the Debtors to tax refunds; (iv) all rights in any insurance policies other than those transferred to PCAC under the APA; (v) any and all estate causes of action and rights of recovery against individuals or entities other than those transferred to PCAC under the APA; (vi) the Debtors' books records, other than those transferred to |

3

| | |
|---|---|
| | PCAC under the APA; and (vii) any other Excluded Assets under the APA. |
| **Governance of the Creditor Trust** | The "Creditor Trust Agreement" is the trust agreement that documents the powers, duties and responsibilities of the Creditor Trustee, and which agreement will be materially consistent with this Term Sheet. The Creditor Trust Agreement will be filed with the Bankruptcy Court by the plan supplement filing date and incorporated in the confirmation order.<br><br>The Creditor Trustee will be selected by the Committee in consultation with the Debtors.<br><br>The Creditor Trustee, together with its agents, representatives and professionals, will have the power to administer the Creditor Trust Assets and make distributions in accordance with the terms of the Plan. In such capacity, the Creditor Trustee shall have the authority to (1) establish reserves and invest cash; (2) retain and pay professionals as necessary to carry out the purposes of the Creditor Trust; (3) prepare and file tax returns for the Creditor Trust; (4) object to, reconcile, seek to subordinate, compromise or settle any or all claims and administer distributions to holders of claims, including filed claims and scheduled claims (regardless of whether they were scheduled as undisputed, noncontingent, or liquidated); (5) evaluate, file, litigate, settle, or otherwise pursue any assigned causes of action; (6) make interim and final distributions of Creditor Trust Assets; (7) seek to collect, or enforce the Creditor Trust's rights and remedies under, the Creditor Trust Assets; (8) manage, distribute or liquidate the Creditor Trust Assets; and (9) wind-up the affairs of the Creditor Trust and dissolve it under applicable law.<br><br>All other Creditor Trust governance issues shall be determined by the Committee and outlined in the Creditor Trust Agreement. |

4