```
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
 2

 3   IN RE:                        .  Chapter 11
                                   .
 4   WINC, INC., et al.,           .  Case No. 22-11238 (LSS)
                                   .
 5                                 .  (Jointly Administered
                                   .
 6                                 .  Re: Docket Nos. 223 & 263
                                   .
 7                                 .  Courtroom No. 2
                                   .  824 Market Street
 8              Debtors.           .  Wilmington, Delaware 19801
                                   .
 9                                 .  Thursday, March 2, 2023
     . . . . . . . . . . . . . . . .  3:00 p.m.
10

11             TRANSCRIPT OF STATUS CONFERENCE HEARING
          BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
12            CHIEF UNITED STATES BANKRUPTCY JUDGE

13   APPEARANCES:

14   For the Debtor:        Allison Mielke, Esquire
                            YOUNG CONAWAY STARGATT & TAYLOR LLP
15                          Rodney Square
                            1000 North King Street
16                          Wilmington, Delaware 19801

17

18   (APPEARANCES CONTINUED)

19   Audio Operator:        LaCrisha Harden

20   Transcription Company:  Reliable
                            The Nemours Building
21                          1007 N. Orange Street, Suite 110
                            Wilmington, Delaware 19801
22                          Telephone: (302)654-8080
                            Email:  gmatthews@reliable-co.com
23

24   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.
25
```

1   APPEARANCES (CONTINUED):

2   For the U.S. Trustee:        Jane Leamy, Esquire
                                 OFFICE OF THE UNITED STATES TRUSTEE
3                                J. Caleb Boggs Building
                                 844 King Street, Suite 2207
4                                Lockbox 35
                                 Wilmington, Delaware 19801
5
    For the Committee:           Justin Kesselman, Esquire
6                                ARENTFOX SCHIFF LLP
                                 800 Boylston Street
7                                32nd Floor
                                 Boston, Massachusetts 02199
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 3:01 p.m.)

2              THE COURT:  Good afternoon.  This is Judge

3  Silverstein.  We're back again in Winc, Inc., 22-11238.

4              Thank you to everyone for getting together quickly

5  to discuss the bar date order again.

6              I have reviewed the revised form of order and

7  relative to the holders of gift cards and the monthly

8  subscribers to the debtors' wine program.  And I think what

9  the changes did was highlight for me that, in fact, there is

10 not a real way to fix this in a bar date order.  And what I

11 think this is showing me is that we're getting into claims

12 administration in the bar date order, and that is not where

13 we should be doing it.

14             I am not comfortable with a notice relative to a

15 bar date that says that claims filed by the debtors'

16 customers for unredeemed gift cards and subscription credits

17 are no longer obligations of the debtors' estate because I

18 think they are.  I think we are getting into claims

19 administration.

20             I asked one of my colleagues about this, without

21 giving him my view, and he had the same reaction that these

22 are claims. If they -- that these obligations were

23 transferred.  And I can't actually tell you how because I did

24 not go back and look at the contract, but the purchaser

25 agreed, in some fashion, to pay or honor gift cards and these

1  obligations; the monthly subscription obligations.  That

2  didn't novate whatever the arrangement was between the

3  debtors and those holders of claims.

4         So, I think what this does is this notice is

5  establishing a legal conclusion to what happens if the holder

6  of a gift card or a credit under a monthly subscription files

7  a proof of claim.  And that is why I say its anticipating

8  claims administration through the bar date.  And I am just

9  not comfortable with that.

10         Ms. Mielke.

11         MS. MIELKE:  Thank you.  I appreciate your

12  concerns, Your Honor.  I think there is still a way to

13  accomplish what we are trying to do here with language that

14  probably better satisfies your concerns.

15         As far as I am aware, and I am sure that you will

16  correct me if I'm wrong, but let's assume that the DTC

17  customers are considered creditors of the estate, they are

18  obligated or entitled to notice of those bar dates which this

19  notice does.  This notice does not provide or the package

20  that we are proposing to send to this body of creditors does

21  not provide a proof of claim form.

22         We would suggest that this notice go out

23  electronically not only because that is the mode of

24  communication that these particular creditors are used to

25  communicating with the debtors, but also because it would cut

1  down on the cost of service substantially.  I think the

2  estimate cost of a service of a hard copy bard date to only

3  this body of creditors is around $100,000.  That is

4  conservative. I think it's a little bit more.

5           From what I am hearing, I think what we could do

6  is tweak the notice to simply say, and I am not sure if this

7  part you would object to or not, but to simply say that the

8  debtors' assets were sold as part of the sale, you know, note

9  the docket number of the sale order, identify that pursuant

10  to that order the  purchaser has assumed those obligations.

11  I don't know if you take offense to that or not.

12           Then tell customers that those obligations -- the

13  customer credits will be in the ordinary course of business,

14  and that those particular creditors need not do anything with

15  respect to those subscription credits.  We're going to have

16  those honored in the ordinary course of business, but if they

17  want to file a proof of claim in the cases here is the bar

18  date.

