```
                 IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF DELAWARE

IN RE:                              .      Chapter 11
                                    .
WINC INC., ET AL.                   .      Case No. 22-11238 (LSS)
                                    .      (Jointly Administered)
     Debtors.                       .
                                    .      February 23, 2023
. . . . . . . . . . . . . . . . . .        2:00 p.m.


                      TRANSCRIPT OF HEARING BEFORE
                 THE HONORABLE LAURIE SELBER SILVERSTEIN
                     UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtor:          Young Conaway Stargatt & Taylor, LLP
                         BY:   ALISON S. MIELKE, ESQ.
                         1000 North King Street
                         Wilmington, DE 19801
                         Phone:    302-571-6600
                         Email:    amielke@ycst.com

For the U.S. Trustee:    Office of the United States Trustee
                         BY:   JANE M. LEAMY, ESQ.
                         844 King Street, Suite 2207
                         Wilmington, DE 19801
                         Phone:    302-573-6491
                         Email:    jane.leamy@usdoj.gov




Audio Operator:          Jermaine Cooper, ECRO

Transcription Company:   Reliable
                         1007 N. Orange Street
                         Wilmington, Delaware 19801
                         (302)654-8080
                         Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```

1      (Recorded proceedings commence at 2:00 p.m.)
2      THE CLERK: Please rise.
3      THE COURT: Please be seated.
4      Ms. Mielke?
5      MS. MIELKE: Your Honor, good afternoon.
6      THE COURT: Good afternoon.
7      MS. MIELKE: I hope you've had a chance to get
8 outside today. It is so glorious.
9      THE COURT: No. Of course.
10     MS. MIELKE: That was the first, the walk from here
11 was the first chance I got. It was really very wonderful.
12     THE COURT: You're one ahead of me.
13     MS. MIELKE: So good afternoon, Your Honor. This
14 afternoon, this is the hearing for the bar date motion for
15 Winc, Inc., et al. It is the only unresolved item on the
16 agenda for today. It is No. 5 on the agenda.
17     As Your Honor is likely aware, the debtor submitted a
18 proposed order under certification with respect to this motion.
19 So presumably Your Honor has questions today. I'm happy to do
20 a brief overview of the motion and make a record if you'd like,
21 or I can also just answer your questions, whichever is
22 preferred.
23     THE COURT: I had a question which I must have marked
24 on, not seeing it in the binder. The question -- okay, it
25 talks about it in the motion. Don't know where my marked copy

1  went to.  Paragraph 28.

2            MS. MIELKE:  Yes, Your Honor.

3            THE COURT:  And I haven't had this request before
4  that instead of sending a bar date notice to holders of gift
5  cards and subscription, monthly subscriptions subscribers who
6  are owed credits, I guess, that the debtors want to send a
7  notice of assumption of assumed obligations, and not have those
8  parties file claims.  And I haven't had that issue before.  So
9  that's what I've been thinking about.  And quite frankly, none
10 of my colleagues have had the issue before because I asked.

11           And can you tell me why it's appropriate to do that,
12 because I think these parties are creditors?  So I'm trying to,
13 I'm just, I'm asking because I just don't know.

14           MS. MIELKE:  I understand.  So I'll go through our
15 rationale and we can talk through the logistics of it.

16           Initially at the outset, and it's interesting that
17 you think they are creditors.  Here, the obligations owed to
18 this class, I'll use the word class, of potential creditors or
19 interested parties, all those obligations are going to be
20 assumed and satisfied in the ordinary course of business.  So
21 there's not going to be anything, any obligation owed on
22 account of the debtors' chapter 11, the debtors' estates.  So
23 whether they are actually creditors I think is an issue that we
24 might disagree on.

25           THE COURT:  And here's, and I started thinking about

1 this, and here was my thought process.  Again, just for
2 discussion, is you and I cannot agree that the obligation that
3 I owe to Mr. Herford is going to be paid by you and not me.
4 Okay?  Let's go outside of bankruptcy law.  I owe Mr. Herford
5 an obligation, I owe him $100, and you and I agree that you'll
6 pay that.  Okay?  It doesn't mean he can't sue me for it, he
7 can't come to me.  We can't agree that you're going to pay my
8 obligation.  He could agree that you're going to pay it, I
9 guess we've novated the obligation.
