IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WINC, INC., *et al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 22-11238 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>**August 3, 2023 at 10:00 a.m. (ET)**<br><br>**Objection Deadline:**<br>**July 12, 2023 at 4:00 p.m. (ET)** |

**DEBTORS' SECOND MOTION FOR AN ORDER, PURSUANT TO SECTION 1121(d)
OF THE BANKRUPTCY CODE, EXTENDING THE EXCLUSIVE PERIODS
WITHIN WHICH THE DEBTORS MAY FILE A CHAPTER 11
PLAN AND SOLICIT ACCEPTANCES THEREOF**

The above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), further extending the exclusive periods during which only the Debtors may file a chapter 11 plan and solicit acceptances thereof in these chapter 11 cases (the "Chapter 11 Cases"). In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Winc, Inc. (8960); BWSC, LLC (0899); and Winc Lost Poet, LLC (N/A). The Debtors' mailing address for purposes of these chapter 11 cases is 12405 Venice Boulevard, Box #1, Los Angeles, CA 90066.

30491611.3

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and legal predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, Bankruptcy Rule 9006(b), and Local Rule 9006-2.

**BACKGROUND**

**A.    General Background**

3. On November 30, 2022 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. On December 12, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "Committee"). *See* [Docket No. 54]. The U.S. Trustee filed amended notices of appointment for the Committee on January 18 and 25, 2023, and March 16, 2023. *See* [Docket Nos. 201, 213 & 299]. No request has been made for the appointment of a trustee or

30491611.3

examiner in the Chapter 11 Cases. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

5. Additional factual background relating to the Debtors' businesses, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in the *Declaration of Carol Brault in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 15] (the "First Day Declaration").[2]

**B.    The Sale Process**

6. As discussed in the First Day Declaration, prior to the Petition Date the Debtors commenced a marketing process to explore a sale of their assets (the "Sale Process"). To further the Sale Process, on December 7, 2022, the Debtors filed a motion [Docket No. 47] for the entry of an order approving, among other things, bidding procedures in connection with the sale of the Debtors' assets.

7. On December 22, 2022 the Court entered its *Order (I) Approving Bidding Procedures in Connection with Sale of the Debtors' Assets and Related Bid Protections; (II) Approving Form and Manner of Notice; (III) Scheduling Auction and Sale Hearing; (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Leases; and (V) Granting Related Relief* [Docket No. 85] (the "Bidding Procedures Order"), and the Debtors conducted a sale/marketing process in accordance with the bidding procedures. Bids were due on January 9, 2023.

8. On January 10, 2023, after not receiving any additional qualified bids, in accordance with the Bidding Procedures Order, the Debtors filed the *Notice of Successful Bidder* [Docket No. 149], announcing the designation of Project Crush Acquisition Corp LLC

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

30491611.3

3

(the "Purchaser") as the Successful Bidder for the sale (the "Sale") of substantially all of the Debtors' assets (the "Assets").

9. On January 18, 2023, the Bankruptcy Court entered an order [Docket No. 203] (the "Sale Order") approving the Sale to the Purchaser and a settlement term sheet among the Debtors, Purchaser, and Committee, which resolved, among other things, the Committee's objection to certain vendor payments, the Sale, and which codified the Debtors' and the Committee's agreement to work in good faith to pursue a jointly proposed chapter 11 plan following the closing of the Sale. On January 23, 2023, the Sale closed.

### C. The Debtors' Chapter 11 Plan

10. On June 5, 2023, the Debtors and the Committee filed the *Combined Disclosure Statement and Joint Chapter 11 Plan of Winc, Inc. and Its Affiliated Debtors* [Docket No. 375] (the "Disclosure Statement and Plan"). The Disclosure Statement and Plan provides for, among other things, a prompt and efficient distribution of the Debtors' remaining assets to holders of allowed claims in accordance with the priorities of the Bankruptcy Code.

11. On the same date, the Debtors and the Committee filed the *Debtors' and Official Committee of Unsecured Creditors' Joint Motion for Entry of an Order (I) Approving the Combined Disclosure Statement and Joint Chapter 11 Plan on an Interim Basis; (II) Establishing Solicitation and Tabulation Procedures; (III) Approving the Form of Ballot and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Confirmation Hearing and the Deadline for Filing Objections Thereto; and (VI) Granting Related Relief* [Docket No. 376] (the "Solicitation Procedures Motion").

