```
                IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF DELAWARE

IN RE:                          .       Chapter 11
                                .
WINC INC., et al.               .       Case No. 22-11238 (LSS)
                                .       (Jointly Administered)
      Debtors.          .
                                .       August 3, 2023
. . . . . . . . . . . . . . . . .       10:00 a.m.
```

```
                  TRANSCRIPT OF HEARING BEFORE
            THE HONORABLE LAURIE SELBER SILVERSTEIN
                 UNITED STATES BANKRUPTCY JUDGE
```

APPEARANCES:

For the Debtor:         Young Conaway Stargatt & Taylor, LLP
                        BY:  ALISON S. MIELKE, ESQ.
                        1000 North King Street
                        Wilmington, DE 19801
                        Phone:   302-571-6600
                        Email:   amielke@ycst.com

For the U.S. Trustee:   Office of the United States Trustee
                        BY:  JANE M. LEAMY, ESQ.
                        844 King Street, Suite 2207
                        Wilmington, DE 19801
                        Phone:   302-573-6491
                        Email:   jane.leamy@usdoj.gov




Audio Operator:         Brandon J. McCarthy, ECRO

Transcription Company:  Reliable
                        1007 N. Orange Street
                        Wilmington, Delaware 19801
                        (302)654-8080
                        Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

2

# I N D E X

PAGE

Confirmation of Combined Disclosure
Statement and Joint Plan

**PLAN AND DISCLOSURE STATEMENT APPROVED**                    13


**<u>DECLARATIONS ADMITTED INTO EVIDENCE</u>**

Young Declaration                                              7
Brault Declaration                                            7

1      (Recorded proceedings commence at 10:00 a.m.)

2          THE CLERK:  Please rise.

3          THE COURT:  Please be seated.  Good morning.

4          MS. MIELKE:  Your Honor, good morning.  May it please

5  the court, Alison Mielke from Young Conaway on behalf of the

6  debtors.

7          I'm joined today by my colleagues, Matthew Lunn, Josh

8  Brooks and Stella Borovinskya, as well as the debtors' former

9  CFO, Carol Brault.  Also with us is Kevin Pleines from RPA

10  Advisors.  And then to your far left is Emily Young with Epiq

11  Restructuring.

12          We are here today to present approval of the debtors'

13  chapter 11 Plan.  We can report, not to bury the lead, that in

14  consultation with the committee we have resolved the two

15  responses that we received to the plan and that we did receive

16  all the requisite votes for the plan.  So we believe that we

17  are going forward today on a fully consensual basis.

18          THE COURT:  Okay.

19          Unless Your Honor would prefer a different order of

20  operations, our plan is to give you a very brief sort of

21  background of where we've been and how we got here, do a quick

22  summary of sort of the plan highlights, go over a summary of

23  the 1129 factors, and then address any of the Court's comments

24  or concerns.

25          THE COURT:  That's fine.

1      MS. MIELKE:  All right.  So by way of a brief

2  background, Your Honor, the debtors, or Winc, is a publicly

3  held emerging growth company that utilized data analysis to

4  quickly develop their own propriety wine brands.  They were

5  based in Santa Monica, California.  They had a distribution

6  center in California as well as in Pennsylvania.  Their assets

7  comprised primarily wine inventory, contracts and intellectual

8  property including their five core wine brands.

9      Prior to the petition date, the debtors focused on

10  expanding their product line and scaling their business for

11  profitability.  But they were never able to generate sufficient

12  revenue to cover their operating expenses and support their

13  business.  As a result they were reliant on debt financing and

14  equity financing to support the operations.

15      Last spring, facing a looming maturity on their

16  prepetition credit facility, they started a marketing process

17  to assess viable alternatives.  They retained Canicord

18  (phonetic) to commence that process.  And then in parallel they

19  also continued to seek third party financing.

20      They ultimately were unsuccessful in finding third

21  party financing.  But at the end of the nine month marketing

22  process, they did identify a bidder for a going concern sale of

23  their assets and operations.

24      Talks commenced to do an out of court merger

25  transaction.  But with the debtors' dwindling liquidity it was

1  determined that the most viable option was to do the

2  transaction through an in court 363 sale process.

3          That potential bidder was identified as a stalking

4  horse bidder.  As Your Honor is aware, we did an in court

5  marketing process that was short but fulsome.  And we did close

6  the sale to the stalking horse bidder for $11 million and

7  consideration.

8          That consideration, the credit bid as a result of

9  that and then the additional consideration was sufficient to

10  pay off the prepetition credit facility as well as the DIP

11  obligations with some remaining cash.