19           THE COURT:  What is the resistance to just sending

20  out the bar date notice?

21           MS. MIELKE:  Well because I think that this is a

22  group of very unsophisticated parties and I think that a

23  notice that goes out to them that says here is a bar date

24  package without any information about what has happened to

25  these liabilities might be confusing and might actually

1  result in a substantial number of proofs of claim filed where

2  if people understood that their claims were going to be

3  honored in the ordinary course of business or that, you know,

4  that was what was contemplated under the sale documents they

5  might not feel that level of discomfort.

6          THE COURT:  I don't -- I think that happens in

7  every case. I think we often have a large unsophisticated

8  group of creditors who gets a bar date notice, they don't

9  know whether they should file a claim or not, some people

10  file a claim that just says I got this so I think I might be

11  owed money, I get those kinds of things all the time.

12          I don't tell people in a bar date motion whether

13  or not they have a claim or whether or not they should file

14  one.  What I think -- and then once claims are filed the

15  debtor deals with them in claims administration.  And if you

16  want to perhaps add something to the proof of claim form that

17  has a place to check off if this is for a subscription or

18  this is for a gift card so that you know that is -- the

19  debtor knows that is what it's for I am not opposed to that.

20          Now that may have more people file a claim because

21  they see that on the proof of claim form, but you are still -

22  - the debtor is still trying to influence whether somebody

23  has a claim or doesn't have a claim. I think they have

24  claims.  Whether or not those claims have or will be

25  satisfied in some other fashion so that that person is no

1 | longer entitled to be paid from the estate is a different

2 | question.  And that is a claims administration question.

3 | That is not a bar date notice question.

4 | Bar date notices go out to anybody who possibly

5 | has a claim, anybody.  That is what the debtor should do,

6 | right.  You want to get all those claims in so that they're

7 | subject to a bar date.  And this just doesn't look right.

8 | If you want to send something else that comes from

9 | the debtor that doesn't come from the Court and is not part

10 | of the official form maybe you can do that, I don't know.  I

11 | have not seen anything like this done before and neither has

12 | the colleague that I checked with who has had retail cases

13 | that implicate gift cards.  So --

14 | MS. MIELKE:  I think mostly because where there

15 | are gift cards there is (inaudible), right, to holders of

16 | gift cards because there is no way to track who the holder of

17 | the gift card is.

18 | THE COURT:  Fair enough.  But then there is a,

19 | perhaps, publication notice.

20 | MS. MIELKE:  And there is one here too as well.

21 | THE COURT:  And so, holders of gift cards can

22 | decide what they want to do.

23 | MS. MIELKE:  Right.  I think that is still the

24 | case here with the publication notice.  I don't want to --

25 | its pretty clear where Your Honor falls on this, so I don't

1  want to debate the issue, you know, if you determine that

2  this is the path forward.

3          I will try one more time to say that I still think

4  a shortened more abbreviated notice to this body of creditors

5  by email, even with just the same notice, but removing all of

6  the reference to subscription, would still cut down on

7  administrative costs and there is a benefit to doing that.

8          THE COURT:  I don't have a problem with the email

9  notification to the monthly subscribers because I think I

10  approved that on the first day.  So, I do not have a problem

11  with notice going in that fashion. I just think they should

12  be given a proof of claim form.  They should be given the bar

13  date notice and they can make a decision about whether or not

14  they want to file a proof of claim.

15          For those that do the debtor can object to those

16  claims at an appropriate time in the process and that

17  objection might include some diligence with the purchaser

18  about whether the monthly subscribers are being addressed in

19  the ordinary course of business, and whether or not the gift

20  cards are being honored in the ordinary course of business so

21  that the debtor can actually, in fact, file that objection

22  and have a basis to do so.

23          MS. MIELKE:  I hear you, Your Honor, and I

24  understand the concerns.  Obviously, what is motivated by

25  this is not that we don't want people to file proofs of claim

1  necessarily.  We just don't want unsubstantiated proofs of

2  claim to be filed.  We want these potential creditors to be

3  informed of the full set of circumstances including that

4  which is a fact, it's on the record, that this is a term in

5  the sale order and the APA.

6           THE COURT:  It's a term in the sale order and I

7  have no idea whether the purchaser is honoring it or not.  If

8  the purchaser does not honor it these parties have claims

9  against this company.  Whether or not they honor it they have

10 claims against the debtor, but there would be a defense to

11 the claim, an objection to the claim if, in fact, they had a

12 gift card for $50 and the purchaser honored it in the full

13 amount of $50, they're not entitled to get another $50.

14           So, that is the objection.  But unless that

15 happens they have a claim against this estate.  And I don't

16 know that, in fact, they're being honored in the ordinary

17 course and I suspect neither does the debtor.  But I also

18 suspect, because of the contractual obligation that the

19 purchaser has to the debtor, to honor those obligations that

20 its honoring them, but I don't know that.