10          But that's sort of what we have here.  We have, we
11 have as I understand it from reading this and as you're telling
12 me, you're reminding me, the purchaser took these obligations.
13 If the purchaser doesn't perform, okay, could the holder of the
14 gift card or the monthly subscriber sue the purchaser?  They're
15 not in privity with the purchaser.  So I don't know.
16          I think if they, if the purchaser didn't perform and
17 the claimant, the gift card holder filed a proof of claim and
18 the debtor had to pay the claim, the debtor could look to the
19 purchaser contractually for recovery, for failure, for
20 breaching its obligations.  But that sort of what my thinking
21 was.
22          Again, I haven't been asked to do this before, quite
23 frankly, in any case where there are assumed obligations,
24 whatever those might be, whether it's a lease or a contract or
25 whatever.

1                On the other hand, I can see this is a very practical
2   thing, right, because I do assume the purchaser is going to
3   perform and I assume all of the gift card holders and the
4   subscribers want the purchaser to perform.  I guess I'm just
5   not sure where this authority comes from.
6                MS. MIELKE:  Yeah, I think it's an interesting
7   question.  I think your point of privity is well taken.  As a
8   practical matter, if these, let's call them potential
9   creditors, filed a proof of claim in the chapter 11 cases, the
10  debtors would object and argue that there's no obligation on
11  the account of the estates to satisfy the claim and that the
12  claim is satisfied in the ordinary course of business by the
13  purchaser.
14               THE COURT:  Well, the estate didn't satisfy the
15  claim.  You would argue that the estate satisfied the claim
16  when it was assigned?  Did the debtor assume and assign the
17  obligation?
18               MS. MIELKE:  It did.  Well, no, well, no.
19               THE COURT:  Or just assigned it.
20               MS. MIELKE:  Just the purchaser assumed to the
21  obligation.  I don't know what the --
22               THE COURT:  I'm not sure what that means in
23  bankruptcy.
24               MS. MIELKE:  I agree.
25               THE COURT:  Because you can't assume something -- I

1  mean that doesn't work.
2          MS. MIELKE:  Right.  Well, they assumed, not in the
3  like sense of the contract, right, but just in the sense of the
4  legal obligation to --
5          THE COURT:  They agreed to be responsible for it.
6          MS. MIELKE:  Correct.  Correct.  So I think the
7  debtors' position would be with respect to any claim that's
8  filed on account of gift cards and subscription that it's not
9  the debtors' obligation to satisfy those, they are satisfied in
10 the ordinary course of business by the purchaser.  And so I
11 mean if that weren't the case, I don't know how you would ever
12 resolve the subscription and gift card liabilities because they
13 can continue on for many, many, many years.
14         As a practical matter, I think that these potential
15 counterparties are looking to the purchaser to satisfy these in
16 the ordinary course of business and aren't looking for the
17 debtors' estates to satisfy them.  They are continuing to do
18 business with the purchaser.  So these are sort of look back
19 claims that are being satisfied in real time going forward.
20         So it's an interesting privity question because yes,
21 the debtor received funds prepetition from, during the pendency
22 of the chapter 11 cases from these individuals, but there are
23 still an ongoing business relationship between those
24 individuals and the purchaser who is actually servicing that
25 obligation with, you know, wine and inventory and other things.

1           THE COURT:  Well, we hope.
2           MS. MIELKE:  Right.  Well, let's hope so, it's their
3  business now, so, I don't think there's any incentive for them
4  not to do that, but that's a practical matter.
5           THE COURT:  Well, we know holders of gift cards are
6  creditors because we have several cases out there which talk
7  about, which talk about gift cards in the context of where the
8  obligations are not taken by the purchaser.  And they have to
9  have claims, those creditors would have to have claims against
10 the estate if the purchaser didn't take the, those liabilities.
11 So --
12          MS. MIELKE:  In that instance though, Your Honor,
13 those gift card holders aren't getting the bar date package
14 because typically, at least in my experience, a debtor doesn't
15 have a way to track the, you know, the individuals that have
16 those claims.  And here we are purporting to send out a notice
17 with the bar dates on them and information about how these
18 particular individuals can file a claim if they want to.  I
19 think your issue really is we -- or affirmatively saying they
20 shouldn't.