12. Following a hearing held on June 26, 2023 the Court entered an order approving the Solicitation Procedures Motion [Docket No. 402] (the "Solicitation Procedures Order"). Upon

30491611.3

entry of the Solicitation Procedures Order, the Debtors commenced solicitation of the Disclosure Statement and Plan. The Debtors anticipate presenting the Disclosure Statement and Plan for final approval at a hearing scheduled for August 3, 2023 at 10:00 a.m. (ET).

**D.    The Debtors' Exclusivity Periods**

13. Section 1121(b) of the Bankruptcy Code provides for an initial period of one hundred twenty (120) days after the commencement of a chapter 11 case during which the debtor has the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period"). Furthermore, section 1121(c)(3) of the Bankruptcy Code provides that if the debtor files a plan within the Exclusive Filing Period, the debtor has an exclusive period of one hundred eighty (180) days from the commencement of a chapter 11 case to solicit acceptances of, and confirm, such a plan (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods").

14. On March 13, 2023, the Court issued its *Order, Pursuant to Section 1121(d) of the Bankruptcy Code, Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 295], which extended the Exclusive Filing Period and the Exclusive Solicitation Period through and including June 28, 2023 and August 28, 2023, respectively.

**RELIEF REQUESTED**

15. By this Motion, the Debtors request entry of the Proposed Order extending the Exclusive Filing Period and Exclusive Solicitation Period by approximately ninety (90) days,

30491611.3

5

through and including September 26, 2023 and November 27, 2023, respectively, without prejudice to the Debtors' rights to seek additional extensions of the Exclusive Periods for cause.[3]

## BASIS FOR RELIEF

16. The exclusive periods under section 1121(d) of the Bankruptcy Code are intended to afford a debtor a full and fair opportunity to formulate and propose a chapter 11 plan and to solicit acceptances thereof without the disruption that might be caused by the filing of competing plans of reorganization by non-debtor parties. To this end, section 1121(d) of the Bankruptcy Code allows the Court to extend such exclusive periods for "cause":

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
> (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

**A.  Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods for "Cause."**

17. The decision to extend the exclusive periods for a debtor is committed to the sound discretion of the Court and should be based upon the facts and circumstances of a particular case. *See First Am. Bank of New York v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *203 N. LaSalle Street P'ship v. Bank of Am., N.A.*, 1999 U.S. Dist. LEXIS 19425, at *12 (N.D. Ill. 1999); *In re Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not

---

[3] Pursuant to Local Rule 9006-2, the Exclusive Filing Period is automatically extended until the Court has had an opportunity to consider the relief requested in this Motion.

30491611.3

6

define "cause" for purposes of an extension request under section 1121(d), courts have looked to the legislative history of section 1121(d) for guidance. *See In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Such legislative history indicates that Congress did not intend that the 120- and 180-day exclusive periods be a hard and fast deadline. *See Amko Plastics, Inc.*, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of [section 1121(d)] is flexibility."). Rather, Congress intended that the exclusive periods be of an adequate length, given the circumstances, for a debtor to formulate, negotiate and draft a viable plan without the disruptions that would occur with the filing of competing plans of reorganization. *See Geriatrics Nursing Home v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by competition, the court held, is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business."). Further, Congress recognized that often a one hundred twenty (120) day exclusive period will not afford a debtor sufficient time to formulate and negotiate a chapter 11 plan:

> [t]he court is given the power, though, to increase . . . the 120-day period depending on the circumstances of the case. [T]he bill allows the flexibility for individual cases that is not available today. For example, if an unusually large company were to seek reorganization under chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement.

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted); *see also In re Amko Plastics*, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); *Gaines*, 71 B.R. at 297.

18.     Courts consider, among others, the following factors in deciding whether cause exists to grant an extension of a debtor's exclusive periods: (a) the size of the debtor and difficulty in formulating a plan; (b) the necessity of sufficient time to negotiate a plan and prepare adequate

30491611.3

7

information to allow a creditor to determine whether to accept the plan; (c) the existence of good faith progress toward reorganization; (d) whether the debtor is paying its debts as they come due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiating with creditors; (g) the length of time the case has been pending; (h) whether the debtor is seeking the extension to pressure creditors; and (i) whether unresolved contingencies exist. *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002).