12          With that sale process completed and with the

13  proceeds in hand, the debtors and the committee worked together

14  to create a joint chapter 11 plan to liquidate the remaining

15  assets of the company.

16          Just a couple of just facts.  With respect to the

17  sale, the sale did result in a going concern sale, and so

18  employees who were not, who were offered employment and chose

19  to accept that employment were given an opportunity for

20  continued employment.  Go forward vendors were able to have a,

21  you know, go forward business partner.  The sale also resulted

22  in the assumption of significant liabilities including the

23  debtors' gift card subscription liabilities and subscription

24  credit liabilities which were both very significant.

25          On June 27th Your Honor entered an order approving

among other things the combined DS on an interim basis, the DS
and plan, and establishing certain solicitation procedures.
That solicitation commenced in July.  Under the plan, holders
of priority non-tax claims and secure claims are paid in full
and are unimpaired; therefore, those votes were not solicited.

We also did not solicit votes for administrative
expense claims or priority tax claims which are also paid in
full under the plan.

We did not solicit Class 4 intercompany claims or any
of the classes of equity interests.  So the only voting class
was class 3 which is the general unsecured claims.  Those, the
holders of those claims are entitled to a pro rata share of the
liquidated assets after payment of trust expenses, etc.

With that background, Your Honor, there are a number
of pleadings, affidavits and declarations related to the
solicitation and plan process that are on file with the Court.
These include Ms. Young's declaration regarding solicitation
and vote tabulation.  And that's located at Docket No. 445.

Additionally, Ms. Brault's declaration in support of
confirmation is Docket No. 446.

Both witnesses are present and in the courtroom and
are prepared to answer any questions that any party in interest
or the Court may have.

In addition, there are various affidavits of service
relating to voting materials and solicitation and the notice of

1 the hearing that was sent to all parties in interest in this

2 case.  Those affidavits are located at Docket Nos. 413 and 415.

3          At this time, I'd ask that those documents which

4 again are Docket Nos. 413, 415, 445 and 446 be admitted into

5 evidence.

6          THE COURT:  Does anyone object?

7 [no audible response]

8          THE COURT:  I hear no one.  And those documents are

9 admitted without objection.

10     (Young and Brault Declarations admitted into evidence.)

11          MS. MIELKE:  Thank you.

12          As I'm sure that Your Honor has seen, Ms. Young's

13 declaration provides that approximately 89 percent of holders

14 of general unsecured claims voted in favor of the plan.  There

15 were three votes that were voting to reject.  And those parties

16 voted approximately 99.9 percent of the amounts captured in

17 that class.

18          As demonstrated by Ms. Young's declaration, two

19 ballots were rejected due to deficiencies that prevented Epiq

20 from tabulating those votes.  One was late and the other did

21 not have a vote indicated.

22          Ms. Young's declaration as well as the affidavits of

23 service established that the solicitation materials were served

24 in accordance with the solicitation procedures order.  IN

25 particular, a flash drive of the combined plan and DS as well

1  as the solicitation procedures order, a ballot and a

2  confirmation hearing notice as well as a prepaid return

3  envelope were sent to holders of claims on the general

4  unsecured class.

5          The confirmation hearing notice and the notice of

6  non-voting status was sent to holders of claims in the non-

7  voting classes.  The solicitation package, so the initial

8  package that I just referenced, without a ballot or a prepaid

9  envelope was sent to all of the parties on the core 2002

10 service list.  And then the confirmation hearing itself was

11 sent in addition to all of the services I just mentioned the

12 entire creditor matrix including more than 130,000 former

13 customers which was done by email.

14          Prior to the objection deadline, the debtors did

15 receive two responses.  One was from the IRS and the other was

16 an informal response from the Pennsylvania Department of

17 Revenue.  They were both very similar substantively.  We did

18 work with both of those parties.

19          The IRS, we included some language into the proposed

20 order which I'm sure Your Honor has seen, and the IRS has since

21 withdrawn its objection and the informal comment that I

22 received from the Pennsylvania Department of Revenue has been

23 resolved.

24          The plan proponents' proposed confirmation order was

25 filed at Docket No. 449.  That addresses the standards of

1 sections 1129(a) and (b).  Mrs. Brault who is present today and

2 in the courtroom would be prepared to testify to the various

3 elements of sections 1129(a) and (b) consistent with the

4 statements in her declaration.

5          Based on that testimony, the plan proponents submit

6 that the elements of sections 1129(a) and (b) have been met in

7 this case.  In particular, the plan proponents have negotiated

8 the plan in good faith and solicited the plan in good faith and

9 consistent with this Court's orders and the bankruptcy code and

10 rules.