21           This is claims.  This is get claims in the estate.

22 This is not claims administration.  This is not objecting to

23 claims that have been filed. I just think that is what is

24 being anticipated here and I am not willing to go there.  It

25 may mean that the debtor gets a host of claims that it will

1  have to track down and object to.  We get those omnibus

2  objections all the time.

3          MS. MIELKE:  Right.  What I'm hearing and I think

4  you might have said this, I just want to clarify to make sure

5  I'm not misunderstanding, if the debtor and the purchaser,

6  you know, agree to a form of communication that comes from

7  the purchaser or potentially even from the debtors, but I

8  guess that is TBD, that says that obligations, that

9  subscription credits are being honored in the ordinary course

10 of business by the purchaser.  You are not opposed to that

11 and that is not something we would be seeking the Court to

12 approve if it came from the purchaser or something similar.

13          THE COURT:  If it's not something I am being asked

14 to approve then I think the debtor should think about whether

15 its appropriate to send such a communication or whether the

16 purchaser thinks its appropriate to send such a

17 communication, and whether or not such a communication was

18 already sent in connection with the sale motion and the

19 purchaser taking over the obligations.  I don't know whether

20 they already did that or not.  Maybe they would have to try

21 to build good will.  I don't know what they have done.

22          It's not something that should come out in

23 connection in the bar date notice, and its not something that

24 should be court sanctioned.

25          MS. MIELKE:  Understood.

1    THE COURT:  I haven't thought about whether the

2  debtor should, by itself, do that. I think the debtor should

3  really give some thought to that.  Again, it's just this

4  resistance to just send in a bar date notice to people.  They

5  will file a claim, or they won't file a claim, I don't know.

6    MS. MIELKE:  Right.  I don't want to beat a dead

7  horse here, but the problem here is scope of claims and that

8  is a practical concern that we are trying to solve for.  But

9  I understand what the issue is and I appreciate that.  I mean

10  its just a big group of people and we're trying to make sure

11  that the notice is, you know, best dealing with the

12  administrative practical problems that arise from this.

13    THE COURT:  I really actually don't view that part

14  of it as very different then any other case with a large

15  creditor body

16    MS. MIELKE:  I understand.

17    THE COURT:  Ms. Leamy.

18    MS. LEAMY:  Your Honor, thank you.  Jane Leamy for

19  the U.S. Trustee.

20    I just wanted to address a separate issue that, I

21  think, parties might not be focusing on because of the extra

22  hearing we had, is the bar date is listed as March 30th on

23  the notice.  I think the intent was to -- I know, you know,

24  20 days might be okay, but I think the intent was to give, at

25  least, 30 days.  So, I don't know if that needs to be pushed

1  out a little bit because this hearing has been pushed out

2  from the original date it was contemplated.

3          THE COURT:  Thank you.  I think that is a fair

4  point.  And we should move the bar date accordingly.

5          MS. MIELKE:  There's no objection to that, Your

6  Honor.  Whatever order that we submit to the Court under COC

7  we will propose that the date be 30 days from entry of the

8  order.

9          THE COURT:  Thank you.

10          Any other questions or comments?

11          MR. KESSELMAN:  Your Honor, Justin Kesselman from

12  ArentFox for the Committee.

13          Just wanted to put on the record that the

14  committee will consult with the debtors about this potential

15  notice and the parameters around it.  It seems like it could

16  be a good solution to solve for the cost issue.

17          With respect to, you know, claims adjudication

18  down the road it doesn't have to be decided today, but we

19  would hope we would be able to file omnibus objections to

20  these types of claims and be able to address notice in a

21  similar way when we do that.

22          THE COURT:  We will deal with that when we get to

23  claims administration.  And if people file claims they will

24  tell you in there probably how you are supposed to

25

1  communicate with them, but we will deal with that when it

2  arises.

3          MR. KESSELMAN:  Understood. Thank you, Your Honor.

4          THE COURT:  Thank you.

5          So, I will look for a revised form of order as we

6  have discussed on the record. I appreciate everyone's

7  patience as we work through this.  This is the first time I

8  have dealt with a bar date order that has this issue that

9  arises.  But I have given it, as you can see, a fair amount

10 of thought and I have discussed it with one of my colleagues

11 and this is where I come out.  So, it's a process.  It's a

12 process issue.  And it's a due process issue.

13         So, I will look for the form of order and when I

14 get it, I will sign it, and you can get the process underway.

15         MS. MIELKE:  Thank you, Your Honor.

16         THE COURT:  Mr. Hurford, did you have something to

17 add?

18         MR. HURFORD:  I'm sorry, I was just turning on my

19 video to say thank you.  That was all.

20         THE COURT:  Okay.  Very good.  Thank you.  We are

21 adjourned.

22     (Proceedings concluded at 3:19 p.m.)

23

24

25

14

1                          CERTIFICATION

2              I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7    /s/ Mary Zajaczkowski                    March 2, 2023

8    Mary Zajaczkowski, CET-531

9    Certified Court Transcriptionist

10   For Reliable

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25