21          THE COURT:  It says they shouldn't.
22          MS. MIELKE:  Right.
23          THE COURT:  It says don't file a claim.
24          MS. MIELKE:  Yeah, I understand.
25          THE COURT:  So I'm in the, admittedly very

1 hypothetical situation, hopefully hypothetical situation, where
2 this claim does not get satisfied in the ordinary course of
3 business by the purchaser. And we're telling these people not
4 to file claims here.
5      I think maybe normally, in fact I had some claims
6 objections this morning, maybe normally the way you handle this
7 and I don't know that I like this, is claims get filed and the
8 debtor files an objection that says it's been satisfied because
9 it's been assumed and then that person gets noticed, and they
10 don't file a response to the objection, and then it gets wiped
11 out.
12      MS. MIELKE: Which is sort of the practical problem
13 that we were tying to solve here which is that that's a lot of
14 administrative expense and professional fees for something
15 that, you know, the ultimate end result is going to be the
16 same. And it's one of notice which we're providing at this
17 point. Right? We are affirmatively saying these obligations
18 will be assumed by the buyer and the debtor is going, you know,
19 essentially objecting. Basically saying we're not going to pay
20 these obligations that the purchaser is going to pay these
21 obligations. You are on notice that the purchaser is assuming
22 these obligations and the estate is not.
23      Now, could this be resolved maybe by a tweak to the
24 notice that says, instead of maybe not affirmatively don't file
25 a claim in the chapter 11 cases, but your claim is going to be

assumed pursuant to the APA in the ordinary course of business. Here's the information for a bar date. Because they're only entitled to the bar date, notice of the bar date, right? And so if the question is, it sounds like the issue really is one of affirmatively telling this class of potential creditors, don't file a claim.

And if that's the issue, then it's maybe more one of a nuance in terms of notice. And instead of saying don't file a claim, we send out the notice that says, this is what's happening to your claim under the APA, and if you have a problem with it, I guess you could either, you could file a claim in the chapter 11 cases.

THE COURT: And that was actually, and that was actually one of my questions is did this group of creditors receive notice of the sale so that they would even know this. And the subscribers as I recall, I mean the subscribers you know how to contact, and as I recall we did it by email because that's the way you communicated, the debtors communicated with the client, so I permitted that because it seemed practical and the best way to get notice to them. So varying from the rules a little bit. Okay.

With the gift card holders, I understand, you don't know, the debtor doesn't know who holds the gift cards, so you would do perhaps some publication notice. And I, so I realize we have a group of known creditors, a group of unknown

1 creditors, and we have the whole Chemetron issue about how to
2 notice them.  But that was my other thought too, did they even
3 get notice and do they know how their,  that they can use their
4 gift card now, or continue with their monthly service.
5          MS. MIELKE:  Yes, I think there's three things on
6 that.  The first is yes, although the 52 customers have gotten
7 notice of the sale.  And I can tell you from just an anecdote,
8 this is the second case that I have sent many a notes of
9 commencement out in many a case and I have never done it
10 electronically.  This was the first time.  And I can tell you
11 we got a lot of responses.
12          THE COURT:  You got responses.
13          MS. MIELKE:  And it was a little shocking actually.
14 So I think just from the anecdotal evidence I can tell you that
15 it's probably more effective electronically than it was to do
16 it hard copy.  I think people were able to easily click on
17 something that came directly to their inbox in a fashion that
18 they're used to seeing as opposed to the snail mail kind of
19 throw it in the junk drawer kind of type of circumstance.
20          So in terms of notice, I mean it's not a matter of
21 record, but I can tell you from my experience in this case that
22 I think these creditors are actually getting notice.
23          And then I think I've gone on a tangent and I don't
24 remember what the third point was.  I think we were talking
25 about do they actually get notice, and the answer is yes.  And

1 then do they know that they can continue to have their gift
2 cards honored.
3            And the answer is, Winc is operating in the ordinary
4 course of business.  You know, there's a purchaser, they're
5 satisfying claims, they're satisfying orders, you know, there's
6 been no evidence in my experience so far that there's been any
7 claimant that said how do I do business with you, nobody has
8 reached out, nobody --
9            THE COURT:  You're not getting a ton email saying
10 what happened.