19. Not all of the above factors are necessary or relevant in determining whether to grant an extension of the exclusivity periods. *See, e.g., In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (identifying only four of the factors as relevant in determining whether cause exists to support an extension); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding cause to extend exclusivity based on three of the factors). Here, nearly all of the factors weigh in favor of extending the Exclusive Periods. Accordingly, cause exists to extend the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

**B.     Cause Exists for an Extension of the Debtors' Exclusive Periods.**

20. Throughout the pendency of the Chapter 11 Cases, the Debtors and their advisors have devoted a significant amount of time and effort to preserving and maximizing the value of the Debtors' estates for the benefit of all stakeholders through the Sale of the Assets. Since the Petition Date, the Debtors have: (i) obtained interim and final approval of certain critical "first-day" motions [*see* Docket Nos. 120, 121, 122, 123, 124 & 125]; (ii) obtained interim and final approval of debtor-in-possession financing facilities [Docket Nos. 44 & 134], which originally included preparation for a contested hearing regarding the Debtors' use of cash collateral on a non-

30491611.3

8

consensual basis (which was ultimately resolved after significant arms-length negotiations); (iii) filed their Schedules of Assets and Liabilities and Statements of Financial Affairs and complied with their other reporting requirements under the Bankruptcy Code and the U.S. Trustee Guidelines; (iv) worked diligently to respond to the Committee's various information requests, and address issues raised by the Committee, U.S. Trustee, and parties in interest in connection with the Chapter 11 Cases and the Sale; (v) obtained entry of orders approving the Debtors' retention and employment of certain estate professionals [Docket Nos. 129, 130, 131 & 204]; (vi) obtained entry of the Bidding Procedures Order and worked with their professional advisors to solicit bids for the Assets, respond to diligence inquiries, and prepare documentation of the Sale; (vii) negotiated, obtained approval of, and closed the Sale of the Assets; (viii) prepared and filed a motion to establish bar dates for the filing of proofs of claim in the Chapter 11 Cases [Docket No. 223]; (ix) in an effort to minimize the administrative obligations of the estates, sought and obtained entry of an order authorizing the rejection of certain executory contracts and unexpired leases [Docket No. 128]; (x) worked with the Committee to structure the terms of, and finalize, the Disclosure Statement and Plan [Docket No. 375]; (xi) filed a motion to establish procedures to solicit votes to accept or reject the Disclosure Statement and Plan [Docket No. 376]; (xii) responded to numerous creditor inquiries and demands; and (xiii) handled the myriad other tasks related to the administration of the Debtors' estates and the Chapter 11 Cases.

21.    Accomplishing these tasks has been a resource-intensive process, occupying the attention of the Debtors' representatives and professionals during the pendency of the Chapter 11 Cases. In light of these circumstances, the Debtors submit that extension of the Exclusive Periods is appropriate and necessary to afford the Debtors sufficient time to solicit acceptance, and seek court approval, of the Disclosure Statement and Plan.

      **(i)      The Circumstances of the Chapter 11 Cases Necessitates an Extension of the Debtors' Exclusive Periods.**

22. Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive period to file a plan and solicit acceptances of such a plan. H.R. No. 95-595, at 231-232,406 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191, 6362 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement"); *see also In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

23. The Debtors are a public company conducting business in a highly competitive and highly regulated industry. Thus, the Debtors, their employees, and their advisors have been tasked with addressing a number of complex legal and operational issues involving compliance with certain licensing and regulatory issues in addition to the day-to-day demands of operating in chapter 11.

24. Moreover, as discussed above, the Sale involved extended negotiations and effort. At the conclusion of the process, the Debtors and their advisors negotiated a purchase agreement and related documentation, obtained entry of the Sale Order and closed the Sale of the Assets. Accomplishing these tasks and addressing the concerns of the Debtors' creditors and stakeholders along the way, among other things, required the full attention of the Debtors and their advisors. Further, the Debtors had been required to devote a significant amount of time, energy and resources to complying with obligations under a transition services agreement with the Purchaser.

30491611.3

25. Accordingly, the Debtors submit that the complexity of certain regulatory compliance issues in connection with ongoing operations in the context of the Sale weighs in favor of extending the Exclusive Periods.

**(ii) The Debtors Have Shown Good Faith Progress in the Chapter 11 Cases.**

26. The requested extension of the Exclusive Periods is reasonable given the Debtors' progress to date and the current posture of the Chapter 11 Cases. It is without question that the Debtors have made significant progress during the pendency of the Chapter 11 Cases. Indeed, the Debtors and the Committee have worked collaboratively to construct a chapter 11 plan that will serve the best interests of the Debtors, their estates, and all of the Debtors' stakeholders.