11          The plan has not been offered for purposes of

12 avoiding taxes.  The plan and the plan supplement set forth in

13 sufficient detail the individuals who will be responsible for

14 effectuating the plan and the terms of their compensation.

15          Also as set forth in the voting declaration, the plan

16 may be confirmed, or excuse me, the debtors have obtained the

17 requisite votes for accepting the plan.

18          In addition, the plan can be confirmed under section

19 1129(b) despite the deemed rejection of classes 4, 5(a), 5(b)

20 and 5(c) because no junior class will receive any property

21 under the plan.

22          To the extent the Court requires additional argument

23 on any of these arguments, the plan proponents are prepared to

24 further explain how those requirements are satisfied in this

25 case.  If the Court, however, is satisfied with the record as

1  presented with respect to the declarations and the affidavits

2  on file, then we respectfully request that the Court enter the

3  order.

4            THE COURT:  Thank you.

5            Does anyone wish to be heard?

6            MR. KESSELMAN:  Good morning, Your Honor.

7            THE COURT:  Good morning.

8            MR. KESSELMAN:  Justine Kesselman, ArentFox Schiff on

9  behalf of the official committee of unsecured creditors, here

10 today with my colleagues and co-counsel, James Britton, Anthony

11 Saccullo, and Mark Hurford.

12           Also in the courtroom today are the proposed creditor

13 trustee, Brian Rineker (phonetic) and the proposed post-

14 confirmation debtor representative, Brian Ayers.

15           I'm going to cede the podium to my colleague to make

16 a statement in support of the plan.  But before I do, I'd like

17 to thank counsel and the financial advisors for the debtors,

18 their consummate professionalism throughout the case in

19 reaching, you know, an agreed and joint plan today; Ms. Leamy

20 from the Office of the U.S. Trustee for closely following this

21 case, working with the parties to resolve concerns throughout

22 the way; and of course thanking the Court, chambers and Your

23 Honor for the guidance for giving the parties the opportunity

24 to resolve disputes, and get this plan before the Court that we

25 believe is in the best interest of the estate and creditors.

1        And I'll cede the podium to Mr. Britton.

2        THE COURT:  Thank you.

3        Mr. Britton?

4        MR. BRITTON:  Good morning, Your Honor, James Britton

5  of ArentFox Schiff appearing on behalf of the Official

6  Committee of Unsecured Creditors.

7        The Committee supports the plan and is pleased.  The

8  result of voting reflects overwhelming creditors' support.

9  Today's result is the product of the committee and debtors

10  finding common ground after challenging aspects of the case

11  involving the DIP, the sale and the critical vendor program.

12        As Your Honor is aware, these efforts culminated in a

13  global settlement among the debtors, the committee, the

14  debtors' prepetition secured lender, and the debtors' stalking

15  horse bidder.  That settlement paved the way for this

16  consensual plan where the committee is co-proponent.

17        As Mr. Kesselman said, Mr. Brian Rinecker is the

18  contemplated creditor trustee and Mr. Brian Ayers is the

19  contemplated post-effective date debtor representative are with

20  us in the courtroom today.  And the committee would just like

21  to voice its appreciation of the efforts of Young Conaway and

22  of the debtor and the committee's other professionals as well

23  as the courtroom staff and the United States Trustee's Office

24  for making these cases a success, and ask that the Court

25  confirm the plan.

1          THE COURT:  Thank you.  Anyone else?

2          Ms. Mielke?  Let me ask just one question if you can

3   just remind me.  I know this was a sale and I see in the plan

4   and as reflected, we have a debtor representative.  There was a

5   master services agreement and a transition services agreement.

6   Are they still in effect?

7          MS. MIELKE:  They are.  And so the way that that

8   works, Your Honor, is that one of the debtor entities, BWSC,

9   will continue to exist and essentially operate in name under

10  the TSA for licensing purposes.  And the post-effective date

11  debtor representative will be supervising those operations and

12  ensuring that the TSA is complied with.

13         Under the TSA, the buyer is required to fund the

14  operations of that entity.  So there's a means for funding and

15  financing those operations.

16         The outside date of the TSA which we did include in

17  the plan with at the request of Your Honor is January, I don't

18  know the exact date, end of January 2024.  That's the outside

19  date.  It is also subject to termination at the time that the

20  buyer gets the licensing it needs.  And then there's a

21  transition.  We anticipate, we're told, that it could be short,

22  by the end of the year.  I don't have a viable date to give

23  Your Honor, but we know what the outside date is and we're

24  hopeful that it's shortly after hopefully the plan is

25  confirmed.