11           MS. MIELKE:  No, so I think people are just operating
12 in the ordinary course, and --
13           THE COURT:  And they kept the Winc name?
14           MS. MIELKE:  They did.  And the website, and you know
15 everything is continued.  And I can tell you that, you know,
16 just as a result of just the weird kind of TSA licensing issues
17 in terms of BWSC continue to operate, it is continuing to
18 operate under the TSA.  And so we do have some visibility into
19 that.
20           THE COURT:  Okay.
21           MS. MIELKE:  So that's what I can tell you.  So my
22 suggestion today would be to tweak a notice in that way, and
23 say, to don't file a claim in the case because you may or may
24 not be a creditor, that seems to be issue, you know, we could
25 say some form of notice that you would do in the context of the

1 claim objection that says this is how your claim is going to be
2 resolved, you know, here's how you can get access to filing a
3 claim if you want to, this is what the bar date is, you know,
4 if you're concerned about your rights, then this is how you
5 address it.
6             THE COURT:  Okay.
7             MS. MIELKE:  I don't know --
8             THE COURT:  Anybody else have any thoughts here?
9             MS. LEAMY:  Good afternoon, Your Honor, Jane Leamy
10 for the U.S. Trustee.  I think that works as far as a
11 resolution, maybe just to make it more plain language.
12             Looking at this notice now, you know, people might be
13 confused, and also because of the name.  They did keep the
14 name, but the debtor name is still Winc, so I don't, people
15 may, there may be some confusion there, so I think that if you
16 know the parties work together to come up with some language
17 provisions to that notice, I think that would help.
18             THE COURT:  Have you seen this before or dealt with
19 this before, this particular issue?
20             MS. LEAMY:  I think not expressly.  I think maybe
21 it's been handled, like you said, there's parties that have
22 gift cards that are not being assumed, so it has to expressly
23 be dealt with.  But I think maybe in some other cases, it just
24 isn't addressed because they don't view them as creditors, so
25 they're not -- they might have gotten a notice of commencement

1 or getting a notice that it's business as usual, but they're
2 not necessarily getting, you know, they're not being included
3 in this grouping of people getting a bar date.
4          THE COURT:  And I wouldn't have probably even thought
5 about it but for the explanation which I appreciate I think it
6 was appropriate to explain what you wanted to do.  But I
7 wouldn't have focused on it otherwise, I wouldn't have thought
8 about it.  So, yeah, I haven't seen it either, but I do
9 think --
10         MS. LEAMY:  Well, it's kind of unique because here
11 there are subscription credits and there are people that I
12 think that have some substantial balances for the nature of
13 what it is, I know from when I reviewed the schedules and
14 statements.  So --
15         THE COURT:  And as long as it's being honored, it's
16 not really a problem, and those people are going to be fine.
17 And one hopes that in fact they're going to be honored and that
18 was the contract that the debtor entered with the purchaser.
19 But I don't think there's anything special about bankruptcy
20 that changes the normal contract rights and what one can
21 assign.  And when you assign your contract, you're still stuck
22 with the obligations generally under this contract law.  So
23 that's the only thing.
24         But I like your suggestion.  I'm willing to go with
25 your suggestion, Ms. Mielke.  Why don't you try and I would

1  circulate it to Mr. Herford and to Ms. Leamy.  And view this as
2  much of a here's what happened, and the purchaser is supposed
3  to be honoring your obligation, the obligations.  And if you
4  want to file a claim, you can, or something like that, I'm sure
5  it could be put better than that.
6         But I don't think we should affirmatively tell people
7  who I view at least at this moment without extensive argument
8  and briefing on whether it's a claim or not, I view them as
9  creditors of this estate, and I don't think we ought to be
10 telling them not to file a claim because that's different than
11 objecting to it and they're not responding and saying okey, you
12 have an opportunity.
13        So let's try that and hopefully it will never be an
14 issue.  Other than that, I didn't have any issues.
15        MS. MIELKE:  Thank you, Your Honor.  With that, we'll
16 submit a revised notice and order under COC.
17        THE COURT:  Thank you.
18        Okay, we're adjourned.  Thank you very much.
19             (Proceedings adjourned 2:23 p.m.)
20

1                        CERTIFICATION
2          I certify that the foregoing is a correct transcript
3   from the electronic sound recording of the proceedings in the
4   above-entitled matter to the best of our knowledge and ability.
5
6   /s/ Theresa Pullan                      March 2, 2023
7   Theresa Pullan, CET-780
8   Certified Court Transcriptionist
9   For Reliable