27. Going forward, the Debtors anticipate that the process to solicit votes to accept or reject the Disclosure Statement and Plan will require the devoted attention of key contributors to the advancement of the Chapter 11 Cases.

28. As noted previously, the Debtors' efforts in soliciting acceptance of the Disclosure Statement and Plan are well underway, with the Debtors having obtained entry of the Solicitation Procedures Order on June 27, 2023 and commenced solicitation of the Disclosure Statement and Plan in accordance with the Solicitation Procedures Order. The Debtors anticipate seeking final approval of the Disclosure Statement and Plan at a hearing scheduled for August 3, 2023. Accordingly, the Debtors submit that the extension of the Exclusive Periods is warranted and that the Debtors' actions evidence their commitment to furthering the Chapter 11 Cases along in an expeditious manner.

29. An extension of the Exclusive Periods as requested herein will allow the Debtors the time needed to (i) solicit votes in favor of the Disclosure Statement and Plan, and (ii) seek court approval of the Disclosure Statement and Plan. Accordingly, Debtors' current progress in the

Chapter 11 Cases and the tasks remaining to achieve confirmation of the Disclosure Statement and Plan justify the requested extension of the Exclusive Periods.

### (iii) The Debtors are Paying Their Debts as They Come Due.

30. The Debtors continue to timely pay their undisputed postpetition obligations. As such, the requested extension of the Exclusive Periods will afford the Debtors a meaningful opportunity to solicit and confirm a chapter 11 plan without prejudice to the parties' in interest in the Chapter 11 Cases.

### (iv) An Extension of the Debtors' Exclusive Periods Will Not Prejudice the Debtors' Creditors.

31. Throughout the chapter 11 process, the Debtors have endeavored to establish and maintain cooperative working relationships with their primary creditor constituencies. Importantly, the Debtors are not seeking the extension of the Exclusive Periods to delay administration of the Chapter 11 Cases or to exert pressure on their creditors, but rather to continue the orderly, efficient, and cost-effective chapter 11 process. Thus, this factor also weighs in favor of the requested extension of the Exclusive Periods.

### (v) Additional Factors Exist to Support an Extension of the Debtors' Exclusive Periods.

32. In addition to the factors discussed above, termination of the Exclusive Periods in the Chapter 11 Cases would adversely impact the Debtors' administration of the Chapter 11 Cases. Simply put, if the Court were to deny the Debtors' request for an extension of the Exclusive Periods, upon the expiration of the Exclusive Filing Period, any party in interest would be free to propose a chapter 11 plan for the Debtors and solicit acceptances thereof. Such a ruling could foster a chaotic environment for the Debtors and their estates, significantly delay the administration of the Chapter 11 Cases, and otherwise impair the Debtors' ability to prosecute the Chapter 11 Cases without any corresponding benefit to the Debtors' estates and creditors. Indeed,

denying the relief requested herein could very well thwart the objectives of the chapter 11 process, and result in reduced recoveries for the Debtors' stakeholders.

33. Based on the foregoing, the Debtors respectfully submit that sufficient cause exists, pursuant to section 1121(d) of the Bankruptcy Code, for the Court to extend the Debtors' Exclusive Filing Period through and including September 26, 2023, and the Debtors' Exclusive Solicitation Period through and including November 27, 2023.

## NOTICE

34. Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; and (iii) all parties that, as of the filing of this Motion, have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

*[Remainder of this page intentionally left blank]*

30491611.3

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (i) enter the Proposed Order extending the Exclusive Periods; and (ii) granting such other and further relief as it deems just and proper.

| | | |
|---|---|---|
| Dated: | June 28, 2023<br>Wilmington, Delaware | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Joshua B. Brooks*<br>Michael R. Nestor (No. 3526)<br>Matthew B. Lunn (No. 4119)<br>Allison S. Mielke (No. 5934)<br>Joshua B. Brooks (No. 6765)<br>Shella Borovinskaya (No. 6758)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br>Email: mnestor@ycst.com<br>        mlunn@ycst.com<br>        amielke@ycst.com<br>        jbrooks@ycst.com<br>        sborovinskaya@ycst.com<br><br>*Counsel to the Debtors and Debtors in Possession* |

30491611.3