1          THE COURT:  Okay.  Thank you.

2          One other question.  There is a list of delayed

3 assumed contracts.

4          MS. MIELKE:  Yes.

5          THE COURT:  Can you remind me how that works?

6          MS. MIELKE:  Sure.  So the debtors have slated those

7 for rejection unless the buyer, which I think will be

8 technically is project Crush (phonetic) acquisition company,

9 unless they select those for assumption before the end of the

10 TSA.  So those parties have been put on notice of that, that

11 has been, all of the parties associated with assumption of

12 contracts regarding the sale were put on notice in December

13 about the assumption of their contracts.  The delayed

14 assumption contracts list was attached to the plan, and it went

15 out to the parties.  So that's how that works.

16          THE COURT:  Okay.  Okay.  Thank you.

17          I am prepared to confirm the plan based on the

18 evidence that's submitted by way of the two decelerations that

19 were admitted into evidence, that of Ms. Brault and that of Ms.

20 Young.

21          The debtors' counsel has done a top level walk

22 through of the 1129 factors and I agree with the analysis.  The

23 plan, first of all is a joint plan with the committee, it has

24 been proposed and solicited in good faith.  It's not offered

25 for an improper purpose.  It does list the names of the debtor

1  rep and the creditor trustee, the trust, creditor trust

2  representative.

3        We have an impaired accepting class in Class 3 which

4  accepted overwhelmingly as set forth in Ms. Young's

5  declaration.  And the classes that are deemed to reject the

6  plan and did not vote, Classes 4, 5(a), 5(b) and 5(c) can be

7  crammed down under 1129(b).  There are no classes below them

8  that are receiving any distributions on account of their

9  claims.  This is a liquidating plan so it's feasible and the

10 liquidation analysis does show that under the plan, creditors

11 are receiving at least as much as they would in a chapter 7

12 case.

13       So I think that's a high level on the 1129 factors.

14 I note there are no third party releases in this plan, so we're

15 not addressing that issue.  Thank you very much.  And there are

16 no outstanding objections.  The objections by the United States

17 and the other governmental unit have been resolved by language

18 in the proposed form of order.  So this is, the plan is fully

19 consensual in the sense that there are no objections pending.

20       With respect to the delayed assumed contracts,

21 parties received notice multiple times with respect to those

22 contracts and there are no objections with respect to the

23 process that is being used or the timeframe.

24       So I did have I think one or two questions on the

25 form of order, so let's hit those.  But as I said, I'm

1 confirming the plan.

2       MS. MIELKE:  I'd be remiss, Your Honor, if I didn't

3 say we did get it under 20 pages.

4       THE COURT:  Thank you.  And I appreciate that as

5 well, and that's even with the resolutions.

6       My first comment is paragraph 15.  And this is the

7 1146 paragraph.  I would like it to mirror the code.  I think

8 it goes beyond that and since it affects third party

9 governmental entities across the board, it should just mirror

10 the code.

11       And then my only other comment is on I think it's new

12 paragraph 29, newly numbered paragraph 29.  The last sentence

13 is forward looking and deals with substantial consummation

14 which I don't think is within my purview.  So I'm fine with the

15 first sentence given the debtors authority to consummate the

16 combined disclosure statement and plan but I'm not going to

17 provide prospective thoughts on what might be substantial

18 consummation.

19       MS. MIELKE:  Noted, Your Honor.

20       THE COURT:  Okay.  Other than that, the order is

21 fine.  And I will look for a revised form of order with those

22 two changes that reflected my comments.

23       MS. MIELKE:  Thank you, Your Honor.  We'll make those

24 changes and submit it under certification of counsel.

25       THE COURT:  Okay.  Thank you.

1          I know, Ms. Batts, I'll let you know I did not have
2 an opportunity to look at fees.  I will get to that and
3 hopefully promptly.  But I will get to it as soon as I can.
4          MS. BATTS:  Thank you, Your Honor, I appreciate it.
5          THE COURT: Okay.  Anything further?
6          MS. MIELKE:  No, Your Honor.
7          THE COURT:  Thank you.  We're adjourned.
8              (Proceedings adjourned 10:23 a.m.)
9

1                        CERTIFICATION

2            I certify that the foregoing is a correct transcript

3    from the electronic sound recording of the proceedings in the

4    above-entitled matter to the best of our knowledge and ability.

5

6    /s/ Theresa Pullan                    August 7, 2023

7    Theresa Pullan, CET-780

8    Certified Court Transcriptionist

9    For Reliable